**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

|  |  |
|---|---|
| PATRICK NATHANIEL REED,<br>c/o 22 Philbrook Way<br>Woodlands, TX, 77382<br><br>     Plaintiff,<br><br>v.<br><br>BRANDEL EUGENE CHAMBLEE,<br>1800 E Cactus Rd, Unit 32<br>Scottsdale, AZ, 85259<br><br>And<br><br>TGC, LLC<br>d/b/a Golf Channel<br>1 Blachley Road<br>Stamford, CT, 06902<br><br>And<br><br>DAMON HACK<br>1 Blachley Road<br>Stamford, CT, 06902<br><br>And<br><br>BENJAMIN SHANE BACON<br>1 Blachley Road<br>Stamford, CT, 06902<br><br>And<br><br>EAMON LYNCH<br>1 Blachley Road<br>Stamford, CT, 06902<br><br>And<br><br>GANNETT SATELLITE INFORMATION<br>NETWORK, LLC<br>d/b/a Golfweek | **AMENDED COMPLAINT**<br><br>**Case No: 3:22-cv-01059-TJC-PDB** |

1

1000 Legion Place, Suite 725
Orlando, FL 32801

And

GANNETT CO., INC
7950 Jones Branch Drive
McLean, Virginia 22107

And

CONDE NAST INTERNATIONAL, INC
d/b/a The New Yorker
1 World Trade Center, Floor 20
New York, NY, 10007

And

ZACH HELFAND
167 Congress Street, 1F
Brooklyn, NY, 11201

                    Defendants.

## I.    INTRODUCTION

Plaintiff PATRICK NATHANIEL REED ("Mr. Reed") or ("Plaintiff") brings this action

against Defendants BRANDEL EUGENE CHAMBLEE ("Chamblee"), DAMON HACK

("Hack"), BENJAMIN SHANE BACON ("Bacon"), TGC, LLC d/b/a GOLF CHANNEL ("Golf

Channel"), EAMON LYNCH ("Lynch"), GANNETT SATELLITE INFORMATION

NETWORK, LLC ("Golfweek"), GANNETT CO., INC ("Gannett"), CONDE NAST

INTERNATIONAL, INC d/b/A THE NEW YORKER ("New Yorker") and ZACH HELFAND

("Helfand") acting in concert as joint tortfeasors, jointly and severally, in this civil action for

general defamation, defamation per se, defamation by implication, and tortious interference as a

result of Defendants' causing actual damages, compensatory damages, and giving rise to punitive

2

damages, including continuing, aggravated, and severe harm to Mr. Reed's professional, and personal reputation and livelihood. As grounds therefore, Mr. Reed alleges as follows:

## II.      JURISDICTION AND VENUE

1.      This Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

2.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(3) in that this is a district in which a substantial part of the events or omissions giving rise to Plaintiff's claim occurred, as a significant portion of the defamatory statements at issue were made on a podcast hosted by Horace Langley, and which featured Defendant Chamblee, which was recorded in and broadcast from Ponte Vedra, Florida in this district.

## III.     PARTIES

3.      Mr. Reed is an individual, natural person who is a citizen of the state of Texas and a resident of both Florida and Texas. He has residences in both in Kissimmee, Florida and The Woodlands, Texas.

4.      Defendant Chamblee is an individual, natural person who is on information and belief a citizen of the state of Arizona.

5.      Defendant Hack is an individual, natural person who is on information and belief a citizen of the state of Connecticut.

6.      Defendant Bacon is an individual, natural person who is on information and belief a citizen of the state of Connecticut.

7.      Defendant Lynch is an individual, natural person who is on information and belief a citizen of the state of Connecticut.

8.     Golf Channel is a limited liability corporation incorporated under the laws of Delaware and with its headquarters in the states of Connecticut and Florida. For the purposes of diversity of citizenship jurisdiction under *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004), Golf Channel is a citizen of Delaware.

9.     Gannett Satellite Information Network, LLC d/b/a/ Golfweek is a citizen of Delaware for the purpose of diversity of citizenship jurisdiction under *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004).

10.     Gannett is Gannett Satellite Information Network, LLC d/b/a/ Golfweek's parent company and is headquartered in McLean, Virginia and incorporated under the laws of Delaware.

11.     Conde Nast International, Inc. d/b/a The New Yorker is incorporated under the laws of Delaware and has headquarters in New York.

12.     Helfand is an individual, natural person who is on information and belief a citizen of the state of New York.

## IV.    STANDING

13.     Mr. Reed has standing to bring this action because he has been directly affected and victimized by the unlawful conduct complained herein. His injuries are proximately related to the intentional and malicious conduct of Defendants, each and every one of them acting in concert jointly and severally, as joint tortfeasors.

## V.    FACTS

### BACKGROUND FACTS

14.     Mr. Reed is a professional golfer who began his career after winning back-to-back NCAA Championships at Augusta State University. Since his first win, Mr. Reed has gone on to win a total of 9 PGA Tournaments, including his first major championship victory in 2018, at The

Masters in Augusta, Georgia, at the age of 27. He was ranked as high as six (6) in the Official World Golf Ranking as late as 2020 and has remained a top player in the world since earning his PGA Tour card in 2013 and has continued to proudly represent the United States worldwide on team events and individually since 2014.

15.     Despite his exceptional world-class golfing achievements, in June of 2022, Mr. Reed was constructively terminated as a member of the PGA Tour, as a result of threats made and actions taken by its Commissioner Jay Monahan ("Monahan") and the PGA Tour and he later signed with LIV Golf.

16.     To compound matters, both before and in furtherance of the threats made and actions taken by the PGA Tour and Monahan to constructively terminate Mr. Reed,  each and every one of the Defendants have conspired as joint tortfeasors for and with the PGA Tour, its executives, Monahan and their agents to engage in a pattern and practice of defaming Mr. Reed, misreporting information with actual knowledge of falsity and/or reckless disregard of the truth, as set forth herein.

17.     These calculated, malicious, false and/or reckless attacks have had a direct effect on Mr. Reed's and his family's livelihood because he has suffered major damages through the loss of multiple multi-million dollar sponsorship deals that were not or have not been renewed including, but not limited to Titleist, Nike, Ultimate Software, cbdMD, Callaway, Tax Slayer, Perry Ellis, NetJets, and ETS as well as numerous promising prospective sponsorship and business opportunities that did not come to fruition as a direct and proximate result including, but not limited to companies such as Quicken Loans, Draft Kings, Travelers, DOW, ARAMCO, CISCO, Porsche, Wells-Fargo, ROUSH, Zurich, Perry Ellis, Waste Management, Citi Bank, Houston Tourism, Taylormade, Bettinardi, and SRIXON. The damages do not just stop there. Top Coaches in the

world have denied to coach or work with him periodically throughout his career as a top-player in the world for fear of backlash they would receive from the Tour or the media, including, but not limited to Butch Harmon, and Sean Foley, two very prominent coaches in the golf world who took on lesser players at the time asked or thereafter.

18.     Mr. Reed received no corporate sponsorships via the PGA Tour's Corporate Partners, in which every single member of every Ryder Cup Team and/or President's Cup Team member that Mr. Reed has played with and/or against, has received. He was and is the only player from any team competition, including International Team Members and European Ryder Cup Members, who has never had a single sponsor that is a corporate partner of the PGA Tour. Meanwhile Mr. Reed's peers from all sides have received multiple sponsorship deals through the PGA Tour and affiliates. Mr. Reed has far fewer sponsorships now than he had prior to the Defendants' concerted attack on his reputation, and far fewer sponsorships than other golfers who have reached his level of professional success.

## FACTS PERTAINING TO DEFENDANTS' CONCERTED ACTIONS

19.     To understand why the Defendants have engaged in a pattern and practice of maliciously defaming Mr. Reed, it is important to set forth briefly facts pertaining to antitrust and anti-competition allegations that are being litigated by the undersigned counsel in the Fifteenth Judicial Circuit in Florida as well as by others in the U.S. District Court for the Northern District of California. These facts show the Defendants' intent, and therefore actual as well as common-law malice, in maliciously defaming Mr. Reed. Lending credence to these antitrust allegations is the fact that in the case brought by the undersigned, antitrust allegations were sustained on a motion to dismiss, and the case is now in the discovery phase. *Klayman v. PGA Tour et al*, 50-2022-CA-

006587, (15th Jud. Cir. Fl.)*. This case is centered around the same type of collusive conduct set forth herein, and indeed, names Golf Channel as a Defendant.

20.      Defendants are acting in concert as joint tortfeasors with and as agents on behalf of the PGA Tour and DP World Tour – the PGA Tour's joint venture partner - which view LIV as its primary competitor. Thus, Defendants and the PGA Tour and its joint venture partner DP World Tour, have conspired and colluded to defame, smear, and harm anyone associated with LIV— including Mr. Reed, one of its most prominent athletes—in order to try to maintain their monopolistic hold on professional golf, and therefore continue to substantially profit, to the tune of an estimated $1.522 billion in revenue for the PGA Tour alone in 2021.[1] Thus, Defendants literally have numerous reasons to continue to maliciously defame Mr. Reed, LIV, and other golfers signed with LIV, particularly since Golf Channel has highly lucrative contracts with the PGA Tour and DP World Tour and Defendants are fearful that another major network, such a Fox Sports, will acquire the rights to broadcast and cover LIV tournaments and events and compete with Golf Channel, drawing away advertising and substantial revenue.

21.      Monahan and DP World Tour's CEO Keith Pelley ("Pelley") sit on the governing board of Official World Golf Ranking ("OWGR"), which awards points that determine whether golfers qualify Major Championships and World Golf Championships. It is therefore no surprise that LIV golfers such as Mr. Reed do not earn OWGR points, which severely cripples their ability to advance professionally as golfers, thus, along with the continued malicious defamation, eliminates Mr. Reed and LIV golfers as competitors, as set forth below.

---

[1] *See* Mike Purkey, *The PGA Tour Is On a Spending Spree and We Know Who's Going to Get the Bill*, Sports Illustrated, Dec. 21, 2021, available at: https://www.si.com/golf/news/the-pga-tour-is-on-a-spending-spree-and-we-know-whos-gonna-get-the-bill

22.     With regard to the defamation at issue, Golf Channel is firmly ensconced as the PGA Tour's and the DP World Tour's co-conspiratorial agent and admitted "partner" in the words of PGA Tour Commissioner Monahan as recently at the 2022 President's Cup, to push its anticompetitive agenda and message to the public.

23.     This was admitted by Monahan in a recent appearance on none other than Golf Channel, where he referred to the "partnership" between the PGA Tour and Golf Channel, stating that he was "really proud of the partnership that we [the PGA Tour and the Golf Channel] share."[2]

24.     Many of the other Defendants, including Defendants Chamblee, Hack, Bacon, and Lynch are employed by or work closely with the Golf Channel and have therefore become Golf Channel's mouthpieces and agents to push this defamatory and other illegal agenda as pled herein, and inflict severe damage to Mr. Reed, LIV, and other golfers signed with LIV.

25.     Indeed, it has even recently been revealed in LIV's lawsuit against the PGA Tour for illegal, anticompetitive actions that the PGA Tour itself has orchestrated a campaign to defame LIV and its players over LIV being financed by the Saudi PIF, and that the PGA Tour hired Clout Public Affairs to not only assist in orchestrating this, but also to bury the PGA Tour's involvement from public knowledge. This is shown in LIV's motion to compel Clout to comply with its subpoena. *See L IV Golf Inc. v. Clout Public Affairs, LLC,* 1:22-mc-00126, (N.D. CA.) Dkt. #1-1.

26.     It is clear that task of fomenting, orchestrating, and manufacturing outrage was given to the Defendants named herein to serve as the PGA Tour's mouthpieces and agents, which explains why there has been such a clearly orchestrated attack by the Defendants as alleged herein on Mr. Reed and LIV.

---

[2] *Jay Monahan doesn't expect peace between PGA Tour, LIV*, Golf Channel, Sep. 21, 2022, YouTube, available at: https://www.youtube.com/watch?v=7wmZVDzlWRo

27.     The false, malicious, and defamatory agenda and concerted course of conduct perpetrated by the Defendants have caused exponential severe harm to Mr. Reed, as other publications are picking up and conveniently mimicking almost verbatim the Defendants' defamatory message and republishing them on their own platforms.

**FACTS PERTAINING TO LIV AND ITS COMPETITORS**

28.     LIV is a professional golf tour operating company which is financially backed by the Public Investment Fund of Saudi Arabia ("PIF").  LIV has its principal place of business in West Palm Beach, Florida, and is seeking to compete against the PGA Tour and DP World Tour both domestically and abroad.

29.     LIV's CEO, Greg Norman has publicly stated, "[w]e are not a political organization. We are here to play golf, serve fans, grow the game, and give additional opportunities to players. I also have seen firsthand the good that golf can do around the world, and Saudi Arabia is no different."

30.     In addition to LIV, the PIF invests in numerous corporations domestically and worldwide, including but not limited to: Disney, Uber, Boeing, Facebook, Citigroup, Bank of America, Capcom, Nexon, Electronic Arts, Take-Two Interactive, Activision Blizzard, and Berkshire Hathaway.

31.     The PIF also purchased Newcastle United F.C. on the English Premier League in 2021.

32.     LIV held its inaugural professional golf tournament from June 9-11, 2022 at the Centurion Club in Hertfordshire, England, as well as another tournament from June 30 - July 2, 2022 at Pumpkin Ridge Golf Club in Portland, Oregon, and a tournament at Trump National Golf Club Bedminster on from July 29 -31, 2022. More tournaments have taken place in Boston, Massachusetts from September 2 – 4, 2022 and Chicago, Illinois from September 16 – 18, 2022,

and others are scheduled for 2022, 2023 and beyond. The final event for 2022 took place in Florida at Trump National Golf Club Doral from October 27 – 30, 2022.

33.     As set forth above, clearly viewing LIV as a substantial threat, both the PGA Tour and the DP World tour have taken adverse anti-competitive actions against golfers who participated in LIV tournaments.

34.     For instance, on or around June 9, 2022, the PGA Tour announced the suspension of seventeen (17) of its own professional golfers who participated in the LIV Golf's inaugural tournament.

35.     On June 24, 2022, the DP World Tour, the PGA Tour's joint venture partner, announced that it was fining each of its own professional golfers who participated in the LIV's inaugural golf tournament in the amount of approximately $125,000 and banned them from the Scottish Open, Barbasol Championship, and the Barracuda Championship, with more sanctions to follow for any other golfer who joins LIV in the future. These fines and ban were later preliminarily enjoined by a panel of arbitrators in the United Kingdom with a full permanent injunction hearing scheduled to begin on February 6, 2023 in London.

36.     As a result of this anticompetitive and illegal conduct by the PGA Tour and DP World Tour and their commissioners Monahan and Pelley, many professional golfers were essentially forced into a choice between whether to play on the LIV Tour or on the PGA Tour an DP World Tour.

37.     For a litany of reasons—whether it be Mr. Reed's constructive termination as result of threats by the PGA Tour and Monahan, dissatisfaction with the policies of the PGA Tour and DP World Tour, the PGA Tour's failure to support Mr. Reed and his colleagues and family against defamation, injurious falsehoods, tortious interference and threats, financial benefit, as or even as

simple as plain personal preference for themselves and their families—Mr. Reed, and many top professional golfers, including but not limited to, Phil Mickelson, Brooks Koepka, Dustin Johnson, Bryson DeChambeau, Patrick Reed, Cameron Smith, Kevin Na, Charles Schwartzel, Ian Poulter, Lee Westwood, and Sergio Garcia, to name just a few world class golfers, have decided to join LIV.

## FACTS PERTAINING TO DEFENDANTS' DEFAMATION AND OTHER CAUSES OF ACTION

38.     In retaliation for Mr. Reed's decision to sign with LIV, Defendants, conspiring and acting in concert as joint tortfeasors with the PGA Tour, DP World Tour, have engaged in a pattern and practice of maliciously defaming and tortious interfering with Mr. Reed, as well as LIV and other golfers who signed with LIV.

39.     It is clear that where the Defendants are making false and misleading statements regarding LIV and its players, it is reasonably understood by an objective viewer/listener that the Defendants are making these statements of and concerning Mr. Reed, as well as other golfers signed to LIV.

40.     Indeed, Mr. Reed has become, not by choice but due to media-driven narrative, a "lightning rod" and therefore a frequent target of the Defendants and others in the media in order to defame, disparage and harm LIV's other golfers and LIV as a whole.

41.     It is clear that Defendants are not interested in the Saudi PIF, Mohammed bin Salman ("MBS"), or any human rights atrocities. They are basely attempting to associate Mr. Reed and LIV with human rights atrocities in order to destroy their goodwill and reputations and harm them financially in order to eliminate LIV as a competitor to the PGA Tour and DP World Tour. This is about money and power. Defendants could care less about actually shining light on human rights atrocities.

42.     If Defendants were truly concerned about human rights atrocities, why have they remained totally silent on the PGA Tour's partnership with China in 2018?[3]  The current Chinese regime has committed  - **and is currently committing** - mass genocide on Muslim Uyghurs, to the point where the United States has formally dubbed China's actions as "genocide," and the United Nations has publicly stated that they could resort to crimes against humanity.[4]

43.     The Defendants' silence on this issue is deafening and their hypocrisy in this regard is nothing short of astounding.

44.     The answer is simple. Defendants are only concerned with serving the financial interests of the PGA Tour and the DP World Tour, and in turn their own financial interests. Defendants do not have a leg to stand on when commenting on human rights atrocities when their co-conspirators and financial backers are partnered with a genocidal regime in China, one of the worst perpetrators of human rights violations in modern times, along with North Korean, Iranian, and Venezuelan dictatorships.

45.     In light of this, it is clear that Defendants' "fake outrage" over Mr. Reed and LIV is nothing more than a transparent attempt to smear, defame, and destroy the reputations of Mr. Reed and LIV to destroy them as competitors to serve the financial interests of their benefactors, the PGA Tour and DP World Tour.

---

[3] Michael Graham, *The PGA Tour's Sportswashing Problem in China*, Mar. 1, 2022, Inside Sources, available at: https://insidesources.com/the-pga-tours-sportswashing-problem-in-china/

[4] Lindsay Maizland, *China's Repression of Uyghurs in Xinjiang*, Sep. 22, 2022, Council on Foreign Relations, available at: https://www.cfr.org/backgrounder/china-xinjiang-uyghurs-muslims-repression-genocide-human-rights

46.     The Defendants, and Defendant Chamblee in particular, have engaged in repetitive media attacks on Mr. Reed, having started doing so years and years ago. Thus, Defendants have made prior and subsequent defamatory statements, evidencing their actual malice.

47.     Each and every one of the defamatory publications, injurious falsehoods and tortious interference set forth below were intentionally published and perpetrated by the Defendants in the state of Florida, where the offending acts were accessed, read, opened, and viewed by numerous third-party Florida residents and citizens. Florida and this district are in effect the capitol of professional golf and golf in general for the United States. Its year-round warm climate, and the fact that Florida is the third largest state, with a huge media market in the golf industry make the Sunshine State a prime target for Defendants' defamatory and other illegal acts in their effort to destroy Mr. Reed, other LIV players and LIV in general. Indeed, the last LIV tournament for 2022 took place at Trump National in Doral, Florida, and a myriad of PGA Tour events also take place in this district and Florida in general. Thus, the PGA Tour and LIV are going head-to-head in the Sunshine State.

48.     In sum, each and every one the Defendants have engaged in "continuous and systematic" activities in Florida, as they are all members of golf media. Florida is considered to be the golf capital of the United States, if not the world. Furthermore, as this Amended Complaint alleges that Defendants were and are continuing to act in concert with and at the direction of the PGA Tour, their "continuous and systematic" contacts with Florida are even more evident given that the PGA Tour is headquartered in Ponte Vedra, Florida, in this judicial district.

49.     Defendants Chamblee, Bacon, Lynch, and Hack regularly travel to Florida, and specifically this judicial district, to provide media coverage for golf events being held in the Ponte Vedra area and elsewhere in Florida.

50.     Defendants Golf Channel, Golfweek, and Gannet heavily circulate their media and do substantial business in Florida, and specifically this judicial district. They have deliberately exploited for substantial profit this judicial district, since it is one of the golf capitals of the United States and the world, and where the PGA Tour headquarters is located.

