## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

PATRICK NATHANIEL REED,          Case No. 3-22-CV-01059-TJC-PDB

   Plaintiff,

vs.

BRANDEL CHAMBLEE, et al.,

  Defendants.

## MOTION TO DISMISS AMENDED COMPLAINT

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Section 768.295, Florida Statutes, Defendants Brandel Chamblee, Damon Hack, Benjamin Bacon, Eamon Lynch, and TGC, LLC d/b/a The Golf Channel (collectively, "Defendants") ask the Court to dismiss with prejudice Plaintiff Patrick Reed's Amended Complaint. As shown below, the Amended Complaint states no plausible claim for relief and violates Florida's anti-SLAPP statute. For these reasons, the Amended Complaint fails as a matter of law, and Defendants are entitled to recover their attorneys' fees incurred while defending against this meritless suit.

## INTRODUCTION

Patrick Reed is a professional golfer who plays for LIV Golf ("LIV"), a Saudi Arabian-owned professional golf tour embroiled in an antitrust lawsuit against the American-based PGA Tour (the "Tour"). *See generally* Am. Compl.

¶¶ 19–37; *Mickelson et al. v. PGA Tour, Inc.*, 5:22-CV-04486-BLF (N.D. Cal. 2022). As a proxy skirmish in the ongoing war between LIV and the Tour, Reed filed the instant defamation suit against several professional golf commentators who have criticized the Saudi government's use of LIV to allegedly "sportswash" its dubious record on human rights.

But Reed's suit—which cites two sets of allegedly defamatory statements—lacks merit. The first set of statements is not about Reed. The second set is barred by the statute of limitations. And both sets are protected opinions, not actionable statements of objective fact. Finally, Reed has not met the daunting standard of actual malice demanded of public figures.

## BACKGROUND

Reed first filed this defamation suit in the Southern District of Texas on August 16, 2022 (the "Texas Suit"). *See* Declaration of Minch Minchin, Exh. 9 ("Minchin Decl.").[1] He then voluntarily dismissed his complaint and re-filed in this Court—adding a few defendants and allegations—on

---

[1] This motion references several documents—attached to the Minchin Declaration, which is filed contemporaneously herewith—that may be considered by the Court without converting the motion into a motion for summary judgment. **Exhibits 1-8** (with accompanying subparts as appropriate) encompass the Publications at issue, which the Court may consider because they are referenced in and central to the allegations in the Amended Complaint. *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). **Exhibit 9** is Reed's original pleading in the Southern District of Texas, which is central to the allegations here (and its authenticity is not in dispute). *See Nix v. ESPN, Inc.*, 1:18-CV-22208, 2018 WL 8802885, at *6 (S.D. Fla. Aug. 30, 2018). **Exhibits 10(a)–10(d)** are articles concerning Reed, which pertain to his status as a public figure. *See Turner v. Wells*, 879 F.3d 1254, 1272 n.5 (11th Cir. 2018). Courtesy copies of all exhibits will be provided to the Court.

September 28, 2022. (D.E. 1). Following a *sua sponte* dismissal by the Court, Reed filed the operative Amended Complaint on December 16, 2022, again adding new defendants and tinkering with the causes of action. (D.E. 28).

The Amended Complaint cites eight allegedly defamatory Publications (collectively, the "Publications"), appearing via television broadcast, online article, podcast, and Twitter. The Publications fall into two categories. The bulk of them—Publications 1–3 and 6–8, described in Paragraphs 57–75 and 89–110—concern LIV (the "LIV Publications"). Publications 4 and 5, described in Paragraphs 76–88, concern an incident involving Reed that occurred at the Farmers Insurance Open tournament in San Diego, California in January 2021 (the "FIO Publications").

The six LIV Publications include more than 20 statements about LIV and its ties to Saudi Arabia and Saudi Crown Prince Mohammed bin Salman ("bin Salman"). Particularly, Reed complains that the LIV Publications compare bin Salman to Vladimir Putin, Adolf Hitler, and Mao Tse Tung and aver that bin Salman is an "evil," "murderous dictator" who directs "thugs," commits "atrocities," "murdered, butchered, and dismembered a dissenting journalist," and operates a "tyrannical," "cancer[ous]," and "merciless" regime comparable to South Africa under apartheid. *See generally* Am. Compl. ¶¶ 57–75, 89–110; Minchin Decl., Exhs. 1–3, 6–8. Although none of the Defendants mention Reed in the LIV Publications, Reed complains that the

3

Publications generally describe golfers who have chosen to play for the Saudi-sponsored tournament as "greed[y]," "self-serving" "defectors" who are "taint[ing their] legacy," "destroying their reputations," playing for "blood money," and "complicit in sportswashing." *See generally* Am. Compl. ¶¶ 57–75, 89–110; Minchin Decl., Exhs. 1–3, 6–8.

The two FIO Publications include approximately seven statements concerning an incident in which Reed hovered over and then picked up his ball before calling an official to request embedded ball relief. Particularly, the FIO Publications explained that Reed did not violate any black-letter rule, but that his behavior appeared ethically questionable. *See generally* Am. Compl. ¶¶ 76–88; Minchin Decl., Exhs. 4–5.

Based on these eight Publications, the Amended Complaint includes four causes of action each against all five Defendants, as follows: Defamation (Counts 1, 4, 7, 10, 13); Defamation by Implication (Counts 2, 5, 8, 11, 14); Defamation Per Se (Counts 3, 6, 9, 12, 15); and Tortious Interference (Counts 22–26).[2] As shown below, none of these claims have merit.

---

[2] Reed's defamation by implication claim fails because he alleges the challenged statements are false, and a defamation by implication claim must be based on truthful statements. *See Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008). In any event, the same relevant analysis applies equally among Reed's primary claim for defamation as well as his claims for defamation by implication and defamation per se because the applicable defenses and constitutional considerations are common among all causes of action in Florida sounding in defamation. *See, e.g., id.* at 1107 ("All of the protections of defamation law that are afforded to the media and private defendants are therefore extended to the tort of

*Footnoted continued on next page*

## **ARGUMENT**

When evaluating a motion to dismiss under Rule 12(b)(6), a court "must accept the allegations of the complaint as true and must construe the facts alleged in the light most favorable to the plaintiff." *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994). But the court should not accept "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[N]aked assertions, devoid of further factual enhancement" also cannot survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679.

