**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| PATRICK NATHANIEL REED, | } |
| | } |
| Plaintiff | } |
| | } |
| v. | } **Case Number: 3-22-CV-01059-TJC-PDB** |
| | } |
| BRANDEL CHAMBLEE, TGC, LLC, | } |
| DAMON HACK, BENJAMIN BACON, | } |
| EAMON LYNCH, GOLFWEEK, & | } |
| GANNETT CO., INC., | } |
| | } |
| Defendants. | } |
| | } |
| | } |

## PLAINTIFF'S INTERIM RESPONSE TO DEFENDANTS' NOTICE OF FILING OF SERVICE

Plaintiff, Patrick Nathaniel Reed, hereby files an Interim Response to Defendants' Notice of Filing of Service to advise this honorable Court of the following:

1.  First, Defendants' Notice of Filing of Proof of Service of March 1, 2023, falsely states "Defendants file the instant notice **in light of Plaintiff's new allegation** – appearing in Plaintiff's Motion for Leave to File a Reply (D.E. 48 at 1) – that he never received a USB flash drive from defense counsel." (Emphasis added). To the contrary, all of Plaintiff's pleadings on the ex parte submission of a USB flash drive made it clear from the very first pleading with regard to this matter, styled *Reed vs. Chamblee, et. al, Civil Action No. – 3:22-cv-01059 (M.D. Fl.),* filed on January 27, 2023, many weeks ago, that his undersigned counsel never received this or the other documents improperly sent to chambers. See *Plaintiff Patrick Nathaniel Reed's Motion to Return to Defendants'*

*Counsel USB Drive and Documents Submitted By Defendants' Counsel to Court Ex Parte Concerning Defendants' Motion to Dismiss and Other Appropriate Relief at page 5, Exhibit 1, Attachment*. This is yet another example of Defendants counsel,  Mr. Minch Minchin, not being honest with this honorable Court.

2. This type of conduct previously arose early in this case when Mr. Minchin failed to disclose to this honorable Court that a condition for Plaintiff's counsel agreeing to an extension of the page limit for his motion to dismiss, was that he would advise this honorable Court that Defendants had agreed that in exchange  Plaintiff would receive  a similar extended page limit. This failure to disclose caused Plaintiff to have to file a pleading, with loss of time and expense, to straighten this failure to disclose out. See Id. Exhibit A.

**3.** The Defendants Notice of Filing Proof of Service by Mr. Minchin of May 1, 2023, is simply not true, as  Mr. Minchin to date has never sent the USB flash drive to Plaintiff's counsel. Plaintiff Reed will be submitting proof of this through affidavits and also a showing that the alleged FedEx verification appears to be manufactured, many weeks after the fact  and is not authentic. In addition, this does not explain why to date Mr. Minchin has not sent Plaintiff's counsel the USB flash drive and other unauthenticated, irrelevant and prejudicial documents sent ex parte to chambers, which would have avoided all of the interim pleadings, notwithstanding the established black letter law that materials extraneous to the Amended Complaint are not to be considered with regard to a Federal Rule of Civil Procedure 12 (b)(6) motion to dismiss, *Alan Dershowitz v. Cable News Network, Inc. 0-20-CV-61872-AHS (S.D. Fl)*.   See Exhibit B. **The failure for many weeks to send the USB flash drive and other materials creates a strong**

**presumption that Mr. Minchin does not want Plaintiff's counsel to know what was sent ex parte to chambers. And, incredibly Plaintiff's counsel still does not have the USB flash drive and other materials!**

4. Finally, during a case management conference with the real lead counsel for Defendants, Deanne Kendall Shullman, on March 2, 2023, Plaintiff's counsel joked that Mr. Minchin has never appeared as lead counsel in the case other than as a front to sign pleadings, suggesting that this was Defendants strategy given that Mr. Minchin has admittedly worked for this Court in the past, as advertised on his firm's website. When Plaintiff's counsel asked Ms. Shullman why Mr. Minchin was not on the call, as he has been absent notably from all others, he was told that "Mr. Minchin was on vacation;" 'yet one day prior he filed the false notice at issue.

5. In a related case, Reed v. Ryan et. al, *Reed vs. Ryan, et. al, Civil Action No. – 3:22-cv-01181 (M.D. Fl.)*, apparently mimicking and taking a page from the improper conduct of Mr. Minchin and his firm, counsel for Defendants, Brandel Chamblee, The Golf Channel, LLC., Damon Hack, Benjamin Bacon, Eamon Lynch, Golfweek, and Gannett CO., Inc., Mr. Jeremy Chase of the out of state counsel of New York City law firm Davis, Wright LLP, for Defendants **Shane Ryan, Hachette Book Group and NYP Holdings**, also sent materials to this honorable Court in chambers. See Exhibit C. As this practice is improper, Plaintiff Reed respectfully requests that this honorable Court hold a brief telephone conference with counsel or issue an order for all parties in both cases to make it clear that this is unacceptable and prohibited, as previously briefed, and that all counsel should abide by the rules and established practice.

Dated: March 6, 2023

Respectfully Submitted**,**


By:/s/ Larry Klayman
Larry Klayman, Esq.
Klayman Law Group, P.A.
Florida Bar No.: 246220
7050 W. Palmetto Park Rd
Boca Raton, FL, 33433
Tel: 561-558-5536
leklayman@gmail.com

*Counsel for Patrick Nathaniel Reed*

# PLAINTIFF'S

# EXHIBIT

# A

**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| PATRICK NATHANIEL REED, | } |
| | } |
| Plaintiff | } |
| | } |
| v. | } **Case Number: 3-22-CV-01059-TJC-PDB** |
| | } |
| BRANDEL EUGENE CHAMBLEE, et al | } |
| | } |
| Defendants. | } |
| | } |
| | } |
| | } |
| | } |
| | } |

**PLAINTIFF PATRICK NATHANIEL REED'S MOTION TO RETURN TO
DEFENDANTS' COUNSEL USB DRIVE AND DOCUMENTS SUBMITTED BY
DEFENDANTS' COUNSEL TO COURT EX PARTE CONCERNING DEFENDANTS'
MOTION TO DISMISS AND OTHER APPROPRIATE RELIEF**

Plaintiff Patrick Reed ("Mr. Reed" or "Plaintiff") moves this honorable Court for an

order directing Mr. Minch Minchin, counsel for Defendants: Brandel Eugene Chamblee, TGC,

LLC, Damon Hack, Benjamin Shane Bacon, and Eamon Lynch, to return the USB Drive and

other documents provided ex parte to the Court in chambers with a cover letter from Minch

Minchin of January 13, 2023, as well as the other relief enumerated herein. The grounds for this

motion are as follows:

*First*, Plaintiff's experience thus far with counsel for these Defendants has regrettably

not been one of trust. Attached as Exhibit 1 is email correspondence between counsel concerning

not just the failure to advise this honorable Court of our reciprocal agreement on page lengths,

extension of time with regard to Defendants' motions to dismiss, and most importantly,

1

Plaintiff's request to be able to either view in advance the USB drive which was submitted *ex parte* to this honorable Court or to have it transcribed, authenticated, and provided a link or an original copy of the USB Drive so that Mr. Reed and his counsel could confirm that it is in fact the same USB drive that was provided to the Clerk of Court and then improperly to chambers. This would also allow Plaintiff to learn whether to challenge the authenticity, accuracy and/or completeness of the video and other materials apparently on the USB Drive. Otherwise, Plaintiff would have no way of knowing what was sent to chambers "Via FedEx Overnight Delivery" two weeks ago on January 13, 2023.

*Second*, in Defendants' Unopposed Motion for Leave to Conventionally File Audiovisual Exhibits, their counsel, Mr. Minchin, as was the case with his motion to enlarge the page limit, failed to disclose that he was sending the USB flash drive directly to the Chambers of the court. Mr. Minch Minchin recognized that this consent was granted with the condition that Plaintiff Reed reserved the right to challenge the authenticity of any USB drive and other exhibits submitted to the Court, yet he did not provide Plaintiff Reed with an original copy that was sent to the chambers, nor did their counsel give any indication as to which particular broadcasts, dates, times, lengths, and/or transcripts were presumably on the submitted USB Drive.

Plaintiff Reed did not consent to sending ex parte the USB and other exhibits to chambers, an act which apparently is not permitted by either the Local Rules or any standing order of this honorable Court. Among the exhibits for instance are also transcriptions of broadcasts, which may be incomplete or inaccurate. It goes without saying that courts have routinely excluded alleged evidence that was not properly authenticated and where, as here, a chain of custody cannot be verified. *See Garcia v. Armor Corr. Health Serv.*, Case No. 19-1351

(7th Cir., Dec. 19, 2019); *United States v. Brewer*, 915 F. 3rd 408, 416 (7th Cir. 2019) (USB Drive excluded when a party mailed a USB Drive to the district court without a proper explanation).

