### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

PATRICK NATHANIEL REED,

      Plaintiff,

                                     Case No. 3-22-CV-01059-TJC-PDB

vs.

BRANDEL CHAMBLEE, et al.,

      Defendants.

---

## DEFENDANT CONDE NAST INTERNATIONAL, INC. d/b/a THE NEW YORKER'S MOTION TO DISMISS AMENDED COMPLAINT AND FOR ATTORNEYS' FEES AND COSTS <u>WITH SUPPORTING MEMORANDUM OF LAW</u>

Pursuant to Federal Rule of Civil Procedure 12(b)(6) Defendant Conde Nast International, Inc. d/b/a *The New Yorker*[1] asks the Court to dismiss with prejudice Plaintiff Patrick Reed's (Reed) Amended Complaint and, pursuant to Section 768.295, Florida Statutes, to grant *The New Yorker* its reasonable attorneys' fees and costs.

### INTRODUCTION

Reed is a decorated professional golfer who is known on the course and off not only for his victories but also his antics—as even he admits, he is the only

---

[1] As discussed below, Reed named and served a defunct corporate entity, and for this reason alone, his Amended Complaint against the purported publisher of *The New Yorker* magazine, Conde Nast International, Inc., should be dismissed. Nevertheless, without waving this defense, *The New Yorker* hereby also requests dismissal of Reed's Amended Complaint on the merits. The author of the article published by *The New Yorker*, co-defendant Zach Helfand, has not been served with process.

professional golfer who has never, as part of a team competition, been sponsored by a Professional Golf Association (PGA) corporate partner.  It is perhaps no surprise then, that in 2022 Reed parted ways with the PGA and signed with LIV Golf,  which is backed and funded by the Saudi Arabia Public Investment Fund (PIF).  LIV, itself, is mired in controversy for what many (including golfer Phil Mickelson before he joined LIV) say is an attempt to "sportswash" the reputation of Saudi Crown Prince Mohammed bin Salman (M.B.S).

Although Reed's Amended Complaint spans 100 pages and 36 causes of action, his four claims against *The New Yorker* magazine are based on a single sentence in its article—that "LIV needs a public investment fund to sportwash its association with Patrick Reed."  For the reasons stated below, however, Reed's Amended Complaint fails as a matter of law for any of several reasons, including that (1) Reed served a non-existent corporate entity, and as such, this Court lacks jurisdiction over the publisher of *The New Yorker*; (2) the single allegedly defamatory statement is a non-actionable statement of pure opinion and hyperbole; (3) Reed pleads no facts to suggest that *The New Yorker* published the challenged statement with actual malice; (4) Reed cannot establish that *The New Yorker* proximately caused him any harm; and (5) the single publication doctrine bars Reed's claim for tortious interference.  Further, because the challenged statement is protected by Florida's Anti-SLAPP Statute, *The New Yorker* is entitled to a mandatory award of its reasonable attorneys' fees and costs incurred in this matter.

Accordingly, *The New Yorker* respectfully requests that this Court dismiss Reed's Amended Complaint with prejudice and award to *The New Yorker* its reasonable attorneys' fees and costs.

## BACKGROUND

### A. Patrick Reed

Plaintiff Patrick Reed is a professional golfer who, over the last ten years, has amassed "exceptional world-class golfing achievements," including nine PGA tournament wins and a rank of sixth best golfer in the 2020 Official World Golf Rankings. Am. Compl. ¶¶ 14-15. Reed has, however, been controversial throughout his time in professional golf, and "[i]t is well-known on tour that Mr. Reed has been abused and endured more than any other golfer from fans or spectators." Compl. (ECF 1) ¶ 16. "Top Coaches" have "periodically" denied working with or coaching Reed "for fear of backlash they would receive," and while playing in the PGA Tour, Reed "received no corporate sponsorships via the PGA Tour's Corporate Partners," in contrast to "every single [other] member of every Ryder Cup Team and/or President's Cup Team . . . that Mr. Reed has played with and/or against." Am. Compl. ¶¶ 17-18. Indeed, he is the "only player from any team competition . . . who has never had a single sponsor that is a corporate partner of the PGA Tour." *Id*. ¶ 18.

Reed's tenure as a PGA golfer ended in June 2022 when the PGA "constructively terminated" Reed as a member. *Id*. ¶ 15. Soon thereafter, however, Reed signed with LIV Golf.

