# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

PATRICK NATHANIEL REED,   Case No. 3-22-CV-01059-TJC-PDB

  Plaintiff,

vs.

BRANDEL CHAMBLEE, *et al.*,

  Defendants.

## DEFENDANTS' MOTION FOR ANTI-SLAPP FEES

Plaintiff Patrick Reed sued Defendants[1] for publishing statements that were not about Reed, not defamatory, and not published with actual malice. In response, Defendants filed Motions to Dismiss under Federal Rule of Civil Procedure 12(b)(6), and the Court—in a careful analysis and applying traditional standards for such motions—dismissed Reed's claims with prejudice on substantive, free expression grounds. In a word, Reed's suit was meritless.

---

[1] "Defendants" refers to the following parties in *Reed I*: Brandel Chamblee, Damon Hack, Benjamin Bacon, Eamon Lynch, and TGC, LLC, d/b/a as Golf Channel (collectively, the "Golf Channel Defendants); Gannett Satellite Information Network, LLC, d/b/a Golfweek, and Gannett Co., Inc. (collectively, the "Gannett Defendants"); and Conde Nast International, Inc., d/b/a *The New Yorker* ("*The New Yorker*"). Defendants file this motion pursuant to the Court's order of September 27, 2023, which granted Defendants' Motions to Dismiss and requested additional briefing on the matter of entitlement to fees. *See* (D.E. 91) at 77. Because the Court only sought briefing as to entitlement, the instant motion addresses only this threshold issue; if and when the Court grants the instant motion, each group of Defendants will separately file briefing regarding the amount of fees sought.

Florida's anti-SLAPP statute confers a substantive, mandatory right on defendants to recover their attorneys' fees and costs incurred in defending against meritless, speech-chilling lawsuits like this one. And multiple federal district courts applying Florida law have held that Florida's statute applies in federal court and awarded defendants their fees. For these reasons, Defendants ask the Court to enter an order affirming that Defendants are entitled to their fees and costs incurred while defending against Reed's facially defective suit.

## BACKGROUND

Reed initially filed this defamation suit against the Golf Channel Defendants in the Southern District of Texas in August of 2022. After Reed voluntarily dismissed his complaint and re-filed in the Middle District of Florida—charging similar claims against additional defendants—the Court *sua sponte* dismissed Reed's complaint in November 2022. (D.E. 27). Reed filed his final operative pleading in December 2022, alleging that Defendants published eleven defamatory publications—appearing via television broadcast, online article, podcast, and Twitter. (D.E. 28). Reed also lodged claims for tortious interference with business relationships. *Id.*

Pursuant to Section 768.295, Florida Statutes (the "Statute"), Defendants collectively filed three anti-SLAPP Motions to Dismiss, on behalf

of the Golf Channel Defendants (D.E. 35), the Gannett Defendants (D.E. 38), and *The New Yorker* (D.E. 62), respectively.

First, the Golf Channel Defendants argued that one set of challenged statements regarding LIV Golf ("LIV") was not about Reed; the remaining statements concerning an incident involving Reed at a San Diego golf tournament were barred by the applicable statute of limitations; and both sets of statements constituted protected opinions. (D.E. 35). For instance, they argued that the statements allegedly accusing Reed "of aligning himself with a 'tyrannical, murderous (sportswashing) leader,'" and that LIV players were "over there purely playing for blood money," were nothing more than subjective assessments that were not capable of being true or false.

Similarly, the Gannett Defendants argued that the two subject columns criticizing LIV were also not about Reed; and the challenged statements—many consisting of outlandish Star Wars references depicting LIV as the "evil empire's" "Death Star"—nonetheless constituted protected opinion, rhetorical hyperbole, or were otherwise true. (D.E. 38).

Finally, in its motion, *The New Yorker* argued that the Court lacked personal jurisdiction due to procedural defects and Reed's failure to serve the proper entity. It also argued—as did the other Defendants—that the single challenged statement in its publication was non-actionable opinion and rhetorical hyperbole. (D.E. 62).