51.     It is clearly established that in defamation cases, "a publication must be considered in its totality. 'The court must consider all the words used, not merely a particular phrase or sentence.'" *Byrd v. Hustler Magazine*, 433 So. 2d 593, 595 (Fla. Dist. Ct. App. 1983).

52.     **Thus, the defamatory statements set forth below are presented in context, but the actual portions that are primarily alleged to be defamatory will be set forth in bold**.

53.     Furthermore, it is clear that statements of mixed opinion are actionable as defamation. "Mixed opinion is based upon facts regarding a person or his conduct that are neither stated in the publication nor assumed to exist by a party exposed to the communication. *From*. Rather, the communicator implies that a concealed or undisclosed set of defamatory facts would confirm his opinion." *Hay v. Indep. Newspapers, Inc.*, 450 So. 2d 293, 295 (Fla. Dist. Ct. App. 1984).

54.     Florida law recognizes defamation, defamation *per se* and defamation by implication. Importantly, defamation by implication arises, not only from what is stated, but from what is implied when a defendant (1) juxtaposes a series of facts so as to imply a defamatory connection between them, or (2) creates a defamatory implication by omitting facts, such that he may be held responsible for the defamatory implication. *Readon v. WPLG, LLC*, 46 Fla. L. Weekly 836 (Dist. Ct. App. 2021

55.     Furthermore, defamatory statements can arise from persons not specifically named in the statements at issue so long as understood by the listener or reader that it is of and concerning

the person being defamed. "It is not essential that the person defamed be named in the publication if, by intrinsic reference, the allusion is apparent, or if the publication contains matters of description or reference to facts and circumstances from which others may understand that he is the person referred to, or if he is pointed out by extraneous circumstances so that persons knowing him can and do understand that he is the person referred to; and it is sufficient if those who know the plaintiff can make out that he is the person meant." *Harwood v. Bush*, 223 So. 2d 359, 362 (Fla. Dist. Ct. App. 1969). As a recent real-world example, in the case of Johnny Depp against Amber Heard for defamation, *Depp v. Heard*, CL-2019-2911 (Fairfax VA), Mr. Depp was not specifically named in the defamatory publication, but because readers could discern that the statements were of and concerning him, he was able to obtain a large jury verdict in his favor.

56. Lastly, it is textbook black-letter law that constitutional and actual malice can be discerned by circumstantial facts which show the intent of the speaker. *See* Manual Socias, *Showing Constitutional Malice in Media Defamation*, Fla. Bar. J., Sept. 2018, available at https://www.floridabar.org/the-florida-bar-journal/showing-constitutional-malice-in-media-defamation/.

### ***Defamatory Publication #1 – Horace Langley's Podcast***

57. In a video published on June 14, 2022, Defendant Chamblee, at the direction of and as an agent of Golf Channel and PGA Tour and DP World Tour, appeared on a podcast with Horace Langley, who goes by the name "Froggy," where he published the following numerous malicious and defamatory statements of and concerning Mr. Reed.[5] This podcast was filmed and broadcasted into and from this district by Defendant Chamblee in and from Ponte Vedra, Florida.

---

[5] *Brandel Chamblee Thoughts of the LIV Golf Tour,* YouTube, Jun. 14, 2022, available at: https://www.youtube.com/watch?v=xXxnqWJdWhI&t=339s

15

58.   *First*, Chamblee publishes, "So if **they're aligning themselves with a tyrannical, murderous leader… look if you if you look at who MBS is… centralizing power, committing all these atrocities, you look at what he's doing to the citizens of his… of his country ask yourself I mean would you have played for Stalin would you have played for Hitler would you have played for Mao would you play for Pol Pot,"** [Froggy] **"would you have played for Putin?"** [Chamblee in agreement] **"would you have played for Putin… which… and this who this guy is. He settles disputes with bonesaws."**

59.   This statement is false, malicious, and defamatory on its face because it accuses Mr. Reed of aligning himself with a "tyrannical, murderous (sportswashing) leader." Chamblee goes even further and states that LIV players such as Mr. Reed would have no problem playing golf for Stalin, Hitler, Mao Zedong, Pol Pot, and Vladimir Putin. This statement is false because Mr. Reed never aligned himself with a "tyrannical, murderous leader." He is playing golf for LIV, which simply happens to be financed by the PIF, which has invested in and financed some of the nation's and the world's largest and respected corporations.

60.   This would be akin to stating that LeBron James has aligned himself with a "tyrannical, murderous leader" because he plays in the National Basketball Association ("NBA") which has intricate ties to the People's Republic of China[6], whose government is accused of a

---

[6] Mark Rainaru-Wada, Steve Fainaru, *ESPN analysis: NBA owners, mum on China relationship, have more than $10 billion invested there*, ESPN, May 19, 2022, available at: https://abcnews.go.com/Sports/espn-analysis-nba-owners-mum-china-relationship-10/story?id=84831238.

current and ongoing genocide against the Muslim Uyghur people,[7] notwithstanding the PGA Tour's partnership with this genocidal regime, which Defendant Chamblee has no problem with.

61.     *Second*, Chamblee publishes, "I think there's a reason for that…**they're destroying the professional game** they were they been put in the Hall of Fame because of their accomplishments and because of their legacy well **they've tainted their legacy in an irreparable way** so I think both of them should be kicked out of the Hall of Fame I really do…"

62.     This statement is false, malicious, and defamatory of and concerning Mr. Reed because it states that he is "destroying the professional game [of golf]" and that he has "tainted [his] legacy.in an irreparable way…." Mr. Reed is not destroying the game of golf. He simply chose to play for another league. Mr. Reed's legacy is also not tainted simply because he chose to play for another league. Professional athletes do this all the time.

63.     *Third*, Chamblee states that Mr. Reed is "**over there purely playing for blood money**."

64.     This statement is false, malicious, and defamatory because it creates the false implication that Mr. Reed is working directly for MBS, when in actuality he is simply playing golf for LIV.

### *Defamatory Publication # 2 – Chamblee Article on Golf Channel*

65.     In a February 5, 2022 article written by Chamblee and published widely by Golf Channel titled "*Mickelson's statements inaccurate and ironic: Obnoxious greed? Et tu, Phil?*" where Chamblee writes "[n]ow he has continued his subterfuge by saying the PGA Tour could end any threat, **presumably from the Saudi blood money funding a proposed Super Golf League**,

---

[7] Lorraine Boissoneault*, Is China Committing Genocide Against the Uyghurs?* Smithsonian Mag. Feb. 2, 2022, available at: https://www.smithsonianmag.com/history/is-china-committing-genocide-against-the-uyghurs-180979490/.

by just handing back the media rights to the players." This published statement applies to and thus is of and concerning all LIV golfers, including Mr. Reed.

66.     These related statements are false, malicious, and defamatory on their face, and falsely stating that someone is playing for blood money is patently and plainly defamatory because it creates the false implication that Mr. Reed is supporting acts of terrorism and/or human rights violations. This is false. Mr. Reed is simply playing golf, and he is being compensated to do so by LIV. Mr. Reed has never accepted "blood money," and in no way supports terrorism and/or human rights violations, or murder.

67.     Again, these statements were meant to apply to and are of and concerning Mr. Reed because they apply to all golfers who have signed with LIV, including Mr. Reed, one of the most well-known and prominent players signed to LIV.

68.     Chamblee repeats the defamatory message in the prior statements by stating that Mr. Reed's money is "**coming from the wrong place**" and that its "**good [PGA Tour] versus evil [Mr. Reed and LIV] …evil usually fails. So, it will fail**."

69.     This statement is again false, malicious, and defamatory on its face, since it reiterates the "blood money" acceptance of Mr. Reed's deal with LIV and furthers the completely false implication that Mr. Reed has aligned with a "tyrannical, murderous leader," as set forth above. Chamblee takes this many steps further by objectively publishing that Mr. Reed is "evil," simply for choosing to play golf for a competing league, which is not only patently false, but completely malicious and defamatory.

### *Defamatory Publication # 3 – Sky Sports News*

70.     Next, in a broadcast on Sky Sports News on or around June 10, 2022, Chamblee also made further false, malicious, and defamatory published statements of and concerning Mr. Reed.[8]

71.     *First*, Chamblee published, "[t]his is one of the saddest days in the history of golf. Watching these players come together for money and show to the world...**they are showing us that they are the greediest, most self-serving, self-interesting, willfully blind players in the world of golf today**."

72.     This statement is false, malicious, and defamatory because it accuses and labels Mr. Reed, as well as other golfers who chose to sign with LIV, of being greedy, self-serving, and willfully blind. It creates the defamatory implication that Mr. Reed is greedy and solely driven by money and is willing to sacrifice everything he stands for in order to make money.

73.     This is completely and utterly false with regard to Mr. Reed, as the primary reason that he chose to leave the PGA Tour was to be able to spend more time with his family and because he felt the PGA Tour made a conscious decision to ignore player requests and suggestions over the years, while lining the pockets of its leadership such as its Commissioner Jay Monahan, who while running a non-profit reportedly rakes in over $14 million per year in compensation, an unheard of, if not illegal, amount for a non-profit. The PGA Tour also willfully failed and refused to take actions to police those who would defame and seek to harm Mr. Reed at golf tournaments, as set forth above.

---

[8] Jason Daniels, *It makes me want to puke' – Chamblee rips LIV Golf stars in scathing attack*, Golf WRX, Jun. 10, 2022, available at: https://www.golfwrx.com/678264/it-makes-me-want-to-puke-chamblee-rips-liv-golf-stars-in-scathing-attack/

74.     *Second*, Chamblee publishes, "[s]o when I hear these players say that they are 'growing the game'… it makes me want to puke. **They're destroying the game. And they are destroying their reputations**."

75.     Chamblee repeats and reiterates that defamatory message set forth above that LIV players such as Mr. Reed are "destroying" the game of golf and "their reputations" simply by choosing to go play in a competing league. Chamblee defames Mr. Reed and other golfers who signed to LIV do not care about the game of golf  and are driven solely by the desire to make money and are therefore willing to destroy the game of golf  and their reputations to do so. This is false. As a tool and agent of the PGA Tour, Chamblee is destroying these players' goodwill and reputations, has harmed all players who chose to play for a tour not named the PGA Tour and he is abusing his platform at the Golf Channel to disseminate and mislead the public. Mr. Reed has been a dual-member and only American dual-member of the PGA Tour and the European Tour since 2015. Just because he was constructively terminated by the PGA Tour and chose to play for LIV Golf and currently is continuing to play on the DP World Tour does not mean that he is trying to destroy the game or his reputation or that he only cares about making money.  Perhaps ironically, it is Chamblee and Golf Channel, in concert as joint tortfeasors and at the direction of PGA Tour and DP World Tour, who have shown that they only care about their financial "bottom line," in trying to destroy Mr. Reed, LIV, and other golfers signed with LIV.

### *Defamatory Publication # 4 – Chamblee on Golf Channel*

76.     Chamblee and Golf Channel have a long history of targeting Mr. Reed with their defamatory attacks, one of the most prominent examples of which occurred in 2021 when Chamblee falsely, and without any concrete evidence, falsely accused Mr. Reed of intentionally cheating at the Farmers Insurance Open when Mr. Reed claimed embedded ball relief.

77.     On or about February 1, 2021, Chamblee, appearing on Golf Channel made the following false, malicious, and defamatory statements of and concerning Mr. Reed.

78.     Despite the fact that Mr. Reed was cleared to take a free drop and was absolved of any wrongdoing by PGA Tour officials, Chamblee publicly stated on Golf Channel "**I either messaged or talked to 15 to 20 current and past tour players, some of them Hall of Fame members, over the past 24 hours and not a single player is in defense of what Patrick Reed did**."[9]

79.     Chamblee stated that Mr. Reed "**violated that [unwritten] code in so many ways that even the rules officials themselves were sort of stammering as to how to address it**." Thus, Chamblee accuses Mr. Reed of cheating and violating the code that golfers adhere to.

80.     Chamblee even went so far as to defame and smear Mr. Reed's morals and ethics over this incident, stating "**In the same way that there is a distinction between law and morality, there is a mark distinction, in this case, between what he was legally allowed to do and what he ethically appeared to be doing**."

81.     Lastly, as is Chamblee's go-to theme in maliciously defaming Mr. Reed, he again accused Mr. Reed of destroying the game of golf, "**Ask yourself this: if everybody in the field were to conduct themselves around a golf ball in this manner, would it be good for the game of golf? It would not be. It would call into question every single movement or drop that every single player would be making. It would cause an uproar on the PGA Tour**." Mr. Reed won the 2021 Farmers Insurance Open by a commanding five (5) shot victory at Torrey Pines, a Major Championship Golf Course, but Chamblee refused to talk about Mr. Reed's great performance,

_____

[9] Ryan Crombie, *Brandel Chamblee slaughters Patrick Reed over rules row*, Bunkered, Feb. 1, 2021, available at: https://www.bunkered.co.uk/golf-news/brandel-chamblee-slaughters-patrick-reed-over-rules-row

using the opportunity to defame him even more, on a larger platform, after winning at one of the most iconic places in golf.

82.    These published statements are clearly malicious and defamatory because the matter simply involved a rule that PGA Tour officials unequivocally found that Mr. Reed did not violate. This material exculpatory information was not disclosed and was omitted by Defendant Chamblee. To falsely state that Mr. Reed lacks ethics or morals, and that he is destroying the game of golf over this is clearly not only false, but completely and patently defamatory as well.

### *Defamatory Publication #5 – Hack and Bacon on Golf Channel*

83.    Similarly, on or about January 31, 2021, Hack and Bacon appeared on Golf Channel and made further false, malicious, and defamatory statements of and concerning Mr. Reed regarding the embedded ball situation at the 2021 Farmers Insurance Open. [10]

84.    *First*, Hack says:

> "**I'm just not comfortable with Patrick's behavior around the ball.** You know, I always thought that the golf ball -- you treat it like the Hope Diamond. You treat it like a Fabergé egg, especially when it comes to an unclear situation. **So right here we're seeing Patrick kind of hovering over where he says the ball was embedded and it's just hard to know what he's doing.** Like where is the official at this point? You know, we're supposed to take him at his word, but there's -- **there just seems to be smoke**."

85.    This statement is clearly malicious and defamatory because it is indisputable that Mr. Reed did nothing wrong, and he was unequivocally cleared by a PGA rules official of any wrongdoing. In an interview, the rules official stated, "[Mr. Reed] did everything he was entitled to do under the rules" and with regard to moving the ball, "The player is entitled to do that...]. He did nothing wrong. Like I said, he marked it, he lifted it, and then he called for a ruling." Thus,

---

[10]Patrick Reed has lost the benefit of the doubt after another controversy, YouTube, Jan. 31, 2021 https://www.youtube.com/watch?v=aIKObXgWpRY

there is no room for "interpretation" or even debate. It is indisputable that Mr. Reed followed the rules, so there is no "smoke," as Hack falsely published. This material exculpatory information was deemphasized and belittled intentionally by Defendant Hack. In addition to Hack's calculated attack on Mr. Reed, he knowingly fails to mention that Rory McIlroy , another player on Tour, was also in the same situation, Saturday afternoon, in round 3 of the 2021 Farmer's Insurance Open. Rory McIlroy's ball bounced in the rough, he claimed embedded ball relief, didn't even call a rules official to verify, took his drop and went right on and Golf Channel's Damon Hack did not mention it at all because it would completely vindicate Mr. Reed's judgment—the fact that he took an extra step by calling a rules official—even though he didn't have to in order to claim embedded ball relief , which was granted by the PGA Tour Rules official. Instead, Defendant Hack's intentions were only to defame him, create defamation by implication, and knowingly and/or recklessly disregarding the truth of the matter.

86.     *Second*, Bacon published, "**To me, this looks bad for Patrick Reed, a guy that has history of doing these things.**" This is absolutely false, malicious, and defamatory. Mr. Reed has never been found to have cheated. To say that he has a "history" of "doing these things"— which would clearly be interpreted as an accusation of cheating by any objective listener—is false, malicious, and defamatory. This statement is especially harmful because it falsely accuses Mr. Reed of being a habitual cheater. Defendant Bacon failed to reveal and omitted material exculpatory information that Mr. Reed has never once been found to have cheated. Mr. Reed has never been disqualified from an event  on any professional tour for cheating and till this day, Mr. Reed has only had one rules infraction costing him two strokes in an unofficial event in his entire 11 years as a professional golfer (this infraction is discussed in the paragraph below). Mr. Reed is a consummate professional and his record clearly indicates no previous "history of doing these

things."  Evidence will show many prominent golfers have had multiple rules infractions in one season, some have even had multiple infractions in one tournament and were not once ever called a cheater, habitual cheater, or maliciously defamed on the road to a landslide victory of 5 shots at one of the toughest courses in golf, Torrey Pines. Golf Channel used Mr. Reed to create and manufacture a controversy for corporate gain and profit, something they have done to Mr. Reed for the last 7 years.

87.    *Third*, Hack repeats Bacon's defamatory message, saying:

**So now we have to lean on the fact that Patrick Reed does have a history. I go back to 2019 in the Bahamas, the Par 5, 11th hole where he, you know, has the brushing away of the sand; and then later says, "Well, it's my word against their word." And he says that "When I get in the sand" -- he says, "I'm afraid of getting close to the cup hole." That's his direct quote. "I'm afraid." "Every time I get in the bunker, I'm scared to even get my club close to it." He's close to it, Shane Bacon. He's not just close to it. He's  sweeping it away. When you tell me that high-level players can tell me the difference between two clubs that weigh a .01 ounce difference. He's not feeling that? So we already have this situation. And we have  the smoking mirrors about his time in Georgia where he was kicked off of the team and had to transfer to Augusta State. So he does have a history and now we have another situation.**

88.    These statements are highly false, malicious, and defamatory, at a minimum by implication, because Hack is trying to portray Mr. Reed as a habitual cheater. However, with regard to the 2019 Hero World Challenge in the Bahamas, what the taped video of this matter showed was an unintentional error by Mr. Reed and he was not even in a sand trap but a waste area. In waste areas, you are allowed to ground your club, in a bunker or a "sand-trap" you are not allowed to ground your club. In the rules of golf, there is a clear distinction. The PGA Tour never even questioned Mr. Reed's intent, they only brought in to question whether sand behind the ball was moved prior to hitting his third shot. If the PGA Tour rules official questioned his intent and felt that he had intentionally moved sand, he would have been disqualified, not been given a two-stroke penalty for a rules infraction. Further discovery will prove that Golf Channel created this

manufactured controversy for corporate gain and profit, at Mr. Reed's expense and reputational harm. Thus, there was never any finding of misconduct or cheating. This exculpatory information was intentionally omitted by Defendant Hack. And, even worse, Hack implies that Mr. Reed was kicked off the Georgia golf team for cheating, which is completely false, as there have been written statements aired and published on Golf Channel's networks from Mr. Reed's Head Coaches at the University of Georgia and Augusta State University in which both state that they were unaware of any evidence or accusations of cheating by Mr. Reed and that Mr. Reed was not kicked off the team at the University of Georgia for cheating. Defendant Hack's knowledge and reckless disregard of the truth and his failure to reveal this exculpatory information is actual malice.

### *Defamatory Publications #6 – Chamblee Twitter*

89.    In a widely published statement on Twitter, following the denial of a motion for temporary restraining order sought by LIV against the PGA Tour, on or about August 10, 2022, Defendant Chamblee again viciously defamed Mr. Reed and other LIV golfers, stating: "**Golf won today. Murderers lost**." Consistent with his prior statements of and concerning Mr. Reed on Golf Channel and elsewhere, Defendant Chamblee defamed Mr. Reed as a "murderer" simply because he now plays on the LIV Golf Tour.

90.    Chamblee doubled down on and compounded this defamatory statement of and concerning Mr. Reed in a tweet on or around June 26, 2022 saying, "…either way, whether the money is against or in addition to guarantees **its still blood money and you're still complicit in sportswashing**."

91.    Then, on September 2, 2022, Chamblee tweeted, "**[t]hese thugs are directed by the people who fund LIV golf**…but LIV will pretend this video and so many others depicting human rights atrocities don't exist, but will happily post video of a golf event in Boston meant **to**

**sportswash these atrocities**.” This is again false, malicious, and defamatory because he directly calls Mr. Reed (and other LIV players) a “thug” simply because he plays golf for LIV. Chamblee also falsely raises the implication that Mr. Reed is complicit in “sportswashing” human rights atrocities.