Both federal and Florida courts stress the important role courts play in quickly dismissing untenable defamation claims. *See Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016) ("application of the plausibility pleading standard makes particular sense when examining public figure defamation suits [because i]n these cases there is a powerful interest in ensuring that free speech is not unduly burdened by the necessity

---

defamation by implication"); *Stearns Bank, N.A. v. Shiraz Investments, LLC*, 8:12-CV-313, 2012 WL 3133679, at *3 (M.D. Fla. July 31, 2012) (combining the analysis for various defamation claims); *Tobinick v. Novella*, 108 F. Supp. 3d 1299, 1309 (S.D. Fla. 2015) (applying the same defenses to various defamation-related claims). For simplicity's sake, Defendants in this motion collectively refer to these three causes of action as Reed's "defamation" claim(s). The additional defamation claims also fail pursuant to Florida's single-action rule because they duplicate Reed's primary defamation claim. *See* Section III, *infra* (explaining that all additional tort claims based on the same facts and/or alleged injury as a defamation claim are precluded as a matter of law).

of defending against expensive yet groundless litigation"); *Byrd v. Hustler Mag., Inc.*, 433 So. 2d 593, 595 (Fla. 4th DCA 1983) (discussing courts' "prominent function" in disposing of meritless defamation suits). The "chilling effect" on defendants' First Amendment rights renders pretrial disposition of meritless defamation suits especially important. *Karp v. Miami Herald Publ'g Co.*, 359 So. 2d 580, 581 (Fla. 3d DCA 1978). *See also Stewart v. Sun-Sentinel Co.*, 695 So. 2d 360, 363 (Fla. 4th DCA 1997).

Moreover, Florida's anti-SLAPP statute exists to deter would-be plaintiffs from filing suits such as the instant case: meritless complaints that target the free speech rights of journalists. *See* § 768.795, Fla. Stat. To facilitate the "expeditious resolution" of such suits, Florida's anti-SLAPP law mandates a shifting of fees if the suit fails to survive any dispositive motion. *Id.* at § 768.295(4). Because, as shown below, the Amended Complaint falls within the ambit of the anti-SLAPP statute, Defendants are entitled to attorneys' fees.

## I.    Reed's defamation claim is meritless.

To state a cause of action for defamation, a plaintiff must allege: (1) a false and defamatory statement of and concerning the plaintiff; (2) an unprivileged publication to a third party; (3) fault on the part of the publisher; and (4) damages. *Mile Marker v. Petersen Publ'g, L.L.C.*, 811 So. 2d 841, 845 (Fla. 4th DCA 2002); *Thomas v. Jacksonville Television, Inc.*, 699 So.

2d 800, 803–04 (Fla. 1st DCA 1997). Here, the Amended Complaint fails to state a claim for defamation because the at-issue statements—in whole or part—are or were (a) barred by the statute of limitations, (b) not about Reed, (c) non-actionable opinion, and (d) not published with actual malice.[3]

## A. Claims regarding the FIO Publications are barred by the applicable statute of limitations.

Section 95.10, Florida Statutes, commonly known as Florida's "borrowing statute," states that "[w]hen the cause of action arose in another state or territory of the United States, or in a foreign country, and its laws forbid the maintenance of the action because of lapse of time, no action shall be maintained in this state." § 95.10, Fla. Stat. As the Florida Supreme Court explained, "The purpose of the statute is to discourage 'forum shopping' and the filing of lawsuits in Florida that have already been barred in the jurisdiction where the cause of action arose." *Celotex Corp. v. Meehan*, 523 So. 2d 141, 143 (Fla. 1988).

To determine where a tort arose—and, in turn, whether the borrowing statute requires application of another jurisdiction's statute of limitations—

---

[3] The elements of defamation under Texas law are the same as Florida's. *See In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015) ("Defamation's elements include (1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) damages."). As shown below, with respect to the substantive defenses, *i.e.*, the statements are not of and concerning Reed, the statements constitute protected opinion, and the statements were not made with actual malice, the result would be the same under either Florida or Texas law.

Florida courts employ the "significant relationships" test. *Digioia v. H. Koch & Sons, Div. of Wickes Mfg. Co.*, 944 F.2d 809, 812 (11th Cir. 1991); *Bates v. Cook, Inc.*, 509 So. 2d 1112, 1115 (Fla. 1987). Under this test, the court looks at four factors to ascertain the jurisdiction where the alleged tort arose: (a) the state where the injury occurred; (b) the state where the conduct causing the injury occurred; (c) the domicile, residence, or citizenships of the parties; and (d) the state where the relationship, if any, between the parties is centered. *Jaisinghani v. Capital Cities/ABC, Inc.*, 973 F. Supp. 1450, 1452 (S.D. Fla. 1997), *aff'd sub nom.* 149 F.3d 1195 (11th Cir. 1998).

Here, the alleged defamation regarding the FIO Statements[4] arose in Texas, which has a one-year statute of limitations for defamation, as opposed to Florida's two-year statute of limitations. *Compare* § 95.11(4)(g), Fla. Stat. *with* TX CIV. PRAC. & REM. § 16.002(a). Indeed, the State of Florida has nothing to do with the FIO Publications, which were published worldwide from Scotland and Connecticut about an incident occurring in California about a man from Texas.

### 1. The alleged injury occurred in Texas.

---

[4] Florida's borrowing statute does not apply to the LIV Publications because no conflict exists among the states' laws concerning claims filed pursuant to publications fewer than 12 months old, and Reed filed the initial pleading within a year of the LIV Publications.