*Third*, not only is there neither a provision in the Local Rules nor any standing order of this honorable Court permitting parties to submit courtesy copies of USB drives or written exhibits to chambers, but this practice is frowned upon if not prohibited outright in virtually every federal court in the United States. This unilateral "FedEx Overnight Delivery" of a USB drive and the possibility of other exhibits sent directly to chambers with virtually vague references to broadcasts that have been severely damaging to Mr. Reed is a cause of great concern, since it would suggest that Defendants want the Court to consider its unauthenticated materials before Plaintiff even has the right to review them and oppose their motions to dismiss.

*Fourth*, this concern is heightened because in the past Mr. Reed and his team had obtained information from an expert forensic videographer who objectively examined all NBC Golf Channel's replayed broadcasted videos that the Plaintiff provided from a highly distinguished Television Database, TV Eyes,, and from those videos, the expert videographer determined that an original broadcast was indeed altered. In this regard, the videographer expert opined, with very good reason, if not evidence, that the Defendants not only lied about having "one camera angle" from the footage of Mr. Reed's only rules infraction in his entire career, but then took the "live" shot footage, altered, cropped and/or doctored the "live"  footage of Mr. Reed's shot. When Mr. Reed and his then-attorney requested the original copy of the "on-air" broadcast, NBC's Golf Channel refused, creating a strong presumption that the video aired on the network was altered.  Golf Channel rebroadcasted the altered video and replayed it over 13 times in 5 hours the Saturday of the Hero World Challenge, while Mr. Reed maintained the lead Saturday afternoon. From 2:38pm (the time Mr. Reed hit his third shot from the waste area) Golf

Channel had approximately 240,000 viewers and was receiving approximately $22,000 per 30 seconds of airtime, after broadcasting an altered video of Mr. Reed's live shot 13 times. And by 7:30pm that evening, Golf Channel had hit their numbers. At 7:24:51, the 13th time the altered replay was shown, they had 706,289 viewers making them extraordinary amounts of money at the expense of Mr. Reed's reputation, in contravention of the true facts. It didn't stop there, they continued on throughout the night and into the following days and weeks replaying the altered shot of Mr. Reed, thus  gaining more viewership and boosting their hits and numbers throughout President's Cup, in which Mr. Reed chosen by Tiger Woods to compete.

In fact, the following morning, during the final round of the event, Golf Channel analyst Billy Krazert said on air, "He won six times…don't bury him yet," while another Golf Channel commentator, Whit Watson, laughed and and said, "Twitter did that for us." As a direct result, Mr. Reed faced public humiliation and persecution due to these misrepresentations of fact, reckless disregard for the truth, intentional elimination of important key facts regarding the incident with the intention to inflict monetary and emotional harm to Mr. Reed. They were successful in misleading the public and sponsors. The following year, Mr. Reed lost two Major Corporate Sponsors in Nike and Ultimate Software, two companies that he had earned over approximately 120 million dollars for in Media Value for from 2018-2020 according to Darrell Survey and Nielsen Reports.[1].

---

[1] This incident, ultimately gave rise to their next attack on Mr. Reed during the 2021 Farmers Insurance Open, where Plaintiff won by a commanding five-shots at Torrey Pines, a championship golf course, only to have NBC's Golf Channel use this as an opportunity to further ruin Mr. Reed's name, reputation, and character. These Defendants used their broadcast platform to purposefully and inaccurately report a legal drop, by leaving out important factual information and mixing fact and opinion to further mislead the public and damage Mr. Reed's reputation by again falsely and with actual malice claiming that he had cheated.

All of this underscores the potential for prejudice in submitting ex parte the USB Drive and other exhibits to this honorable Court in chambers.

*Fifth*, Plaintiff Reed and his undersigned counsel therefore cannot verify that the authenticity, accuracy or completeness, and chain of custody of what is on the USB Drive, and the other exhibits provided *ex parte* to chambers are the same as the ones which have been filed with the clerk, as they have not been served in hard copy on Plaintiff's counsel in any event, as they were on this honorable Court by improperly by sending them to chambers by Defendants' counsel with their ex parte letter. Exhibit 2. Despite sending the USB Drive and exhibits "Via FedEx Overnight Delivery," on January 13, 2023, to chambers, as reflected in Mr. Minchin's cover letter, these materials were not FedExed and have yet to be received by Plaintiff's counsel to date, which now is two (2) weeks and counting.

*Sixth*, as Defendants have elected to file a Rule 12(b)(6) Motion to Dismiss with regard to Plaintiff's the Amended the Complaint – their motion states, "Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Section 768.295, Florida Statutes, Defendants Brandel Chamblee, Damon Hack, Benjamin Bacon, Eamon Lynch, and TGC, LLC d/b/a The Golf Channel (collectively, "Defendants") ask the Court to dismiss with prejudice Plaintiff Patrick Reed's Amended Complaint" - what has been pled by Mr. Reed in this Amended Complaint  must be taken as true for purposes of this Rule 12 (b)(6) motion and thus the delivering of a USB Drive and other exhibits ex parte to chambers is not relevant in any event, that is if the intent is not to try to improperly influence this honorable Court with unauthenticated, potentially altered, cropped and irrelevant matters outside of the pleadings. *Hunnings v. Texaco,* Inc., 29 F.3d 1480, 1484 (11th Cir. 1994).

*Seventh and finally*, Plaintiff Reed and his counsel are concerned that Defendants counsel, Mr. Minchin, a young lawyer with four years of legal practice, has taken such unauthorized liberties in sending ex parte a USB Drive and other alleged exhibits to chambers because of his familiarity with this honorable Court. In his biography on his firm's website Mr. Minchin, obviously to lure potential clients such as Defendants with cases in this district to retain him, he touts having worked for two federal judges in the U.S. District Court for the Middle District of Florida. After an inquiry was made by Plaintiff as to which judges Mr. Minchin worked for, he disclosed that one of them was this Court. As a result, and without casting any aspersions whatsoever on your Honor, Mr. Reed and his counsel are more than concerned that Mr. Minchin may take this as license for further "indiscretions" in the future, which could serve to prejudice Mr. Reed's rights.

WHEREFORE, prior to Plaintiff having to prepare and file oppositions to Defendants' motions to dismiss, Mr. Reed respectfully requests that this honorable Court return the hard drive and other exhibits sent ex parte to chambers. As a less satisfactory alternative, Plaintiff Reed requests that he and his counsel be able to compare the pleadings provided *ex parte* to chambers with what was also sent to the Clerk for filing, to know exactly what was provided on the USB drive and other exhibits, in order to respond fully to the motions to dismiss and to determine if other appropriate relief is required. And, importantly, Plaintiff Reed reserves his right to move to strike the USB Drive and exhibits as they are not relevant to Defendants elected and pending Rule 12 (b)(6) motion to dismiss, which must be based on what is pled in the Amended Complaint at this early pleading stage of this case, before discovery has even begun. Id.

In addition, Plaintiff Reed respectfully requests to be informed if this honorable Court has already reviewed the USB hard drive and other exhibits sent ex parte to chambers by Mr.

Minchin and, if not, respectfully requests any such review not occur given the above serious considerations, particularly since some of the submitted exhibits were intended to prejudice this honorable Court. Notwithstanding their defamatory content – Exhibits Nos. 10(a) through 10(d) – they have absolutely nothing to do with what is at issue in the Amended Complaint and show why this type of conduct is the reason Mr. Reed has had to take legal action to protect the rights of himself, his colleagues and his family.

*Last*, it is respectfully requested that Defendants counsel Mr. Minchin be ordered not to send materials ex parte to chambers in the future and to timely serve Mr. Reed's counsel with hard copy of materials such as the USB Drive and other exhibits if he sends them to the Clerk for filing.

Dated: January 27, 2023                     Respectfully submitted,

                                            By: */s/ Larry Klayman*
                                            Larry Klayman, Esq.
                                            Florida Bar No.: 246220
                                            Klayman Law Group P.A.
                                            7050 W. Palmetto Park Rd
                                            Boca Raton, FL, 33433
                                            Tel: 561-558-5536
                                            leklayman@gmail.com

                                            *Counsel for Patrick Nathaniel Reed*

## CERTIFICATE OF SERVICE

I, Larry Klayman, hereby certify that on this day, January 27, 2023 I electronically filed the foregoing with the Clerk of Court using the Court's ECF procedures. I also certify that the foregoing document is being served this day on all counsel of record through the Court's eservice procedures.