### B. LIV Golf

LIV broke onto the world stage in 2022, poaching more than a dozen top PGA golfers to join its twelve-team golf league backed by Saudi Arabia's PIF with a reported two billion dollars in funding. Am. Compl. ¶¶ 28, 37; Decl. of Emmy Parsons ("Parsons Decl."), Ex. 1 at 3 (the "Article")[2]. The Tour reportedly spent much of its initial funding "on guarantees for players," and it has tournaments "scheduled for 2022, 2023 and beyond." Parsons Decl., Ex. 1 at 3; Am. Compl. ¶ 32.

The Tour, however, has been the center of controversy, with many publicly criticizing Saudi Arabia and M.B.S. for, what Reed acknowledges, is their record of "human rights atrocities." Am. Compl. ¶ 41. As Phil Mickelson said of the Saudis, "[t]hey're scary mother[*]ers," who were, he believed, using LIV as means to "sportswash[]" the reputation of M.B.S. Parsons Decl. Ex. 1 at 3. But, as famed golfer-turned-LIV-CEO Greg Norman has argued, LIV is "not a political organization. We are here to play golf, serve fans, grow the game, and give additional opportunities to players." Am. Compl. ¶ 29.

### C. The Challenged Article

Two months after Reed first filed a defamation lawsuit for coverage of his involvement with LIV, *see* ECF 35 at 2, *The New Yorker* published an article by Zach

---

[2] Reed failed to attach to his Amended Complaint a copy of the Article at issue. *The New Yorker* has provided a copy of the Article as an exhibit to the Parsons Declaration, which the Court may consider without converting the motion into one for summary judgment, as it is referenced in, and central to, the allegations contained in Reed's Amended Complaint. *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

Helfand under the headline "Will the Saudis and Donald Trump Save Golf—Or Wreck It?". *See* Parsons Decl., Ex. 1.

The deeply-reported Article details the formation of LIV, its funding by Saudi Arabia's PIF, and the debate within the PGA and among professional golfers about how to respond and whether to join LIV.  It includes statements from numerous golf insiders including Rory McIlroy, Phil Mickelson, and NBC-turned-LIV analyst David Feherty, and it provides history and context regarding the Saudis' foray into golf under the leadership of Yasir Al-Rumayyan, including about how the first golf courses in Saudi Arabia were "sand courses" where the "greens were slicked with oil." Parsons Decl., Ex. 1 at 6-8, 20-21.  The Article also includes, in roughly the middle, three sentences about Reed:

> The golfer Patrick Reed, who has never been popular—his fellow Georgia alum Kevin Kisner once told *Golf Digest*, of Reed's college teammates, "I don't know that they'd piss on him if he was on fire"—joined too. He subsequently sued several reporters for defamation. (One commentator mused, "LIV needs a public investment fund to sportwash its association with Patrick Reed.")

Parsons Decl., Ex. 1 at 14.

### D. Reed's Amended Complaint

As more fully set forth in the Motion to Dismiss filed by Defendants Brandel Chamblee, Damon Hack, Benjamin Bacon, Eamon Lynch, and TGC, LLC d/b/a The Golf Channel (collectively the "Golf Channel Defendants"), Reed first filed his defamation lawsuit in the Southern District of Texas on August 16, 2022.  ECF 35 at 2.  He then voluntarily dismissed the complaint and re-filed in this Court on

September 28, 2022.  *Id.* at 2-3; ECF 1.  After this Court *sua sponte* dismissed the complaint, Reed filed the operative Amended Complaint on December 16, 2022. ECF 35 at 3; ECF 28.  It was in Reed's Amended Complaint that he for the first time attempted to add *The New Yorker* as a party to this action.

Reed pleads four causes of action against *The New Yorker*, for defamation, defamation by implication, defamation *per se* and tortious interference with business contracts.  Am. Compl. ¶¶ 345-374 (Counts 29-32).  Each of these four causes of action is based on a *single sentence* in the Article: "One commentator mused, 'LIV needs a public investment fund to sportwash its association with Patrick Reed.'" Am. Compl. ¶ 117; Parsons Decl., Ex. 1 at 14.

## ARGUMENT

When presented with a motion to dismiss a complaint for failure to state a claim, a court "must accept the allegations of the complaint as true and must construe the facts alleged in the light most favorable to the plaintiff."  *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994).  Courts need not, however, accept "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts."  *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).  That is, plaintiffs must do more than merely provide "a formulaic recitation of the elements of a cause of action."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Rather, "a complaint must contain sufficient factual matter, accepted as true,

to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570) (emphasis added).