3

Each of the Defendants' motions also argued that Reed had not pled facts demonstrating Defendants' actual malice. (D.E. 35; D.E. 38; and D.E. 62). They further collectively argued that Reed's ancillary claims for tortious interference were barred by Florida's single-action rule. *Id.*

Prior to the filing of their motions, each group of Defendants conferred with Reed's counsel, pursuant to Local Rule 3.01(g), putting Reed on notice of the vast defects in his claims. *Id.*

Following a hearing and additional briefing, the Court granted Defendants' motions on September 27, 2023. (D.E. 91). In a thorough opinion, the Court carefully explained why none of the Defendants' publications were actionable. The Golf Channel Defendants' first set of statements and the statements in the Gannett Defendants' columns were not of and concerning Reed. (*Id.* at 25–37). The remaining Golf Channel statements constituted protected opinions. (*Id.* at 39–53). Moreover, while the claims against *The New Yorker* were dismissed on procedural grounds, the Court made clear that the challenged statement was non-actionable opinion. (*Id.* at 10 and n.5). The Court further held that Reed had not pled facts demonstrating that Defendants acted with actual malice (*id.* at 65–69); and Reed's ancillary claims for tortious interference were barred by Florida's single-action rule (*id.* at 70–71). The Court then dismissed Reed's suit with prejudice and requested additional briefing on the matter of entitlement to fees. *Id* at 73–77.

4

As shown below, the fee-shifting provision of Florida's anti-SLAPP statute applies in federal courts, and Defendants are entitled to their attorneys' fees and costs because Reed's suit was meritless and filed because Defendants exercised their First Amendment right to speak on a matter of public concern.

## **ARGUMENT**

A strategic lawsuit against public participation ("SLAPP"), by its nature, is intended to squelch the constitutional rights of speech, press, or petition. As the Florida Legislature explained when drafting the current version of the Statute,[2] a SLAPP is "ostensibly brought to redress a wrong . . . but actually brought to silence one or more critics." Fla. S. Comm. on Jud. CS/SB 1312 (2015), Bill Analysis and Fiscal Impact Statement (March 11, 2015) at 1. Thus, the Statute is primarily designed "to protect the right in Florida to exercise the rights of free speech in connection with public issues." § 768.295(1) Fla. Stat.

The Statute, in relevant part, defines a SLAPP as a suit that is both (a) "without merit" and (b) filed "primarily because [the defendant] exercised the constitutional right of free speech in connection with a public issue." *Id.* at

---

[2] Although the Statute was initially passed in 2000, the Legislature adopted the Statute's current form in 2015. *See* Samuel J. Morley, *Florida's Expanded Anti-SLAPP Law: More Protection for Targeted Speakers*, Fla. B.J., Nov. 2016, at 18 (providing a legislative history).

5

§ 768.295(3). In turn, "free speech in connection with public issues" is defined as "any written or oral statement that is protected under applicable law and is . . . made in or in connection with a play, movie, television program, radio broadcast, audiovisual work, book, magazine article, musical work, news report, or other similar work." *Id.* at § 768.295(2)(a).

In short, a SLAPP fee award is required if two elements are satisfied. First, the lawsuit is brought "primarily because" a speaker engaged in speech in connection with a public issue. This element is readily satisfied because Reed brought defamation claims targeting speech in news articles. When this occurs, the statute permits the defendant to file either a motion to dismiss or motion for summary judgment that invokes the Statute. *Id.* at § 768.295(4). Second, if the dispositive motion is granted—as it was in this matter—the suit is "without merit." *Id.*

When both elements are present, recovery of fees is mandatory. *See id.* ("The court shall award the prevailing party reasonable attorney fees and costs incurred in connection with a claim that an action was filed in violation of this section.").[3]

---

[3] The fee-shifting mechanism is the only mandatory provision in the Statute. Beyond language condemning SLAPPs as violating fundamental First Amendment rights, the Statute also provides—pursuant to the hortatory desire that SLAPPs "be expeditiously disposed of by the courts," § 768.295(1) Fla. Stat.—that a SLAPP defendant may ask the court to conduct a hearing on the anti-SLAPP motion to dismiss or motion for summary judgment. *Id.* at § 768.295(3). The procedure and relevant standards for any such motion,

*Footnoted continued on next page*

### 1. The anti-SLAPP fee statute applies in federal court.

The matter of anti-SLAPP-statute applicability in federal court is not a novel issue, as more than 30 states have enacted anti-SLAPP laws since New York enacted the first anti-SLAPP statute in 1992. *See* George W. Pring & Penelope Canan, *"Strategic Lawsuits Against Public Participation" ("Slapps") an Introduction for Bench, Bar and Bystanders*, 12 BRIDGEPORT L. REV. 937, 939 (1992) (describing the newly minted anti-SLAPP statutes passed in New York and California); *Anti-SLAPP Legal Guide,* REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS, https://www.rcfp.org/anti-slapp-legal-guide/ (providing a comprehensive, state-by-state analysis of the 33 existing anti-SLAPP provisions).