92.     On September 13, 2022, Chamblee tweeted, “[b]y defectors I mean those who have turned their backs on the meritocracy of professional gol**f. I mean those who have sold their independence to a murderous dictator and those who have sued their fellow professionals so they can benefit from the tours they are trying to ruin**.” This is false, malicious, and defamatory because Mr. Reed and the other LIV players did not sell their independence to a murderous dictator. Mr. Reed is also not trying to ruin the PGA Tour and DP World Tour. He is simply playing golf somewhere else.

93.     On August 28, 2022, Chamblee tweeted, “No. Wrong. But when they murdered, butchered and dismembered a dissenting journalists [sic] they began to care**. Those same people behind that murder run this tour**.” This statement is false, malicious, and defamatory because Chamblee implies in a manner of and concerning Mr. Reed that Mr. Reed is complicit in the murder of dissenting journalists. He is not. He just plays golf.

94.     On August 28, 2022, Chamblee tweeted “[t]he IOC decides where the Olympics go…and there is a big difference between doing business in a country and **directly for a murderous regime as LIV golfers are**.” This statement is false, malicious, and defamatory because Chamblee implies of and concerning Mr. Reed  that Mr. Reed has chosen to work directly for a “murderous regime.” This is false. Mr. Reed works for LIV golf, which is a professional golf league simply financed by a corporate entity, the Saudi PIF, which was invested in a myriad of American businesses, including Disney,  Mr. Reed has never murdered anyone.

95.     On August 30, 2022, Chamblee tweeted "I can understand [Mohammed bin Salman Al Saud's] regime wanting to become more than a petro[l] country & corporate interest to serve that part of the world. **I can't understand an individual working for him**." This statement is false, malicious, and defamatory because Chamblee implies that Mr. Reed and Mr. Reed and other LIV players have chosen to work directly for a Mohammed bin Salman Al Saud's regime This is false. Mr. Reed works for LIV golf, which is a professional golf league.

96.     On September 2, 2022, Chamblee tweeted **"LIV golf is about hiding [the Saudi Arabian regime's] human atrocities**." This statement is false, malicious, and defamatory because Chamblee implies of and concerning Mr. Reed that Mr. Reed is complicit in hiding human atrocities. Again, Mr. Reed just plays golf. He has never been complicit in hiding human atrocities, nor is it even possible to hide human atrocities through golf. The two are unrelated.

97.     On August 28, 2022, Chamblee tweeted "**[t]he criticism of LIV defectors is not that they are doing it for the money, that is easily understood, what is not so easily understood is why they would directly work for a regime that has such a reprehensible record on human rights**." This statement is false, malicious, and defamatory because Defendant Chamblee's publication of and concerning Mr. Reed implies that Mr. Reed has chosen to work directly for MBS's regime This is false. Mr. Reed plays for LIV golf, which is a professional golf league.

98.     On September 15, 2022, Chamblee tweeted "**[t]he sportswashing paid to turn a blind eye to atrocities**, the blight of LIV." This is again false, malicious, and defamatory because it falsely raises the implication that of and concerning Mr. Reed he is complicit in "sportswashing" human rights atrocities.

### _Defamatory Publication # 7 – Eamon Lynch Articles_

99.     Defendant Lynch, also a golf analyst on Golf Channel, acting in concert as a joint tortfeasors with his co-Defendants, and in particular Golfweek and Gannett, to maliciously defame LIV players such as Mr. Reed, wrote an article titled *Lynch: PGA Tour's war with LIV Golf enters 'Return of the Jedi' phase*[11] that was published on August 24, 2022 and which contained numerous false, malicious, and defamatory statements of and concerning Mr. Reed.

100.     This article was published on Defendant Golfweek's website. Defendant Golfweek is owned in whole by Defendant Gannett.

101.     These false, malicious, and defamatory statements include, but are not limited to 1) accusing LIV, and its golfers, prominently including Mr. Reed, as being the **"evil empire's…Death Star,"** (2) accusing Mr. Reed and other LIV golfers of "**opt[ing] to cut and run for Saudi money**," and (3) publishing that Mr. Reed and other LIV golfers had endured "**reputational harm that comes with taking guaranteed cash to sportswash Saudi atrociti**es."

102.     On November 10, 2022, Defendant Lynch doubled down on and compounded these false, malicious, and defamatory statements in an article published on Golfweek, owned by Gannett, titled "*LIV Golf's problems aren't limited to Greg Norman's Incompetence. Replacing him won't solve them*."[12]

103.     Lynch published (1) "Team golf is a tough sell, but moreso when the product is lousy and **the association with a merciless regime too toxic for commercial sponsors**", and (2) "Whatever divisions need to be bridged in golf, whatever personal relationships must be healed,

---

[11] Eamon Lynch*, Lynch: PGA Tour's war with LIV Golf enters 'Return of the Jedi' phase*, Aug. 24, 2022, Golfweek, available at: https://golfweek.usatoday.com/2022/08/24/lynch-pga-tour-news-liv-golf-leverage/

[12] Eamon Lynch*, LIV Golf's problems aren't limited to Greg Norman's Incompetence. Replacing him won't solve them."* Nov. 10, 2022, Golfweek, available at:
https://golfweek.usatoday.com/2022/11/10/eamon-lynch-problems-liv-golf-greater-greg-norman-incompetence/

**doing so cannot involve offering the sport wholesale as a life raft for sportswashing ambitions in Riyadh. No amount of investment by the Saudi Arabian regime can be rendered respectable or accepted without dire reputational consequences for the entire sport. Golf cannot choose to host a cancer and expect to remain healthy.**"

104.    These statements are all false, malicious, and defamatory, as set forth above, as they are the same "talking points" from which Chamblee and Golf Channel have already maliciously defamed Mr. Reed.

105.    In addition to being an employee and contributor to Golfweek, Lynch not coincidentally is an employee of and contributor to Golf Channel, and co-hosts "Golf Today" on Golf Channel.

106.    Thus, Lynch was acting in concert as joint tortfeasors with and at the direction of his co-Defendants.

### *Defamatory Publication #8 – Chamblee on Golf Channel September 20, 2022*

107.    On or about September 20, 2022, Defendant Chamblee appeared on Golf Channel to "discuss" whether LIV golfers should receive OWGR world ranking points. During this appearance, he made numerous further malicious and defamatory attacks on Mr. Reed and other golfers signed to LIV.[13]

108.    First, Defendant Chamblee publishes, "**They [the OWGR] would not like to see a tour funded by a government with such a discriminatory practice by that government. This would be at least in my view akin to allowing – at the time it was called the South African tour under apartheid – tournaments played there to accumulate world ranking points**."

---

[13] *Should LIV Golf get world ranking points?*, Sep. 20, 2022, YouTube, available at: https://www.youtube.com/watch?v=olI_xayeEBE

109.    This is completely false, malicious, and defamatory because it creates the implication that Mr. Reed and other golfers signed to LIV are complicit and "in bed" with a government that has committed human rights violations and atrocities on the scale of South African apartheid. This is completely false. Mr. Reed simply plays golf for LIV.

110.    *Second*, Chamblee repeatedly publishes the statement that Mr. Reed, and other LIV golfers are "**bought**," creating the false implication that Mr. Reed and other LIV golfers are bribed and thus choose LIV solely for the money. As set forth above, this is flat out untrue, as there are numerous other reasons to sign with LIV, such as lifestyle or simple personal preference.

### *Defamatory Publication #9 – Cameron Jourdan on Golfweek and Gannett*

111.    Even now Defendants Golfweek and Gannett are continuing to use even this litigation as another tool to maliciously defame Mr. Reed and those surrounding him, in part by misrepresenting this Court's actions.

112.    In a November 18, 2022 article written and published by Cameron Jourdan on Defendant Golfweek, which is owned by Defendant Gannett, they intentionally misrepresent this Court's order of November 18, 2022, ECF No. 27, directing Mr. Reed to file an amended complaint. Instead, Defendant Golfweek and Gannett published that this entire lawsuit was dismissed. This article is titled, "**LIV Golf: Patrick Reed's $750 million defamation lawsuit dismissed in Florida court**."

113.    In the article, Jourdan writes, **"Patrick Reed's $750 million defamation lawsuit, which was originally filed Aug. 16 in Texas and eventually refiled in Florida the next month, has been dismissed**."

114.    This was clearly done in order to falsely paint Mr. Reed as someone who files frivolous lawsuits in order to improperly influence public opinion with false statements.[14] The same article was also republished in numerous other publications - multiplying the harm done exponentially – including but not limited to the Florida Times-Union in this district, which is not coincidentally owned by Defendant Gannett.[15]

115.    Defendants Golfweek and Gannett are also using their agents and contacts in the golf reporting world to continue to defame Mr. Reed, including by having Joel Beall, a reporter of Golf Digest also completely misrepresent this Court's order of November 18, 2022, ECF No. 27, in the same fashion, namely that this lawsuit had been dismissed.[16] It is remarkable that Defendants in this lawsuit would misrepresent this Court's order to defame Mr. Reed, compounding the damage they have already done.

### *Defamatory Publication #10 – Helfand in the New Yorker*

---

[14] Cameron Jourdan, *LIV Golf: Patrick Reed's $750 million defamation lawsuit dismissed in Florida court*, Golfweek, Nov. 18, 2022, available at: https://golfweek.usatoday.com/2022/11/18/liv-golf-news-patrick-reed-defamation-lawsuit-dismissed-750-million-florida-court/

[15] Cameron Jourdan, *Patrick Reed's lawsuit against members of golf media dismissed in Florida Middle District Court*, Florida Times Union, Nov. 19, 2022, available at: https://www.jacksonville.com/story/sports/golf/2022/11/19/patrick-reeds-lawsuit-dismissed-florida-middle-district-court/10737306002/

[16] Joel Beall, *Judge dismisses Patrick Reed's complaint against Brandel Chamblee*, Golf Digest, Nov 18, 2022, available at: https://www.golfdigest.com/story/patrick-reed-750-million-lawsuit-dismissed.

116.    On or about October 17, 2022 Defendant Helfand published in the New Yorker a piece titled "*Will the Saudis and Donald Trump Save Golf – Or Wreck It?* "which make a false, malicious, and defamatory statement of and concerning Mr. Reed.[17]

117.    Specifically, this article "quotes" from an anonymous source, "**LIV needs a public investment fund to sportswash its association with Patrick Reed**."

118.    It is telling that Helfand did not credit the purported "source" which made this statement, strongly evidencing the probability that Helfand simply made this fake "quote" up himself to defame Mr. Reed.

119.    This defamatory statement further evidences the incredible harm done by Defendant Chamblee's campaign to destroy Mr. Reed by falsely portraying him and LIV as "in bed" with MBS and the PIF, as other publications are constantly using it as fuel to continue to destroy Mr. Reed's reputation and financial well-being for him, his colleagues, and his family.

## FACTS PERTAINING TO DEFENDANTS' CONTINUED MODUS OPERANDI AND ILLEGAL COURSE OF CONDUCT CONSTITUTING  INDICIA OF ACTUAL AND CONSTITUTIONAL MALICE

120.    Chamblee and Golf Channel have indeed engaged in a longstanding pattern and practice and continuing course of conduct of maliciously defaming Mr. Reed, with a prominent example occurring in 2019 at the Hero World Challenge, with going so far as to publicly state on Golf Channel that "to defend what Patrick Reed did is defending cheating."

121.    In this same segment, Chamblee, appearing on the Golf Channel, also published:

- "The specter of having in their midst somebody who so flagrantly broke the rules; look, they made a deal with the devil when they put Patrick Reed on this team."

---

[17] Zach Helfand, *Will the Saudis and Donald Trump Save Golf – Or Wreck It?*, Oct. 17, 2022, The New Yorker, available at: https://www.newyorker.com/magazine/2022/10/24/will-the-saudis-and-donald-trump-save-golf-or-wreck-it

- "They thought that whatever darkness he would bring to the team would be offset by his competitive fire.  When was the last time a teammate stabbed everybody in the back as soon as the event was over?  It was the last time there was a team event, and it was Patrick Reed."

-  "This was flagrant.  No way, no camera angle you could look at.  Anybody in the world of golf who watched this, it was repugnant video to anybody in the world of golf. …  As far back as this game goes, at its inception, is that you do not improve your lie.  It's not a new rule.  It's been a long time, I don't care what camera angle, he will have known he's improving his lie."

- "The fact that he thinks there is no intent.  I think his ego is as big as Jupiter.  Ego monsters are irritated by facts, but they're not moved aside from them.  They think their ignorance of the facts, or their version, of what happened is greater than the truth."

- "This is going to follow him around like the video of Nixon saying 'I'm not a crook.'"

122.    However, what the video of this matter showed was an unintentional error by Mr. Reed, which the PGA Tour also believed to be the case as evidenced by the fact the Mr. Reed was only assessed a two-stroke penalty and not disqualified from the tournament.

123.    In the same segment, Chamblee, appearing on the Golf Channel went even further and knowingly and/or recklessly falsely alleged that Mr. Reed engaged in improper and dishonest conduct in the past:

> The echoes of his past which he hoped that the media members wouldn't pen or use a keyboard, he just did with a wrecking ball.  He did that.  And his teammates going back to the University of Georgia.  His coach going back to the University of Georgia.  Augusta.  They all talked about how they didn't view him as a good teammate, and that he played loose and fast with the rules.

124.    This statement was clearly both false and malicious, as Chamblee and Golf Channel had access to and knew of public sworn statements by Mr. Reed's college coach, Josh Gregory, and USA golf team coach, Chris Haack, from 2015 that they were completely unaware of even a modicum of evidence that Mr. Reed had cheated.

125.    This even forced Mr. Reed's counsel at the time to issue a cease-and-desist letter to Chamblee to warn him to stop maliciously defaming Mr. Reed—a message that Chamblee and his

conspirators at Golf Channel and the PGA Tour and DP World Tour have clearly ignored to their peril.

126.   This is because Chamblee and Golf Channel's reach is enormous, and every time Chamblee does one of his defamatory "hot takes" for attention, notoriety, and profit, it is republished by many of the largest publications in the world.

127.   Indeed, even a quick Google search of Chamblee's history of making defamatory statements of and concerning Mr. Reed results in pages and pages of republications from some of the largest names not only in sports—as just a few examples, Sports Illustrated, ESPN, Bleacher Report—but also in traditional mainstream news media, such as The Washington Post, Reuters, Newsweek, CNN, and Fox News. This is notwithstanding the fact that nearly every single golf-centered website also republishes these statements, thereby collectively resulting in millions upon millions of people who view Chamblee's and Golf Channel's false, malicious, and defamatory statements each time that they are made.

128.   For instance, as reported by Fox Sports, US Senator Dick Durban of Illinois, a partisan leftist Democrat who may have received campaign contributions or other perks from persons associated with the PGA Tour or the PGA Tour itself, "gratuitously" tweeted a republication of the Defendants' defamatory message, "This weekend, a golf glove will try and cover a blood-stained hand as the LIV golf tournament comes to Chicago in the Saudi government's continued, desperate attempt to clean up its image.[18]"

---

[18] *Rising golf star Will Zalatoris drops $10m LIV truth bomb as Bryson floats bold golf 'Super Bowl' idea*, Fox Sports, Sep. 17, 2022, available at: https://www.foxsports.com.au/golf/liv-golf-2022-chicago-invitational-scoreboard-results-prize-money-will-zalatoris-bryson-dechambeau/news-story/f74760ef86a1bc42673e26a93ec43cef

129.     Chamblee's exploitative *modus operandi* was shown as early as in 2013, when he also outrageously accused Tiger Woods of cheating, without any basis in fact to do so.[19] In a scathing article in the Bleacher Report, Chamblee was eviscerated for his ego-driven, attention hungry conduct by Woods' agent and Chamblee's outrageous statements even precipitated threat of legal action from Mr. Woods' camp.[20]

130.     As a direct and proximate result of the defamation and other illegal acts set forth below and herein, Defendants have maliciously caused a hostile workplace environment for Mr. Reed and also endangering and harming his colleagues and family. This hostile workplace, which has been made to occur in the tournaments and events which Mr. Reed attends and participates in to earn a living for himself and his family, has been manifested, only in part, by induced personal attacks on him, his colleagues and his family by persons attending these tournaments and events.

131.     As indicia of the damage caused, these induced and continuing personal attacks include, but are not limited to: "Now on the tee the excavator!," "You suck!," "You f….. ing suck!," "You jackass!," "You coward!," "Shovel!," "Why don't you dig a grave and bury yourself in it!," "You piece of shit!," "No one likes you!," Everyone hates you Reed!," "Good luck digging yourself out of this one!," "Where are your parents coward?!," "You cheater!," "Cheat!," "Everyone hates you cheater!," "You're going to miss this you cheater!," "You cheat in college and on tour and you're a piece of shit!," "Beat the cheater's ass!," "Sorry Webb for having to play with the cheat! Who did you piss off?!," "Why don't you introduce your children to their

---

[19] Richard Leivenberg, *Is Brandel Chamblee Labeling Tiger Woods a Cheater Fair or Foul?*, Bleacher Report, Oct. 19, 2013, available at: https://bleacherreport.com/articles/1817394-is-brandel-chamblee-labeling-tiger-woods-a-cheater-fair-or-foul

[20] Matt Yoder*, Tiger Woods camp threatens lawsuit against Golf Channel's Brandel Chamblee*, Awful Announcing, Oct. 22, 2013, available at: http://amp.awfulannouncing.com/2013/tiger-woods-camp-threatens-lawsuit-against-golf-channel-s-brandel-chamblee.html

grandparents you ungrateful bitch?!"  This is just a sampling of what Defendants maliciously and intentionally caused and furthered with actual malice. These personal attacks occur frequently while Mr. Reed is actively preparing to make his golf shot, or during the golf shot, much less thereafter as he is walking to his next golf shot, as well as lining up and making putts on the green, which putts require a high degree of concentration.

132.    This abuse has gotten so bad that Mr. Reed is forced to use security guards to protect himself and his family when in public and at LIV Golf Tournaments, where he is assigned two professional security guards. Importantly, at the recent LIV event in Doral, Florida on October 28-30, 2022, play was stopped for a period of time due to a bomb threat.

133.    Pursuant to Fla. Stat. § 770.01, the undersigned counsel has demanded correction or retraction from the Defendants at least five (5) days to the filing of this Complaint, and Defendants have arrogantly refused to do so, further ratifying and condoning the defamatory statements set forth herein, further evidencing actual malice.

## VI.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION
#### *Defamation*
#### *Defendant Chamblee*

134.    Defendant Chamblee, acting together with his co-Defendants, acting in concert as joint tortfeasors, jointly and severally, and individually, have defamed Mr. Reed by knowingly, intentionally, willfully, recklessly, grossly negligently, and/or negligently publishing statements of and concerning the Plaintiff which they knew or should have known to be false and misleading.

135.    These statements, published on Horace Langley's podcast, Golf Channel, Sky Sports News and Twitter, include but are not limited to:

<u>June 14, 2022 – Horace Langley Podcast</u>

36

**So if they're aligning themselves with a tyrannical, murderous leader**… look if you if you look at who MBS is… centralizing power, committing all these atrocities, you look at what he's doing to the citizens of his… of his country ask yourself I mean would you have played for Stalin would you have played for Hitler would you have played for Mao would you play for Pol Pot," [Froggy] "would you have played for Putin?" [Chamblee in agreement] "would you have played for Putin… which… and this who this guy is. He settles disputes with bonesaws."

I think there's a reason for that…**they're destroying the professional game** they were they been put in the Hall of Fame because of their accomplishments and because of their legacy well **they've tainted their legacy in an irreparable way** so I think both of them should be kicked out of the Hall of Fame I really do…

Mr. Reed is "**over there purely playing for blood money**."

<u>February 5, 2022 – Chamblee Article on Golf Channel</u>

[n]ow he has continued his subterfuge by saying the PGA Tour could end any threat, **presumably from the Saudi blood money funding a proposed Super Golf League,** by just handing back the media rights to the players

Mr. Reed's money is "**coming from the wrong place**" and that its "**good [PGA Tour] versus evil [Mr. Reed and LIV] …evil usually fails. So, it will fail.**"

<u>June 10, 2022 – Chamblee on Sky Sports News</u>

[t]his is one of the saddest days in the history of golf. Watching these players come together for money and show to the world…**they are showing us that they are the greediest, most self-serving, self-interesting, willfully blind players in the world of golf today**.