The Amended Complaint does not allege that the two FIO Publications—published on January 31 and February 1, 2021—caused any injury in Florida. Instead, any alleged injury would have occurred in Texas, where Reed lives—or at least lived when the FIO Publications were published.[5] *See* Am. Compl. ¶ 3. *See also Nix v. ESPN, Inc.,* 1:18-CV-22208, 2018 WL 8802885, at *4 (S.D. Fla. Aug. 30, 2018) (finding that the first factor favored applying New York law rather than Florida law because the complaint cited to "no specific instances of harm within Florida," and any harm felt by the plaintiff would have been in New York).

### 2. *The allegedly defamatory conduct did not occur in Florida.*

Although the FIO Publications were and are available worldwide, they were not published from Florida. Publication 4 appeared in an online publication originating in Scotland (bunkered.co.uk), and Publication 5 was broadcast from TGC's studio in Stamford, Connecticut; and both FIO Publications concerned an occurrence in California. *See* Minchin Decl., Exhs.

---

[5] In the Texas Suit, Reed alleged that, as of August 2022, he was a citizen of Texas. *See* Minchin Decl., Exh. 9 at ¶ 3. *See also Nix*, 2018 WL 8802885, at *4 n.1, *6 (taking judicial notice, in a case factually similar to the instant matter, of documents filed in a related case and noting that "the Court is concerned that Plaintiff is being untruthful either to this Court or to the Southern District of New York, because in the complaint Plaintiff filed in the Southern District of New York, he alleges domicile in Texas"); *Klayman*, 2008 WL 11333055, at *4 ("as a general rule the pleadings of a party made in another action are admissible as admissions of the pleading party to the facts alleged") (cleaned up; citation omitted).

4–5. *See also Nix*, 2018 WL 8802885, at *4 (finding the second factor weighed in favor of applying New York law because at-issue article featured a New York dateline). Thus, none of the allegedly defamatory conduct as to the FIO Publications occurred in Florida. In fact, in the Texas Suit, Reed alleged that "a substantial part of the events or omissions giving rise to Plaintiff's claim occurred" in the Southern District of Texas. *See* Minchin Decl., Exh. 9 ¶ 2.

### 3. The parties are located in multiple states.

The Amended Complaint correctly states that none of the Defendants are citizens of Florida. Am. Compl. ¶¶ 4–8. And Reed is a citizen of Texas who alleges that he also owns a house in Florida. *Id.* ¶ 3. Yet even if Reed has moved part-time to Florida after filing the Texas Suit, this fact is "pure happenstance" in the context of where the tort allegedly occurred. *See Chapman v. DePuy Orthopedics, Inc.*, 760 F. Supp. 2d 1310, 1314 (M.D. Fla. 2011) (explaining that where parties happen to reside after the central events of a tort are irrelevant to the analysis). *See also Klayman v. Judicial Watch, Inc.*, 07-22413-CIV, 2008 WL 11333055, at *5 (S.D. Fla. Sept. 30, 2008) (weighing the third factor in favor of applying District of Columbia law because the plaintiff moved from the D.C. area to Florida after the actions giving rise to the complaint); *Jaisinghani*, 973 F. Supp. at 1453–54 (finding, where the plaintiff had residences in both California and Florida, that the

tort arose in California because the plaintiff's connections with California were stronger).

### 4. The parties' relationship was not centered in Florida.

The parties' relationship regarding the FIO Publications centered on an event that occurred on the Torrey Pines Golf Course in San Diego, California. *See* Am. Compl. ¶¶ 76–88. *See also Frey v. Minter,* 829 Fed. App'x 432, 435–36 (11th Cir. 2020) (affirming that Georgia law applied to a defamation suit filed by a Florida plaintiff because the at-issue statement concerned an event that occurred in Georgia).[6]

None of the factors favor a finding that the tort arose in Florida because Florida does not bear any relationship—much less the most significant relationship—to the FIO Publications. The state bearing the most significant relationship to the alleged tort is Texas, where Reed is a citizen and where he initially filed and then withdrew this lawsuit before re-filing in a not-so-coincidentally non-time-barred forum. *See Klayman,* 2008 WL 11333055, at *5 ("[Applying District of Columbia law] is consistent with Mr. Klayman's initial filing of his § 540.08 claim in the D.C. action and his allegation that such a claim was properly brought in that jurisdiction. Mr.

---

[6] To the extent that the Court finds the fourth factor dispositive as to where alleged defamation regarding the FIO Publications arose, California also has a one-year statute of limitations for defamation. *See* CAL. CIV. PROC. CODE § 340(c).

Klayman appears to be engaged in the very thing that Florida's borrowing statute was designed to prevent: forum shopping") (citation omitted).

Thus, Texas's relationship to the alleged tort is more significant than Florida's, and Florida's borrowing statute applies. For this reason, pursuant to TX CIV. PRAC. & REM. § 16.002(a), the last day Reed could sue for defamation about the FIO Publications was February 1, 2022. Because Reed did not file this case until September 28, 2022, the defamation claims as to the FIO Publications are time-barred and should be dismissed.

**B. The LIV Publications are not about Reed.**

As for the LIV Publications, Reed cannot state a claim because those statements are not "of and concerning" Reed. *See Rosenblatt v. Baer,* 383 U.S. 75 (1966) (explaining that the "of and concerning" element of defamation is constitutionally mandated); *McIver v. Tallahassee Democrat, Inc.*, 489 So. 2d 793, 794 (Fla. 1st DCA 1986) (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 277 (1964) for the proposition that the "of and concerning" requirement is constitutionally mandated); *Houseman v. Publicaciones Paso del Norte, S.A. DE C.V.*, 242 S.W.3d 518, 526 (Tex. App. 2007) ("Under both Florida and Texas law, an essential element of a defamation claim is that the publication is 'of and concerning' the plaintiff") (citation omitted). Only statements that are "specifically directed at the plaintiff" satisfy the constitutionally-mandated "of and concerning" element of defamation.