                                            */s/ Larry Klayman*

EXHIBIT 1

 **Gmail**

Oliver Peer <oliver.peerfw@gmail.com>

---

## Patrick Reed v. Chamblee et al. pre-motion conferral

**Minch Minchin** <mminchin@shullmanfugate.com>                    Wed, Jan 4, 2023 at 10:22 AM
To: "leklayman@gmail.com" <leklayman@gmail.com>
Cc: "daj142182@gmail.com" <daj142182@gmail.com>, "klayman.ecf.notifications@gmail.com"
<klayman.ecf.notifications@gmail.com>, "oliver.peerfw@gmail.com" <oliver.peerfw@gmail.com>

Good afternoon, Mr. Klayman,

Defendants Eamon Lynch, Brandel Chamblee, Damon Hack, Shane Bacon, and Golf Channel anticipate filing (a) a
Motion to Dismiss the Amended Complaint, and (b) a Motion for Conventional Filing to provide the court with a USB drive
with copies of the videos that Mr. Reed alleges are defamatory. Pursuant to M.D. Fla. local rule, please state whether you
oppose either or both

**(a):** the Motion to Dismiss

And/or

**(b):** the motion for conventional filing.

Thank you,

MM

**Minch Minchin**

**Shullman Fugate PLLC**

a WBENC certified Women's Business Enterprise

**50 N. Laura Street, Suite 2500**

**Jacksonville, Florida 32202**

**904.914.3070 | Phone**

**352.562.9756 | Mobile**

mminchin@shullmanfugate.com | shullmanfugate.com | @shullgate

Tampa | West Palm Beach | Jacksonville | Miami

**CONFIDENTIALITY NOTICE:**  The information contained in this email message is intended for the personal and confidential use of the recipient(s) designated above.  This message may contain information that is privileged, confidential and exempt from disclosure under applicable law and any unauthorized or inadvertent use, receipt, disclosure, dissemination or distribution of such information shall not waive any such privilege.  If you are not an intended recipient of this message and/or you have received this message in error, then please notify the sender.  Any unauthorized and/or unintended review, use, dissemination, distribution or reproduction of this message, or any of the information contained in it, is strictly prohibited.

 **Gmail**

Oliver Peer <oliver.peerfw@gmail.com>

## Patrick Reed v. Chamblee et al. pre-motion conferral

**Larry Klayman** <klaymanlaw@gmail.com>                                    Fri, Jan 13, 2023 at 6:32 AM
To: Minch Minchin <mminchin@shullmanfugate.com>
Cc: "klayman.ecf.notifications@gmail.com" <klayman.ecf.notifications@gmail.com>, "oliver.peerfw@gmail.com"
<oliver.peerfw@gmail.com>, Asher Anderson <asher.b.anderson@gmail.com>

Mr. Minchin:

As Plaintiff Reed has challenged the authenticity of any USB drive you may submit to the Court, we require that you
submit to us for inspection the actual USB drive which you clients intend to send to the Court before it is sent to the Court,
as we are concerned that the contents will be altered, doctored and/or cropped given their having altered video of Mr.
Reed in the past.

There is a real possibility, given the past conduct of your clients, that the USB drive will be altered, doctored and/or
cropped.

Previously, before this suit was filed, Mr. Reed had requested to view original video from your clients, but they refused;
creating a presumption that what was published and played  to the public was altered after the subject events, for which
he was falsely accused of cheating.

One way to solve this issue is to create a link to your clients' proposed videos that the Court can access and we can
access to determine whether the videos have been altered, doctored and/or cropped to distort what occurred with regard
to Mr. Reed.

Our experience with you and  clients has not been one of candor, honesty and trust, and indeed in your last pleading you
intentionally omitted agreed facts about our agreement for Mr. Reed to exceed the page limit by consent in our opposition
to your motions to dismiss, as well as to provide an additional two weeks to file them. I then had to advise the court of our
agreement to set the record straight and obtain reciprocal rights.

Please comply with this direction or we will have to move to strike the USB drive.

Thank you for your cooperation.

Larry Klayman, Esq.
Counsel for Patrick Nathaniel Reed

On Wed, Jan 4, 2023 at 10:22 AM Minch Minchin <mminchin@shullmanfugate.com> wrote:
[Quoted text hidden]



Oliver Peer <oliver.peerfw@gmail.com>

# Patrick Reed v. Chamblee et al. pre-motion conferral

**Minch Minchin** <mminchin@shullmanfugate.com>                Fri, Jan 13, 2023 at 7:34 AM
To: Larry Klayman <klaymanlaw@gmail.com>
Cc: "klayman.ecf.notifications@gmail.com" <klayman.ecf.notifications@gmail.com>, "oliver.peerfw@gmail.com"
<oliver.peerfw@gmail.com>, Asher Anderson <asher.b.anderson@gmail.com>

Good morning, Mr. Klayman,


I do not have the authority to grant you "reciprocal rights." According to local rule, the moving party must (a) ask the court for additional time or pages and (b) certify with opposing counsel whether the motion is opposed or unopposed. And on the phone, you agreed to not oppose our motion, and I agreed that if and when you moved for additional space or time, then we would not oppose. No "setting the record straight" was required because the record was already straight.


The court ordered us to file the USB drive today, so that's what we've done. Per court order, we've already mailed the USB drive, which should arrive at the court soon, as well as identical USB drives mailed to you and to other defendants' counsel, which should also arrive soon.


If you wish to challenge the authenticity of anything, feel free to do so.


MM

---

**From:** Larry Klayman <klaymanlaw@gmail.com>
**Sent:** Friday, January 13, 2023 9:33 AM
**To:** Minch Minchin <mminchin@shullmanfugate.com>
**Cc:** klayman.ecf.notifications@gmail.com; oliver.peerfw@gmail.com; Asher Anderson <asher.b.anderson@gmail.com>
**Subject:** Re: Patrick Reed v. Chamblee et al. pre-motion conferral


Mr. Minchin:

[Quoted text hidden]
[Quoted text hidden]



Oliver Peer <oliver.peerfw@gmail.com>

---

# Patrick Reed v. Chamblee et al. pre-motion conferral

**Larry Klayman** <klaymanlaw@gmail.com>                                    Fri, Jan 13, 2023 at 7:49 AM
To: Minch Minchin <mminchin@shullmanfugate.com>
Cc: Larry Klayman <klaymanlaw@gmail.com>, "klayman.ecf.notifications@gmail.com"
<klayman.ecf.notifications@gmail.com>, "oliver.peerfw@gmail.com" <oliver.peerfw@gmail.com>, Asher Anderson
<asher.b.anderson@gmail.com>

You misrepresented our agreement to the Court, as my consent was conditioned on reciprocal rights be accorded to Mr.
Reed. This was not honest and further games will not be tolerated.

As for the drive you claim to have mailed to the Court, we have no ability to confirm what you gave to the court is what
you will provide to us. Based on past experience with your clients, a presumption arises that the two drives will not be the
same and that the one provided to the court will be unauthentic, incomplete, cropped and/or doctored.

Fedex for delivery tomorrow what you sent to the court and put it on a link so it can be viewed by us today.

We reserve our right to move to strike the drive you submitted to the Court.

Govern yourself accordingly.

Larry Klayman, Esq.
[Quoted text hidden]

---

 Gmail

Oliver Peer <oliver.peerfw@gmail.com>

---

## Patrick Reed v. Chamblee et al. pre-motion conferral

**Larry Klayman** <klaymanlaw@gmail.com>                                          Fri, Jan 13, 2023 at 7:52 AM
To: Larry Klayman <klaymanlaw@gmail.com>
Cc: Minch Minchin <mminchin@shullmanfugate.com>, "klayman.ecf.notifications@gmail.com"
<klayman.ecf.notifications@gmail.com>, "oliver.peerfw@gmail.com" <oliver.peerfw@gmail.com>, Asher Anderson
<asher.b.anderson@gmail.com>

> P.S. You statement that you already sent the drive to the Court appears to be another falsehood, since as of now you
> have not filed motions to dismiss.  And, we were not copied on any claimed forwarding of a drive to the Court.

Larry Klayman, Esq.

[Quoted text hidden]

EXHIBIT 2

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

PATRICK NATHANIEL REED,                Case No. 3-22-CV-01059-TJC-PDB

    Plaintiff,

vs.