Pursuant to Florida law, "[t]o state a claim for defamation of a public figure," Reed must allege that challenged statement was "(1) false; (2) defamatory; (3) damaging; and (4) that [*The New Yorker*] acted with actual malice." *Readon v. WPLG, LLC*, 317 So. 3d 1229, 1234 (Fla. 3d DCA 2021) (citing *Don King Prods., Inc. v. Walt Disney Co.*, 40 So. 3d 40, 43 (Fla 4th DCA 2010)).[3] Federal and Florida courts agree that early dismissal of meritless defamation claims is important to protect First Amendment values. *See Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016) ("application of the plausibility pleading standard makes particular sense when examining public figure defamation suits [because i]n these cases there is a powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending against expensive yet groundless litigation"); *Stewart v. Sun Sentinel Co.*, 695 So. 2d 360, 363 (Fla. 4th DCA 1997) (early disposition appropriate due to chilling effect such cases have on free speech); *Byrd v. Hustler Mag., Inc.*, 433 So. 2d 593, 595 (Fla. 4th DCA 1983) (discussing courts' "prominent function" in disposing of meritless defamation suits).

---

[3] Some courts denominate this as a five-part test. *See, e.g.*, *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018) ("Defamation under Florida law has these five elements: (1) publication; (2) falsity; (3) the statement was made with knowledge or reckless disregard as to the falsity on a matter concerning a public official . . .; (4) actual damages; and (5) the statement must be defamatory."). Regardless of how the elements are numbered, however, Federal and Florida courts agree as to the substantive elements of a defamation claim.

Florida's Anti-SLAPP statute reiterates and further strengthens those protections: "It is the intent of the Legislature that such lawsuits be expeditiously disposed of by the courts." Fla. Stat. § 768.295(1).  To this end, Florida's statute provides that no person may file any lawsuit against another "without merit and primarily because such person or entity has exercised the constitutional right of free speech in connection with a public issue," defined to include a "news report" or "other similar work." *Id.* § 768.295(2)(a) and (3).  The statute also mandates a shifting of fees if the suit fails to survive any dispositive motion.  *Id.* § 768.295(4).

Finally, when it would be "futile" to permit a plaintiff leave to amend "because no amendment could correct the deficiency that the statements in the news report are not defamatory as a matter of law," courts may properly grant a motion to dismiss with prejudice.  *Parekh v. CBS Corp.*, 820 F. App'x 827, 834 (11th Cir. 2020).

Because Reed's claims against *The New Yorker* are meritless and based on speech protected by Florida's Anti-SLAPP statute, they should be dismissed with prejudice, and the Court should award to *The New Yorker* its attorneys' fees and costs.

## I.   REED'S CLAIMS BASED ON *THE NEW YORKER* ARTICLE SHOULD BE DISMISSED BECAUSE HE HAS SUED A NON-EXISTENT CORPORATE ENTITY

Reed served Conde Nast International, Inc. d/b/a The New Yorker ("CNII"). Am. Compl.  CNII, however, has not existed as a legal entity since 2021.  Parsons

Decl. ¶ 3-4 & Exs. 2-3.[4]  Accordingly, Reed's Amended Complaint is in violation of

Fed. R. Civ. P. 4(a)(1)(A).  Further, he has failed to complete proper service of

summons with respect to the entity that actually published the Article at issue, and

accordingly, this Court lacks personal jurisdiction over that entity.  *See Rajbhandari v.*

*US Bank*, 305 F.R.D. 689, 693 (S.D. Fla. 2015) ("Before a federal court may exercise

personal jurisdiction over a defendant, the procedural requirement of service of

summons must be satisfied." (quoting *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.,*

*Ltd.*, 484 U.S. 97, 104 (1987))).  Accordingly all of Reed's claims based on the Article

published in *The New Yorker* (Counts 29-32) should be dismissed for this reason

alone.

## II.   THE CHALLENGED STATEMENT IS A NON-ACTIONABLE STATEMENT OF OPINION AND HYPERBOLE

As *The New Yorker's* co-defendants have ably briefed for this Court, *see* ECF 35

at 15-21; ECF 38 at 12-16, before a statement can be considered actionably

defamatory, a court must determine that it is a statement of *fact*.  Indeed, it is a

matter of black-letter defamation law that "statements of pure opinion are protected

from defamation actions by the First Amendment."  *Turner*, 879 F.3d at 1262-63; *see*

*also Milkovich v. Lorain Journal, Co.*, 497 U.S. 1, 3 (1990); *Horsley v. Rivera*, 292 F.3d

695, 701 (11th Cir. 2002) (First Amendment protects non-literal assertions of fact and

hyperbole that cannot reasonably be interpreted as statements of fact).  Indeed, "[a]

---

[4] Notably, the full legal name of the entity that in fact publishes *The New Yorker*, including the Article at issue, is set forth in a legal notice contained in every edition of the magazine.

false statement of fact is the *sine qua non* for recovery in a defamation action." *Byrd*, 433 So. 2d at 595.  This principle is with good reason—"[u]nder the First Amendment there is no such thing as a false idea.  However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas." *Gertz v. Robert Welch*, 418 U.S. 323, 339-40 (1974).  As a Florida appellate court explained, "we expect people who engage in controversy to accept that kind of statement as their lot.  We think the First Amendment demands a hide that tough." *Pullum v. Johnson*, 647 So. 2d 254, 258 (Fla. 1st DCA 1994).