Although all anti-SLAPP laws share a common goal—discouragement of meritless, speech-squelching lawsuits—each statute goes about the task differently. Some of the more common features of anti-SLAPP provisions include (a) automatically staying discovery upon filing an anti-SLAPP motion, (b) shifting the burden to the plaintiff or requiring the plaintiff to satisfy an enhanced standard, (c) demanding the plaintiff demonstrate a probability of success, (d) permitting interlocutory appeal of denied anti-SLAPP motions, and (e) fee shifting. *Id. See also Lam v. Univision*

---

however, must comport with the applicable rules of civil procedure; here, Rule 12(b)(6) governed, and the Court rightly applied the ordinary Rule 12 standard to the Defendants' dispositive motions.

*Communications, Inc.*, 329 So. 3d 190, 195–96 (Fla. 3d DCA 2021) ("[m]ost states have some form of anti-SLAPP legislation, which var[y] greatly in scope and strength."). Of these features, Florida's Statute includes only a mandatory, substantive fee-shifting requirement. § 768.295(4), Fla. Stat.

Whether a state's anti-SLAPP statute applies in federal court is determined by which of the above features appear in the statute. Under the *Erie* doctrine, of course, a federal court sitting in diversity applies state substantive law and federal procedural law. *Hanna v. Plumer,* 380 U.S. 460, 465 (1965); *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 (1938). The dispositive inquiry delineating procedure from substance is whether the "Federal Rule is in direct collision with the law of the relevant State," *Hanna,* 380 U.S at 472, because the law "answers the same question" differently than the federal rule. *See Carbone v. Cable News Network*, 910 F.3d 1345, 1349 (11th Cir. 2018) (considering Georgia's anti-SLAPP statute). That is, federal courts will apply any state provision that does not contravene a federal rule of civil procedure.

Federal courts evaluating the applicability of anti-SLAPP statutes must, therefore, determine whether the relevant portion of the at-issue statute contradicts a procedural rule. Federal courts have declined to apply anti-SLAPP statutes that feature enhanced standards or burden-shifting

8

requirements that contravene Rules 12 and 56.[4] On the other hand, anti-SLAPP statutes, or portions thereof, that fuse with the federal rules are applicable in federal court.[5]

The key question in this analysis is whether the anti-SLAPP statute—or the specific provision within the statute under consideration—supplants the standards for motions to dismiss or for summary judgment. *See CoreCivic, Inc. v. Candide Group, LLC*, 46 F.4th 1136, 1143 (9th Cir. 2022) (explaining that the relevant portion of California's anti-SLAPP statute applies in federal court because "a defamation claim made pursuant California's anti-SLAPP statute must be analyzed under the same standard as Rule 12(b)(6) motions to dismiss, and challenges to factual sufficiency under the same standard as Rule 56 motions for summary judgment").

As the Eleventh Circuit Court of Appeals has repeatedly recognized, fee-shifting provisions apply to federal courts sitting in diversity. *See*, *e.g.*,

---

[4] *See, e.g., Klocke v. Watson*, 936 F.3d 240, 245 (5th Cir. 2019) (Texas); *Carbone*, 910 F.3d 1345 (Georgia).

[5] *See, e.g., Godin v. Schencks*, 629 F.3d 79, 86–87 (1st Cir. 2010) (Maine); *Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963 (9th Cir. 1999) ("Although Rules 12 and 56 allow a litigant to test the opponent's claims before trial, California's 'special motion to strike' adds an additional, unique weapon to the pretrial arsenal, a weapon whose sting is enhanced by a[n] entitlement to fees and costs."); *Charles American Press*, *L.L.C.,* 566 F. 3d 164 (5th Cir. 2009) (applying Louisiana statute in federal court); *Adelson v. Harris*, 774 F.3d 803, 809 (2d Cir. 2014) (the mandatory fee shifting provision of Nevada's statute "seem[s] to us unproblematic").