[s]o when I hear these players say that they are 'growing the game'… it makes me want to puke. **They're destroying the game. And they are destroying their reputations.**

<u>February 1, 2021 – Chamblee on Golf Channel</u>

**I either messaged or talked to 15 to 20 current and past tour players, some of them Hall of Fame members, over the past 24 hours and not a single player is in defense of what Patrick Reed did**.

**violated that [unwritten] code in so many ways that even the rules officials themselves were sort of stammering as to how to address it.**

In the same way that there is a distinction between law and morality, there is a mark distinction, in this case, between what he was legally allowed to do and what he ethically appeared to be doing.

Ask yourself this: if everybody in the field were to conduct themselves around a golf ball in this manner, would it be good for the game of golf? It would not be. It would call into question every single movement or drop that every single player would be making. It would cause an uproar on the PGA Tour.

Defendant Chamblee's Twitter

August 10, 2022: **Golf won today. Murderers lost**.

June 26, 2022: …either way, whether the money is against or in addition to guarantees **its still blood money and you're still complicit in sportswashing.**

September 2, 2022: **[t]hese thugs are directed by the people who fund LIV golf**…but LIV will pretend this video and so many others depicting human rights atrocities don't exist, but will happily post video of a golf event in Boston meant **to sportswash these atrocities**.

September 13, 2022: [b]y defectors **I mean those who have turned their backs on the meritocracy of professional golf. I mean those who have sold their independence to a murderous dictator and those who have sued their fellow professionals so they can benefit from the tours they are trying to ruin**.

August 28, 2022: No. Wrong. But when they murdered, butchered and dismembered a dissenting journalists [sic] they began to care. **Those same people behind that murder run this tour**.

August 28, 2022: [t]he IOC decides where the Olympics go…and there is a big difference between doing business in a country and **directly for a murderous regime as LIV golfers are**.

August 30, 2022: I can understand [Mohammed bin Salman Al Saud's] regime wanting to become more than a petro[l] country & corporate interest to serve that part of the world. **I can't understand an individual working for him**.

September 2, 2022: **LIV golf is about hiding [the Saudi Arabia regime's] human atrocities**.

August 28, 2022: [t]**he criticism of LIV defectors is not that they are doing it for the money, that is easily understood, what is not so easily understood is why they would directly work for a regime that has such a reprehensible record on human rights**.

<u>September 15, 2022</u>**: [t]he sportswashing paid to turn a blind eye to atrocities, the blight of LIV**.

<u>September 20, 2022- Chamblee on Golf Channel</u>

**They would not like to see a tour funded by a government with such a discriminatory practice by that government. This would be at least in my view akin to allowing – at the time it was called the South African tour under apartheid – tournaments played there to accumulate world ranking points**.

**Mr. Reed was "bought" by LIV**.

136.    Defendant Chamblee's defamatory publications are not privileged in any way or manner.

137.    The false, defamatory and misleading publications of and concerning Mr. Reed were widely published and the falsity of the statements caused injury to Mr. Reed.

138.    Defendant Chamblee acted with actual malice because he knew or had reason to know that the publications were false and misleading, and/or at a minimum acted with a reckless disregard for the truth.

139.    These false, malicious, and defamatory statements have caused irreparable harm to Mr. Reed, his goodwill and reputation and financially in his trade and profession as a professional golfer, as a businessman, and personally.

140.    While these statements in particular are clearly defamatory, the publications in general and as a whole are defamatory as well, since "a publication must be considered in its totality. 'The court must consider all the words used, not merely a particular phrase or sentence.'"

*Byrd v. Hustler Magazine*, 433 So. 2d 593, 595 (Fla. Dist. Ct. App. 1983).

<u>**SECOND CAUSE OF ACTION**</u>
***Defamation by Implication***
***Defendant Chamblee***

141.   Defendant Chamblee, acting together with his co-Defendants, acting in concert as joint tortfeasors, jointly and severally, and individually, have defamed Mr. Reed by knowingly, intentionally, willfully, recklessly, grossly negligently, and/or negligently publishing statements of and concerning Mr. Reed which they knew or should have known to be false and misleading.

142.   These statements, published on Horace Langley's podcast, Golf Channel, Sky Sports News and Twitter, include, but are not limited to:

<u>June 14, 2022 – Horace Langley Podcast</u>

**So if they're aligning themselves with a tyrannical, murderous leader**… look if you if you look at who MBS is… centralizing power, committing all these atrocities, you look at what he's doing to the citizens of his… of his country ask yourself I mean would you have played for Stalin would you have played for Hitler would you have played for Mao would you play for Pol Pot," [Froggy] "would you have played for Putin?" [Chamblee in agreement] "would you have played for Putin… which… and this who this guy is. He settles disputes with bonesaws.

I think there's a reason for that…**they're destroying the professional game** they were they been put in the Hall of Fame because of their accomplishments and because of their legacy well **they've tainted their legacy in an irreparable way** so I think both of them should be kicked out of the Hall of Fame I really do…

Mr. Reed is "**over there purely playing for blood money**."

<u>February 5, 2022 – Chamblee Article on Golf Channel</u>

[n]ow he has continued his subterfuge by saying the PGA Tour could end any threat, **presumably from the Saudi blood money funding a proposed Super Golf League**, by just handing back the media rights to the players

Mr. Reed's money is "**coming from the wrong place**" and that its "**good [PGA Tour] versus evil [Mr. Reed and LIV] …evil usually fails. So, it will fail.**"

<u>June 10, 2022 – Chamblee on Sky Sports News</u>

[t]his is one of the saddest days in the history of golf. Watching these players come together for money and show to the world…**they are showing us that they are the greediest, most self-serving, self-interesting, willfully blind players in the world of golf today**.

40

[s]o when I hear these players say that they are 'growing the game'… it makes me want to puke. **They're destroying the game. And they are destroying their reputations.**

February 1, 2021 – Chamblee on Golf Channel

**I either messaged or talked to 15 to 20 current and past tour players, some of them Hall of Fame members, over the past 24 hours and not a single player is in defense of what Patrick Reed did**.

**violated that [unwritten] code in so many ways that even the rules officials themselves were sort of stammering as to how to address it.**

**In the same way that there is a distinction between law and morality, there is a mark distinction, in this case, between what he was legally allowed to do and what he ethically appeared to be doing.**

**Ask yourself this: if everybody in the field were to conduct themselves around a golf ball in this manner, would it be good for the game of golf? It would not be. It would call into question every single movement or drop that every single player would be making. It would cause an uproar on the PGA Tour.**

Defendant Chamblee's Twitter

<u>August 10, 2022</u>: **Golf won today. Murderers lost**.

<u>June 26, 2022</u>: …either way, whether the money is against or in addition to guarantees **its still blood money and you're still complicit in sportswashing.**

<u>September 2, 2022</u>: **[t]hese thugs are directed by the people who fund LIV golf**…but LIV will pretend this video and so many others depicting human rights atrocities don't exist, but will happily post video of a golf event in Boston meant **to sportswash these atrocities**.

<u>September 13, 2022</u>: [b]y defectors **I mean those who have turned their backs on the meritocracy of professional golf. I mean those who have sold their independence to a murderous dictator and those who have sued their fellow professionals so they can benefit from the tours they are trying to ruin**.

<u>August 28, 2022</u>: No. Wrong. But when they murdered, butchered and dismembered a dissenting journalists [sic] they began to care. **Those same people behind that murder run this tour**.

<u>August 28, 2022</u>: [t]he IOC decides where the Olympics go…and there is a big difference between doing business in a country and **directly for a murderous regime as LIV golfers are**.

41

August 30, 2022: I can understand [Mohammed bin Salman Al Saud's] regime wanting to become more than a petro[l] country & corporate interest to serve that part of the world. **I can't understand an individual working for him**.

September 2, 2022: **LIV golf is about hiding [the Saudi Arabia regime's] human atrocities**.

August 28, 2022: **[t]he criticism of LIV defectors is not that they are doing it for the money, that is easily understood, what is not so easily understood is why they would directly work for a regime that has such a reprehensible record on human rights**.

September 15, 2022: **[t]he sportwashing paid to turn a blind eye to atrocities, the blight of LIV**.

September 20, 2022- Chamblee on Golf Channel

**They would not like to see a tour funded by a government with such a discriminatory practice by that government. This would be at least in my view akin to allowing – at the time it was called the South African tour under apartheid – tournaments played there to accumulate world ranking points**.

**Mr. Reed was "bought" by LIV**.

143.     Defendant Chamblee's defamatory publications of and concerning Mr. Reed are not privileged in any way or manner.

144.     Defendant Chamblee, acting together with his co-Defendants, acting in concert as joint tortfeasors, jointly and severally, and individually, published false statements of and concerning Mr. Reed and these statements were defamatory in that they created a false impression of Mr. Reed.

145.     Defendant Chamblee, acting together with his co-Defendants, acting in concert as joint tortfeasors, jointly and severally, and individually, juxtaposed a series of facts so as to imply a defamatory connection between them or, in the alternative, created a defamatory implication by omitting facts when describing the nature and sequence of events.

146.    A reasonable person would understand Defendant Chamblee's statements to impart the false innuendo, which would be highly offensive to a reasonable person.

147.    Defendant Chamblee, acting together with his co-Defendants, acting in concert as joint tortfeasors, jointly and severally, and individually, intended or endorsed the defamatory inferences that the published statements created, and these false, defamatory and misleading statements were made with actual malice.

148.    Defendant Chamblee acted with actual malice because he knew or had reason to know that the publications were false and misleading, and/or at a minimum acted with a reckless disregard for the truth.

149.    These false, malicious, and defamatory statements have caused irreparable harm to Mr. Reed, his goodwill and reputation and financially in his trade and profession as a professional golfer, as a businessman, and personally.

150.    While these statements in particular are clearly defamatory, the publications in general and as a whole are defamatory as well, since "a publication must be considered in its totality. 'The court must consider all the words used, not merely a particular phrase or sentence.'" *Byrd v. Hustler Magazine*, 433 So. 2d 593, 595 (Fla. Dist. Ct. App. 1983).

## THIRD CAUSE OF ACTION
### *Defamation Per Se*
### *Defendant Chamblee*

151.    Defendant Chamblee, acting together with his co-Defendants, acting in concert as joint tortfeasors, jointly and severally, and individually, have defamed Mr. Reed by knowingly, intentionally, willfully, recklessly, grossly negligently, and/or negligently publishing statements of and concerning Mr. Reed which they knew or should have known to be false and misleading.

152.    These statements, published on Horace Langley's podcast, Golf Channel, Sky Sports News and Twitter, include, but are not limited to:

<u>June 14, 2022 – Horace Langley Podcast</u>

**So if they're aligning themselves with a tyrannical, murderous leader**… look if you if you look at who MBS is… centralizing power, committing all these atrocities, you look at what he's doing to the citizens of his… of his country ask yourself I mean would you have played for Stalin would you have played for Hitler would you have played for Mao would you play for Pol Pot," [Froggy] "would you have played for Putin?" [Chamblee in agreement] "would you have played for Putin… which… and this who this guy is. He settles disputes with bonesaws.

I think there's a reason for that…**they're destroying the professional game** they were they been put in the Hall of Fame because of their accomplishments and because of their legacy well **they've tainted their legacy in an irreparable way** so I think both of them should be kicked out of the Hall of Fame I really do…

Mr. Reed is "**over there purely playing for blood money**."

<u>February 5, 2022 – Chamblee Article on Golf Channel</u>

[n]ow he has continued his subterfuge by saying the PGA Tour could end any threat, **presumably from the Saudi blood money funding a proposed Super Golf League**, by just handing back the media rights to the players

Mr. Reed's money is "**coming from the wrong place**" and that its "**good [PGA Tour] versus evil [Mr. Reed and LIV] …evil usually fails. So, it will fail.**"

<u>June 10, 2022 – Chamblee on Sky Sports News</u>

[t]his is one of the saddest days in the history of golf. Watching these players come together for money and show to the world…**they are showing us that they are the greediest, most self-serving, self-interesting, willfully blind players in the world of golf today**.

[s]o when I hear these players say that they are 'growing the game'… it makes me want to puke. **They're destroying the game. And they are destroying their reputations.**

<u>February 1, 2021 – Chamblee on Golf Channel</u>

**I either messaged or talked to 15 to 20 current and past tour players, some of them Hall of Fame members, over the past 24 hours and not a single player is in defense of what Patrick Reed did**.

violated that [unwritten] code in so many ways that even the rules officials themselves were sort of stammering as to how to address it.

In the same way that there is a distinction between law and morality, there is a mark distinction, in this case, between what he was legally allowed to do and what he ethically appeared to be doing.

Ask yourself this: if everybody in the field were to conduct themselves around a golf ball in this manner, would it be good for the game of golf? It would not be. It would call into question every single movement or drop that every single player would be making. It would cause an uproar on the PGA Tour.

<u>Defendant Chamblee's Twitter</u>

<u>August 10, 2022</u>: **Golf won today. Murderers lost**.

<u>June 26, 2022</u>: …either way, whether the money is against or in addition to guarantees **its still blood money and you're still complicit in sportswashing.**

<u>September 2, 2022</u>: **[t]hese thugs are directed by the people who fund LIV golf**…but LIV will pretend this video and so many others depicting human rights atrocities don't exist, but will happily post video of a golf event in Boston meant **to sportswash these atrocities**.

<u>September 13, 2022</u>: [b]y defectors **I mean those who have turned their backs on the meritocracy of professional golf. I mean those who have sold their independence to a murderous dictator and those who have sued their fellow professionals so they can benefit from the tours they are trying to ruin**.

<u>August 28, 2022</u>: No. Wrong. But when they murdered, butchered and dismembered a dissenting journalists [sic] they began to care. **Those same people behind that murder run this tour**.

<u>August 28, 2022</u>: [t]he IOC decides where the Olympics go…and there is a big difference between doing business in a country and **directly for a murderous regime as LIV golfers are**.

<u>August 30, 2022</u>: I can understand [Mohammed bin Salman Al Saud's] regime wanting to become more than a petro[l] country & corporate interest to serve that part of the world. **I can't understand an individual working for him**.

<u>September 2, 2022</u>: **LIV golf is about hiding [the Saudi Arabia regime's] human atrocities**.

<u>August 28, 2022</u>: [t]he criticism of LIV defectors is not that they are doing it for the money, that is easily understood, what is not so easily understood is why they would directly work for a regime that has such a reprehensible record on human rights.

<u>September 15, 2022</u>: [t]he sportwashing paid to turn a blind eye to atrocities, the blight of LIV.

<u>September 20, 2022- Chamblee on Golf Channel</u>

They would not like to see a tour funded by a government with such a discriminatory practice by that government. This would be at least in my view akin to allowing – at the time it was called the South African tour under apartheid – tournaments played there to accumulate world ranking points.

Mr. Reed was "bought" by LIV.

153.    Defendant Chamblee's defamatory publications are not privileged in any way or manner.

154.    The false, defamatory and misleading nature of Defendant Chamblee's publications of and concerning Plaintiff caused Mr. Reed ridicule, hatred, disgust and contempt in his trade and profession as a professional golfer.

155.    The false, defamatory and misleading publications were made with actual malice.

156.    Defendant Chamblee acted with actual malice because he knew or had reason to know that the publications were false and misleading, and/or at a minimum acted with a reckless disregard for the truth.

157.    These false, malicious, and defamatory statements have caused irreparable harm to Mr. Reed, his goodwill and reputation and financially in his trade and profession as a professional golfer, as a businessman, and personally.

158.    While these statements in particular are clearly defamatory, the publications in general and as a whole are defamatory as well, since "a publication must be considered in its

totality. 'The court must consider all the words used, not merely a particular phrase or sentence.'"

*Byrd v. Hustler Magazine*, 433 So. 2d 593, 595 (Fla. Dist. Ct. App. 1983).

## FOURTH CAUSE OF ACTION
### *Defamation*
### *Defendant Golf Channel*

159.   Defendant Golf Channel, acting together with its co-Defendants, acting in concert as joint tortfeasors, jointly and severally, and individually, have defamed Mr. Reed by knowingly, intentionally, willfully, recklessly, grossly negligently, and/or negligently publishing statements of and concerning the Plaintiff which they knew or should have known to be false and misleading.

160.   These statements made by Chamblee, Bacon, and Hack include, but are not limited to:

### June 14, 2022 – Horace Langley Podcast

**So if they're aligning themselves with a tyrannical, murderous leader**… look if you if you look at who MBS is… centralizing power, committing all these atrocities, you look at what he's doing to the citizens of his… of his country ask yourself I mean would you have played for Stalin would you have played for Hitler would you have played for Mao would you play for Pol Pot," [Froggy] "would you have played for Putin?" [Chamblee in agreement] "would you have played for Putin… which… and this who this guy is. He settles disputes with bonesaws.

I think there's a reason for that…**they're destroying the professional game** they were they been put in the Hall of Fame because of their accomplishments and because of their legacy well **they've tainted their legacy in an irreparable way** so I think both of them should be kicked out of the Hall of Fame I really do…

Mr. Reed is "**over there purely playing for blood money**."

### February 5, 2022 – Chamblee Article on Golf Channel

[n]ow he has continued his subterfuge by saying the PGA Tour could end any threat, **presumably from the Saudi blood money funding a proposed Super Golf League**, by just handing back the media rights to the players

Mr. Reed's money is "**coming from the wrong place**" and that its "**good [PGA Tour] versus evil [Mr. Reed and LIV] …evil usually fails. So, it will fail**."

<u>June 10, 2022 – Chamblee on Sky Sports News</u>

[t]his is one of the saddest days in the history of golf. Watching these players come together for money and show to the world…**they are showing us that they are the greediest, most self-serving, self-interesting, willfully blind players in the world of golf toda**y.

[s]o when I hear these players say that they are 'growing the game'… it makes me want to puke. **They're destroying the game. And they are destroying their reputations.**

<u>February 1, 2021 – Chamblee on Golf Channel</u>

**I either messaged or talked to 15 to 20 current and past tour players, some of them Hall of Fame members, over the past 24 hours and not a single player is in defense of what Patrick Reed did**.

**violated that [unwritten] code in so many ways that even the rules officials themselves were sort of stammering as to how to address it.**

**In the same way that there is a distinction between law and morality, there is a mark distinction, in this case, between what he was legally allowed to do and what he ethically appeared to be doing**

**Ask yourself this: if everybody in the field were to conduct themselves around a golf ball in this manner, would it be good for the game of golf? It would not be. It would call into question every single movement or drop that every single player would be making. It would cause an uproar on the PGA Tour.**

<u>January 31, 2021 – Hack and Bacon on Golf Channel</u>

**I'm just not comfortable with Patrick's behavior around the ball**. You know, I always thought that the golf ball -- you treat it like the Hope Diamond. You treat it like a Fabergé egg, especially when it comes to an unclear situation. **So right here we're seeing Patrick kind of hovering over where he says the ball was embedded and it's just hard to know what he's doing.** Like where is the official at this point? You know, we're supposed to take him at his word, but there's -- **there just seems to be smoke**.

**To me, this looks bad for Patrick Reed, a guy that has history of doing these things**.

**So now we have to lean on the fact that Patrick Reed does have a history. I go back to 2019 in the Bahamas, the Par 5, 11th hole where he, you know, has the brushing away of the sand; and then later says, "Well, it's my word against their word." And he says that "When I get in the sand" -- he says, "I'm afraid**

**of getting close to the cup hole." That's his direct quote. "I'm afraid." "Every time I get in the bunker, I'm scared to even get my club close to it." He's close to it, Shane Bacon. He's not just close to it. He's sweeping it away. When you tell me that high-level players can tell me the difference between two clubs that weigh a .01 ounce difference. He's not feeling that? So we already have this situation. And we have the smoking mirrors about his time in Georgia where he was kicked off of the team and had to transfer to Augusta State. So he does have a history and now we have another situation.**

<u>September 20, 2022 – Chamblee on Golf Channel</u>

**They would not like to see a tour funded by a government with such a discriminatory practice by that government. This would be at least in my view akin to allowing – at the time it was called the South African tour under apartheid – tournaments played there to accumulate world ranking points**.

Mr. Reed was "**bought**" by LIV.

161.    Defendant Golf Channel's defamatory publications of and concerning Mr. Reed are not privileged in any way or manner.

162.    The false, defamatory and misleading publications about Mr. Reed were widely published and the falsity of the statements caused injury to Mr. Reed.