*Rosenblatt*, 383 U.S. at 81. *See also Horsley v. Feldt*, 304 F.3d 1125, 1136 (11th Cir. 2002) ("To be actionable, the allegedly defamatory words must refer to some ascertained or ascertainable person, and that person must be the plaintiff. A plaintiff cannot rely on rumor, innuendo, and extraneous circumstances to create an inference of defamation") (cleaned up; citations omitted). *Miller v. Twentieth Century Fox Int'l Corp.*, 29 Media L. Rep. 1087, 1091 (M.D. Fla. 2000) (explaining that the challenged words must refer "solely or especially" to the plaintiff).

Within the LIV Publications, no Defendant even mentions Reed, much less aims any statement "solely or especially" at him. *See* Minchin Decl., Exhs. 1–3, 6–8. Indeed, each of the LIV Publications refers to LIV generally— for whom scores of professional golfers have played. *Id.*; *see also* Am. Compl. ¶ 37 ("many top professional golfers . . . have decided to join LIV.") Statements about LIV are not statements about Reed.

Apparently anticipating this fundamental problem with his pleading, Reed cites to *Harwood v. Bush*, 223 So. 2d 359, 361 (Fla. 4th DCA 1969)[7] for the proposition that a publication need not specifically refer to the plaintiff "so long as [it is] understood by the listener or reader that it is of and concerning [the plaintiff]"). Am. Compl. ¶ 55. The *Harwood* opinion is

---

[7] Citations to case law are not appropriate at the pleading stage. *See, e.g., Andrew Corpus v. Depass*, 218CV665, 2020 WL 4260980, at *3 (M.D. Fla. July 24, 2020).

inapposite because it pertained to a publication's reference to a single, specific person, not a group; that is, the *Harwood* court found that readers of a ham-fisted allegory about one "Harwood the Rat" would have understood that the publication referred to the plaintiff, whose name was John Harwood. *Harwood*, 223 So. 2d at 361.

Reed does not equal LIV Golf. Thus, he must satisfy the of and concerning element under the so-called "group libel" doctrine. *See Thomas*, 699 So. 2d at 804. But the group libel doctrine is unsuitable here because it applies "only if, (a) the group or class is so small that the matter can reasonably be understood to refer to the member [of the group], or (b) the circumstances of publication reasonably give rise to the conclusion that there is particular reference to the member." *Id.* (quoting Restatement of Torts 2d § 564 (1977)). *See also Adams v. WFTV Inc.*, 691 So. 2d 557 (Fla. 5th DCA 1997) (explaining that the doctrine permits individuals within small groups—numbering no more than 25—to individually sue for defamation "when there is no specific reference to a member"); *Fraternal Order of Police v. News & Sun-Sentinel*, 12 Media L. Rep. 1619 at *2 (Fla. 17th Cir., Dec. 13, 1985) ("vague general references to a comparatively large group do not constitute actionable defamation") (citation omitted); *Harris v. Santa Fe Townsite Co.*, 125 S.W. 77, 80 (Tex. 1st Dist. Ct. 1910) (holding that a statement that a

"band of nine women" from a small town committed a crime was not defamatory because 15 women lived in the town).

More than 25 people are affiliated with LIV. *See* Am. Compl. ¶ 37. And Reed includes no facts to suggest that any reader or viewer could reasonably interpret any Publication as referring specifically to Reed, individually, more than any other person affiliated with LIV. *See Thomas*, 699 So. 2d at 805. For this reason, the Amended Complaint does not plausibly allege sufficient facts to support that the LIV Publications were of and concerning Reed—a necessary element of any defamation claim.

### C. None of the Publications are defamatory.

In any event, none of the at-issue statements is actionable because all eight Publications constitute protected, non-defamatory opinion. *See Milkovich v. Lorain J. Co.*, 497 U.S. 1, 20 (1990); *Horsley v. Rivera*, 292 F.3d 695, 701 (11th Cir. 2002); *Hallmark Builders, Inc. v. Gaylord Broad. Corp.*, 733 F.2d 1461, 1464 (11th Cir. 1984). The rationale for shielding opinions from liability is simple: "Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339–40 (1974). Whether a statement is protected opinion is a question of law for the court to

decide. *See Della-Donna v. Yardley*, 512 So. 2d 294, 295 (Fla. 4th DCA 1987); *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 639 (Tex. 2018).

A defamatory statement must be objectively falsifiable. *See Santilli v. Van Erp*, 8:17-CV-1797, 2018 WL 2172554, at *5–6  (M.D. Fla. Apr. 20, 2018) (calling an academic a "fringe scientist," "mad professor," and "cunning scam artist" was opinion because such statements are not objective or falsifiable). In other words, if a statement is not readily capable of being proven false, it is protected by the First Amendment. *See Turner v. Wells*, 879 F. 3d 1254, 1262 (11th Cir. 2018); *see also Horsley*, 292 F.3d at 701 (noting that the First Amendment protects non-literal assertions of fact and rhetorical or hyperbolic statements that cannot reasonably be interpreted as stating actual facts). "This [protection] provides assurance that public debate will not suffer for lack of imaginative expression or the rhetorical hyperbole [that] has traditionally added much to the discourse of our Nation." *Milkovich*, 497 U.S. at 20.

And even when a publication asserts an objectively falsifiable fact, "statements of pure opinion are protected from defamation actions by the First Amendment." *Turner*, 879 F. 3d at 1262. "Under Florida law, a defendant publishes a 'pure opinion' when the defendant makes a comment or opinion based on facts which are set forth in the publication or which are otherwise known or available to the reader or listener as a member of the

16

public." *Id.*; *see also Rasmussen v. Collier Cty. Publ'g Co.*, 946 So. 2d 567, 571 (Fla. 2d DCA 2006) ("Commentary or opinion based on facts that are set forth in the article or which are otherwise known or available to the reader or listener are not the stuff of libel"); *Dallas Morning News*, 554 S.W.3d at 624 ("If a statement is not verifiable as false, it is not defamatory. Similarly, even when a statement *is* verifiable as false, it does not give rise to liability if the entire context in which it was made discloses that it is merely an opinion masquerading as a fact") (citations omitted).