BRANDEL CHAMBLEE; TGC, LLC;
DAMON HACK; BENJAMIN BACON;
EAMON LYNCH; GANNETT
SATELLITE INFORMATION
NETWORK, LLC; GANNETT CO.,
INC.; CONDE NAST
INTERNATIONAL, INC.; ZACH
HELFAND

    Defendants.

---

## NOTICE OF CONVENTIONAL FILING OF USB FLASH DRIVE

Pursuant to this Court's January 10, 2023 Order granting the Unopposed Motion for Leave to Conventionally File Audiovisual Exhibits, filed by Defendants Brandel Chamblee, Damon Hack, Benjamin Bacon, Eamon Lynch, and TGC, LLC d/b/a The Golf Channel (collectively, "Defendants") (D.E. 31), Defendants hereby conventionally file a USB flash drive containing the three video exhibits referenced in Defendants' Motion to Dismiss Amended Complaint and annexed to the Declaration of Minch Minchin. *See* Declaration of Minch Minchin ¶¶ 3, 8, 22 (corresponding to Exhibits 1(a), 5(a), and 8(a)).

Dated: January 13, 2023

Respectfully Submitted,

SHULLMAN FUGATE PLLC

*/s/ Minch Minchin*
Rachel E. Fugate (Fla. Bar No. 144029)
rfugate@shullmanfugate.com
Deanna K. Shullman (Fla. Bar No. 514462)
dshullman@shullmanfugate.com
Minch Minchin (Fla. Bar No. 1015950)
mminchin@shullmanfugate.com
50 N. Laura Street, Suite 2500
Jacksonville, FL 32202
Tel: (813) 935-5098

*Attorneys for Golf Channel, Brandel Chamblee,*
*Damon Hack, Benjamin Bacon, and Eamon Lynch*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 13, 2023, the foregoing was served on the Court and all counsel of record via FedEx Overnight Mail.

/s/ *Minch Minchin*
Minch Minchin

# PLAINTIFF'S

# EXHIBIT

# B

CASE NO. 20-61872-CIV-SINGHAL
United States District Court, S.D. Florida.

# Dershowitz v. Cable News Network, Inc.

541 F. Supp. 3d 1354 (S.D. Fla. 2021)
Decided May 24, 2021

CASE NO. 20-61872-CIV-SINGHAL

2021-05-24

Alan DERSHOWITZ, Plaintiff, v. CABLE NEWS NETWORK, INC., Defendant.

Brian Mitchell Rodier, Rodier & Rodier, Hallandale, FL, for Plaintiff. George S. LeMieux, Eric Corey Edison, Gunster, Yoakley and Stewart, P.A., Fort Lauderdale, FL, Amanda Levine, Pro Hac Vice, Katherine M. Bolger, Pro Hac Vice, Davis Wright Tremaine LLP, New York, NY, for Defendant.

RAAG SINGHAL, UNITED STATES DISTRICT JUDGE

1358*1358

Brian Mitchell Rodier, Rodier & Rodier, Hallandale, FL, for Plaintiff.

George S. LeMieux, Eric Corey Edison, Gunster, Yoakley and Stewart, P.A., Fort Lauderdale, FL, Amanda Levine, Pro Hac Vice, Katherine M. Bolger, Pro Hac Vice, Davis Wright Tremaine LLP, New York, NY, for Defendant.

# ORDER

RAAG SINGHAL, UNITED STATES DISTRICT JUDGE

**THIS CAUSE** is before the Court upon Defendant Cable News Network's Motion to Dismiss (DE [17]). The parties have fully briefed the Motion to Dismiss and the Court heard argument of counsel. For the reasons set forth below, the Motion to Dismiss is denied.

I. <u>INTRODUCTION</u>

Plaintiff Alan Dershowitz ("Dershowitz") has filed a Complaint (DE [1]) against Cable News Network, Inc. ("CNN") seeking damages for defamation. The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

In January 2020, Dershowitz represented the President of the United States in an impeachment trial before the United States Senate. (*Id.* ¶ 6). This dispute concerns CNN's coverage of an argument Dershowitz made to the Senate about whether a president can be impeached and removed from office if he takes any action that is 1359 motivated by a desire to be reelected. *1359  According to the Complaint, Dershowitz gave the following answer to a question by Senator Ted Cruz:



The only thing that would make a quid pro quo unlawful is if the quo were somehow illegal. Now we talk about motive. There are three possible motives that a political figure could have. One, a motive in the public interest and the Israel argument would be in the public interest. The second is in his own political interest and the third, which hasn't been mentioned, would be his own financial interest, his own pure financial interest, just putting money in the bank. I want to focus on the second one just for one moment. Every public official that I know believes that his election is in the public interest and, mostly you are right, your election is in the public interest, and if a president does something which he believes will help him get elected in the public interest, that cannot be the kind of quid pro quo that results in impeachment. (*Id.* ¶ 7).[1]

[1] The Complaint sets forth only an excerpt of Dershowitz' response. CNN has submitted the Congressional Record (DE [17-1] with the full transcript of Dershowitz' argument found at S650 and asks the Court to take judicial notice of the entirety of Dershowitz' comments.

Following the day's impeachment proceedings, CNN aired a clip of this argument that featured only the last sentence and omitted Dershowitz' words that a quid pro quo would be unlawful if the quo were somehow illegal.[2] (*Id.* , ¶ 8). Dershowitz alleges that several CNN commentators responded to the truncated clip and "exploded into a one-sided and false narrative that Professor Dershowitz believes and argued that as long as the President believes his reelection is in the public interest, that he could do anything at all – including illegal acts – and be immune from impeachment." (*Id.* ). Dershowitz alleges CNN commentators made the following defamatory statements[3] (DE [1], ¶ 13):

[2] The Complaint acknowledges that CNN aired the entire statement several times earlier in the day on shows hosted by CNN employees Wolf Blitzer and Jake Tapper. (DE [1] ¶ 9).

[3] In his Memorandum in Opposition (DE [21]), Dershowitz identified the underlined portions of these statements as those he alleges are defamatory.

Having worked on about a dozen campaigns, there is always the sense that, boy, if we win, it's better for the country. But that doesn't give you license to commit crimes or to do things that are unethical. So, it was absurd. What I thought when I was watching it was this is un-American. This is what you hear from Stalin. This is what you hear from Mussolini, what you hear from authoritarians, from Hitler, from all the authoritarian people who rationalized, in some cases genocide, based on what was in the public interest." -- Joe Lockhart @ 7:11 p.m., January 29, 2020.

The president's defense team [Dershowitz] seems to be redefining the powers of the president, redefining them towards infinity." ... [truncated clip played] ... "If you look at what he says there it blows your mind. He says if a president is running for re-election because he thinks getting elected will help America, he can do anything, anything. And that redefines the presidency and America." -- John Berman @ 6:17 a.m., January 30, 2020.

I did not go to Harvard Law, but I did go to the University of Texas School of Law, where I studied criminal law and constitutional law, but never dreamed a legendary legal mind would set them both ablaze on the Senate floor. The Dershowitz Doctrine would make presidents immune from

1360*1360

every criminal act, so long as they could plausibly claim they did it to boost their re-election effort. <u>Campaign finance laws: out the window. Bribery statutes: gone. Extortion: no more.</u> This is Donald Trump's fondest figurative dream: to be able to shoot someone on Fifth Avenue and get away with it." -- Paul Begala on CNN.com, January 29, 2020 @ 9:11 p.m.

This narrative, claims Dershowitz, damaged his reputation as a legal scholar and subjected him to ridicule on news outlets, talk shows, and social media. (*Id.* ¶¶ 12, 13).

Dershowitz alleges that CNN knew or had serious doubts that its commentators' statements were false at the time they were made but nonetheless made and/or published the statements with an intent to indulge ill will, hostility, and an intent to harm. (*Id.* ¶ 20). Dershowitz asserts that CNN's airing of only a portion of his answer was done to falsely paint him "as a constitutional scholar and intellectual who had lost his mind" and that "[w]ith that branding, [his] sound and meritorious arguments would then be drowned under a sea of repeated lies." (*Id.* ¶ 8). The result of omitting the words "[t]he only thing that would make a quid pro quo unlawful is if the quo were somehow illegal," says Dershowitz, is that CNN could "fool" its viewers into thinking "that the respected Alan Dershowitz believed that the President of the United States could commit <u>illegal</u> acts as long as he thought it would help his reelection and that his reelection was in the public interest, even though it was the opposite of what he said." (*Id.* ). Dershowitz alleges he has suffered and continues to suffer damage, including but not limited to damage to his reputation, embarrassment, pain, humiliation, and mental anguish and has sustained past and future loss of earnings. (*Id.* ¶ 19). He seeks $50 million in compensatory damages and $250 million in punitive damages from CNN.