Whether a statement constitutes non-actionable opinion is a "question of law and therefore made by the court." *From v. Tallahassee Democrat*, 400 So. 2d 52, 56 (Fla. 1st DCA 1981); *accord Morse v. Ripkin*, 707 So. 2d 921, 922 (Fla. 4th DCA 1998).  And statements of opinion, when based on facts disclosed in the same publication, cannot be defamatory as a matter of law, "[h]owever pernicious" the opinions may seem.  *Morse*, 707 So. 2d at 922; *see also Logue v. Book*, 297 So. 3d 605, 614 (Fla 4th DCA 2020) ("merely tossing insults . . . is not defamation").

In this case, Reed's causes of action against *The New Yorker* for defamation (Counts 29-31) are premised on a *single* statement: that LIV needs to "sportwash" its association with him.  Am. Compl. ¶ 117.[5]  The term "sportwash," however, is a

---

[5] Reed appears to suggest that, although he identified only a single allegedly defamatory statement in the Article, the Court should address whether the remainder of the Article defamed him.  *See* Am. Compl. ¶¶ 351, 361, 369.  Federal pleading standards are clear, however, that "[i]n order to provide the defendant fair notice of a defamation claim, federal courts have also required a claimant to set

made-up term that, as the Article makes clear, is intended to invoke the notion of "laundering" a deserved reputation in the same manner as "laundering" ill-gotten things. *See* Parsons Decl., Ex. 1 at 3. Particularly in the context of an Article where sources opine that LIV is being used by the Saudis and M.B.S. to "launder" or "sportswash" their reputations and record of "human rights atrocities," Am. Compl. ¶ 41, suggesting that Reed's reputation as a sportsman is so poor that LIV needs to "sportswash" its reputation from him is clearly a statement of opinion and hyperbole. On this basis, Reed's defamation claims based on *The New Yorker* Article should be dismissed with prejudice.

## III.   REED HAS NOT, AND CANNOT, PLAUSIBLY PLEAD THAT *THE NEW YORKER* PUBLISHED THE CHALLENGED STATEMENT WITH ACTUAL MALICE

For the reasons discussed above, the challenged statement unquestionably is one of opinion—that is, not capable of being proven true or false. Yet, even if the Court were to determine that the statement is one of fact, Reed's Amended Complaint still fails as a matter of law because he has not and cannot plausibly allege that the statement was published with the requisite degree of fault.

As the Golf Channel Defendants and the Gannett Defendants established in their briefs, Reed, a professional golfer, indisputably is a public figure. *See* ECF 35 at

---

out the substance of the allegedly defamatory statements. . . .Thus, in a defamation claim, it is not sufficient for a plaintiff to describe the allegedly defamatory statements in vague terms." *Ground & Pipe Techs., LLC v. Firstliner Techs. Inc.*, 2005 U.S. Dist. LEXIS 54069, at *5 (N.D. Fla. Oct. 5, 2005) (gathering cases). Accordingly, the only statement in the Article at issue for this Court's consideration is that "LIV needs a public investment fund to sportswash its association with Patrick Reed." Am. Compl. ¶ 117.

22-23, ECF 38 at 18-19; *see also Turner*, 879 F.3d at 1272-73 (professional athletes are public figures). Accordingly, Reed must, but cannot, "establish" that *The New Yorker* acted with "actual malice" in publishing the challenged statement. *Turner*, 879 F.3d at 1273. Specifically, Reed "cannot prevail in this suit unless he shows, by clear and convincing evidence, that the defendants acted with actual malice toward him." *Berisha v. Lawson*, 973 F.3d 1304, 1312 (11th Cir. 2020), *cert. denied*, 2021 U.S. LEXIS 3588 (July 2, 2021). At the pleading stage, this means that Reed "must allege facts sufficient to give rise to a reasonable inference that the false statement was made 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Turner*, 879 F.3d at 1273 (quoting *Michel*, 816 F.3d at 702 (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964))).[6]