*Horowitch v. Diamond Aircraft Indus., Inc.*, 645 F.3d 1254, 1259 (11th Cir. 2011) (noting that "a statute allowing for the recovery of attorney's fees, like the FDUTPA fee-shifting provision at issue in [that] case, generally applies in federal court so long as it does not conflict with a valid federal statute or rule"); *Tanker Mgmt., Inc. v. Brunson*, 918 F.2d 1524, 1528 (11th Cir. 1990) (affirming an attorney's fees award pursuant to a Florida statute that provides that a prevailing defendant may recover fees if the plaintiff unreasonably rejected either a settlement offer or an offer of judgment, notwithstanding plaintiff's contention that these matters were procedural rather than substantive); *All Underwriters v. Weisberg*, 222 F.3d 1309, 1311–12 (11th Cir. 2000) (explaining that fee-shifting statutes are substantive and apply to courts sitting in diversity).

    Indeed, as multiple federal district courts have found, Florida's anti-SLAPP statute is just that: a substantive fee-shifting statute that does not contradict either Rule 12 or Rule 56. The first federal court to directly tackle the issue, *Bongino v. Daily Beast Co., LLC*, analyzed the Statute and found that, unlike other anti-SLAPP statutes, Florida's Statute subsumes neither Rule 12 nor Rule 56. *See* 477 F. Supp. 3d 1310, 1323 (S.D. Fla. 2020). Specifically, the court found that because the Statute contains no probability requirement or heightened burden, it "does not answer the same question as

10

the Federal Rules" and is therefore an ordinary fee-shifting mechanism that applies in federal court. *Id.* (citation omitted).

Since *Bongino*, courts that have addressed the issue agree that Section 768.295 constitutes an ordinary fee-shifting mechanism that applies in federal court. *See, e.g., Mac Isaac v. Twitter, Inc.*, 557 F. Supp. 3d 1251, 1261 (S.D. Fla. 2021) ("[a]t bottom, Florida's statute is a garden variety fee shifting provision, which the Florida legislature enacted to accomplish a fundamental state policy—deterring SLAPP suits") (citing *Bongino,* 477 F. Supp. 3d at 1323); *Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1128 (S.D. Fla. 2021) (explaining that the Statute applies in federal court because it "does not conflict with any Federal Rule of Civil Procedure"); *Markle v. Markle*, 8:22-CV-511-CEH-TGW, 2023 WL 2711341, at *13 (M.D. Fla. Mar. 30, 2023) (counting the "the numerous decisions from this District that have applied the statute"). *See also Parekh v. CBS Corp.*, 618CV466ORL40TBS, 2019 WL 2230075, at *1 (M.D. Fla. Feb. 13, 2019), *report and recommendation adopted,* 618CV466ORL40TBS, 2019 WL 2225851 (M.D. Fla. Apr. 19, 2019), *aff'd,* 820 Fed. App'x 827 (11th Cir. 2020).[6]

---

[6] These federal cases align with Florida courts' description of the Statute as an ordinary, substantive, fee-shifting provision. *See Lam*, 329 So. 3d at 197 (endorsing the *Bongino* holding and explaining that the law is a simple fee-shifting statute that features no additional burdens that conflict with the federal procedural rules); *Rosenthal v. Council on Am.-Islamic Relations, Fla., Inc.*, 45 Media L. Rep. 2664, at *3 (Fla. 17th Cir. Ct. Nov. 8, 2017) ("[the Statute] provides a *substantive* right to immunity from abusive lawsuits that

*Footnoted continued on next page*

11

In sum, the Statute applies in federal court because it merely shifts fees and does not contradict any federal procedural rules.

### 2. Reed violated the anti-SLAPP Statute.

Reed's lawsuit satisfies both elements of the Statute because (a) he filed suit because Defendants engaged in statutorily enumerated activity, and (b) the suit was meritless.