163.    Defendant Golf Channel acted with actual malice because it knew or had reason to know that the publications were false and misleading, and/or at a minimum acted with a reckless disregard for the truth.

164.    These false, malicious, and defamatory statements have caused irreparable harm to Mr. Reed, his goodwill and reputation and financially in his trade and profession as a professional golfer, as a businessman, and personally.

165.    While these statements in particular are clearly defamatory, the publications in general and as a whole are defamatory as well, since "a publication must be considered in its totality. 'The court must consider all the words used, not merely a particular phrase or sentence.'" *Byrd v. Hustler Magazine*, 433 So. 2d 593, 595 (Fla. Dist. Ct. App. 1983).

**FIFTH CAUSE OF ACTION**
*Defamation by Implication*
*Defendant Golf Channel*

166.    Defendant Golf Channel, acting together with its co-Defendants, acting in concert

as joint tortfeasors, jointly and severally, and individually, have defamed Mr. Reed by knowingly,

intentionally, willfully, recklessly, grossly negligently, and/or negligently publishing statements

of and concerning the Plaintiff which they knew or should have known to be false and misleading.

167.    These statements made by Chamblee, Bacon, and Hack include, but are not limited

to:

<u>June 14, 2022 – Horace Langley Podcast</u>

**So if they're aligning themselves with a tyrannical, murderous leader**… look
if you if you look at who MBS is… centralizing power, committing all these
atrocities, you look at what he's doing to the citizens of his… of his country ask
yourself I mean would you have played for Stalin would you have played for Hitler
would you have played for Mao would you play for Pol Pot," [Froggy] "would you
have played for Putin?" [Chamblee in agreement] "would you have played for
Putin… which… and this who this guy is. He settles disputes with bonesaws.

I think there's a reason for that…**they're destroying the professional game** they
were they been put in the Hall of Fame because of their accomplishments and
because of their legacy well **they've tainted their legacy in an irreparable way**
so I think both of them should be kicked out of the Hall of Fame I really do…

Mr. Reed is "**over there purely playing for blood money**."

<u>February 5, 2022 – Chamblee Article on Golf Channel</u>

[n]ow he has continued his subterfuge by saying the PGA Tour could end any
threat, **presumably from the Saudi blood money funding a proposed Super Golf
League**, by just handing back the media rights to the players

Mr. Reed's money is "**coming from the wrong place**" and that its "**good [PGA
Tour] versus evil [Mr. Reed and LIV] …evil usually fails. So, it will fail**."

<u>June 10, 2022 – Chamblee on Sky Sports News</u>

[t]his is one of the saddest days in the history of golf. Watching these players come
together for money and show to the world…**they are showing us that they are the**

50

**greediest, most self-serving, self-interesting, willfully blind players in the world of golf toda**y.

[s]o when I hear these players say that they are 'growing the game'… it makes me want to puke. **They're destroying the game. And they are destroying their reputations.**

February 1, 2021 – Chamblee on Golf Channel

**I either messaged or talked to 15 to 20 current and past tour players, some of them Hall of Fame members, over the past 24 hours and not a single player is in defense of what Patrick Reed did**.

**violated that [unwritten] code in so many ways that even the rules officials themselves were sort of stammering as to how to address it.**

**In the same way that there is a distinction between law and morality, there is a mark distinction, in this case, between what he was legally allowed to do and what he ethically appeared to be doing**

**Ask yourself this: if everybody in the field were to conduct themselves around a golf ball in this manner, would it be good for the game of golf? It would not be. It would call into question every single movement or drop that every single player would be making. It would cause an uproar on the PGA Tour.**

January 31, 2021 – Hack and Bacon on Golf Channel

**I'm just not comfortable with Patrick's behavior around the ball**. You know, I always thought that the golf ball -- you treat it like the Hope Diamond. You treat it like a Fabergé egg, especially when it comes to an unclear situation. **So right here we're seeing Patrick kind of hovering over where he says the ball was embedded and it's just hard to know what he's doing.** Like where is the official at this point? You know, we're supposed to take him at his word, but there's -- **there just seems to be smoke**.

**To me, this looks bad for Patrick Reed, a guy that has history of doing these things**.

**So now we have to lean on the fact that Patrick Reed does have a history. I go back to 2019 in the Bahamas, the Par 5, 11th hole where he, you know, has the brushing away of the sand; and then later says, "Well, it's my word against their word." And he says that "When I get in the sand" -- he says, "I'm afraid of getting close to the cup hole." That's his direct quote. "I'm afraid." "Every time I get in the bunker, I'm scared to even get my club close to it." He's close to it, Shane Bacon. He's not just close to it. He's  sweeping it away. When you tell me that high-level players can tell me the difference between two clubs that**

**weigh a .01 ounce difference. He's not feeling that? So we already have this situation. And we have  the smoking mirrors about his time in Georgia where he was kicked off of the team and had to transfer to Augusta State. So he does have a history and now we have another situation.**

<u>September 20, 2022 – Chamblee on Golf Channel</u>

**They would not like to see a tour funded by a government with such a discriminatory practice by that government. This would be at least in my view akin to allowing – at the time it was called the South African tour under apartheid – tournaments played there to accumulate world ranking points**.

Mr. Reed was "**bought**" by LIV.

168.    Defendant Golf Channel's defamatory publications are not privileged in any way or manner.

169.    Defendant Golf Channel, acting together with its co-Defendants, acting in concert as joint tortfeasors, jointly and severally, and individually, published false statements of and concerning Mr. Reed and these statements were defamatory in that they created a false impression of Mr. Reed.

170.    Defendant Golf Channel, acting together with its co-Defendants, acting in concert as joint tortfeasors, jointly and severally, and individually, juxtaposed a series of facts so as to imply a defamatory connection between them or, in the alternative, created a defamatory implication by omitting facts when describing the nature and sequence of events.

171.    A reasonable person would understand Defendant Golf Channel's statements to impart the false innuendo, which would be highly offensive to a reasonable person.

172.    Defendant Golf Channel, acting together with its co-Defendants, acting in concert as joint tortfeasors, jointly and severally, and individually, intended or endorsed the defamatory inferences that the published statements created and these false, defamatory and misleading statements were made with actual malice.

173.    Defendant Golf Channel acted with actual malice because it knew or had reason to know that the publications were false and misleading, and/or at a minimum acted with a reckless disregard for the truth.

174.    These false, malicious, and defamatory statements have caused irreparable harm to Mr. Reed, his goodwill and reputation and financially in his trade and profession as a professional golfer, as a businessman, and personally.

175.    While these statements in particular are clearly defamatory, the publications in general and as a whole are defamatory as well, since "a publication must be considered in its totality. 'The court must consider all the words used, not merely a particular phrase or sentence.'" *Byrd v. Hustler Magazine*, 433 So. 2d 593, 595 (Fla. Dist. Ct. App. 1983).

**SIXTH CAUSE OF ACTION**
***Defamation Per Se***
***Defendant Golf Channel***

176.    Defendant Golf Channel, acting together with its co-Defendants, acting in concert as joint tortfeasors, jointly and severally, and individually, have defamed Mr. Reed by knowingly, intentionally, willfully, recklessly, grossly negligently, and/or negligently publishing statements of and concerning Mr. Reed which they knew or should have known to be false and misleading.

177.    These statements made by Chamblee, Bacon, and Hack include, but are not limited to:

June 14, 2022 – Horace Langley Podcast

**So if they're aligning themselves with a tyrannical, murderous leader**… look if you if you look at who MBS is… centralizing power, committing all these atrocities, you look at what he's doing to the citizens of his… of his country ask yourself I mean would you have played for Stalin would you have played for Hitler would you have played for Mao would you play for Pol Pot," [Froggy] "would you have played for Putin?" [Chamblee in agreement] "would you have played for Putin… which… and this who this guy is. He settles disputes with bonesaws.

53

I think there's a reason for that…**they're destroying the professional game** they were they been put in the Hall of Fame because of their accomplishments and because of their legacy well **they've tainted their legacy in an irreparable way** so I think both of them should be kicked out of the Hall of Fame I really do…

Mr. Reed is "**over there purely playing for blood money**."

<u>February 5, 2022 – Chamblee Article on Golf Channel</u>

[n]ow he has continued his subterfuge by saying the PGA Tour could end any threat, **presumably from the Saudi blood money funding a proposed Super Golf League**, by just handing back the media rights to the players

Mr. Reed's money is "**coming from the wrong place**" and that its "**good [PGA Tour] versus evil [Mr. Reed and LIV] …evil usually fails. So, it will fail**."

<u>June 10, 2022 – Chamblee on Sky Sports News</u>

[t]his is one of the saddest days in the history of golf. Watching these players come together for money and show to the world…**they are showing us that they are the greediest, most self-serving, self-interesting, willfully blind players in the world of golf toda**y.

[s]o when I hear these players say that they are 'growing the game'… it makes me want to puke. **They're destroying the game. And they are destroying their reputations.**

<u>February 1, 2021 – Chamblee on Golf Channel</u>

**I either messaged or talked to 15 to 20 current and past tour players, some of them Hall of Fame members, over the past 24 hours and not a single player is in defense of what Patrick Reed did**.

**violated that [unwritten] code in so many ways that even the rules officials themselves were sort of stammering as to how to address it.**

**In the same way that there is a distinction between law and morality, there is a mark distinction, in this case, between what he was legally allowed to do and what he ethically appeared to be doing**

**Ask yourself this: if everybody in the field were to conduct themselves around a golf ball in this manner, would it be good for the game of golf? It would not be. It would call into question every single movement or drop that every single player would be making. It would cause an uproar on the PGA Tour.**

<u>January 31, 2021 – Hack and Bacon on Golf Channel</u>

**I'm just not comfortable with Patrick's behavior around the ball**. You know, I always thought that the golf ball -- you treat it like the Hope Diamond. You treat it like a Fabergé egg, especially when it comes to an unclear situation. **So right here we're seeing Patrick kind of hovering over where he says the ball was embedded and it's just hard to know what he's doing.** Like where is the official at this point? You know, we're supposed to take him at his word, but there's -- **there just seems to be smoke.**

**To me, this looks bad for Patrick Reed, a guy that has history of doing these things**.

**So now we have to lean on the fact that Patrick Reed does have a history. I go back to 2019 in the Bahamas, the Par 5, 11th hole where he, you know, has the brushing away of the sand; and then later says, "Well, it's my word against their word." And he says that "When I get in the sand" -- he says, "I'm afraid of getting close to the cup hole." That's his direct quote. "I'm afraid." "Every time I get in the bunker, I'm scared to even get my club close to it." He's close to it, Shane Bacon. He's not just close to it. He's  sweeping it away. When you tell me that high-level players can tell me the difference between two clubs that weigh a .01 ounce difference. He's not feeling that? So we already have this situation. And we have  the smoking mirrors about his time in Georgia where he was kicked off of the team and had to transfer to Augusta State. So he does have a history and now we have another situation.**

<u>September 20, 2022 – Chamblee on Golf Channel</u>

**They would not like to see a tour funded by a government with such a discriminatory practice by that government. This would be at least in my view akin to allowing – at the time it was called the South African tour under apartheid – tournaments played there to accumulate world ranking points**.

Mr. Reed was "**bought**" by LIV.

178.    Defendant Golf Channel's defamatory publications are not privileged in any way or manner.

179.    The false, defamatory and misleading nature of Defendant Golf Channel's publications subjected Plaintiff to ridicule, hatred, disgust and contempt in his trade and profession as a professional golfer

180.    The false, defamatory and misleading publications were made with actual malice.

181.   Defendant Golf Channel acted with actual malice because it knew or had reason to know that the publications were false and misleading, and/or at a minimum acted with a reckless disregard for the truth.

182.   These false, malicious, and defamatory statements have caused irreparable harm to Mr. Reed, his goodwill and reputation and financially in his trade and profession as a professional golfer, as a businessman, and personally.

183.   While these statements in particular are clearly defamatory, the publications in general and as a whole are defamatory as well, since "a publication must be considered in its totality. 'The court must consider all the words used, not merely a particular phrase or sentence.'" *Byrd v. Hustler Magazine*, 433 So. 2d 593, 595 (Fla. Dist. Ct. App. 1983).

**SEVENTH CAUSE OF ACTION**
*Defamation*
*Defendant Hack*

184.   Defendant Hack, acting together in concert as joint tortfeasors with his co-Defendants, acting in concert as joint tortfeasors, jointly and severally, and individually, have defamed Mr. Reed by knowingly, intentionally, willfully, recklessly, grossly negligently, and/or negligently publishing statements of and concerning the Plaintiff which they knew or should have known to be false and misleading.

185.   These statements made on Golf Channel include, but are not limited to:

January 31, 2021 – Hack and Bacon on Golf Channel

**I'm just not comfortable with Patrick's behavior around the ball**. You know, I always thought that the golf ball -- you treat it like the Hope Diamond. You treat it like a Fabergé egg, especially when it comes to an unclear situation. **So right here we're seeing Patrick kind of hovering over where he says the ball was embedded and it's just hard to know what he's doing**. Like where is the official at this point? You know, we're supposed to take him at his word, but there's -- **there just seems to be smoke.**

56

**To me, this looks bad for Patrick Reed, a guy that has history of doing these things.**

**So now we have to lean on the fact that Patrick Reed does have a history. I go back to 2019 in the Bahamas, the Par 5, 11th hole where he, you know, has the brushing away of the sand; and then later says, "Well, it's my word against their word." And he says that "When I get in the sand" -- he says, "I'm afraid of getting close to the cup hole." That's his direct quote. "I'm afraid." "Every time I get in the bunker, I'm scared to even get my club close to it." He's close to it, Shane Bacon. He's not just close to it. He's  sweeping it away. When you tell me that high-level players can tell me the difference between two clubs that weigh a .01 ounce difference. He's not feeling that? So we already have this situation. And we have  the smoking mirrors about his time in Georgia where he was kicked off of the team and had to transfer to Augusta State. So he does have a history and now we have another situation**.

186.    Defendant Hack's defamatory publications are not privileged in any way or manner.

187.    To establish general defamation, a plaintiff need only show that a person or entity (1) published a false statement; (2) about another person; (3) to a third party; and (4) the falsity of the statement caused injury to the other person.

188.    The false, defamatory and misleading publications about Mr. Reed were widely published and the falsity of the statements caused injury to Mr. Reed.

189.    Defendant Hack  acted with actual malice because he knew or had reason to know that the publications were false and misleading, and/or at a minimum acted with a reckless disregard for the truth.

190.    These false, malicious, and defamatory statements have caused irreparable harm to Mr. Reed, his goodwill and reputation and financially in his trade and profession as a professional golfer, as a businessman, and personally.

191.    While these statements in particular are clearly defamatory, the publications in general and as a whole are defamatory as well, since "a publication must be considered in its

totality. 'The court must consider all the words used, not merely a particular phrase or sentence.'"

*Byrd v. Hustler Magazine*, 433 So. 2d 593, 595 (Fla. Dist. Ct. App. 1983).

**EIGHTH CAUSE OF ACTION**
***Defamation by Implication***
***Defendant Hack***

192.    Defendant Hack, acting together in concert as joint tortfeasors with his co-Defendants, acting in concert as joint tortfeasors, jointly and severally, and individually, have defamed Mr. Reed by knowingly, intentionally, willfully, recklessly, grossly negligently, and/or negligently publishing statements of and concerning the Plaintiff which they knew or should have known to be false and misleading.

193.    These statements made on Golf Channel include, but are not limited to:

January 31, 2021 – Hack and Bacon on Golf Channel

**I'm just not comfortable with Patrick's behavior around the ball**. You know, I always thought that the golf ball -- you treat it like the Hope Diamond. You treat it like a Fabergé egg, especially when it comes to an unclear situation. **So right here we're seeing Patrick kind of hovering over where he says the ball was embedded and it's just hard to know what he's doing**. Like where is the official at this point? You know, we're supposed to take him at his word, but there's -- **there just seems to be smoke.**

**To me, this looks bad for Patrick Reed, a guy that has history of doing these things.**

**So now we have to lean on the fact that Patrick Reed does have a history. I go back to 2019 in the Bahamas, the Par 5, 11th hole where he, you know, has the brushing away of the sand; and then later says, "Well, it's my word against their word." And he says that "When I get in the sand" -- he says, "I'm afraid of getting close to the cup hole." That's his direct quote. "I'm afraid." "Every time I get in the bunker, I'm scared to even get my club close to it." He's close to it, Shane Bacon. He's not just close to it. He's sweeping it away. When you tell me that high-level players can tell me the difference between two clubs that weigh a .01 ounce difference. He's not feeling that? So we already have this situation. And we have the smoking mirrors about his time in Georgia where he was kicked off of the team and had to transfer to Augusta State. So he does have a history and now we have another situation**.

194.     Defendant Hack's defamatory publications are not privileged in any way or manner.

195.     Defendant Hack, acting together in concert as joint tortfeasors with his co-Defendants, acting in concert as joint tortfeasors, jointly and severally, and individually, published false statements about Mr. Reed and these statements were defamatory in that they created a false impression of Mr. Reed.

196.     Defendant Hack, acting together in concert as joint tortfeasors with his co-Defendants, acting in concert as joint tortfeasors, jointly and severally, and individually, juxtaposed a series of facts so as to imply a defamatory connection between them or, in the alternative, created a defamatory implication by omitting facts when describing the nature and sequence of events.

197.     A reasonable person would understand Defendant Hack's statements to impart the false innuendo, which would be highly offensive to a reasonable person.

198.     Defendant Hack, acting together in concert as joint tortfeasors with his co-Defendants, acting in concert as joint tortfeasors, jointly and severally, and individually, intended or endorsed the defamatory inferences that the published statements created and these false, defamatory and misleading statements were made with actual malice.

199.     Defendant Hack acted with actual malice because he knew or had reason to know that the publications were false and misleading, and/or at a minimum acted with a reckless disregard for the truth.

200.     These false, malicious, and defamatory statements have caused irreparable harm to Mr. Reed, his goodwill and reputation and financially in his trade and profession as a professional golfer, as a businessman, and personally.

201.   While these statements in particular are clearly defamatory, the publications in general and as a whole are defamatory as well, since "a publication must be considered in its totality. 'The court must consider all the words used, not merely a particular phrase or sentence.'" *Byrd v. Hustler Magazine*, 433 So. 2d 593, 595 (Fla. Dist. Ct. App. 1983).

**NINTH CAUSE OF ACTION**
*Defamation Per Se*
*Defendant Hack*

202.   Defendant Hack, acting together in concert as joint tortfeasors with his co-Defendants, acting in concert as joint tortfeasors, jointly and severally, and individually, have defamed Mr. Reed by knowingly, intentionally, willfully, recklessly, grossly negligently, and/or negligently publishing statements of and concerning Mr. Reed which they knew or should have known to be false and misleading.

203.   These statements made on Golf Channel include, but are not limited to:

January 31, 2021 – Hack and Bacon on Golf Channel

**I'm just not comfortable with Patrick's behavior around the ball**. You know, I always thought that the golf ball -- you treat it like the Hope Diamond. You treat it like a Fabergé egg, especially when it comes to an unclear situation. **So right here we're seeing Patrick kind of hovering over where he says the ball was embedded and it's just hard to know what he's doing**. Like where is the official at this point? You know, we're supposed to take him at his word, but there's -- **there just seems to be smoke.**

**To me, this looks bad for Patrick Reed, a guy that has history of doing these things.**

**So now we have to lean on the fact that Patrick Reed does have a history. I go back to 2019 in the Bahamas, the Par 5, 11th hole where he, you know, has the brushing away of the sand; and then later says, "Well, it's my word against their word." And he says that "When I get in the sand" -- he says, "I'm afraid of getting close to the cup hole." That's his direct quote. "I'm afraid." "Every time I get in the bunker, I'm scared to even get my club close to it." He's close to it, Shane Bacon. He's not just close to it. He's sweeping it away. When you tell me that high-level players can tell me the difference between two clubs that weigh a .01 ounce difference. He's not feeling that? So we already have this**

**situation. And we have the smoking mirrors about his time in Georgia where he was kicked off of the team and had to transfer to Augusta State. So he does have a history and now we have another situation**.

204.   Defendant Hack's defamatory publications are not privileged in any way or manner.

205.   The false, defamatory and misleading nature of Defendant Hack's publications subjected Plaintiff to ridicule, hatred, disgust and contempt in his trade and profession as a professional golfer.