In short, a publication's spin, grounded in the author's opinion of the facts or imaginative expression, is not actionable. *See Turner*, 879 F.3d at 1264–66 (finding that the statements that the plaintiff engaged in "homophobic taunting" and exercised "poor judgment" is protected opinion based on the known, disclosed facts); *Colodny v. Iverson, Yoakum, Papiano & Hatch*, 936 F. Supp. 917, 924 (M.D. Fla. 1996) (stating that an author's book was a "fraud" is pure opinion); *Demby v. English*, 667 So. 2d 350, 354 (Fla. 1st DCA 1995) (accusing an animal control director of being "inhumane" and "unreasonable" is pure opinion); *Zorc v. Jordan*, 765 So. 2d 768 (Fla. 4th DCA 2000) (alleging that a mayor "influence[d]" property values and engaged in "illegal" behavior is protected opinion). Here, both the LIV and FIO Publications are pure opinions based on plainly disclosed facts and constitute the type of colorful expression protected by the First Amendment.

17

### 1. The LIV Publications are protected opinions.

The approximately 20 statements within the six LIV Publications concern LIV and its financial ties to Saudi Arabia and bin Salman. Particularly, the statements within the LIV Publications compare bin Salman to other totalitarian heads of state and aver that bin Salman is an "evil," "murderous dictator" who directs "thugs," commits "atrocities," "murdered, butchered, and dismembered a dissenting journalist," and operates a "cancer[ous]," "tyrannical" regime comparable to South Africa under apartheid. Am. Compl. ¶¶ 57–75, 89–110; Minchin Decl., Exhs. 1–3, 6–8. The LIV Publications further opine that golfers who choose to play for the Saudi-sponsored golf league are "greed[y]," "self-serving" "defectors" who are "taint[ing their] legacy," "destroying their reputations," playing for "blood money," and "complicit in sportswashing." *Id.*

Although Reed may take offense to these statements, they constitute the type of non-literal, hyperbolic social discourse tolerated by the First Amendment. To be sure, courts routinely find that even highly insulting statements are not actionable. *See, e.g.*, *Horsley*, 292 F.3d at 701–02 (finding that a statement on national television that the plaintiff, anti-abortion activist, was "an accomplice to murder" was rhetorical hyperbole); *Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1373–85 (S.D. Fla. 2006) (calling a member of rival basketball team a "thug," "thugged out," "a vacant lot," a

18

"meaningless mass," and "gangstas or wankstas" was rhetorical hyperbole); *Pullum v. Johnson*, 647 So. 2d 254, 257 (Fla. 1st DCA 1994) (calling the plaintiff a "drug pusher" was rhetorical hyperbole).

Moreover, Reed does not deny that Saudi Arabia—*vis-à-vis* bin Salman's management of the Saudi Public Investment Fund—owns and finances LIV. *See* Am. Compl. ¶ 28. Nor does he deny Defendants' factual assertions regarding the Saudi government's and bin Salman's atrocities. Instead, Reed takes exception to Defendants' political opinion that LIV golfers' acceptance of millions of dollars from a totalitarian regime is immoral.[8]

This is the stuff of pure opinion.

The disclosed fact is that bin Salman's regime has committed atrocities. The derivative opinion is that golfers who choose to take money from bin Salman are tainting their legacy and behaving greedily. These statements

---

[8] The thrust of Reed's argument is that Defendants' opinions about Saudi Arabia are defamatory because the Saudi Public Investment Fund supports other entities besides LIV (which Defendants have not publicly denounced), and other sports entities are also associated with totalitarian regimes (which Defendants have not publicly denounced). *See* Am. Compl. ¶¶ 41–45. *See also id.* at ¶ 60 (bemoaning Defendants' silence about the NBA's and Lebron James's "intricate" association with China, "whose government is accused of a current and ongoing genocide.") This argument is vacuous. It posits that a defendant cannot proffer an opinion unless he also provides comprehensive opinions about all related topics, to the satisfaction of the plaintiff's sensibilities. *Cf. League of Women Voters of Florida, Inc v. Lee*, 4:21CV186, 2022 WL 610400, at *5 (N.D. Fla. Jan. 4, 2022) ("Whataboutism, however, is not an argument."). Reed's reference to the NBA and China also underscores the inherent, non-actionable subjectivity regarding moral and political statements. *See, e.g., Monitor Patriot Co. v. Roy*, 401 U.S. 265, 275–76 (1971) ("in the realm of political belief the tenets of one man may seem the rankest error to his neighbor") (citation omitted).

are quintessential, non-actionable opinion and represent the type of colorful, imaginative language protected by the First Amendment.

### 2. *The FIO Publications are protected opinions.*

The two FIO Publications are likewise not defamatory. Publication 5 is a 13-minute video in which Defendants Shane Bacon and Damon Hack discussed an incident at the Farmers Insurance Open during which Reed hovered over and then picked up his ball before calling an official to request embedded ball relief. Am. Compl. ¶¶ 83–88; Minchin Decl., Exh. 5. Publication 5 begins with an explanation of United States Golf Association Rule 16.4, which is the relevant provision regarding embedded ball relief. *Id.* The segment then transitions to a video of the incident in question; commentary about the rule and incident from the senior tournament official; and an explanation from Reed himself about the incident. *Id.*

In light of the above facts, Bacon and Hack then opine that even though Reed did not appear to break any rules, they were uncomfortable with Reed's behavior around the ball because it lacked transparency and looked bad "optically," especially in light of Reed's questionable "history," including brushing away sand from around his ball during a 2019 tournament in the Bahamas (for which video evidence was provided in Publication 5, showing Reed raking sand from behind his ball, and for which Reed, at the time,

received a two-stroke penalty) and Reed's expulsion from the University of Georgia (a fact that Reed does not deny in the Amended Complaint). *Id.*

As with the LIV Publications, this is a textbook example of disclosing relevant facts—a video of the incident; Reed's explanation; the relevant rule; commentary from a rules official; and Reed's incontrovertible history—and providing an opinion based on these disclosed facts: that Reed's behavior around the ball appeared questionable. The position that another person's action appears questionable is not a falsifiable statement of fact.