CNN moves to dismiss the Complaint for failure to state a claim upon which relief can be granted. (DE [17]). Fed. R. Civ. P. 12(b)(6). First, CNN contends its broadcasts are protected by the fair report privilege, which shields the press from liability for reporting information on official government proceedings. Second, CNN argues that the statements made by its commentators were non-actionable opinions based upon Dershowitz' public testimony. Finally, CNN asserts that Dershowitz has not and cannot plead that CNN acted with the actual malice required for a public figure to sustain a defamation claim. CNN asks the Court to dismiss Dershowitz' Complaint with prejudice.

## II. <u>LEGAL STANDARDS</u>

### A. Motion to Dismiss

To survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly* , 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal* , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.* , 578 F.3d 1252, 1261 (11th Cir. 2009), *abrogated on other grounds by Mohamad v. Palestinian Authority* , 566 U.S. 449, 132 S.Ct. 1702, 182 L.Ed.2d 720 (2012).

In considering a Rule 12(b)(6) motion to dismiss, the court's review is generally "limited to the four corners of 1361 the complaint." *1361 *Wilchombe v. TeeVee Toons, Inc.* , 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas Cty.* , 285 F.3d 1334, 1337 (11th Cir. 2002) ). The court must review the complaint in the light most favorable to the plaintiff, and it must generally accept the plaintiff's well-pleaded facts as true. *See Hishon v. King & Spalding* , 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). But "[c]onclusory allegations,

*Dershowitz v. Cable News Network, Inc.*     541 F. Supp. 3d 1354 (S.D. Fla. 2021)

unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. BellSouth Telecommunications* , 372 F.3d 1250, 1262 (11th Cir. 2004) (citation omitted); *see also Iqbal* , 129 S. Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").

B. Defamation

The parties agree that Florida law applies to this dispute. In Florida, a defamation claim has "five elements: (1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory." *Jews For Jesus, Inc. v. Rapp* , 997 So. 2d 1098, 1106 (Fla. 2008).

CNN argues that its broadcasts concerning Dershowitz' statements are protected from liability by the fair report privilege. The fair report privilege is a qualified privilege given to news media "to accurately report on the information they receive from government officials." *Woodard v. Sunbeam Television Corp.* , 616 So. 2d 501, 502 (Fla. 3d DCA 1993). "If the report of a public official proceeding is accurate or a fair abridgment, an action cannot be constitutionally maintained, either for defamation or for invasion of the right of privacy." *Id.* (quoting Restatement (Second) of Torts § 611, cmt. b (1977)). "The privilege extends to the publication of the contents of official documents, as long as the account is reasonably accurate and fair." *Rasmussen v. Collier County Publ. Co.* , 946 So. 2d 567, 571 (Fla. 2nd DCA 2006).

Next, CNN argues that its commentators offered opinions and, therefore, it cannot be liable for defamation. In Florida, a claim of defamation requires a false statement of fact. *Id.* Statements of pure opinion are not actionable. *Zambrano v. Devanesan* , 484 So. 2d 603, 606 (Fla. 4th DCA 1986). "The distinction between fact and opinion is not always easy to perceive." *Id.* "Thus, the law recognizes that some comments may be pure expressions of opinion whereas others may be mixed expressions of opinion." *Id.*

A mixed opinion is one "based upon facts regarding a person or his conduct that are neither stated in the publication nor assumed to exist by a party exposed to the communication." *LRX, Inc. v. Horizon Assocs. Joint Venture ex rel. Horizon-ANF, Inc.* , 842 So. 2d 881, 885 (Fla. 4th DCA 2003). "Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact. Simply couching such statements in terms of opinion does not dispel these implications." *Milkovich v. Lorain Journal Co.* , 497 U.S. 1, 18-19, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990).

Whether a challenged statement is one of fact or opinion is a question of law to be decided by the court. *Turner v. Wells* , 879 F.3d 1254, 1262 (11th Cir. 2018). "In assessing whether an allegedly libelous statement is [1362] opinion, the court must construe the statement in its totality, examining not merely a particular phrase *1362 or sentence, but all of the words used in the publication." *Rasmussen* , 946 So. 2d at 571 (citing *Hay v. Indep. Newspapers, Inc.* , 450 So. 2d 293, 295 (Fla. 2d DCA 1984) ).

Finally, CNN challenges the sufficiency of Dershowitz' pleading of actual malice. *See New York Times Co. v. Sullivan* , 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) (public figure must prove actual malice to succeed in defamation case). Actual malice "should not be confused with the concept of malice as an evil intent or a motive arising from spite or ill will." *Masson v. New Yorker Mag., Inc.* , 501 U.S. 496, 500, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991). Rather, actual malice refers to "publication of a statement with knowledge of falsity or reckless disregard as to truth or falsity." *Id.* at 511, 111 S.Ct. 2419. To avoid dismissal of a defamation claim, a

public figure must plead facts sufficient to give rise to a plausible inference of actual malice. *Michel v. NY Post Holdings, Inc.* , 816 F.3d 686, 702 (11th Cir. 2016). The pleading standards of *Iqbal* and *Twombly* apply to a public figure's allegations of actual malice. *Id.*

III. <u>ANALYSIS</u>

The Court must first address those items that it considered in resolving this Motion. CNN included numerous exhibits with its Motion to Dismiss and argues the Court may properly consider all of them when deciding the Motion. The Court disagrees. At the 12(b)(6) stage, the court may consider the allegations in the complaint as well as documents incorporated into the complaint by reference and matters of which it may take judicial notice. *Lozman v. City of Riviera Beach* , 713 F.3d 1066, 1075 n.9 (11th Cir. 2013) (citations omitted). These items are incorporated by reference in the Complaint and are properly considered at the motion to dismiss stage:

• CNN footage of the impeachment trial aired on January 29, 2020 (DE [17-6], ex. A);

• Transcript and footage of the January 29, 2020, episode of the program Erin Burnett Outfront (DE [17-6], ex. B);

• Transcript and footage of the January 20, 2020, episode of the program New Day (DE [17-6], ex. C); and

• Paul Begala article "Presenting the Ludicrous 'Dershowitz Doctrine' " published January 29, 2020 on cnn.com (DE [17-6], ex. D)

In addition, the court may take judicial notice of Congressional Record of January 29, 2020 (DE [17-1]). *See Coastal Wellness Centers, Inc. v. Progressive American Ins. Co.* , 309 F. Supp. 3d 1216, n.4 (S.D. Fla. 2018) ("The Court may take judicial notice of government publications and website materials."). The remaining items[4] – transcripts of shows broadcast by other media outlets, transcripts of interviews given by Dershowitz on January 30 and 31, 2020, and a copy of Dershowitz' book *Defending the Constitution* – fall outside the pleadings. "The clear rule in this Circuit is that consideration of material falling outside the pleadings converts a motion to dismiss into one for summary judgment. And in doing so, the judge must give notice to the parties and allow them 10 days in which to supplement the record." *Michel* , 816 F.3d at 701. The Court declines to *1363 make that conversion and, therefore, has only considered those items referenced in the Complaint.\*1363  A. <u>Fair Report Privilege</u>

4  These items are attached to CNN's Motion to Dismiss (DE [17]) at DE [17-2]; [17-3]; [17-4]; [17-5]; [17-6], ex. E; and [17-6], ex. D.

CNN argues that its airing of verbatim statements that Dershowitz made on the floor of the United States Senate is unquestionably protected by the fair report privilege. *See Woodard* , 616 So. 2d at 502 ("The news media has been given a qualified privilege to accurately report on the information they receive from government officials."). "The fair report privilege is news media's qualified privilege 'to report accurately on information received from government officials.' " *Folta v. New York Times Co.* , 2019 WL 1486776, at *2 (N.D. Fla. 2019) (quoting *Rasmussen* , 946 So. 2d at 570-71 ). Clearly, a public broadcast concerning the impeachment trial of the President of the United States triggers the fair report privilege.