This actual malice standard presents an "overwhelming burden" to defamation claims by public-figure plaintiffs. *See Demby v. English*, 667 So. 2d 350, 354 (Fla. 1st DCA 1995). Although Reed contends that he may plead "circumstantial facts which show the intent of the speaker" to survive a motion to dismiss, Am. Compl. ¶ 56, he is incorrect to suggest that he can satisfy his burden by pleading conclusory allegations of actual malice. *See Turner v. Wells*, 198 F. Supp. 3d 1355, 1364 (S.D. Fla. 2016) ("While a court must accept well-pleaded factual

---

[6] It is important to note that "actual malice" should not be conflated with "malice" in the traditional sense. In other words, "an intention to portray a public figure in a negative light, even when motivated by ill will or evil intent, is not sufficient to show actual malice unless the publisher intended to inflict harm through knowing or reckless falsehood." *Don King Prods.*, 40 So. 3d at 44-45.

allegations as true, 'conclusory allegations . . . are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations.'" (quoting *Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010))), *aff'd,* 879 F.3d 1254. Failure to adequately plead actual malice is fatal to a complaint. *See Michel*, 816 F.3d at 701-02 (complaint properly dismissed because plaintiff "did not adequately plead that the statements were published with actual malice," and "hold[ing] that the plausibility pleading standard applies to the actual malice standard in defamation proceedings"); *see also Turner*, 879 F.3d at 1273 (affirming dismissal of complaint in part because "the *Twombly/Iqbal* plausibility pleading standard applies to the actual malice standard in defamation pleadings" (cleaned up)).

Reed's primary allegation regarding actual malice is that *The New Yorker* "acted with actual malice because it knew or had reason to know that the publications were false and misleading, and/or at a minimum acted with a reckless disregard for the truth." Am. Compl. ¶¶ 349, 359, 367. Such an allegation, however, is no more than a "legal conclusion[] masquerading as facts," *Davila*, 326 F.3d at 1185, and it is insufficient as a matter of law to plausibly plead that *The New Yorker* published the challenged statement with actual malice.

Reed's two additional conclusory factual allegations—that *The New Yorker* made up the statement and that it acted as part of a conspiracy with its co-defendants—fare no better.

**a. Even if the source of the challenged statement is considered anonymous, reliance on an anonymous source, without more, is not evidence of actual malice**

Reed pleads only two purportedly factual allegations to support his argument that *The New Yorker* published the challenged statement with actual malice.   The first is that "Helfand did not credit the purported 'source' which made this statement, strongly evidencing the probability that Helfand simply made this fake 'quote' up himself to defame Mr. Reed."   Am. Compl. ¶ 118.   But Reed pleads no additional facts to support this bald assertion, and because he fails to plead any additional facts, the Court need not credit this allegation.   *See Davila*, 326 F.3d at 1185 (courts need not accept "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts.").   Significantly, however, there is a further reason why Reed's conclusory allegation must be rejected:   The Article, on its face, demonstrates that the allegation of an anonymous source is false.   In fact, the Article attributes the statement via hyperlink to a specific Twitter account.   The challenged statement begins: "One commentator mused, 'LIV needs a public investment fund to sportwash its association with Patrick Reed."   Parsons Decl., Ex. 1 at 14. Importantly, the word "mused" is a hyperlink that leads to a Twitter profile for the account "@deep_fried_egg," which, on August 16, 2022, posted "LIV needs a public investment fund to sportwash its association with Patrick Reed[.]"   *See* Parsons Decl., Ex. 5.   On this basis as well the Court need not credit Reed's conclusory allegations.   *See Gubarev v. BuzzFeed, Inc.*, 2018 U.S. Dist. LEXIS 97246, at *23 (S.D. Fla. June 5, 2018) ("the hyperlink is the twenty-first century equivalent of the

footnote for purposes of attribution in defamation law, because it has become a well-recognized means for an author or the Internet to attribute a source and the hyperlink instantaneously permits the reader to verify an electronic article's claims.").

Moreover, even if the Court were not persuaded that identification of the Twitter account via hyperlink is conclusive of the issue, it nevertheless is well-established that quotation of unnamed sources is a routine part of newsgathering and reporting, and without more, is not evidence of actual malice.  *See Michel*, 816 F.3d at 704 ("That many of the sources were not identified by name does not render them or the reliance on them invalid.  Indeed, reliance on unnamed sources is typical in gossip columns (and in much other reporting as well).");  *see also Isaac v. Twitter, Inc.*, 557 F. Supp. 3d 1251, 1257 (S.D. Fla. 2021) ("courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010))).