As to the first element, Reed sued Defendants because they "exercised the constitutional right of free speech in connection with a public issue." *See* Fla. Stat. § 768.295(3). The Statute defines "free speech in connection with public issues" to broadly include "any written or oral statement that is protected under applicable law and . . . is made in or in connection with a play, movie, television program, radio broadcast, audiovisual work, book, magazine article, musical work, news report, or other similar work." *Id.* at § 768.295(2)(a). The at-issue publications here—broadcasts, podcasts, news articles, columns, and Tweets—fall squarely within these protected

---

suppress First Amendment rights") (emphasis added). Defendants note that one of Florida's six District Courts of Appeal, the 2d DCA, has interpreted the Statute to encompass a burden-shifting mechanism. *See Gundel v. AV Homes, Inc.*, 264 So. 3d 304, 314 (Fla. 2d DCA 2019). No other appellate court in Florida has adopted the 2d DCA's position. Although the Florida Supreme Court has not formally opined on the matter, it strongly indicated its position—that the Statute is an ordinary fee-shifting law—earlier this year when considering whether to amend the Florida appellate rules to permit interlocutory appealability. *See* Fla. S. Ct., *Oral Arguments*, YouTube (April 5, 2023), https://www.youtube.com/watch?v=94c-gs4dUIc and *In re Amendments to Florida Rule of Appellate Procedure 9.130*, SC2022-1084, 2023 WL 3151092 (Fla. April 28, 2023) (suggesting that Section 768.295 does not create any rights or immunities except the right to attorneys' fees at the end).

12

categories of expression. Each publication discussed aspects of the deep public controversy surrounding LIV and its inextricable ties to the Saudi government, or otherwise provided commentary on highly publicized sporting events. *See Boling v. WFTV, LLC*, 2018 WL 2336159, at *2 (Fla. 9th Jud. Cir. Feb. 28, 2018) (applying the Statute to information appearing in broadcasts); *Loomer v. New York Magazine*, 2021 WL 1748010, at *3 (Fla. 15th Jud. Cir. April 29, 2021) (noting that information appearing in a news article—in both a physical or online format—is "clearly a medium covered by the Anti-SLAPP statute"); *Mac Isaac,* 557 F. Supp. 3d at 1261 (applying the Statute to information appearing on Twitter); *Martin v. Heidenreich*, 53-2021-CA-002521, 2022 WL 18781716, at *2 (Fla. 10th Jud. Cir. Dec. 12, 2022) (applying the Statute to information appearing on a Facebook livestream); *Davis v. Mishiyev*, 339 So. 3d 449, 450 (Fla. 2d DCA 2022) (applying the Statute to information appearing via radio, Instagram, and Facebook); *WPB Residents for Integrity in Gov't, Inc. v. Materio*, 284 So. 3d 555, 562 (Fla. 4th DCA 2019) (explaining that the "other similar work" provision in the Statute constitutes a "catchall phrase that promises protection for statements made in or in connection with other works that are similar to the enumerated works") (Gross, J., concurring). Because Reed sued Defendants for exercising their First Amendment right to publish free speech in connection with public issues, the first element of the Statute is satisfied.

13

Second, the suit was meritless because the Court completely disposed of Reed's suit against Defendants. The Court—applying the ordinary, Rule 12 plausible-pleading standard—found that Reed sought to impose defamation liability against Defendants for speech that was not about Reed, incapable of defamatory meaning, and not published with actual malice; and that his ancillary claims for tortious interference were barred by Florida's single-action rule. *See generally* (D.E. 91). For these reasons, the Court granted Defendants' motions and dismissed Reed's case with prejudice. *Id.*

The nature, comprehensiveness, and finality of the Court's findings make clear that Reed's lawsuit was completely "without merit." *See* Fla. Stat. § 768.295(3); *Martin*, 2022 WL 18781716, at *4 n.3 (explaining under the Statute that a claim "without merit" does "not need to rise to the level of being 'frivolous' in order for the Court to rule in Defendant's favor and award fees. Instead, Defendant must simply prevail via a ruling of the Court or a verdict by a jury of no-liability"); *Bongino,* 477 F. Supp. 3d at 1322 ("[b]ecause Plaintiff's suit fails to state a claim for defamation, it was without merit under Florida Statute § 768.295(3)."). *See also Mac Isaac*, 557 F. Supp. 3d at 1261; *Corsi,* 519 F. Supp. 3d at 1128.