206.   The false, defamatory and misleading publications were made with actual malice.

207.   Defendant Hack acted with actual malice because he knew or had reason to know that the publications were false and misleading, and/or at a minimum acted with a reckless disregard for the truth.

208.   These false, malicious, and defamatory statements have caused irreparable harm to Mr. Reed, his goodwill and reputation and financially in his trade and profession as a professional golfer, as a businessman, and personally.

209.   While these statements in particular are clearly defamatory, the publications in general and as a whole are defamatory as well, since "a publication must be considered in its totality. 'The court must consider all the words used, not merely a particular phrase or sentence.'" *Byrd v. Hustler Magazine*, 433 So. 2d 593, 595 (Fla. Dist. Ct. App. 1983).

### TENTH CAUSE OF ACTION
*Defamation*
*Defendant Bacon*

210.   Defendant Bacon, acting together in concert as joint tortfeasors with his co-Defendants, acting in concert as joint tortfeasors, jointly and severally, and individually, have defamed Mr. Reed by knowingly, intentionally, willfully, recklessly, grossly negligently, and/or

negligently publishing statements of and concerning the Plaintiff which they knew or should have known to be false and misleading.

211.    These statements made on Golf Channel include, but are not limited to:

<u>January 31, 2021 – Hack and Bacon on Golf Channel</u>

**I'm just not comfortable with Patrick's behavior around the ball**. You know, I always thought that the golf ball -- you treat it like the Hope Diamond. You treat it like a Fabergé egg, especially when it comes to an unclear situation. **So right here we're seeing Patrick kind of hovering over where he says the ball was embedded and it's just hard to know what he's doing**. Like where is the official at this point? You know, we're supposed to take him at his word, but there's -- **there just seems to be smoke.**

**To me, this looks bad for Patrick Reed, a guy that has history of doing these things.**

**So now we have to lean on the fact that Patrick Reed does have a history. I go back to 2019 in the Bahamas, the Par 5, 11th hole where he, you know, has the brushing away of the sand; and then later says, "Well, it's my word against their word." And he says that "When I get in the sand" -- he says, "I'm afraid of getting close to the cup hole." That's his direct quote. "I'm afraid." "Every time I get in the bunker, I'm scared to even get my club close to it." He's close to it, Shane Bacon. He's not just close to it. He's  sweeping it away. When you tell me that high-level players can tell me the difference between two clubs that weigh a .01 ounce difference. He's not feeling that? So we already have this situation. And we have  the smoking mirrors about his time in Georgia where he was kicked off of the team and had to transfer to Augusta State. So he does have a history and now we have another situation**.

212.    Defendant Bacon's defamatory publications are not privileged in any way or manner.

213.    The false, defamatory and misleading publications about Mr. Reed were widely published and the falsity of the statements caused injury to Mr. Reed.

214.    Defendant Bacon acted with actual malice because he knew or had reason to know that the publications were false and misleading, and/or at a minimum acted with a reckless disregard for the truth.

215.     These false, malicious, and defamatory statements have caused irreparable harm to Mr. Reed, his goodwill and reputation and financially in his trade and profession as a professional golfer, as a businessman, and personally.

216.     While these statements in particular are clearly defamatory, the publications in general and as a whole are defamatory as well, since "a publication must be considered in its totality. 'The court must consider all the words used, not merely a particular phrase or sentence.'" *Byrd v. Hustler Magazine*, 433 So. 2d 593, 595 (Fla. Dist. Ct. App. 1983).

**ELEVENTH CAUSE OF ACTION**
***Defamation by Implication***
***Defendant Bacon***

217.     Defendant Bacon, acting together in concert as joint tortfeasors with his co-Defendants, acting in concert as joint tortfeasors, jointly and severally, and individually, have defamed Mr. Reed by knowingly, intentionally, willfully, recklessly, grossly negligently, and/or negligently publishing statements of and concerning the Plaintiff which they knew or should have known to be false and misleading.

218.     These statements made on Golf Channel include, but are not limited to:

<u>January 31, 2021 – Hack and Bacon on Golf Channel</u>

**I'm just not comfortable with Patrick's behavior around the ball**. You know, I always thought that the golf ball -- you treat it like the Hope Diamond. You treat it like a Fabergé egg, especially when it comes to an unclear situation. **So right here we're seeing Patrick kind of hovering over where he says the ball was embedded and it's just hard to know what he's doing**. Like where is the official at this point? You know, we're supposed to take him at his word, but there's -- **there just seems to be smoke.**

**To me, this looks bad for Patrick Reed, a guy that has history of doing these things.**

**So now we have to lean on the fact that Patrick Reed does have a history. I go back to 2019 in the Bahamas, the Par 5, 11th hole where he, you know, has the brushing away of the sand; and then later says, "Well, it's my word against**

**their word." And he says that "When I get in the sand" -- he says, "I'm afraid of getting close to the cup hole." That's his direct quote. "I'm afraid." "Every time I get in the bunker, I'm scared to even get my club close to it." He's close to it, Shane Bacon. He's not just close to it. He's sweeping it away. When you tell me that high-level players can tell me the difference between two clubs that weigh a .01 ounce difference. He's not feeling that? So we already have this situation. And we have the smoking mirrors about his time in Georgia where he was kicked off of the team and had to transfer to Augusta State. So he does have a history and now we have another situation**.

219.     Defendant Bacon's defamatory publications are not privileged in any way or manner.

220.     Defendant Bacon, acting together in concert as joint tortfeasors with his co-Defendants, acting in concert as joint tortfeasors, jointly and severally, and individually, published false statements about Mr. Reed and these statements were defamatory in that they created a false impression of Mr. Reed.

221.     Defendant Bacon, acting together in concert as joint tortfeasors with his co-Defendants, acting in concert as joint tortfeasors, jointly and severally, and individually, juxtaposed a series of facts so as to imply a defamatory connection between them or, in the alternative, created a defamatory implication by omitting facts when describing the nature and sequence of events.

222.     A reasonable person would understand Defendant Bacon's statements to impart the false innuendo, which would be highly offensive to a reasonable person.

223.     Defendant Bacon, acting together in concert as joint tortfeasors with his co-Defendants, acting in concert as joint tortfeasors, jointly and severally, and individually, intended or endorsed the defamatory inferences that the published statements created and these false, defamatory and misleading statements were made with actual malice.

224.    Defendant Bacon acted with actual malice because he knew or had reason to know that the publications were false and misleading, and/or at a minimum acted with a reckless disregard for the truth.

225.    These false, malicious, and defamatory statements have caused irreparable harm to Mr. Reed, his goodwill and reputation and financially in his trade and profession as a professional golfer, as a businessman, and personally.

226.    While these statements in particular are clearly defamatory, the publications in general and as a whole are defamatory as well, since "a publication must be considered in its totality. 'The court must consider all the words used, not merely a particular phrase or sentence.'" *Byrd v. Hustler Magazine*, 433 So. 2d 593, 595 (Fla. Dist. Ct. App. 1983).

**TWELFTH CAUSE OF ACTION**
***Defamation Per Se***
***Defendant Bacon***

227.    Defendant Bacon, acting together in concert as joint tortfeasors with his co-Defendants, acting in concert as joint tortfeasors, jointly and severally, and individually, have defamed Mr. Reed by knowingly, intentionally, willfully, recklessly, grossly negligently, and/or negligently publishing statements of and concerning Mr. Reed which they knew or should have known to be false and misleading.

228.    These statements made on Golf Channel include, but are not limited to:

January 31, 2021 – Hack and Bacon on Golf Channel

**I'm just not comfortable with Patrick's behavior around the ball**. You know, I always thought that the golf ball -- you treat it like the Hope Diamond. You treat it like a Fabergé egg, especially when it comes to an unclear situation. **So right here we're seeing Patrick kind of hovering over where he says the ball was embedded and it's just hard to know what he's doing**. Like where is the official at this point? You know, we're supposed to take him at his word, but there's -- **there just seems to be smoke.**

**To me, this looks bad for Patrick Reed, a guy that has history of doing these things.**

**So now we have to lean on the fact that Patrick Reed does have a history. I go back to 2019 in the Bahamas, the Par 5, 11th hole where he, you know, has the brushing away of the sand; and then later says, "Well, it's my word against their word." And he says that "When I get in the sand" -- he says, "I'm afraid of getting close to the cup hole." That's his direct quote. "I'm afraid." "Every time I get in the bunker, I'm scared to even get my club close to it." He's close to it, Shane Bacon. He's not just close to it. He's  sweeping it away. When you tell me that high-level players can tell me the difference between two clubs that weigh a .01 ounce difference. He's not feeling that? So we already have this situation. And we have  the smoking mirrors about his time in Georgia where he was kicked off of the team and had to transfer to Augusta State. So he does have a history and now we have another situation**.

229.    Defendant Bacon's defamatory publications are not privileged in any way or manner.

230.    The false, defamatory and misleading nature of Defendant Bacon's publications subjected Plaintiff to ridicule, hatred, disgust and contempt in his trade and profession as a professional golfer.

231.    The false, defamatory and misleading publications were made with actual malice.

232.    Defendant Bacon acted with actual malice because he knew or had reason to know that the publications were false and misleading, and/or at a minimum acted with a reckless disregard for the truth.

233.    These false, malicious, and defamatory statements have caused irreparable harm to Mr. Reed, his goodwill and reputation and financially in his trade and profession as a professional golfer, as a businessman, and personally.

234.    While these statements in particular are clearly defamatory, the publications in general and as a whole are defamatory as well, since "a publication must be considered in its

totality. 'The court must consider all the words used, not merely a particular phrase or sentence.'"

*Byrd v. Hustler Magazine*, 433 So. 2d 593, 595 (Fla. Dist. Ct. App. 1983).

## THIRTEENTH CAUSE OF ACTION
### *Defamation*
### *Defendant Lynch*

235.    Defendant Lynch, acting together in concert as joint tortfeasors with his co-Defendants, acting in concert as joint tortfeasors, jointly and severally, and individually, have defamed Mr. Reed by knowingly, intentionally, willfully, recklessly, grossly negligently, and/or negligently publishing statements of and concerning the Plaintiff which they knew or should have known to be false and misleading.

236.    These statements made by Defendant Lynch on Defendant Golfweek, which is owned by Defendant Gannett, include but are not limited to:

### August 24, 2022 – Lynch Article on Golfweek

accusing LIV, and its golfers, prominently including Mr. Reed, as being the "**evil empire's…Death Star**,"

accusing Mr. Reed and other LIV golfers of "**opt[ing] to cut and run for Saudi money**,"

admitting that Mr. Reed and other LIV golfers had endured "**reputational harm that comes with taking guaranteed cash to sportswash Saudi atrocities**."

### November 10, 2022 – Lynch Article on Golfweek

Team golf is a tough sell, but moreso when the product is lousy and **the association with a merciless regime too toxic for commercial sponsors.**

Whatever divisions need to be bridged in golf, whatever personal relationships must be healed, **doing so cannot involve offering the sport wholesale as a life raft for sportswashing ambitions in Riyadh. No amount of investment by the Saudi Arabian regime can be rendered respectable or accepted without dire reputational consequences for the entire sport. Golf cannot choose to host a cancer and expect to remain healthy.**

237.    Defendant Lynch 's defamatory publications are not privileged in any way or manner.

238.    The false, defamatory and misleading publications about Mr. Reed were widely published and the falsity of the statements caused injury to Mr. Reed.

239.    Defendant Lynch acted with actual malice because he knew or had reason to know that the publications were false and misleading, and/or at a minimum acted with a reckless disregard for the truth.

240.    These false, malicious, and defamatory statements have caused irreparable harm to Mr. Reed, his goodwill and reputation and financially in his trade and profession as a professional golfer, as a businessman, and personally.

241.    While these statements in particular are clearly defamatory, the publications in general and as a whole are defamatory as well, since "a publication must be considered in its totality. 'The court must consider all the words used, not merely a particular phrase or sentence.'" *Byrd v. Hustler Magazine*, 433 So. 2d 593, 595 (Fla. Dist. Ct. App. 1983).

<u>**FOURTEENTH CAUSE OF ACTION**</u>
***Defamation by Implication***
***Defendant Lynch***

242.    Defendant Lynch, acting together in concert as joint tortfeasors with his co-Defendants, acting in concert as joint tortfeasors, jointly and severally, and individually, have defamed Mr. Reed by knowingly, intentionally, willfully, recklessly, grossly negligently, and/or negligently publishing statements of and concerning the Plaintiff which they knew or should have known to be false and misleading.

243.    These statements made by Defendant Lynch on Defendant Golfweek, which is owned by Defendant Gannett, include but are not limited to:

<u>August 24, 2022 – Lynch Article on Golfweek</u>

accusing LIV, and its golfers, prominently including Mr. Reed, as being the "**evil empire's…Death Star**,"

accusing Mr. Reed and other LIV golfers of "**opt[ing] to cut and run for Saudi money**,"

admitting that Mr. Reed and other LIV golfers had endured "**reputational harm that comes with taking guaranteed cash to sportswash Saudi atrocities**."

<u>November 10, 2022 – Lynch Article on Golfweek</u>

Team golf is a tough sell, but moreso when the product is lousy and **the association with a merciless regime too toxic for commercial sponsors**

Whatever divisions need to be bridged in golf, whatever personal relationships must be healed, **doing so cannot involve offering the sport wholesale as a life raft for sportswashing ambitions in Riyadh. No amount of investment by the Saudi Arabian regime can be rendered respectable or accepted without dire reputational consequences for the entire sport. Golf cannot choose to host a cancer and expect to remain healthy.**

244.     Defendant Lynch's defamatory publications are not privileged in any way or manner.

245.     Defendant Lynch, acting together in concert as joint tortfeasors with his co-Defendants, acting in concert as joint tortfeasors, jointly and severally, and individually, published false statements about Mr. Reed and these statements were defamatory in that they created a false impression of Mr. Reed.

246.     Defendant Lynch, acting together in concert as joint tortfeasors with his co-Defendants, acting in concert as joint tortfeasors, jointly and severally, and individually, juxtaposed a series of facts so as to imply a defamatory connection between them or, in the alternative, created a defamatory implication by omitting facts when describing the nature and sequence of events.

247.    A reasonable person would understand Defendant Lynch's statements to impart the false innuendo, which would be highly offensive to a reasonable person.

248.    Defendant Lynch, acting together in concert as joint tortfeasors with his co-Defendants, acting in concert as joint tortfeasors, jointly and severally, and individually, intended or endorsed the defamatory inferences that the published statements created and these false, defamatory and misleading statements were made with actual malice.

249.    Defendant Lynch acted with actual malice because he knew or had reason to know that the publications were false and misleading, and/or at a minimum acted with a reckless disregard for the truth.

250.    These false, malicious, and defamatory statements have caused irreparable harm to Mr. Reed, his goodwill and reputation and financially in his trade and profession as a professional golfer, as a businessman, and personally.

251.    While these statements in particular are clearly defamatory, the publications in general and as a whole are defamatory as well, since "a publication must be considered in its totality. 'The court must consider all the words used, not merely a particular phrase or sentence.'" *Byrd v. Hustler Magazine*, 433 So. 2d 593, 595 (Fla. Dist. Ct. App. 1983).

### FIFTEENTH CAUSE OF ACTION
*Defamation Per Se*
*Defendant Lynch*

252.    Defendant Lynch, acting together in concert as joint tortfeasors with his co-Defendants, acting in concert as joint tortfeasors, jointly and severally, and individually, have defamed Mr. Reed by knowingly, intentionally, willfully, recklessly, grossly negligently, and/or negligently publishing statements of and concerning Mr. Reed which they knew or should have known to be false and misleading.

253.   These statements made by Defendant Lynch on Defendant Golfweek, which is owned by Defendant Gannett, include but are not limited to:

<u>August 24, 2022 – Lynch Article on Golfweek</u>

accusing LIV, and its golfers, prominently including Mr. Reed, as being the "**evil empire's…Death Star**,"

accusing Mr. Reed and other LIV golfers of "**opt[ing] to cut and run for Saudi money**,"

admitting that Mr. Reed and other LIV golfers had endured "**reputational harm that comes with taking guaranteed cash to sportswash Saudi atrocities**."

<u>November 10, 2022 – Lynch Article on Golfweek</u>

Team golf is a tough sell, but moreso when the product is lousy and **the association with a merciless regime too toxic for commercial sponsors.**

Whatever divisions need to be bridged in golf, whatever personal relationships must be healed, **doing so cannot involve offering the sport wholesale as a life raft for sportswashing ambitions in Riyadh. No amount of investment by the Saudi Arabian regime can be rendered respectable or accepted without dire reputational consequences for the entire sport. Golf cannot choose to host a cancer and expect to remain healthy.**

254.   Defendant Lynch's defamatory publications are not privileged in any way or manner.

255.   The false, defamatory and misleading nature of Defendant Lynch's publications subjected Plaintiff to ridicule, hatred, disgust and contempt in his trade and profession as a professional golfer.

256.   The false, defamatory and misleading publications were made with actual malice.

257.   Defendant Lynch acted with actual malice because he knew or had reason to know that the publications were false and misleading, and/or at a minimum acted with a reckless disregard for the truth.

258.    These false, malicious, and defamatory statements have caused irreparable harm to Mr. Reed, his goodwill and reputation and financially in his trade and profession as a professional golfer, as a businessman, and personally.

259.    While these statements in particular are clearly defamatory, the publications in general and as a whole are defamatory as well, since "a publication must be considered in its totality. 'The court must consider all the words used, not merely a particular phrase or sentence.'" *Byrd v. Hustler Magazine*, 433 So. 2d 593, 595 (Fla. Dist. Ct. App. 1983).

**SIXTEENTH CAUSE OF ACTION**
*Defamation*
*Defendant Golfweek*

260.    Defendant Golfweek, acting together in concert as joint tortfeasors with his co-Defendants, acting in concert as joint tortfeasors, jointly and severally, and individually, have defamed Mr. Reed by knowingly, intentionally, willfully, recklessly, grossly negligently, and/or negligently publishing statements of and concerning the Plaintiff which they knew or should have known to be false and misleading.

261.    These statements made by Defendant Lynch on Defendant Golfweek, which is owned by Defendant Gannett, include but are not limited to:

August 24, 2022 – Lynch Article on Golfweek

accusing LIV, and its golfers, prominently including Mr. Reed, as being the "**evil empire's…Death Star**,"

accusing Mr. Reed and other LIV golfers of "**opt[ing] to cut and run for Saudi money**,"

admitting that Mr. Reed and other LIV golfers had endured "**reputational harm that comes with taking guaranteed cash to sportswash Saudi atrocities**."

November 10, 2022 – Lynch Article on Golfweek

Team golf is a tough sell, but moreso when the product is lousy and **the association with a merciless regime too toxic for commercial sponsors.**

Whatever divisions need to be bridged in golf, whatever personal relationships must be healed, **doing so cannot involve offering the sport wholesale as a life raft for sportswashing ambitions in Riyadh. No amount of investment by the Saudi Arabian regime can be rendered respectable or accepted without dire reputational consequences for the entire sport. Golf cannot choose to host a cancer and expect to remain healthy.**

262.     Defendant Golfweek's defamatory publications are not privileged in any way or manner.

263.     The false, defamatory and misleading publications about Mr. Reed were widely published and the falsity of the statements caused injury to Mr. Reed.

264.     Defendant Golfweek acted with actual malice because it knew or had reason to know that the publications were false and misleading, and/or at a minimum acted with a reckless disregard for the truth.

265.     These false, malicious, and defamatory statements have caused irreparable harm to Mr. Reed, his goodwill and reputation and financially in his trade and profession as a professional golfer, as a businessman, and personally.

266.     While these statements in particular are clearly defamatory, the publications in general and as a whole are defamatory as well, since "a publication must be considered in its totality. 'The court must consider all the words used, not merely a particular phrase or sentence.'" *Byrd v. Hustler Magazine*, 433 So. 2d 593, 595 (Fla. Dist. Ct. App. 1983).

**SEVENTEENTH CAUSE OF ACTION**
*Defamation by Implication*
*Defendant Golfweek*

267.     Defendant Golfweek, acting together in concert as joint tortfeasors with his co-Defendants, acting in concert as joint tortfeasors, jointly and severally, and individually, have

defamed Mr. Reed by knowingly, intentionally, willfully, recklessly, grossly negligently, and/or negligently publishing statements of and concerning the Plaintiff which they knew or should have known to be false and misleading.