Similarly, the statements within Publication 4 constitute Defendant Brandel Chamblee's opinions about the incident: that Reed's hovering appeared questionable and unethical based on the facts disclosed elsewhere in the article—*i.e.,* that many other current and former players questioned the incident; that the ball in question bounced, which *per se* precludes granting embedded ball relief; and that Reed palmed the ball and prodded the hole before an official could inspect either. Am. Compl. ¶¶ 76–82; Minchin Decl., Exh. 4.

In sum, because all eight Publications plainly disclose relevant facts and provide non-actionable commentary, Reed's defamation counts should be dismissed with prejudice. *See Stembridge v. Mintz*, 652 So. 2d 444, 447 (Fla. 3d DCA 1995).

**D. Reed has failed to plead the requisite fault standard.**

In a defamation action, a plaintiff must allege facts to show the defendant acted with the requisite degree of fault. Where, as here, the plaintiff is a public figure, he must plausibly allege facts to show the defendant published the challenged statements with actual malice, *i.e.*, that the defendant knew he was lying or acted with a reckless disregard for whether his statements were false. *New York Times v. Sullivan*, 376 U.S. 254 (1964); *Rasmussen*, 946 So. 2d at 570. *See also Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 56 (1988) (explaining that the actual malice "standard is necessary to give adequate 'breathing space' to the freedoms protected by the First Amendment"). Reed did not plausibly plead the required fault standard.

### 1. *Reed is a public figure.*

Whether Reed is a public figure is a question of law for the court, *Mile Marker*, 811 So. 2d at 845; *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998), and should be determined on a motion to dismiss. *See Turner*, 879 F.3d at 1271; *Michel*, 816 F.3d at 706. Two types of public figures exist. First, general-purpose public figures are those who, by reason of general fame or notoriety, must prove actual malice in all cases. *Turner*, 879 F.3d at 1271. Second, limited-purpose public figures thrust themselves into a particular controversy and must show actual malice only with respect to statements related to the controversy. *Id*; *WFAA-TV*, 978 S.W. 2d at 572.

22

Here, Reed's position as a champion of The Masters, a nine-time PGA Tour champion, and "a top player in the world" who "proudly represent[s] the United States worldwide" conclusively establishes his status as a public figure. *See* Am. Compl. ¶ 15. *See also Turner*, 879 F.3d 1272–73 (counting cases for the proposition that professional athletes are public figures); *Marcone v. Penthouse Int'l Magazine for Men*, 754 F.2d 1072, 1083 (3d Cir. 1985) (noting "sports figures are generally considered public figures because of their position as athletes").[9]

### 2. *Reed failed to plausibly plead actual malice.*

Because Reed is a public figure, his defamation claims will be dismissed unless he meets the "daunting" standard of actual malice. *Klayman v. City Pages*, 5:13-CV-143, 2015 WL 1546173, at *13 (M.D. Fla. April 3, 2015); *Michel*, 816 F.3d at 702. Actual malice occurs only when a defendant "actually entertained serious doubts as to the veracity of the published account, or was highly aware that the account was probably false." *Michel*, 816 F.3d at 703. Even proof of "highly unreasonable conduct constituting an extreme departure from the standards of investigation and

---

[9] All eight Publications pertain to Reed's conduct as a professional golfer: (1) his involvement in the controversial LIV; and (2) his actions with respect to an embedded ball at a tournament. Reed's controversial and questionable history has long been the subject of public scrutiny. *See* Minchin Decl., Exhs. 10(a)–10(d). At a minimum, Reed is a limited-purpose public figure because he voluntarily placed himself in a position—and acted in a manner—that invited public scrutiny and comment. *See Silvester v. Am. Broad. Co.*, 839 F.2d 1491, 1494 (11th Cir. 1988).

reporting ordinarily adhered to by responsible publishers" will not establish actual malice. *Harte-Hanks Communications, Inc. v. Connaughton,* 491 U.S. 657, 665 n.5 (1989) (citation omitted). *See also Michel*, 816 F.3d at 703 ("[A] failure to investigate, standing on its own, does not indicate the presence of actual malice") (citation omitted); *Klayman*, 2015 WL 1546173, at *16 (rejecting the argument that defendants' failure to contact plaintiff prior to publication established actual malice). Rather, a plaintiff is required to allege facts showing that a defendant purposefully avoided further investigation with the intent to avoid the truth. *Id.*

Reed's allegations related to the Publications are slim. With respect to the LIV Publications, the only potentially relevant allegations are that LIV and the Tour are rivals, and, in turn, that Defendants are associated with the Tour. Am. Compl. ¶¶ 19–37. Regarding the FIO Publications, Reed argues that actual malice occurred because Defendants downplayed or did not include allegedly exculpatory facts. *Id.* at ¶¶ 82–88. And Reed also argues that Defendants' refusal to issue a retraction constituted actual malice. *Id.* at 133. None of these allegations, if true, demonstrate that any Defendant entertained serious doubts about the veracity of any Publication.

Reed's primary argument regarding actual malice is the allegation that Defendant Chamblee has a history of "maliciously defaming" Reed. Am Compl. ¶¶ 120–31. But none of the incidents alleged as a "continuing course

of conduct of malicious[] defam[ation]" pertain to any at-issue statement.[10] *See* Am Compl. ¶¶ 120–31. The only discernable reason to include them is an attempt to establish that Chamblee has ill will toward Reed. Yet even taking these allegations at face value, the actual malice standard is not satisfied "merely through a showing of ill will or 'malice' in the ordinary sense of the term." *Harte-Hanks*, 491 U.S. at 666.