Dershowitz v. Cable News Network, Inc.     541 F. Supp. 3d 1354 (S.D. Fla. 2021)

The next issue is whether the fair report privilege applies to CNN's broadcasts. The fair report privilege applies "[i]f the report of a public official proceeding is an accurate or a fair abridgment." *Folta* , 2019 WL 1486776, at *2 (quoting *Woodard* , 616 So. 2d at 502 ). CNN argues that it played a verbatim clip of Dershowitz' actual words spoken during a high-level government proceeding and, therefore, the fair report privilege applies. *See Jamason v. Palm Beach Newspapers, Inc.* , 450 So. 2d 1130, 1132 (Fla. 4th DCA 1984) ("accurate report of judicial proceeding" entitled to fair report privilege). Dershowitz does not dispute that the privilege would probably apply if CNN had merely played the truncated clip without further comment. But that is not Dershowitz' claim. The one-count Complaint alleges that the truncated clip was part of "a deliberate scheme to defraud" CNN's audience (DE [1], ¶ 11) that enabled Lockhart, Berman, and Begala to present Dershowitz's comments in a defamatory manner. Thus, for purposes of applying the fair report privilege the Court must consider the broadcasts and the clip as a whole and not as separate claims. And the question is whether CNN's broadcasts presented an accurate or fair abridgment of Dershowitz' comments to the Senate. To answer this, we must look to the source documents. *Folta* , 2019 WL 1486776, at *4 ("Determining whether a report is fair and accurate requires a close comparison of the report and the documents and information from which it is drawn."); *Stewart v. Sun Sentinel Co.* , 695 So. 2d 360, 362 (Fla. 4th DCA 1997) (comparing defamatory information with official documents for "material differences" that would defeat the fair report privilege).

During the impeachment trial, Senator Ted Cruz submitted a question for Dershowitz to answer: "As a matter of law, does it matter if there was a quid pro quo? Is it true that quid pro quos are often used in foreign policy?" *Congressional Record* , 166:19 (Jan. 29, 2020), p. S650. (DE [17-1], p. 7). Dershowitz answered at length and gave several hypotheticals of quid pro quo that he considered would be lawful. At several points in his response, Dershowitz stated that a quid pro quo that is unlawful would be one based on an illegal motive. These points are highlighted below:

> I offered you a hypothetical the other day: What if a Democratic President were to be elected and Congress were to authorize much money to either Israel or the Palestinians and the Democratic President were to say to Israel "No; I am going to withhold this money unless you stop all settlement growth" or to the Palestinians "I will withhold the money Congress authorized to you unless you stop paying terrorists, and the President said "Quid pro quo. If you don't do it, you don't get the money. If you do it, you get the money"? There is no one in this Chamber who would regard that as in any way unlawful. *The only thing that would make a quid pro quo unlawful is that if the quo were in some way illegal.*

1364*1364

Now, we talked about motive. There are three possible motives that a political figure can have: One, a motive in the public interest, and the Israel argument would be in the public interest; the second is in his own political interest; and the third, which hasn't been mentioned, *would be in his own financial interest, just putting money in the bank.* I just want to focus on the second one for just one moment.

Every public official whom I know believes that his election is in the public interest. Mostly, you are right. Your election is in the public interest. If a President does something which he believes will help him get elected – in the public interest – that cannot be the kind of quid pro quo that results in impeachment....

Everybody has mixed motives, and for there to be a constitutional impeachment based upon mixed motives would permit almost any President to be impeached.

How many Presidents have made foreign policy decisions after checking with their political advisers and their pollsters? If you are just acting in the national interest, why do you need pollsters? Why do you need political advisers? Just do what is best for the country. But if you want to balance what is in the public interest with what is in your party's electoral interest and in your own electoral interest, it is impossible to discern how much weight is given to one or the other.

Now, we may argue that it is not in the national interest for a particular President to get reelected or for a particular Senator or Member of Congress – and maybe we are right; it is not in the national interest for everybody who is running to be elected – but for it to be impeachable, you would have to discern that he or she made a decision solely on the basis of, as the House managers put it, corrupt motives, and *it cannot be a corrupt motive if you have a mixed motive that partially involves the national interest, partially involves electoral, and does not involve personal pecuniary interest.*

The House managers do not allege that this decision, this quid pro quo, as they call it – and the question is based on the hypothesis that there was a quid pro quo. I am not attacking the facts. *They never allege that it was based on pure financial reasons. It would be a much harder case.*

If a hypothetical President of the United States said to a hypothetical leader of a foreign country: Unless you build a hotel with my name on it and unless you give me a million-dollar kickback, I will withhold the funds. *That is an easy case. That is purely corrupt and in the purely private interest.*

But a complex middle case is: I want to be elected. I think I am the greatest President there ever was, and if I am not elected the national interest will suffer greatly. That cannot be.

*Congressional Record* 166:19 (Jan. 29, 2020) pp. S650-51 (emphasis added). (DE [17-1], pp. 7-8).[5]

[5] CNN argues that the paragraph breaks in the Congressional Record signify that Dershowitz is "manipulat[ing] his Senate arguments by merging together *three* separate paragraphs from the Congressional Record to make it appear as one thought." (DE [24], p. 5). The Court must consider the entirety of Dershowitz' remarks, and the editorial judgment of the Government Printing Office staff is not binding on this Court.

To compare Dershowitz' answer with the comments made by CNN's commentators, those comments are set forth again, below:

Having worked on about a dozen campaigns, there is always the sense that, boy, if we win, it's better for the country.

1365*1365

But that doesn't give you license to commit crimes or to do things that are unethical. So, it was absurd. What I thought when I was watching it was this is un-American. This is what you hear from Stalin. This is what you hear from Mussolini, what you hear from authoritarians, from Hitler, from all the authoritarian people who rationalized, in some cases genocide, based what was in the public interest." -- Joe Lockhart @ 7:11 p.m., January 29, 2020.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

The president's defense team [Dershowitz] seems to be redefining the powers of the president, redefining them towards infinity." ... [truncated clip played] ... "If you look at what he says there it blows your mind. He says if a president is running for re-election because he thinks getting elected will help America, he can do anything, anything. And that redefines the presidency and America." -- John Berman @ 6:17 a.m., January 30, 2020.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

I did not go to Harvard Law, but I did go to the University of Texas School of Law, where I studied criminal law and constitutional law, but never dreamed a legendary legal mind would set them both ablaze on the Senate floor. The Dershowitz Doctrine would make presidents immune from every criminal act, so long as they could plausibly claim they did it to boost their re-election effort. Campaign finance laws: out the window. Bribery statutes: gone. Extortion: no more. This is Donald Trump's fondest figurative dream: to be able to shoot someone on Fifth Avenue and get away with it." -- Paul Begala on CNN.com, January 29, 2020 @ 9:11 p.m.

Dershowitz alleges he never said a president could commit illegal acts if he thought it would help his reelection and his reelection was in the public interest. (DE [1], ¶ 8). And he alleges that CNN, through its employee commentators, distorted the meaning of what he said to the Senate in the coverage on CNN.com and the two broadcasts. (DE [1], ¶ 10, 11). Dershowitz contends that by omitting the phrase, "the only thing that would make a quid pro quo unlawful is if the quo were somehow illegal," CNN presented Dershowitz' comments in a misleading context, which enabled the commentators to (falsely) assert that Dershowitz believed a president could extract a quid pro quo for any reason, including an illegal reason, if he believed it would help his re-election. Dershowitz alleges that if the entire clip had been played, no panel guest would have been able to credibly make that statement. (DE [1], ¶ 9). Thus, Dershowitz argues, CNN presented an official proceeding in a misleading manner and the fair report privilege does not apply.

The Court agrees. CNN presented an abridgment of Dershowitz' answer to Senator Cruz' question. The abridgment is not accurate, to the extent that it omitted a crucial qualification: that an illegal motive for a quid pro quo would be corrupt. As a result, the commentators' statements – that Dershowitz believes a President can do anything, even commit crimes if it would help his re-election – are not based upon a fair and accurate summary of Dershowitz' statement to the Senate.

CNN argues that editors and publishers have great discretion to determine what information to publish. This is correct. But the qualified fair report privilege "merely means that the report of [official] proceedings must be correct." *Jamason* , 450 So. 2d at 1132 (quoting *Walsh v. Miami Herald Publishing Co.* , 80 So. 2d 669, 671
1366 (Fla. 1955) ).*1366  CNN argues that Dershowitz' response to Senator Cruz' statement was ambiguous and that CNN was reasonable in its belief that Dershowitz argued "that presidents cannot be impeached for actions taken to win an election if the President believes his own victory would be in the public interest, regardless of the legality of those actions." (DE [17], p. 14). That is an argument that CNN may present to a jury. But because the broadcasts did not present a fair and accurate abridgment of Dershowitz' remarks, CNN cannot avail itself of the fair report privilege.