Even more, however, this source was not the only source who is quoted in the Article commenting on Reed's reputation.  The Article quotes Kevin Kisner as saying that Reed's reputation on his college team was so poor, his teammates might not "piss on him if he was on fire."  Parsons Decl., Ex. 1 at 14.  That is, aside from Reed's wholly conclusory allegation, there is "no indication" that the statement "was fabricated by the defendants, wholly imaginary, based on an unverified anonymous

phone call, inherently improbable, or obviously worthy of doubt." *Michel*, 816 F.3d at 705.

In short, this alleged "fact," even accepted as true (which it is not), is insufficient as a matter of law to suggest that *The New Yorker* published the challenged statement with actual malice.

### b. "Conspiracy" is not evidence of actual malice

In a similar vein, Reed's second, and final, attempt to allege a fact to support his claims is that *The New Yorker* acted "together with its co-Defendants" to defame Reed. Am. Compl. ¶¶ 345, 352, 362. Reed, however, does not plead any actual facts—and nor could he—to suggest that such a conspiracy exists. As a Florida court previously held in a matter filed by Reed's counsel, "wholly conclusory allegation[s] that Defendants were engaged in a . . . conspiracy . . . to defame Plaintiff[]" is insufficient as a matter of law to show actual malice. *See Klayman v. Politico LLC*, 2022 Fla. Cir. LEXIS 23, at *19 (Fla. 15th Cir. Mar. 22, 2022).

Because Reed failed to plausibly plead *any* facts suggesting *The New Yorker* published the challenged statement with actual malice, Reed's defamation claims based on the Article published by *The New Yorker* (Counts 29-31) should be dismissed with prejudice.

## IV.   REED HAS NOT, AND CANNOT, ESTABLISH THAT *THE NEW YORKER* PROXIMATELY HARMED HIM

As a matter of Florida law, defamation plaintiffs "suing a media defendant must . . . plead and prove actual injury." *Edelstein v. WFTV, Inc.*, 798 So. 2d 797, 798

(Fla. 4th DCA 2001) (per curiam). Specifically, defamation plaintiffs must plead that a false statement "naturally and *proximately* result[ed] in injury to another." *Byrd*, 433 So. 2d at 595 (emphasis added). Proximate cause requires "such a natural, direct and continuous sequence between the negligent act and the injury that it can reasonably be said that but for the act, the injury would not have occurred." *Borenstein v. Raskin*, 401 So. 2d 884, 886 (Fla. 3d DCA 1981).

The Amended Complaint alleges in a purely conclusory manner that the single statement that LIV needs a PIF to "sportswash" its association with Reed "caused irreparable harm to Mr. Reed, his goodwill and reputation and financially in his trade and profession." *See* Am. Compl. ¶¶ 350, 360, 368. Yet, there is no allegation whatsoever of any specific harm purportedly befalling Reed following publication of the Article, let alone that the single sentence in *The New Yorker* Article *proximately caused* that harm. Reed alleges that he lost sponsors, Am. Compl. ¶ 17, yet he does not allege any facts to suggest that *The New Yorker* (or any other named Defendant) *caused* those loses. As Reed himself acknowledged, in the years prior to publication of the Article, he has been the "only player from any [professional] team competition . . . who has never had a single sponsor that is a corporate partner of the PGA Tour." Am. Compl. ¶ 18. And as he stated, after being "functionally terminated" by the PGA in June 2022, his name was "prominently and inextricably linked to LIV as in effect its poster boy." ECF 45 at 3. Indeed, as is clear from the face of the Article, Reed suffered from a poor reputation at least as far back as college. *See* Parsons Decl., Ex. 1 at 14.

Further, the Article was not published until more than four months after the PGA Tour suspended and tried to sanction 17 players who participated in LIV's inaugural tournament, Am. Compl. ¶ 34, and until two months after Reed first filed the initial complaint in this matter.  ECF 35 at 2.  And in his Amended Complaint, Reed alleges his reputation was harmed by at least *seventeen* other public statements published prior to *The New Yorker* Article.  *See* Am. Compl. ¶ 83 (Jan. 31, 2021 Golf Channel); ¶ 78 (Feb. 1, 2021 Golf Channel); ¶ 65 (Feb. 5, 2022 Golf Channel article); ¶ 70 (June 10, 2022 Sky Sport News article); ¶ 57 (June 14, 2022 Horace Langley podcast); ¶ 90 (June 26, 2022 Chamblee tweet); ¶ 89 (August 10, 2022 Chamblee tweet); ¶ 99 (August 24, 2022 Lynch article); ¶¶ 93-94, 97 (August 28, 2022 Chamblee tweets); ¶ 95 (August 30, 2022 Chamblee tweet); ¶¶ 91, 96 (September 2, 2022 Chamblee tweets); ¶ 92 (September 13, 2022 Chamblee tweet); ¶ 98 (September 15, 2022 Chamblee tweet); ¶ 107 (September 20, 2022 Golf Channel).