Because Reed's lawsuit satisfied both statutory requirements, it was filed "in violation of" the Statute, and, as a result, the Court must award the reasonable attorneys' fees and costs incurred by Defendants in connection

14

with this lawsuit. *See* Fla. Stat. § 768.295(4) ("[t]he court *shall* award the prevailing party reasonable attorney fees and costs incurred in connection with a claim that an action was filed in violation of this section") (emphasis added). *See also Parekh*, 820 F. App'x at 836 (noting, "[b]ased on the plain language" of the Statute that "the district court properly awarded fees" to the defendants because plaintiff's "suit was 'without merit' . . . and it arose out of the defendants' protected First Amendment activity—publishing a news report on a matter of public concern"); *Bongino,* 477 F. Supp. 3d at 1322; *Corsi,* 2022 WL 18586842, at *4.

Because Reed filed a suit that violated Florida's anti-SLAPP law, Defendants are entitled to recoup all fees incurred while defending against Reed's meritless action. *See Corsi v. Newsmax Media, Inc.*, 20-CV-81396-RAR, 2022 WL 18586842, at *2–*5 (S.D. Fla. Jan. 6, 2022) (providing a thorough analysis of why the Statute provides for recovery of all fees incurred by a defendant while litigating a SLAPP).[7]

---

[7] As the Court's order notes, Reed cites an oral argument of the appeal proceedings in *Corsi* wherein Eleventh Circuit Judge William Pryor questioned whether Florida's anti-SLAPP statute applied in federal court. *See* (D.E. 91). However, the court also recognized that it generally applies "state laws that provide for an award of attorney's fees for claims that arise under state law . . . or fail under state law all the time," and it questioned why Florida's anti-SLAPP statute should not be treated as a garden-variety "fee-shifting statute that, if you file a meritless defamation lawsuit, then you have to pay the other side's fees." Transcript of Oral Argument at 11, 37, *Corsi v. Newsmax Media, Inc.*, No. 21-10480 (11th Cir. May 19, 2022). But ultimately, the court never ruled on the appeal because the parties settled the case. *See* (D.E. 91); *Corsi v. Newsmax Media Inc.*, No. 21-10480 and 22-10758, 2022 WL 3353776, at *1 (11th Cir. July 1, 2022); *c.f. United States v. Percoco*, 16-CR-776,

*Footnoted continued on next page*

## CONCLUSION

Florida's anti-SLAPP statute prohibits anyone from filing a lawsuit that lacks merit and because the defendant exercised its right of free speech in connection with public issues. Because Reed's suit violated both elements of the Statute, and the Statute applies in federal court, Defendants ask the Court to enter an order finding that Defendants are entitled to recover their attorneys' fees and costs incurred while defending against this suit.

Dated: October 20, 2023

          Respectfully Submitted,

          SHULLMAN FUGATE PLLC

          ***/s/ Minch Minchin***
          Rachel E. Fugate (FBN 144029)
          rfugate@shullmanfugate.com
          Deanna K. Shullman (FBN 514462)
          dshullman@shullmanfugate.com
          Minch Minchin (FBN 1015950)
          mminchin@shullmanfugate.com
          50 N. Laura Street, Suite 2500
          Jacksonville, FL 32202
          Tel: (813) 935-5098

          *Attorneys for the Golf Channel Defendants*

          THOMAS & LoCICERO PL

          ***/s/ Carol LoCicero***
          Carol Jean LoCicero (FBN 603030)
          Linda R. Norbut (FBN 1011401)

---

2019 WL 493962, at *8 (S.D.N.Y. Feb. 8, 2019) ("Reading the tea leaves of oral argument is an act of pure speculation.").

601 South Boulevard
Tampa, FL  33606
Telephone: (813) 984-3060
Facsimile:  (813) 984-3070
clocicero@tlolawfirm.com
lnorbut@tlolawfirm.com
Secondary email: tgilley@tlolawfirm.com

*Attorneys for the Gannett Defendants*

and

BALLARD SPAHR

***/s/ Charles D. Tobin***
Charles D. Tobin (FBN 816345)
tobinc@ballardspahr.com
Jay Ward Brown (*pro hac vice*)
brownjay@ballardspahr.com
Emmy Parsons (*pro hac vice*)
parsonse@ballardspahr.com
1909 K Street NW, 12th Floor
Washington, DC 20006
Telephone: (202) 661-2200

*Attorneys for The New Yorker*

**LOCAL RULE 3.01(g) CERTIFICATION**

I HEREBY CERTIFY that on October 18, 2023, counsel for the Gannett Defendants conferred via email with Reed's counsel regarding this motion on behalf of all Defendants. Reed opposes the relief sought herein.

*/s/ Minch Minchin*
Minch Minchin