268.    These statements made by Defendant Lynch on Defendant Golfweek, which is owned by Defendant Gannett, include but are not limited to:

<u>August 24, 2022 – Lynch Article on Golfweek</u>

accusing LIV, and its golfers, prominently including Mr. Reed, as being the "**evil empire's…Death Star**,"

accusing Mr. Reed and other LIV golfers of "**opt[ing] to cut and run for Saudi money**,"

admitting that Mr. Reed and other LIV golfers had endured "**reputational harm that comes with taking guaranteed cash to sportswash Saudi atrocities**."

<u>November 10, 2022 – Lynch Article on Golfweek</u>

Team golf is a tough sell, but moreso when the product is lousy and **the association with a merciless regime too toxic for commercial sponsors.**

Whatever divisions need to be bridged in golf, whatever personal relationships must be healed, **doing so cannot involve offering the sport wholesale as a life raft for sportswashing ambitions in Riyadh. No amount of investment by the Saudi Arabian regime can be rendered respectable or accepted without dire reputational consequences for the entire sport. Golf cannot choose to host a cancer and expect to remain healthy.**

269.    Defendant Golfweek's defamatory publications are not privileged in any way or manner.

270.    Defendant Golfweek, acting together in concert as joint tortfeasors with his co-Defendants, acting in concert as joint tortfeasors, jointly and severally, and individually, published false statements about Mr. Reed and these statements were defamatory in that they created a false impression of Mr. Reed.

271.    Defendant Golfweek, acting together in concert as joint tortfeasors with his co-Defendants, acting in concert as joint tortfeasors, jointly and severally, and individually, juxtaposed a series of facts so as to imply a defamatory connection between them or, in the alternative, created a defamatory implication by omitting facts when describing the nature and sequence of events.

272.    A reasonable person would understand Defendant Golfweek's statements to impart the false innuendo, which would be highly offensive to a reasonable person.

273.    Defendant Golfweek, acting together in concert as joint tortfeasors with his co-Defendants, acting in concert as joint tortfeasors, jointly and severally, and individually, intended or endorsed the defamatory inferences that the published statements created and these false, defamatory and misleading statements were made with actual malice.

274.    Defendant Chamblee acted with actual malice because it knew or had reason to know that the publications were false and misleading, and/or at a minimum acted with a reckless disregard for the truth.

275.    These false, malicious, and defamatory statements have caused irreparable harm to Mr. Reed, his goodwill and reputation and financially in his trade and profession as a professional golfer, as a businessman, and personally.

276.    While these statements in particular are clearly defamatory, the publications in general and as a whole are defamatory as well, since "a publication must be considered in its totality. 'The court must consider all the words used, not merely a particular phrase or sentence.'" *Byrd v. Hustler Magazine*, 433 So. 2d 593, 595 (Fla. Dist. Ct. App. 1983).

<u>**EIGHTEENTH CAUSE OF ACTION**</u>
***Defamation Per Se***
***Defendant Golfweek***

277.    Defendant Golfweek, acting together in concert as joint tortfeasors with his co-Defendants, acting in concert as joint tortfeasors, jointly and severally, and individually, have defamed Mr. Reed by knowingly, intentionally, willfully, recklessly, grossly negligently, and/or negligently publishing statements of and concerning Mr. Reed which they knew or should have known to be false and misleading.

278.    These statements made by Defendant Lynch on Defendant Golfweek, which is owned by Defendant Gannett, include but are not limited to:

<u>August 24, 2022 – Lynch Article on Golfweek</u>

accusing LIV, and its golfers, prominently including Mr. Reed, as being the "**evil empire's…Death Star**,"

accusing Mr. Reed and other LIV golfers of "**opt[ing] to cut and run for Saudi money**,"

admitting that Mr. Reed and other LIV golfers had endured "**reputational harm that comes with taking guaranteed cash to sportswash Saudi atrocities**."

<u>November 10, 2022 – Lynch Article on Golfweek</u>

Team golf is a tough sell, but moreso when the product is lousy and **the association with a merciless regime too toxic for commercial sponsors.**

Whatever divisions need to be bridged in golf, whatever personal relationships must be healed, **doing so cannot involve offering the sport wholesale as a life raft for sportswashing ambitions in Riyadh. No amount of investment by the Saudi Arabian regime can be rendered respectable or accepted without dire reputational consequences for the entire sport. Golf cannot choose to host a cancer and expect to remain healthy.**

279.    Defendant Golfweek's defamatory publications are not privileged in any way or manner.

280.     The false, defamatory and misleading nature of Defendant Golfweek's publications subjected Plaintiff to ridicule, hatred, disgust and contempt in his trade and profession as a professional golfer.

281.     The false, defamatory and misleading publications were made with actual malice.

282.     Defendant Golfweek acted with actual malice because it knew or had reason to know that the publications were false and misleading, and/or at a minimum acted with a reckless disregard for the truth.

283.     These false, malicious, and defamatory statements have caused irreparable harm to Mr. Reed, his goodwill and reputation and financially in his trade and profession as a professional golfer, as a businessman, and personally.

284.     While these statements in particular are clearly defamatory, the publications in general and as a whole are defamatory as well, since "a publication must be considered in its totality. 'The court must consider all the words used, not merely a particular phrase or sentence.'" *Byrd v. Hustler Magazine*, 433 So. 2d 593, 595 (Fla. Dist. Ct. App. 1983).

<u>**NINETEENTH CAUSE OF ACTION**</u>
***Defamation***
***Defendant Gannett***

285.     Defendant Gannett, acting together in concert as joint tortfeasors with his co-Defendants, acting in concert as joint tortfeasors, jointly and severally, and individually, have defamed Mr. Reed by knowingly, intentionally, willfully, recklessly, grossly negligently, and/or negligently publishing statements of and concerning the Plaintiff which they knew or should have known to be false and misleading.

286.     These statements made by Defendant Lynch on Defendant Golfweek, which is owned by Defendant Gannett, include but are not limited to:

<u>August 24, 2022 – Lynch Article on Golfweek</u>

accusing LIV, and its golfers, prominently including Mr. Reed, as being the "**evil empire's…Death Star**,"

accusing Mr. Reed and other LIV golfers of "**opt[ing] to cut and run for Saudi money**,"

admitting that Mr. Reed and other LIV golfers had endured "**reputational harm that comes with taking guaranteed cash to sportswash Saudi atrocities**."

<u>November 10, 2022 – Lynch Article on Golfweek</u>

Team golf is a tough sell, but moreso when the product is lousy and **the association with a merciless regime too toxic for commercial sponsors.**

Whatever divisions need to be bridged in golf, whatever personal relationships must be healed, **doing so cannot involve offering the sport wholesale as a life raft for sportswashing ambitions in Riyadh. No amount of investment by the Saudi Arabian regime can be rendered respectable or accepted without dire reputational consequences for the entire sport. Golf cannot choose to host a cancer and expect to remain healthy.**

287. Defendant Gannett's defamatory publications are not privileged in any way or manner.

288. The false, defamatory and misleading publications about Mr. Reed were widely published and the falsity of the statements caused injury to Mr. Reed.

289. Defendant Gannett acted with actual malice because it knew or had reason to know that the publications were false and misleading, and/or at a minimum acted with a reckless disregard for the truth.

290. These false, malicious, and defamatory statements have caused irreparable harm to Mr. Reed, his goodwill and reputation and financially in his trade and profession as a professional golfer, as a businessman, and personally.

291. While these statements in particular are clearly defamatory, the publications in general and as a whole are defamatory as well, since "a publication must be considered in its

totality. 'The court must consider all the words used, not merely a particular phrase or sentence.'"

*Byrd v. Hustler Magazine*, 433 So. 2d 593, 595 (Fla. Dist. Ct. App. 1983).

## TWENTIETH CAUSE OF ACTION
### *Defamation by Implication*
### *Defendant Gannett*

292.    Defendant Gannett, acting together in concert as joint tortfeasors with his co-Defendants, acting in concert as joint tortfeasors, jointly and severally, and individually, have defamed Mr. Reed by knowingly, intentionally, willfully, recklessly, grossly negligently, and/or negligently publishing statements of and concerning the Plaintiff which they knew or should have known to be false and misleading.

293.    These statements made by Defendant Lynch on Defendant Golfweek, which is owned by Defendant Gannett, include but are not limited to:

<u>August 24, 2022 – Lynch Article on Golfweek</u>

accusing LIV, and its golfers, prominently including Mr. Reed, as being the "**evil empire's…Death Star**,"

accusing Mr. Reed and other LIV golfers of "**opt[ing] to cut and run for Saudi money**,"

admitting that Mr. Reed and other LIV golfers had endured "**reputational harm that comes with taking guaranteed cash to sportswash Saudi atrocities**."

<u>November 10, 2022 – Lynch Article on Golfweek</u>

Team golf is a tough sell, but moreso when the product is lousy and **the association with a merciless regime too toxic for commercial sponsors.**

Whatever divisions need to be bridged in golf, whatever personal relationships must be healed, **doing so cannot involve offering the sport wholesale as a life raft for sportswashing ambitions in Riyadh. No amount of investment by the Saudi Arabian regime can be rendered respectable or accepted without dire reputational consequences for the entire sport. Golf cannot choose to host a cancer and expect to remain healthy.**

294.    Defendant Gannett's defamatory publications are not privileged in any way or manner.

295.    Defendant Gannett, acting together in concert as joint tortfeasors with his co-Defendants, acting in concert as joint tortfeasors, jointly and severally, and individually, published false statements about Mr. Reed and these statements were defamatory in that they created a false impression of Mr. Reed.

296.    Defendant Gannett, acting together in concert as joint tortfeasors with his co-Defendants, acting in concert as joint tortfeasors, jointly and severally, and individually, juxtaposed a series of facts so as to imply a defamatory connection between them or, in the alternative, created a defamatory implication by omitting facts when describing the nature and sequence of events.

297.    A reasonable person would understand Defendant Gannett's statements to impart the false innuendo, which would be highly offensive to a reasonable person.

298.    Defendant Gannett, acting together in concert as joint tortfeasors with his co-Defendants, acting in concert as joint tortfeasors, jointly and severally, and individually, intended or endorsed the defamatory inferences that the published statements created and these false, defamatory and misleading statements were made with actual malice.

299.    Defendant Gannett  acted with actual malice because it knew or had reason to know that the publications were false and misleading, and/or at a minimum acted with a reckless disregard for the truth.

300.    These false, malicious, and defamatory statements have caused irreparable harm to Mr. Reed, his goodwill and reputation and financially in his trade and profession as a professional golfer, as a businessman, and personally.

301.    While these statements in particular are clearly defamatory, the publications in general and as a whole are defamatory as well, since "a publication must be considered in its totality. 'The court must consider all the words used, not merely a particular phrase or sentence.'" *Byrd v. Hustler Magazine*, 433 So. 2d 593, 595 (Fla. Dist. Ct. App. 1983).

## TWENTY-FIRST CAUSE OF ACTION
### *Defamation Per Se*
### *Defendant Gannett*

302.    Defendant Gannett acting together in concert as joint tortfeasors with his co-Defendants, acting in concert as joint tortfeasors, jointly and severally, and individually, have defamed Mr. Reed by knowingly, intentionally, willfully, recklessly, grossly negligently, and/or negligently publishing statements of and concerning Mr. Reed which they knew or should have known to be false and misleading.

303.    These statements made by Defendant Lynch on Defendant Golfweek, which is owned by Defendant Gannett, include but are not limited to:

### August 24, 2022 – Lynch Article on Golfweek

accusing LIV, and its golfers, prominently including Mr. Reed, as being the "**evil empire's…Death Star**,"

accusing Mr. Reed and other LIV golfers of "**opt[ing] to cut and run for Saudi money**,"

admitting that Mr. Reed and other LIV golfers had endured "**reputational harm that comes with taking guaranteed cash to sportswash Saudi atrocities**."

### November 10, 2022 – Lynch Article on Golfweek

Team golf is a tough sell, but moreso when the product is lousy and **the association with a merciless regime too toxic for commercial sponsors.**

Whatever divisions need to be bridged in golf, whatever personal relationships must be healed, **doing so cannot involve offering the sport wholesale as a life raft for sportswashing ambitions in Riyadh. No amount of investment by the Saudi Arabian regime can be rendered respectable or accepted without dire**

**reputational consequences for the entire sport. Golf cannot choose to host a cancer and expect to remain healthy.**

304.    Defendant Gannett's defamatory publications are not privileged in any way or manner.

305.    The false, defamatory and misleading nature of Defendant Gannett's publications subjected Plaintiff to ridicule, hatred, disgust and contempt in his trade and profession as a professional golfer.

306.    The false, defamatory and misleading publications were made with actual malice.

307.    Defendant Gannett acted with actual malice because it knew or had reason to know that the publications were false and misleading, and/or at a minimum acted with a reckless disregard for the truth.

308.    These false, malicious, and defamatory statements have caused irreparable harm to Mr. Reed, his goodwill and reputation and financially in his trade and profession as a professional golfer, as a businessman, and personally.

309.    While these statements in particular are clearly defamatory, the publications in general and as a whole are defamatory as well, since "a publication must be considered in its totality. 'The court must consider all the words used, not merely a particular phrase or sentence.'" *Byrd v. Hustler Magazine*, 433 So. 2d 593, 595 (Fla. Dist. Ct. App. 1983).

<u>**TWENTY-SECOND CAUSE OF ACTION**</u>
*Tortious Interference*
*Defendant Chamblee*

310.    Mr. Reed had ongoing contractual relationships with sponsors whereby Mr. Reed was to promote his sponsor's goods in exchange for financial benefit, as well as prospective contractual relationships with sponsors.

311.    As a result of Defendant Chamblee's intentional and unjustified interference, Mr. Reed experienced the loss of multiple multi-million dollar sponsorship deals that were not or have not been renewed including, but not limited to Titleist, Nike, Ultimate Software, cbdMD, Callaway, Tax Slayer, Perry Ellis, NetJets, and ETS as well as numerous promising prospective sponsorship and business opportunities that did not come to fruition as a direct and proximate result including, but not limited to companies such as Quicken Loans, Draft Kings, Travelers, DOW, ARAMCO, CISCO, Porsche, Wells-Fargo, ROUSH, Zurich, Perry Ellis, Waste Management, Citi Bank, Houston Tourism, Taylormade, Bettinardi, and SRIXON.

312.    Defendant Chamblee knew of the ongoing business relationships between Mr. Reed and his sponsors as well as the prospective contractual relationships between Mr. Reed and sponsors.

313.    Defendant Chamblee willfully and intentionally and vindictively interfered with these ongoing business relationships and prospective business relationships and/or contracts by spreading lies of and concerning Mr. Reed in order to destroy his reputation, and to induce sponsors to break their contractual relationships with Mr. Reed.

314.    As a direct and proximate result of Defendant Chamblee's  actions, Mr. Reed has suffered severe financial damages and had his ongoing contractual relationships with his sponsors terminated, and his prospective contractual relationships with sponsors never came to fruition, and ongoing and prospective contractual relationships terminated due to this intentional and unjustifiable interference by Defendant Chamblee.

### TWENTY-THIRD CAUSE OF ACTION
*Tortious Interference*
*Defendant Golf Channel*

315.    Mr. Reed had ongoing contractual relationships with sponsors whereby Mr. Reed was to promote his sponsor's goods in exchange for financial benefit, as well as prospective contractual relationships with sponsors.

316.    As a result of Defendant Golf Channel's intentional and unjustified interference, Mr. Reed experienced the loss of multiple multi-million dollar sponsorship deals that were not or have not been renewed including, but not limited to Titleist, Nike, Ultimate Software, cbdMD, Callaway, Tax Slayer, Perry Ellis, NetJets, and ETS as well as numerous promising prospective sponsorship and business opportunities that did not come to fruition as a direct and proximate result including, but not limited to companies such as Quicken Loans, Draft Kings, Travelers, DOW, ARAMCO, CISCO, Porsche, Wells-Fargo, ROUSH, Zurich, Perry Ellis, Waste Management, Citi Bank, Houston Tourism, Taylormade, Bettinardi, and SRIXON.

317.    Defendant Golf Channel knew of the ongoing business relationships between Mr. Reed and his sponsors as well as the prospective contractual relationships between Mr. Reed and sponsors.

318.    Defendant Golf Channel willfully and intentionally and vindictively interfered with these ongoing business relationships and prospective business relationships and/or contracts by spreading lies of and concerning Mr. Reed in order to destroy his reputation, and to induce sponsors to break their contractual relationships with Mr. Reed.

319.    As a direct and proximate result of Defendant Golf Channel's  actions, Mr. Reed has suffered severe financial damages and has had his ongoing contractual relationships with his sponsors terminated, and his prospective contractual relationships with sponsors never came to fruition, and ongoing and prospective contractual relationships terminated due to this intentional and unjustifiable interference by Defendant Golf Channel.

## TWENTY-FOURTHCAUSE OF ACTION
### *Tortious Interference*
### *Defendant Hack*

320.    Mr. Reed had ongoing contractual relationships with sponsors whereby Mr. Reed was to promote his sponsor's goods in exchange for financial benefit, as well as prospective contractual relationships with sponsors.

321.    As a result of Defendant Hack's intentional and unjustified interference, Mr. Reed experienced the loss of multiple multi-million dollar sponsorship deals that were not or have not been renewed including, but not limited to Titleist, Nike, Ultimate Software, cbdMD, Callaway, Tax Slayer, Perry Ellis, NetJets, and ETS as well as numerous promising prospective sponsorship and business opportunities that did not come to fruition as a direct and proximate result including, but not limited to companies such as Quicken Loans, Draft Kings, Travelers, DOW, ARAMCO, CISCO, Porsche, Wells-Fargo, ROUSH, Zurich, Perry Ellis, Waste Management, Citi Bank, Houston Tourism, Taylormade, Bettinardi, and SRIXON.

322.    Defendant Hack knew of the ongoing business relationships between Mr. Reed and his sponsors as well as the prospective contractual relationships between Mr. Reed and sponsors.

323.    Defendant Hack willfully and intentionally and vindictively interfered with these ongoing business relationships and prospective business relationships and/or contracts by spreading lies of and concerning Mr. Reed in order to destroy his reputation, and to induce sponsors to break their contractual relationships with Mr. Reed.

324.    As a direct and proximate result of Defendant Hack's  actions, Mr. Reed has suffered severe financial damages and had his ongoing contractual relationships with his sponsors terminated, and his prospective contractual relationships with sponsors never came to fruition, and

ongoing and prospective contractual relationships terminated due to this intentional and unjustifiable interference by Defendant Hack.

**TWENTY-FIFTH CAUSE OF ACTION**
*Tortious Interference*
*Defendant Bacon*

325.     Mr. Reed had ongoing contractual relationships with sponsors whereby Mr. Reed was to promote his sponsor's goods in exchange for financial benefit, as well as prospective contractual relationships with sponsors.

326.     As a result of Defendant Bacon's intentional and unjustified interference, Mr. Reed experienced the loss of multiple multi-million dollar sponsorship deals that were not or have not been renewed including, but not limited to Titleist, Nike, Ultimate Software, cbdMD, Callaway, Tax Slayer, Perry Ellis, NetJets, and ETS as well as numerous promising prospective sponsorship and business opportunities that did not come to fruition as a direct and proximate result including, but not limited to companies such as Quicken Loans, Draft Kings, Travelers, DOW, ARAMCO, CISCO, Porsche, Wells-Fargo, ROUSH, Zurich, Perry Ellis, Waste Management, Citi Bank, Houston Tourism, Taylormade, Bettinardi, and SRIXON.

327.     Defendant Bacon knew of the ongoing business relationships between Mr. Reed and his sponsors as well as the prospective contractual relationships between Mr. Reed and sponsors.

328.     Defendant Bacon willfully and intentionally and vindictively interfered with these ongoing business relationships and prospective business relationships and/or contracts by spreading lies of and concerning Mr. Reed in order to destroy his reputation, and to induce sponsors to break their contractual relationships with Mr. Reed.

329.   As a direct and proximate result of Defendant Bacon's  actions, Mr. Reed has suffered severe financial damages and had his ongoing contractual relationships with his sponsors terminated, and his prospective contractual relationships with sponsors never came to fruition, and ongoing and prospective contractual relationships terminated due to this intentional and unjustifiable interference by Defendant Bacon.