Likewise, the rivalry between LIV and the Tour, and Defendants' connections to the Tour, is scarcely relevant to whether any Defendant seriously doubted the truth of any challenged statement. Again, ill will, bias and motive cannot establish actual malice. *See Don King Prods., Inc. v. Walt Disney Co.*, 40 So. 3d 40, 45 (Fla. 4th DCA 2010) (finding "intention to portray a public figure in a negative light, even when motivated by ill will or evil intent, is not sufficient to show actual malice unless the publisher intended to inflict harm through knowing or reckless falsehood"); *Donald J. Trump for President, Inc. v. CNN Broad., Inc.*, 500 F. Supp. 3d 1349, 1357 (N.D. Ga. 2020); (finding that allegations that the defendants had "malicious motive" and a "record of malice and bias against the President" were conclusory and insufficient to establish that a statement was made with

---

[10] The purportedly "malicious" statements are also consistent with other media accounts of Reed's checkered history. *See* Minchin Decl., Exhs. 10(a)–10(d). *See also Jacoby v. Cable News Network, Inc.*, 21-12030, 2021 WL 5858569, at *4 (11th Cir. Dec. 10, 2021) (noting, within the actual malice analysis pursuant to a motion to dismiss, corroborating media accounts).

knowledge that it was false or with reckless disregard of whether it was false).

And a defendant's failure to include allegedly exculpatory information has no bearing on the analysis because a defendant is "not required to balance its reporting with potentially mitigating factors so long as the reporting [does] not purposely make false statements." *Readon v. WPLG, LLC*, 317 So. 3d 1229, 1236 (Fla. 3d DCA 2021) (cleaned up). *See also Jacoby v. Cable News Network, Inc.*, 21-12030, 2021 WL 5858569, at *5 (11th Cir. Dec. 10, 2021) ("[plaintiff] is not entitled to having Defendants credit his preferred sources of information or structure its articles in the manner that he desires").

Nor does a defendant's decision to either publish a statement denied by a plaintiff or decline a retraction constitute actual malice. *See Jacoby v. Cable News Network, Inc.*, 537 F. Supp. 3d 1303, 1311 (M.D. Fla. 2021) (finding that the allegation that defendants ignored plaintiff's prepublication warnings and denials insufficient to establish actual malice), *aff'd*, 21-12030, 2021 WL 5858569 (11th Cir.); *Dockery v. Fla. Democratic Party*, 799 So. 2d 291, 296 (Fla. 2d DCA 2001) (concluding that a publisher's failure to print denials did not constitute actual malice); *Edwards v. Nat'l Audubon Soc'y, Inc.*, 556 F.2d 113, 121 (2d Cir. 1977) ("such denials are so commonplace . . . that, in

themselves, they hardly alert the conscientious reporter to the likelihood of error").

Rather than include facts to demonstrate actual malice, Reed copied and pasted into each defamation count a bare allegation that Defendants acted with actual malice. *See* Am. Compl. ¶¶ 138, 148, 156, 163, 173, 181, 189, 199, 207, 214, 224, 232, 239, 249, 257. Yet naked allegations and the mere inclusion of the "magic words" of actual malice are insufficient. *From*, 400 So. 2d at 55. *See also Jacoby,* 2021 WL 5858569, at *5 ("[plaintiff's] brief is filled with conclusory allegations that Defendants 'published the defamatory statements with actual malice.' . . . We do not credit such allegations"). In short, because Reed pled no facts to suggest that Defendants entertained doubts about any Publication, Reed's defamation claims fail because he failed to plausibly allege the requisite standard of fault.

## II.   Reed's ancillary claims are barred under the single-action rule.

Beyond his defamation claims, Reed also filed claims of tortious interference (Counts 22–26). Yet these claims are premised on the same actions giving rise to his defamation claims. Specifically, each count describes the alleged interference as follows: "[Defendant] willfully and intentionally and vindictively interfered with these ongoing business relationships and prospective business relationships and/or contracts by spreading lies of and concerning Mr. Reed in order to destroy his reputation, and to induce

27

sponsors to break their contractual relationships with Mr. Reed." Am. Compl. ¶¶ 313, 318, 323, 328, 333. The only alleged interference was Defendants' "spreading lies" in the allegedly defamatory Publications. Thus, Florida's single-action rule bars Reed's tortious interference claims.

The single-action rule requires that whenever a plaintiff's tort claim is premised on allegedly false and defamatory speech, the claim may only be brought as defamation claim and no other tort. *Fridovich v. Fridovich*, 598 So. 2d 65, 69–70 (Fla. 1992); *see also Ovadia v. Bloom*, 756 So. 2d 137, 140–41 (Fla. 3d DCA 2000) (affirming dismissal of invasion of privacy, conspiracy, and interference claims because the single-action rule "does *not* permit multiple actions to be maintained when they arise from the same publication upon which a failed defamation claim is based"); *Klayman v. Judicial Watch Inc.*, 22 F. Supp. 3d 1240, 1256 (S.D. Fla. 2014) (dismissing tortious interference count, among others, even though the defamation claim survived summary judgment, because the interference claim was not supported by any facts independent of the facts that gave rise to the defamation claim); *Texas Beef Group v. Winfrey*, 11 F. Supp. 2d 858, 864 (N.D. Tex. 1998) (explaining that Texas's single-action rule bans "causes of action that merely duplicate the remedy of defamation and are creatively pled in an attempt to avoid the constitutional protections mandated by the First Amendment"), *aff'd,* 201 F.3d 680 (5th Cir. 2000).

The rule exists to thwart plaintiffs from pleading around the requirements of defamation law and evade affirmative defenses. *See Fridovich*, 598 So. 2d at 69–70; *Orlando Sports Stadium v. Sentinel Star Co.*, 316 So. 2d 607, 609 (Fla. 4th DCA 1975). *See also Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 208 (Fla. 4th DCA 2002) ("The rule is designed to prevent plaintiffs from circumventing a valid defense to defamation by recasting essentially the same facts into several causes of action all meant to compensate for the same harm") (citation omitted).