Finally, CNN argues that the media has no obligation to present additional information that would present a subject in a better light. This too is correct. *See Folta* , 2019 WL 1486776, at *5 (media has "the right to focus and color their report to capture and hold the readers' attention" provided the report is "substantially accurate"). Thus, in *Larreal v. Telemundo of Florida, LLC* , 489 F. Supp. 3d 1309 (S.D. Fla. 2020), the fair report privilege applied to a report that the plaintiff was arrested during a raid conducted as part of a long-term undercover narcotics investigation. The Telemundo report was one about the undercover raid and arrests. *Id.* The plaintiff sued Telemundo for defamation and alleged it omitted information that would have clarified that he was arrested on a traffic-related warrant. The court stated that "regardless of the charges against the other individuals, the fact that Larreal was arrested on a bench warrant alone does not rebut or undermine Telemundo's accurate reporting about the operation's arrests or change the gist of the story." *Id.* at *1322.

By contrast, the CNN broadcast segments set forth in Dershowitz' Complaint were focused specifically on Dershowitz' comments to the Senate and, as presented on air, changed the gist of what Dershowitz said. For the fair report privilege to apply a defendant must have "presented a fair and accurate report of the source documents." *Folta* , 2019 WL 1486776, at *6. The CNN broadcasts do not meet that standard.

B. Fact v. Opinion

CNN's next ground for dismissal is that the allegedly defamatory statements were non-actionable opinion. CNN argues that the statements at issue were made during commentary shows about the impeachment proceedings and were "rhetorical hyperbole" protected by the First Amendment. *See Horsley v. Rivera* , 292 F.3d 695, 701 (11th Cir. 2002) (holding non-literal, figurative language not defamatory). Thus, CNN argues that statements referring to Dershowitz' arguments as "un-American," that he was "redefining the powers of the President," that his position "blows your mind," and that his argument "is what you hear from Stalin ... what you hear from Mussolini, what you hear from authoritarians" are hyperbole for which there can be no liability.

Dershowitz agrees with CNN on the hyperbolic nature of the commentary and that no liability would attach to those kinds of statements. But he argues that the commentaries also contained untrue, defamatory factual comments – that Dershowitz said a President could do anything without liability (even commit crimes) if he thought it would help his reelection and was in the national public interest – that were contradicted by the full context of Dershowitz' answer to Senator Cruz' question. The Court concludes that the commentators' statements set forth in the Complaint were not pure opinion but instead were mixed expressions of opinion that could reasonably be construed as defamatory. *See Barnes v. Horan* , 841 So. 2d 472, 477 (Fla. 3rd DCA 2002)
1367 (the court must determine whether an expression of opinion can also contain a defamatory *1367  meaning due to assertion of undisclosed acts).

A mixed expression of opinion is not constitutionally protected. *Madsen v. Buie* , 454 So. 2d 727, 729 (Fla. 1st DCA 1984). "[A] statement that although ostensibly in the form of an opinion 'implies the allegation of undisclosed defamatory facts as the basis for the opinion' *is* actionable." *Eastern Air Lines, Inc. v. Gellert* , 438 So. 2d 923, 927 (Fla. 3rd DCA 1983) *disapproved on other grounds* , *Ter Keurst v. Miami Elevator Co.* , 486 So. 2d 547 (Fla. 1986) (quoting Restatement (Second) of Torts § 566 (1977) ) (emphasis in original). Further, "where the speaker or writer neglects to provide the audience with an adequate factual foundation prior to engaging in the offending discourse, liability may arise." *Zambrano* , 484 So. 2d at 607. The Complaint alleges that CNN's broadcasts lacked the "adequate factual foundation" that would have prevented the commentators from mischaracterizing Dershowitz' argument. The Court concludes that the Complaint plausibly alleges that the comments made on CNN and CNN.com were defamatory statements of mixed opinion.

CNN argues that because the impeachment trial was widely covered by it and other media outlets, the underlying facts were "known to the audience" and, therefore, a finding of pure opinion may still be made. *Id.* at 606-07 ; *Rasmussen* , 946 So. 2d at 571. The court must consider numerous factors in determining whether a comment or editorial is based upon publicly disclosed facts. *Rasmussen* , 946 So.2d at 571. These include construing "the statement in its totality," considering "the context in which the statement was published," and accounting for "all of the circumstances surrounding the publication, including the medium by which it was disseminated and the audience to which it was published." *Id.* Although some of these factors are alleged in the Complaint or are available to the Court at the motion to dismiss stage, other factors relating to the context of the broadcasts and its audience are not before the Court. This requires a more fully developed record. At this stage, the Court concludes that Dershowitz' Complaint meets the plausibility standard for alleging a false statement of fact.

C. <u>Actual Malice</u>

CNN next moves to dismiss the Complaint for failure to plausibly allege the "actual malice" standard of fault applicable to public figures as required by *New York Times Co.* , 376 U.S. 254, 84 S.Ct. 710. The plausibility standard of *Iqbal* and *Twombly* applies to the actual malice standard in defamation proceedings. *See Michel* , 816 F.3d at 702. A public figure must, therefore, plead "facts giving rise to a reasonable inference that the defendant[ ] published the story knowing that it was false or with reckless disregard for whether it was false or not." *Id.* at 703. There must be some showing that the defendant intended "to avoid the truth." *Id.*

CNN argues that Dershowitz pleads only conclusory statements of actual malice and fails to "home to" the person(s) responsible for the alleged defamation. *New York Times Co.* , 376 U.S. at 287, 84 S.Ct. 710 (The state of mind required for actual malice must be "brought home" to the persons having responsibility for publishing the offending material). CNN also argues that it aired live Dershowitz' complete argument earlier in the day and, therefore, it is impossible for Dershowitz to plead actual malice with connection to the later showing of the 1368 truncated clip.[6] *1368 Finally, CNN argues that Dershowitz' statement to the Senate was so ambiguous that any misinterpretation by CNN cannot be attributed to actual malice.

> [6] The Court will not (at this time) entertain CNN's arguments concerning Dershowitz' subsequent appearances on shows with Wolf Blitzer and Chris Cuomo as those matters are outside the four corners of the Complaint.

In deciding a motion to dismiss, the court must accept as true the plaintiff's well-pleaded facts and construe them in the light most favorable to the plaintiff. *Crawford's Auto Center, Inc. v. State Farm Mut. Auto. Ins. Co.* , 945 F.3d 1150 (11th Cir. 2019). Dershowitz alleges that, after the live broadcast, "CNN then went to work by assembling panels for programming throughout the day in which the hosts shared" only the truncated clip. (DE [1], ¶ 8). He alleges that CNN intentionally omitted the statement that a quid pro quo would be unlawful if the

quo were illegal in order to "fool its viewers" into believing that Dershowitz actually said that a President could commit illegal acts so long as he thought it would help his reelection and that his reelection was in the public interest. (*Id.* ). This was done, he alleges, "to falsely paint Professor Dershowitz as a constitutional scholar and intellectual who had lost his mind." (*Id.* ). He alleges that CNN knew for certain that he had prefaced his remarks with the qualifier that a quid pro quo could not include an illegal act because it aired the entire statement earlier in the day, but that CNN knowingly omitted that portion when it played the truncated clip "time and again." (*Id.* , ¶¶ 9, 10). He alleges that the truncated clip was created "intentionally and deliberately with knowledge and malice to facilitate its ability to falsely claim that plaintiff said the opposite of what he actually said." (*Id.* , ¶ 18). And, finally, Dershowitz alleges that commentators made their statements with knowledge or reckless disregard that they were false. (*Id.* , ¶ 17).

These allegations, for purposes of surviving the Motion to Dismiss, plausibly plead a factual basis from which "actual malice" can be inferred. The Complaint alleges that CNN knew its reports were false, it explains the reasons CNN and its employees knew the reports were false, it explains the nature of the alleged falsehoods, and it alleges who made the false statements.

To the extent that the Complaint does not identify with specificity the persons (other than the commentators) within the CNN organization who were responsible for the broadcast decisions, that is a matter for discovery. The Court does not accept CNN's argument that a public figure defamation plaintiff must identify and plead (before discovery) each responsible decision maker within a news organization. The claims in *New York Times Co.* , 376 U.S. 254, 84 S.Ct. 710, went to a jury trial but the plaintiff ultimately failed to establish that the persons responsible for publication of the offending advertisement acted with actual malice. *Id.* at 287, 84 S.Ct. 710. In a case involving a large news organization where the responsible decision makers may not be otherwise known, a plaintiff must be permitted to plead the facts that would plausibly establish actual malice without identifying a specific person. It is then the plaintiff's burden to conduct the discovery necessary to identify and, to be successful, present record evidence that those individuals acted with actual malice. *See, id.* ("[T]he evidence against the Times supports at most a finding of negligence ... and is constitutionally insufficient to show the recklessness that is required for a finding of actual malice.")