To be clear, *The New Yorker* agrees with the publishers of those other statements that Reed's claims based on them fail as a matter of law for multiple reasons.  But even if Reed somehow had managed to state a claim based on one of those other statements, Reed must plead facts that plausibly show the later-published statement in *The New Yorker* proximately harmed him.  Because he has not and cannot do so, his claims for defamation based on the Article published by *The New Yorker* should be dismissed with prejudice.

## V.   REED CANNOT PLAUSIBLY PLEAD A CLAIM FOR DEFAMATION BY IMPLICATION

While all of the foregoing arguments apply to Count 30 of Reed's Amended Complaint, this claim also fails for a further reason:  Defamation by implication claims arise only "where literally true statements are conveyed in such a way as to create a false impression." *Jews for Jesus, Inc. v. Rapp.*, 997 So. 2d 1098, 1108 (Fla. 2008).  Plaintiffs pleading such a claim must show that the defendant "(1) juxtapose[d] a series of facts so as to imply a defamatory connection between them, or (2) creat[ed] a defamatory implication by omitting facts." *Turner*, 198 F. Supp. 3d at 1365-66 (quoting *Jews for Jesus*, 997 So. 2d at 1106).  "All of the protections of defamation law that are afforded to the media . . . are therefore extended to the tort of defamation by implication." *Jews for Jesus*, 997 So. 2d at 1108.

Reed's sole allegation to support his claim for defamation by implication is a bare recitation of the legal standards: that *The New Yorker* "juxtaposed a series of facts so as to imply a defamatory connection between them or, in the alternative, created a defamatory implication by omitting facts when describing the nature and sequence of events." Am. Compl. ¶ 356.  Reed does not identify what facts were allegedly juxtaposed, nor which facts were allegedly omitted.  Accordingly, Reed has failed to plead any facts—let alone to *plausibly* plead—that *The New Yorker* defamed him by implication.  This claim therefore fails as a matter of law for this additional reason.

## VI.   REED CANNOT PLAUSIBLY PLEAD THAT THE CHALLENGED STATEMENT IS *PER SE* DEFAMATORY

Similarly, while Points I-IV above all apply to Count 31 of Reed's Amended Complaint, his claim for defamation *per se* fails for an additional, independent reason:  He pleads no facts at all that could support such a claim.  "[P]er se defamatory statements are so obviously defamatory and damaging to reputation that they give rise to an absolute presumption both of malice and damage." *Turner*, 198 F. Supp. 3d at 1365 (cleaned up); *accord Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1119 (S.D. Fla. 2021).  Specifically, a statement may only be *per se* defamatory if it "(1) charges that a person has committed an infamous crime; (2) tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; or (3) tends to injure one in his trade or profession." *Turner*, 198 F. Supp. 3d at 1365.  Further, the statement "must be actionable on its face and . . . not require additional explanation of the words used to show that they have a defamatory meaning or that the person defamed is the plaintiff." *Isaac*, 557 F. Supp.3d at 1259 (cleaned up).

On the face of the Article, however, it is clear that suggesting the Saudis need a PIF to "sportwash" their association with Reed is not *per se* defamatory.  And, once again, Reed pleads only the bare recitation of the legal standard to support his claim, pleading that *The New Yorker* "caused Mr. Reed ridicule, hatred, disgust and contempt in his trade and profession as a professional golfer." Am. Compl. ¶ 365.  Such a threadbare recitation of the legal conclusion is insufficient, and this claim fails as a matter of law for this additional reason.

## VII.  THE SINGLE PUBLICATION DOCTRINE BARS REED'S CLAIM FOR TORTIOUS INTERFERENCE

Finally, as to Count 32 of the Amended Complaint, in which Reed attempts to plead a claim for tortious interference against *The New Yorker* based on publication of the Article, Florida law is clear that "a single publication sustains a single cause of action." *Bongino v. Daily Beast Co.*, 477 F. Supp. 3d 1310, 1320 (S.D. Fla. 2020). "Were the law otherwise, plaintiffs could elude the constitutional safeguards that are part and parcel of defamation law by 'simply renaming the cause of action and repleading the same facts.'" *Id.* (quoting *Fridovich v. Fridovich*, 598 So. 2d 65, 69 (Fla. 1992). The impact of this principle is that, "[i]f the defamation count fails, the other counts based on the same publication must fail as well." *Id.* at 1320.