## TWENTY-SIXTH CAUSE OF ACTION
### *Tortious Interference*
### *Defendant Lynch*

330.   Mr. Reed had ongoing contractual relationships with sponsors whereby Mr. Reed was to promote his sponsor's goods in exchange for financial benefit, as well as prospective contractual relationships with sponsors.

331.   As a result of Defendant Lynch's intentional and unjustified interference, Mr. Reed experienced the loss of multiple multi-million dollar sponsorship deals that were not or have not been renewed including, but not limited to Titleist, Nike, Ultimate Software, cbdMD, Callaway, Tax Slayer, Perry Ellis, NetJets, and ETS as well as numerous promising prospective sponsorship and business opportunities that did not come to fruition as a direct and proximate result including, but not limited to companies such as Quicken Loans, Draft Kings, Travelers, DOW, ARAMCO, CISCO, Porsche, Wells-Fargo, ROUSH, Zurich, Perry Ellis, Waste Management, Citi Bank, Houston Tourism, Taylormade, Bettinardi, and SRIXON.

332.   Defendant Lynch knew of the ongoing business relationships between Mr. Reed and his sponsors as well as the prospective contractual relationships between Mr. Reed and sponsors.

333.   Defendant Lynch willfully and intentionally and vindictively interfered with these ongoing business relationships and prospective business relationships and/or contracts by

spreading lies of and concerning Mr. Reed in order to destroy his reputation, and to induce sponsors to break their contractual relationships with Mr. Reed.

334.     As a direct and proximate result of Defendant Lynch's actions, Mr. Reed has suffered severe financial damages and had his ongoing contractual relationships with his sponsors terminated, and his prospective contractual relationships with sponsors never came to fruition, and ongoing and prospective contractual relationships terminated due to this intentional and unjustifiable interference by Defendant Lynch.

**TWENTY-SEVENTH CAUSE OF ACTION**
*Tortious Interference*
*Defendant Golfweek*

335.     Mr. Reed had ongoing contractual relationships with sponsors whereby Mr. Reed was to promote his sponsor's goods in exchange for financial benefit, as well as prospective contractual relationships with sponsors.

336.     As a result of Defendant Golfweek's intentional and unjustified interference, Mr. Reed experienced the loss of multiple multi-million dollar sponsorship deals that were not or have not been renewed including, but not limited to Titleist, Nike, Ultimate Software, cbdMD, Callaway, Tax Slayer, Perry Ellis, NetJets, and ETS as well as numerous promising prospective sponsorship and business opportunities that did not come to fruition as a direct and proximate result including, but not limited to companies such as Quicken Loans, Draft Kings, Travelers, DOW, ARAMCO, CISCO, Porsche, Wells-Fargo, ROUSH, Zurich, Perry Ellis, Waste Management, Citi Bank, Houston Tourism, Taylormade, Bettinardi, and SRIXON.

337.     Defendant Golfweek knew of the ongoing business relationships between Mr. Reed and his sponsors as well as the prospective contractual relationships between Mr. Reed and sponsors.

338.    Defendant Golfweek willfully and intentionally and vindictively interfered with these ongoing business relationships and prospective business relationships and/or contracts by spreading lies of and concerning Mr. Reed in order to destroy his reputation, and to induce sponsors to break their contractual relationships with Mr. Reed.

339.    As a direct and proximate result of Defendant Golfweek's  actions, Mr. Reed has suffered severe financial damages and had his ongoing contractual relationships with his sponsors terminated, and his prospective contractual relationships with sponsors never came to fruition, and ongoing and prospective contractual relationships terminated due to this intentional and unjustifiable interference by Defendant Golfweek.

## TWENTY-EIGHTH CAUSE OF ACTION
### *Tortious Interference*
### *Defendant Gannett*

340.    Mr. Reed had ongoing contractual relationships with sponsors whereby Mr. Reed was to promote his sponsor's goods in exchange for financial benefit, as well as prospective contractual relationships with sponsors.

341.    As a result of Defendant Gannett's intentional and unjustified interference, Mr. Reed experienced the loss of multiple multi-million dollar sponsorship deals that were not or have not been renewed including, but not limited to Titleist, Nike, Ultimate Software, cbdMD, Callaway, Tax Slayer, Perry Ellis, NetJets, and ETS as well as numerous promising prospective sponsorship and business opportunities that did not come to fruition as a direct and proximate result including, but not limited to companies such as Quicken Loans, Draft Kings, Travelers, DOW, ARAMCO, CISCO, Porsche, Wells-Fargo, ROUSH, Zurich, Perry Ellis, Waste Management, Citi Bank, Houston Tourism, Taylormade, Bettinardi, and SRIXON.

342.    Defendant Gannett knew of the ongoing business relationships between Mr. Reed and his sponsors as well as the prospective contractual relationships between Mr. Reed and sponsors.

343.    Defendant Gannett willfully and intentionally and vindictively interfered with these ongoing business relationships and prospective business relationships and/or contracts by spreading lies of and concerning Mr. Reed in order to destroy his reputation, and to induce sponsors to break their contractual relationships with Mr. Reed.

344.    As a direct and proximate result of Defendant Gannett's  actions, Mr. Reed has suffered severe financial damages and had his ongoing contractual relationships with his sponsors terminated, and his prospective contractual relationships with sponsors never came to fruition, and ongoing and prospective contractual relationships terminated due to this intentional and unjustifiable interference by Defendant Gannett.

**TWENTY-NINTH CAUSE OF ACTION**
*Defamation*
*Defendant New Yorker*

345.    Defendant New Yorker acting together with its co-Defendants, acting in concert as joint tortfeasors, jointly and severally, and individually, has defamed Mr. Reed by knowingly, intentionally, willfully, recklessly, grossly negligently, and/or negligently publishing statements of and concerning the Plaintiff which they knew or should have known to be false and misleading.

346.    Defendant New Yorker published the following defamatory statement: **"LIV needs a public investment fund to sportswash its association with Patrick Reed**."

347.    Defendant New Yorker's defamatory publications are not privileged in any way or manner.

348.    The false, defamatory and misleading publications of and concerning Mr. Reed were widely published and the falsity of the statements caused injury to Mr. Reed.

349.    Defendant New Yorker acted with actual malice because it knew or had reason to know that the publications were false and misleading, and/or at a minimum acted with a reckless disregard for the truth.

350.    These false, malicious, and defamatory statements have caused irreparable harm to Mr. Reed, his goodwill and reputation and financially in his trade and profession as a professional golfer, as a businessman, and personally.

351.    While these statements in particular are clearly defamatory, the publications in general and as a whole are defamatory as well, since "a publication must be considered in its totality. 'The court must consider all the words used, not merely a particular phrase or sentence.'" *Byrd v. Hustler Magazine*, 433 So. 2d 593, 595 (Fla. Dist. Ct. App. 1983).

### THIRTIETH CAUSE OF ACTION
#### *Defamation by Implication*
#### *Defendant New Yorker*

352.    Defendant New Yorker acting together with its co-Defendants, acting in concert as joint tortfeasors, jointly and severally, and individually, has defamed Mr. Reed by knowingly, intentionally, willfully, recklessly, grossly negligently, and/or negligently publishing statements of and concerning Mr. Reed which they knew or should have known to be false and misleading.

353.    Defendant New Yorker published the following defamatory statement: **"LIV needs a public investment fund to sportswash its association with Patrick Reed**."

354.    Defendant New Yorker's defamatory publications of and concerning Mr. Reed are not privileged in any way or manner.

355.   Defendant New Yorker, acting together with its co-Defendants, acting in concert as joint tortfeasors, jointly and severally, and individually, published false statements of and concerning Mr. Reed and these statements were defamatory in that they created a false impression of Mr. Reed.

356.   Defendant New Yorker, acting together with its co-Defendants, acting in concert as joint tortfeasors, jointly and severally, and individually, juxtaposed a series of facts so as to imply a defamatory connection between them or, in the alternative, created a defamatory implication by omitting facts when describing the nature and sequence of events.

357.   A reasonable person would understand Defendant New Yorker's statements to impart the false innuendo, which would be highly offensive to a reasonable person.

358.   Defendant New Yorker, acting together with its co-Defendants, acting in concert as joint tortfeasors, jointly and severally, and individually, intended or endorsed the defamatory inferences that the published statements created, and these false, defamatory and misleading statements were made with actual malice.

359.   Defendant New Yorker acted with actual malice because it knew or had reason to know that the publications were false and misleading, and/or at a minimum acted with a reckless disregard for the truth.

360.   These false, malicious, and defamatory statements have caused irreparable harm to Mr. Reed, his goodwill and reputation and financially in his trade and profession as a professional golfer, as a businessman, and personally.

361.   While these statements in particular are clearly defamatory, the publications in general and as a whole are defamatory as well, since "a publication must be considered in its

totality. 'The court must consider all the words used, not merely a particular phrase or sentence.'"

*Byrd v. Hustler Magazine*, 433 So. 2d 593, 595 (Fla. Dist. Ct. App. 1983).

## THIRTY-FIRST CAUSE OF ACTION
### *Defamation Per Se*
### *Defendant New Yorker*

362.    Defendant New Yorker, acting together with its co-Defendants, acting in concert as joint tortfeasors, jointly and severally, and individually, has defamed Mr. Reed by knowingly, intentionally, willfully, recklessly, grossly negligently, and/or negligently publishing statements of and concerning Mr. Reed which they knew or should have known to be false and misleading.

363.    Defendant New Yorker published the following defamatory statement: **"LIV needs a public investment fund to sportswash its association with Patrick Reed**."

364.    Defendant New Yorker's defamatory publications are not privileged in any way or manner.

365.    The false, defamatory and misleading nature of Defendant New Yorker's publications of and concerning Plaintiff caused Mr. Reed ridicule, hatred, disgust and contempt in his trade and profession as a professional golfer.

366.    The false, defamatory and misleading publications were made with actual malice.

367.    Defendant New Yorker acted with actual malice because it knew or had reason to know that the publications were false and misleading, and/or at a minimum acted with a reckless disregard for the truth.

368.    These false, malicious, and defamatory statements have caused irreparable harm to Mr. Reed, his goodwill and reputation and financially in his trade and profession as a professional golfer, as a businessman, and personally.

369.     While these statements in particular are clearly defamatory, the publications in general and as a whole are defamatory as well, since "a publication must be considered in its totality. 'The court must consider all the words used, not merely a particular phrase or sentence.'" *Byrd v. Hustler Magazine*, 433 So. 2d 593, 595 (Fla. Dist. Ct. App. 1983).

**THIRTY-SECOND CAUSE OF ACTION**
*Tortious Interference*
*Defendant New Yorker*

370.     Mr. Reed had ongoing contractual relationships with sponsors whereby Mr. Reed was to promote his sponsor's goods in exchange for financial benefit, as well as prospective contractual relationships with sponsors.

371.     As a result of Defendant New Yorker's intentional and unjustified interference, Mr. Reed experienced the loss of multiple multi-million dollar sponsorship deals that were not or have not been renewed including, but not limited to Titleist, Nike, Ultimate Software, cbdMD, Callaway, Tax Slayer, Perry Ellis, NetJets, and ETS as well as numerous promising prospective sponsorship and business opportunities that did not come to fruition as a direct and proximate result including, but not limited to companies such as Quicken Loans, Draft Kings, Travelers, DOW, ARAMCO, CISCO, Porsche, Wells-Fargo, ROUSH, Zurich, Perry Ellis, Waste Management, Citi Bank, Houston Tourism, Taylormade, Bettinardi, and SRIXON.

372.     Defendant New Yorker knew of the ongoing business relationships between Mr. Reed and his sponsors as well as the prospective contractual relationships between Mr. Reed and sponsors.

373.     Defendant New Yorker willfully and intentionally and vindictively interfered with these ongoing business relationships and prospective business relationships and/or contracts by

spreading lies of and concerning Mr. Reed in order to destroy his reputation, and to induce sponsors to break their contractual relationships with Mr. Reed.

374.     As a direct and proximate result of Defendant New Yorker's actions, Mr. Reed has suffered severe financial damages and had his ongoing contractual relationships with his sponsors terminated, and his prospective contractual relationships with sponsors never came to fruition, and ongoing and prospective contractual relationships terminated due to this intentional and unjustifiable interference by Defendant New Yorker.

**THIRTY-THIRD CAUSE OF ACTION**
***Defamation***
***Defendant Helfand***

375.     Defendant Helfand acting together with his co-Defendants, acting in concert as joint tortfeasors, jointly and severally, and individually, has defamed Mr. Reed by knowingly, intentionally, willfully, recklessly, grossly negligently, and/or negligently publishing statements of and concerning the Plaintiff which they knew or should have known to be false and misleading.

376.     Defendant Helfand made the following defamatory statement: **"LIV needs a public investment fund to sportswash its association with Patrick Reed**."

377.     Defendant Helfand's defamatory publications are not privileged in any way or manner.

378.     The false, defamatory and misleading publications of and concerning Mr. Reed were widely published and the falsity of the statements caused injury to Mr. Reed.

379.     Defendant Helfand acted with actual malice because he knew or had reason to know that the publications were false and misleading, and/or at a minimum acted with a reckless disregard for the truth.

380.    These false, malicious, and defamatory statements have caused irreparable harm to Mr. Reed, his goodwill and reputation and financially in his trade and profession as a professional golfer, as a businessman, and personally.

381.    While these statements in particular are clearly defamatory, the publications in general and as a whole are defamatory as well, since "a publication must be considered in its totality. 'The court must consider all the words used, not merely a particular phrase or sentence.'" *Byrd v. Hustler Magazine*, 433 So. 2d 593, 595 (Fla. Dist. Ct. App. 1983).

**THIRTY-FOURTH CAUSE OF ACTION**
*Defamation by Implication*
*Defendant Helfand*

382.    Defendant Helfand acting together with his co-Defendants, acting in concert as joint tortfeasors, jointly and severally, and individually, has defamed Mr. Reed by knowingly, intentionally, willfully, recklessly, grossly negligently, and/or negligently publishing statements of and concerning Mr. Reed which they knew or should have known to be false and misleading.

383.    Defendant Helfand made the following defamatory statement: **"LIV needs a public investment fund to sportswash its association with Patrick Reed**."."

384.    Defendant Helfand's defamatory publications of and concerning Mr. Reed are not privileged in any way or manner.

385.    Defendant Helfand, acting together with his co-Defendants, acting in concert as joint tortfeasors, jointly and severally, and individually, published false statements of and concerning Mr. Reed and these statements were defamatory in that they created a false impression of Mr. Reed.

386.    Defendant Helfand, acting together with his co-Defendants, acting in concert as joint tortfeasors, jointly and severally, and individually, juxtaposed a series of facts so as to imply

a defamatory connection between them or, in the alternative, created a defamatory implication by omitting facts when describing the nature and sequence of events.

387.    A reasonable person would understand Defendant Helfand's statements to impart the false innuendo, which would be highly offensive to a reasonable person.

388.    Defendant Helfand acting together with his co-Defendants, acting in concert as joint tortfeasors, jointly and severally, and individually, intended or endorsed the defamatory inferences that the published statements created, and these false, defamatory and misleading statements were made with actual malice.

389.    Defendant Helfand acted with actual malice because he knew or had reason to know that the publications were false and misleading, and/or at a minimum acted with a reckless disregard for the truth.

390.    These false, malicious, and defamatory statements have caused irreparable harm to Mr. Reed, his goodwill and reputation and financially in his trade and profession as a professional golfer, as a businessman, and personally.

391.    While these statements in particular are clearly defamatory, the publications in general and as a whole are defamatory as well, since "a publication must be considered in its totality. 'The court must consider all the words used, not merely a particular phrase or sentence.'" *Byrd v. Hustler Magazine*, 433 So. 2d 593, 595 (Fla. Dist. Ct. App. 1983).

**THIRTY-FIFTH CAUSE OF ACTION**
*Defamation Per Se*
*Defendant Helfand*

392.    Defendant Helfand, acting together with his co-Defendants, acting in concert as joint tortfeasors, jointly and severally, and individually, has defamed Mr. Reed by knowingly,

intentionally, willfully, recklessly, grossly negligently, and/or negligently publishing statements of and concerning Mr. Reed which they knew or should have known to be false and misleading.

393. Defendant Helfand made the following defamatory statement: **"LIV needs a public investment fund to sportswash its association with Patrick Reed**."."

394. Defendant Helfand's defamatory publications are not privileged in any way or manner.

395. The false, defamatory and misleading nature of Defendant Helfand's publications of and concerning Plaintiff caused Mr. Reed ridicule, hatred, disgust and contempt in his trade and profession as a professional golfer.

396. The false, defamatory and misleading publications were made with actual malice.

397. Defendant Helfand acted with actual malice because he knew or had reason to know that the publications were false and misleading, and/or at a minimum acted with a reckless disregard for the truth.

398. These false, malicious, and defamatory statements have caused irreparable harm to Mr. Reed, his goodwill and reputation and financially in his trade and profession as a professional golfer, as a businessman, and personally.

399. While these statements in particular are clearly defamatory, the publications in general and as a whole are defamatory as well, since "a publication must be considered in its totality. 'The court must consider all the words used, not merely a particular phrase or sentence.'" *Byrd v. Hustler Magazine*, 433 So. 2d 593, 595 (Fla. Dist. Ct. App. 1983).

<u>**THIRTY-SIXTH CAUSE OF ACTION**</u>
*Tortious Interference*
*Defendant Helfand*

400.    Mr. Reed had ongoing contractual relationships with sponsors whereby Mr. Reed was to promote his sponsor's goods in exchange for financial benefit, as well as prospective contractual relationships with sponsors.

401.    As a result of Defendant Helfand's intentional and unjustified interference, Mr. Reed experienced the loss of multiple multi-million dollar sponsorship deals that were not or have not been renewed including, but not limited to Titleist, Nike, Ultimate Software, cbdMD, Callaway, Tax Slayer, Perry Ellis, NetJets, and ETS as well as numerous promising prospective sponsorship and business opportunities that did not come to fruition as a direct and proximate result including, but not limited to companies such as Quicken Loans, Draft Kings, Travelers, DOW, ARAMCO, CISCO, Porsche, Wells-Fargo, ROUSH, Zurich, Perry Ellis, Waste Management, Citi Bank, Houston Tourism, Taylormade, Bettinardi, and SRIXON.

402.    Defendant Helfand knew of the ongoing business relationships between Mr. Reed and his sponsors as well as the prospective contractual relationships between Mr. Reed and sponsors.

403.    Defendant Helfand willfully and intentionally and vindictively interfered with these ongoing business relationships and prospective business relationships and/or contracts by spreading lies of and concerning Mr. Reed in order to destroy his reputation, and to induce sponsors to break their contractual relationships with Mr. Reed.

404.    As a direct and proximate result of Defendant Helfand's  actions, Mr. Reed has suffered severe financial damages and had his ongoing contractual relationships with his sponsors terminated, and his prospective contractual relationships with sponsors never came to fruition, and ongoing and prospective contractual relationships terminated due to this intentional and unjustifiable interference by Defendant Helfand.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment against each Defendant, jointly and severally, as joint tortfeasors as follows:

(a)    For general (non-economic), special (economic), actual and compensatory damages in an amount to be determined by the jury in an amount in excess of $820,000,000.00 U.S. dollars, as well as injunctive relief;

(b)     For consequential damages in a sum reasonable to a jury;

(c)    For punitive damages in an amount to be determined by the jury to punish and impress upon Defendants the seriousness of their conduct and to deter similar conduct in the future;

(d)    For attorneys' fees, expenses and costs of this action, and;

(e)    For such further relief as this Court deems necessary, just and proper.

## **<u>DEMAND FOR TRIAL BY JURY</u>**

Plaintiff Patrick Nathaniel Reed demands a trial by jury on all counts as to all issues so triable.

**Dated**: December 16, 2022                                      Respectfully submitted,

*/s/ Larry Klayman, Esq.*
Larry Klayman, Esq.
Fla. Bar No. 246220
Klayman Law Group, P.A.
7050 W. Palmetto Park Rd
Boca Raton, FL, 33433
Tel: 561-558-5336
Email: leklayman@gmail.com

*Counsel for Plaintiff*

**<u>CERTIFICATE OF SERVICE</u>**

I, Larry Klayman, hereby certify that on this day, December 16, 2022, I electronically filed the foregoing with the Clerk of Court using the Court's ECF procedures. I also certify that the foregoing document is being served this day on all counsel of record through the Court's eservice procedures.

*/s/ Larry Klayman*