Courts must consider the essence of the wrongful conduct alleged, not the plaintiff's label of the claim. *Orlando Sports Stadium,* 316 So. 2d at 609. Thus, if a tort claim is premised upon the same publication as the defamation action, or the tort claim attempts to remedy the same alleged harm as the defamation claim, the single-action rule applies, and the extraneous tort claim must be dismissed. *See Fridovich*, 598 So. 2d at 70; *Kinsman v. Winston*, 6-15-CV-696, 2015 WL 12839267, at *6 (M.D. Fla. Sept. 15, 2015); *Maletta v. Woodle*, 2:20-CV-1004, 2021 WL 1894023, at *6 (M.D. Fla. May 11, 2021).

Here, Reed presents the same facts to support all his claims: that Defendants published allegedly false and defamatory material. *See* Am. Compl. ¶¶ 313, 318, 323, 328, 333. Because Reed's tortious interference claims are merely defamation claims in disguise, each is barred by the single-

action rule and should be dismissed, regardless of whether his defamation claims stand.[11]

## III.   Defendants are entitled to anti-SLAPP fees.

Florida's anti-SLAPP law prohibits anyone from filing a suit (a) that is "without merit," (b) because the defendant "exercised the constitutional right of free speech in connection with a public issue," defined as any statement "made in or in connection with a television program, radio broadcast, . . . magazine article . . . news report, or other similar work." § 768.295(2)(a), (3), Fla. Stat.

In short, the two-part anti-SLAPP analysis conveys "a *substantive* right to immunity from abusive lawsuits that suppress First Amendment rights." *Rosenthal v. Council on Am.-Islamic Relations, Fla., Inc.*, 45 Media L. Rep. 2664, 2667 (Fla. 17th Jud. Cir. Ct. Nov. 8, 2017) (emphasis added). And because the law conveys a "substantive" (rather than a procedural) right, the law applies in both federal and state court. *See Bongino v. Daily Beast Co., LLC*, 477 F. Supp. 3d 1310, 1322–24 (S.D. Fla. 2020); *Gov't Employees Ins. Co. v. Right Spinal Clinic, Inc.*, 8:20-CV-0802, 2022 WL 2466039, at *11 (M.D. Fla. July 6, 2022). The law requires "expeditious resolution" of anti-

---

[11] The interference claims also independently fail because Reed does not plausibly allege any facts to support two elements of the tort: that Defendants (a) were aware of any specific contract and (b) specifically intended to induce one of the contractual parties to breach the contract. *See Paramount Transp. Logistics Services, LLC v. Traffic Tech, Inc.*, 2:21-CV-831, 2022 WL 861584, at *6 (M.D. Fla. Mar. 23, 2022).

SLAPP motions and holds that "[t]he court shall award the prevailing party reasonable attorney fees and costs incurred in connection with a claim that an action was filed in violation of this section." § 768.295(4), Fla. Stat.

This case meets both prongs of the statute. First, as shown above, Reed's lawsuit is "without merit." *See* § 768.295(3), Fla. Stat. The defamation claims lack merit because the challenged statements, in whole or part, are not about Reed, are not defamatory, are barred by the statute of limitations, and were not published with actual malice. And the interference claim is precluded by the single-action rule and fails on its merits.

Second, this lawsuit arises out of Defendants' exercise of their "constitutional right of free speech in connection with a public issue," *id.*, because each allegedly defamatory publication constituted a "written or oral statement that is protected under applicable law" that was "made in or in connection with" a "television program, radio broadcast, . . . magazine article . . . news report, or other similar work." § 768.295(2)(a); *see also Rosenthal*, 45 Media L. Rep. at 2668 (noting that Florida's anti-SLAPP law "includes any protected statement made in a news report" or related to a news report); *Mac Isaac v. Twitter, Inc.*, 557 F. Supp. 3d 1251, 1261 (S.D. Fla. 2021) (applying the anti-SLAPP statute to publications on Twitter related to news reports).

Under the anti-SLAPP law, an award of reasonable attorneys' fees and costs is mandatory. § 768.295(4); *Bongino v. Daily Beast Co., LLC*, 19-14472-

CIV, 2021 WL 4976287, at *4 (S.D. Fla. Feb. 9, 2021), *report and recommendation adopted*, 2021 WL 4316099 (S.D. Fla. Sept. 23, 2021). Thus, Defendants are entitled to fees and costs.[12]

## CONCLUSION

Patrick Reed sued Defendants about statements that were not about him, were time-barred, were not published with actual malice and, most importantly, were not defamatory. Moreover, his ancillary claims impermissibly duplicate his defamation claims, and the entire pleading violates Florida's anti-SLAPP statute. For these reasons, Defendants respectfully ask the court to dismiss the instant suit with prejudice and award Defendants their attorneys' fees incurred while defending this case.

Dated: January 13, 2023

Respectfully Submitted,

SHULLMAN FUGATE PLLC

*/s/ Minch Minchin*
Rachel E. Fugate (Fla. Bar No. 144029)
rfugate@shullmanfugate.com
Deanna K. Shullman (Fla. Bar No. 514462)
dshullman@shullmanfugate.com
Minch Minchin (Fla. Bar No. 1015950)
mminchin@shullmanfugate.com

---

[12] To the extent that the Court does not dismiss this case, Defendants ask the Court to strike Reed's request for punitive damages as premature and unsupported by the allegations in the pleading. *See* Am. Compl. at 100; *Klayman v. City Pages*, 5:13-CV-143, 2014 WL 12623684, at *1 (M.D. Fla. Sept. 16, 2014) (citing § 768.72, Fla. Stat.).

50 N. Laura Street, Suite 2500
Jacksonville, FL 32202
Tel: (813) 935-5098

*Attorneys for Defendants*

## LOCAL RULE 3.01(g) CERTIFICATION

I HEREBY CERTIFY that on January 5, 2023, the undersigned spoke via telephone with Reed's counsel to confer about this motion. Reed opposes the relief sought herein.

/s/ *Minch Minchin*
Minch Minchin

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 13, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.

/s/ *Minch Minchin*
Minch Minchin