CNN cites the district court's dismissal in *Mejia v. Telemundo Mid-Atl., LLC* , 440 F. Supp. 3d 495, 497 (D. Md. 2020), for support of its argument that Dershowitz was required to plead that a specific individual acted with actual malice. But *Mejia* is inapposite. That case involved a private figure whose punitive damages claim required *1369 allegations that the defamer acted with actual malice. *Id.* at 499. The case was dismissed because the plaintiff failed to allege any facts that would establish the requisite fault (negligence). *Id.* at 501-502. The court's reference to actual malice, that the complaint contained "no factual allegations referring to the state of mind of the individual in charge of Defendant's banners," referred to the punitive damages claim.[7] *Id.* at 499, 502. *Mejia* has no bearing on the present case.

    [7] In a later decision, the *Mejia* court granted leave to file a third amended complaint where the proposed pleading raised additional factual allegations sufficient to raise a plausible claim that the defendant acted negligently in allowing the false banner to be broadcast. The third amended complaint did not specify a particular individual. *Mejia v. Telemundo Mid-Atlantic LLC* , 2021 WL 594215, at *3 (D. Md. Feb. 16, 2021).

Next, the fact that CNN played Dershowitz' entire statement earlier in the day does not preclude Dershowitz from alleging that later broadcasts of the truncated clip (and the related commentary) were done with actual malice. Viewers who watched the earlier broadcasts may well have been able to put the truncated clip and the commentators' statements into context. But for those viewers who did not see the earlier broadcasts,

Dershowitz' Complaint about the later broadcasts at least reaches the required level of plausibility to sustain his defamation claim. The earlier broadcasts and their effect on the issue of actual malice may be an issue for a jury to consider, but they have no bearing on the sufficiency of the pleadings.

Finally, CNN argues that Dershowitz' answer to the Senator Cruz' question was so "extravagantly ambiguous" that Dershowitz cannot establish that CNN acted with actual malice in airing the clip or discussing his arguments. Citing *Time, Inc. v. Pape* , 401 U.S. 279, 91 S.Ct. 633, 28 L.Ed.2d 45 (1971), CNN contends that its commentators' analysis of Dershowitz' argument, even if incorrect, cannot create an issue of actual malice.

In *Pape* , the newsmagazine Time published an article about a report issued by the federal Civil Rights Commission. The report detailed numerous incidents of police brutality, including an incident in Chicago that gave rise to a federal lawsuit. But the Time article did not specify that the facts about the Chicago incident were taken from a civil complaint, rather than from an independent finding of the Commission. A police officer named in the report sued Time for defamation, and the issue was whether omission of the word "allegedly" from the Time account was enough to establish actual malice. The trial court entered a directed verdict in favor of the defendant, but the court of appeals reversed. The author of the Time article testified at trial that the context of the report indicated to him that the Commission believed that the incident occurred as described. After reviewing the totality of the underlying report *and the testimony of the Time writer* , the Supreme Court concluded that "[t]o permit the malice issue to go to the jury because of the omission of a word like 'alleged,' despite the context of that word in the Commission Report and the external evidence of the Report's overall meaning, would be to impose a much stricter standard of liability on errors of interpretation or judgment than on error of fact." *Id.* at 290, 91 S.Ct. 633.

In the present case, the Court has before it only the allegations of the Complaint, which must be taken as true, and the substance of the broadcasts. Dershowitz has adequately pleaded actual malice to survive the Motion to Dismiss. Whether the evidence adduced will ultimately satisfy Dershowitz' burden of proving actual malice by 1370 clear and convincing evidence *1370 remains to be seen. But he has alleged enough to go forward.

## IV. POLITICAL MALEVOLENCE

In a footnote, CNN argues that Dershowitz' "claims of disinterested political malevolence are insufficient" to establish actual malice. The Court agrees and, further, concludes that these allegations should be stricken as immaterial and impertinent. Fed. R. Civ. P. 12(f). In paragraph 14 of the Complaint, Dershowitz alleges:

> Professor Dershowitz was one of the most revered and celebrated legal minds of the past half century. His reputation relating to his expertise in criminal and constitutional matters was one that lawyers would only dream about attaining in their lifetimes. However, Professor Dershowitz appears to have made one mistake. He chose to defend the President of the United States and defend the U.S. Constitution at a moment in time where CNN has decided that doing so is not permitted. For this, CNN set out to punish him and destroy his credibility and reputation, and unfortunately, succeeded.

The Supreme Court has stated that "[a defendant's] motive in publishing a story ... cannot provide a sufficient basis for finding actual malice." *Harte-Hanks Communications., Inc. v. Connaughton* , 491 U.S. 657, 665, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989). Indeed, a defamation claim cannot rest on the argument that "erroneous communications were motivated by differences in political opinions. Doing so would run afoul of the Supreme Court's landmark ruling in *New York Times Co. v. Sullivan* . *See* 376 U.S. at 271–72, 84 S.Ct. 710 (noting that errors are inevitable when there is free debate and that they too must be protected to give breathing room to those exercising their freedom of expression)." *Arpaio v. Robillard* , 459 F. Supp. 3d 62, 66 (D.D.C. 2020).

Paragraph 14 of Dershowitz' Complaint alleges that CNN was motivated by political animus. As Judge Lamberth noted in *Arpaio* , "Allegations of 'leftist enmity' cannot trump the guarantees of the First Amendment." *Id.* "Striking a pleading or a portion thereof is a drastic remedy to be resorted to only when required for the purposes of justice." *Sanchez v. Selective Ins. Co. of the Southeast* , 2019 WL 79282, at *2 (S.D. Fla. Jan. 2, 2019) (quotation omitted). Nevertheless, the allegations in paragraph 14 are immaterial to the claim and are an impertinent salvo that do not belong in this case. Rule 12(f)(1), Fed. R. Civ. P., gives the Court the power to strike such matters "on its own." *Sanchez* , at *3 (*sua sponte* striking plaintiff's request for interest). The Court will exercise that power and strike paragraph 14 from the Complaint.

<u>V. CONCLUSION</u>

For the reasons set forth above, the Court finds that Dershowitz has plausibly alleged facts sufficient to withstand CNN's Motion to Dismiss. The Court is in no way ruling on the merits of the case but concludes merely that Dershowitz has satisfied the pleading requirements of Rule 8(a)(2), Federal Rules of Civil Procedure. Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss (DE [17]) is **DENIED** . It is further **ORDERED** that paragraph 14 of Plaintiff's Complaint is **STRICKEN** pursuant to Fed. R. Civ. P. 12(f)(1).

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 24th day of May 2021.

 casetext

# PLAINTIFF'S

# EXHIBIT

# C

 **Davis Wright Tremaine LLP**

21st Floor
1251 Avenue of the Americas
New York, NY 10020-1104

**Jeremy Chase**
212-603-6495 tel
212-379-5235vfax

jeremychase@dwt.com

February 24, 2023

<u>**VIA FEDEX**</u>

Hon. Timothy Corrigan, Chief Judge
Bryan Simpson United States Courthouse
300 North Hogan Street
Jacksonville, FL 32202

   **Re:** ***Reed v. Ryan, et al.***, **No. 3:22-cv-01181-TJC-PDB**
     Exhibits 1 & 2 to Declaration of Jeremy A. Chase in Support of Defendants'
     Motion to Dismiss

Dear Chief Judge Corrigan:

  We represent Defendants Hachette Book Group, Inc. ("Hachette"), Shane Ryan ("Ryan"), and NYP Holdings, Inc. (collectively, the "Defendants") in the above-referenced action. Annexed to this letter are Exhibits 1 and 2 to the Declaration of Jeremy A. Chase in support of Defendants' Motion to Dismiss. Exhibit 1 is a true and correct copy of the book *The Cup They Couldn't Lose: America, the Ryder Cup, and the Long Road to Whistling Straits*, authored by Defendant Ryan and published by Hachette Books (an imprint of Defendant Hachette) on May 10, 2022. Exhibit 2 is a true and correct copy of the book *Slaying the Tiger: A Year Inside the Ropes on the New PGA Tour*, authored by Defendant Ryan and first published in hardcover on June 9, 2015. Defendants are concurrently serving identical copies of Exhibits 1 and 2 along with this letter to Plaintiff's counsel, copied below.

     Respectfully Submitted,

     Davis Wright Tremaine LLP

     Jeremy A. Chase

cc: Larry Elliot Klayman
   7050 W. Palmetto Park Rd
   Boca Raton, FL 33433