Because Reed's claim against *The New Yorker* for tortious interference, *see* Am. Compl. ¶¶ 370-74, stems from the same Article—and indeed the *same sentence*—the claim must fail for all of the same reasons as his claims for defamation.

## VIII.  BECAUSE REED'S AMENDED COMPLAINT VIOLATES FLORIDA'S ANTI-SLAPP STATUTE, *THE NEW YORKER* IS ENTITLED TO REASONABLE ATTORNEYS' FEES AND COSTS

Florida's Anti-SLAPP Statute provides that no person may file any lawsuit against another "without merit and primarily because such person or entity has exercised the constitutional right of free speech in connection with a public issue . . . as protected by the First Amendment to the United States Constitution and s. 5, Art. I of the State Constitution." Fla. Stat. § 768.295(3). The statute defines "free speech in connection with public issues" as encompassing "news report[s]" or "other similar

work[s]."  *Id.* § 768.295(2)(a).  The statute affords defamation defendants the right to have SLAPP claims against them "expeditiously disposed of by the courts," and further, to recover their reasonable attorneys' fees and costs incurred in defending against SLAPP lawsuits.  Fla. Stat. § 768.295(1), (4).

As the Gannett Defendants have established in detail, several federal courts have applied the Florida statute to award defamation defendants their attorneys' fees and costs.  *See* ECF 38 at 22-23 (citing *Corsi*, 519 F. Supp. 3d at 1128; *Ener v. Duckenfield*, 2020 U.S. Dist. LEXIS 181407 (S.D. Fla. Sept. 28, 2020); *Anderson v. Best Buy Stores L.P.*, 2020 U.S. Dist. LEXIS 157642 (M.D. Fla. July 28, 2020), *adopted in full by Anderson v. Coupons in the News*, 2020 U.S. Dist. LEXIS 157199 (M.D. Fla. Aug. 31, 2020)).[7]

This lawsuit involves a "news report" or "other similar work" regarding the incredibly high-profile controversy between the PGA and LIV, thereby indisputably constituting "free speech in connection with public issues."  Fla. Stat.

---

[7] Importantly, Federal courts have held that Florida's statute does not conflict with federal law, and may be applied by Federal courts:

> Florida's statute is a garden variety fee shifting provision, which the Florida legislature enacted to accomplish a 'fundamental state policy'—deterring SLAPP suits. Fla. Stat. § 768.295(a).  The result is a statute that does not answer the same question as the Federal Rules. . . . This conclusion is in line with decades of Eleventh Circuit precedent, which find that state-law statutes and claims for attorneys' fees and costs 'unequivocally' apply in a federal court exercising diversity jurisdiction.

*Bongino*, 477 F. Supp. 3d at 1323 (cleaned up) (quoting *Showan v. Pressdee*, 922 F.3d 1211, 1225 (11th Cir. 2019)).

§ 768.295(2)(a).   Because all of Reed's causes of action against *The New Yorker* fail for the reasons discussed above, *The New Yorker* respectfully requests that this Court grant it leave to file appropriate proof of its reasonable attorneys' fees and costs incurred in defending against this SLAPP lawsuit, in accordance with Local Rule 7.01.

## CONCLUSION

For the foregoing reasons, *The New Yorker* respectfully requests that this Court find that Reed's Amended Complaint is a meritless lawsuit intended to chill speech, and that it dismiss the causes of action based on the Article published by *The New Yorker* with prejudice.   *The New Yorker* further respectfully requests that this Court award to it reasonable attorneys' fees and costs pursuant to Fla. Stat. § 768.295, in accordance with Local Rule 7.1.

## LOCAL RULE 3.01(g) CERTIFICATION

The undersigned certifies that counsel for *The New Yorker* conferred with counsel for the Plaintiff, Larry Klayman, via email, on April 25 and 26, 2023.  Mr. Klayman confirmed that Plaintiff opposes this motion in its entirety.

Dated April 27, 2023

*/s/ Charles D. Tobin*
Charles D. Tobin
Florida Bar No. 816345
tobinc@ballardspahr.com
Jay Ward Brown (*pro hac vice* forthcoming)
brownjay@ballardspahr.com
Emmy Parsons (*pro hac vice* pending)
parsonse@ballardspahr.com
1909 K Street NW, 12th Floor
Washington, DC 20006
Telephone:  (202) 661-2200

*Attorneys for The New Yorker*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 27th day of April, 2023, the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system.  I also certify that the foregoing document is being served this date on all counsel of record via transmission of Notices of Electronic Filing generated by the CM/ECF system.

*/s/ Charles D. Tobin*
Charles D. Tobin