## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

PATRICK NATHANIEL REED,

                Plaintiff

v.

BRANDEL EUGENE CHAMBLEE, et al

              Defendants.

**Case Number: 3-22-CV-01059-TJC-PDB**
**ORAL ARGUMENT REQUESTED**

**PLAINTFF PATRICK NATHANIEL REED'S RESPONSE IN OPPOSITION**
**TO DEFENDANTS' MOTION FOR ANTI-SLAPP FEES**

Dated: November 29, 2023

Respectfully submitted,

By: */s/ Larry Klayman*_____
Larry Klayman, Esq.
Florida Bar No.: 246220
Klayman Law Group P.A.
7050 W. Palmetto Park Rd
Boca Raton, FL, 33433
Tel: 561-558-5536
leklayman@gmail.com

*Counsel for Patrick Nathaniel Reed*

Plaintiff Patrick Reed ("Mr. Reed") hereby submits the following in opposition to Defendants Brandel Chamblee, Damon Hack, Benjamin Bacon, Eamon Lynch, and TGC, LLC, Gannett Satellite Information Network, LLC, Gannett Co., Inc., and Conde Nast International, Inc.'s (collectively "Defendants") Motion for Anti-SLAPP Fees ("SLAPP Motion"). Mr. Reed respectfully requests oral argument on this matter, as well as on his previously filed Motion to Recuse the Honorable Timothy J. Corrigan Pursuant to 28 U.S.C. § 455 and 28 U.S.C. § 144 ("Motion for Recusal") and Motion to Alter or Amend a Judgment, and or Relief From Judgment or Order Pursuant to Federal Rules of Civil Procedure 59 and 60 ("Motion for Reconsideration").

This matter should not have even reached this stage, as the law here is clear. Florida's Anti-SLAPP statute does not apply to a federal court sitting in diversity. Federal circuits and other federal courts all across the country have come to this conclusion, including the U.S. Court of Appeals for the Eleventh Circuit ("Eleventh Circuit"), the U.S. Court of Appeals for the Fifth Circuit ("Fifth Circuit"), the U.S. Court of Appeals for the District of Columbia Circuit ("D.C. Circuit"), and the U.S. Court of Appeals for the Second Circuit ("Second Circuit"). In contrast, only one rogue outlier lower court in the U.S. District Court for the Southern District of Florida, the Honorable Jose E. Martinez ("Judge Martinez") has erred in finding Florida's Anti-SLAPP statute applicable in his Court, although his non-precedential reasoning as to why is not applicable to this

instant matter. *Bongino v. Daily Beast Co., LLC*, 477 F. Supp. 3d 1310 (S.D. Fla. 2020) ("*Bongino*"). Notably, Judge Martinez has a very high reversal rate.

The applicable law as set forth below, is underscored and buttressed, importantly, by the distinguished Chief Judge of the U.S. Court of Appeals for the Eleventh Circuit, the Honorable William H. Pryor Jr. ("Judge Pryor"), who at oral argument in *Corsi v. Newsmax Media Inc et al*, 21-10480 (11th Cir.) ("*Corsi*"), Exhibit 1, expressed "serious doubt" as to whether Florida's Anti-SLAPP statute applied in federal court due its requiring a "heightened pleading standard," and that Fed. R. Civ. P. 11 answered the "same question," rendering it inapplicable in federal court, as explained in even greater detail below. And, this matter was admittedly only settled out of court because the Appellees, Newsmax, did not want to risk negative precedent in its case by the Eleventh Circuit through a finding that Florida's Anti-SLAPP statute was not applicable in federal court, given that they are currently facing other defamation cases over January 6, 2020, that could result huge jury verdicts which would force them into bankruptcy.[1]

Thus, the fact that the Defendants were even given license by this Court - after Mr. Reed provided compelling case and other precedent in prior pleadings - to file their frivolous SLAPP Motion, is indicative of the extrajudicial bias and prejudice which resulted in this Court's order of September 27 2023, dismissing

---

[1] *US Dominion, Inc. v. Newsmax Media, Inc.*, C.A. N21C-08-063 EMD (Del. Super. Ct.); *Smartmatic U.S. Corp. v. Newsmax Media, Inc.*, C.A. N21C-11-028 EMD (Del. Super. Ct.).

in toto both of these cases. This extra-judicial bias is also manifest in the Court's gross misstatement that "[f]ederal courts sitting in diversity and applying Florida law routinely award fees under Florida's anti-SLAPP statute." ECF No. 91 at 64.

In Mr. Reed's Motion for Recusal, he showed how this Court has committed a litany of highly prejudicial errors resulting in having dismissed each and every one of the fifty-five (55) defamatory statements at issue – an impossibility – as being non-actionable statements including, as just as few examples among many, finding (1) that with regard to Defendants Larson and Bloomberg, *Ryan* ¶¶ 113 – 119, who despite having prominently featured a large recognizable picture of Mr. Reed in their article titled "*Saudi-Backed LIV Golf is Using PGA Suit to Get Data on 9/11 Families Court Told,*" the Honorable Timothy J. Corrigan ("Judge Corrigan") incredulously ruled that "[a]s a matter of law, no reasonable person would understand the article as implicating Reed." ECF No. 91 at 38; (2) finding that the group libel doctrine was not applicable with regard to statements referring to LIV, despite conceding that Defendant Chamblee admitted that there were only fourteen recognizable players, ECF No. 91 at 32, therefore severely reducing the size of the "group" at issue; and (3) downplaying the malicious defamatory statements as simply "negative media coverage"  or merely "criticism of LIV generally" that is "over the top." ECF No. 91 at 2, 5.

These highly prejudicial errors were extremely harmful because they resulted in Judge Corrigan dismissing each and every one of the fifty-five (55)

defamatory statements at issue, not letting even one go to the jury, as being non-actionable statements without any real specific but only cursory factual and legal analysis. In stark contrast, in another case where the undersigned counsel served as counsel until trial, *Moore v. Senate Majority PAC et al*, 4:19-cv-01855 (N.D. Al.)(the "*Moore* Case"), the Honorable Corey Maze ("Judge Maze") was also presented with a defamation complaint involving numerous statements. Judge Maze did a serious and detailed analysis of each and every defamatory statement, whereas this Court only performed a vague and highly cursory analysis. Judge Maze allowed a single statement to go to trial before the jury, *Moore* ECF No. 62. This one defamatory statement resulted in an over $8 million dollar judgment for the Plaintiff. *Moore* ECF No. 207. This just goes to show that even just one defamatory statement can compensate the victim, and in the *Moore* Case, a public figure, former Judge Roy Moore. As occurred with Judge Maze, this Court has a duty to carefully analyze every single alleged defamatory statement and not lump them together into insufficiently delineated and analyzed categories, even if to do otherwise might be convenient to save time. By dismissing an entire case based on vague generalities, rather than the actual alleged facts and law, this Court exhibited a predetermined extra-judicial mindset to dismiss these cases no matter what.

The Court must not compound its past conduct by now also wrongfully applying Florida's Anti-SLAPP statute to this case, a federal court sitting in

diversity, where this statute simply does not apply. This would be punitive, highly damaging, and cause an even greater manifest injustice.

## I.  FLORIDA'S ANTI-SLAPP STATUTE DOES NOT APPLY TO A FEDERAL COURT SITTING IN DIVERSITY

As codified in Sack on Defamation: Libel, Slander, and Related Problems § 16:2.3 (5th ed. 2017), the widely used and cited practice guide and treatise of the prestigious Practicing Law Institute, with regard to the law of defamation:

> Federal courts have wrestled with the question of the extent to which provisions of a state anti-SLAPP statute are applicable in federal court. The problem, in a nutshell, is that the state statutes may contain provisions that are seen to conflict with the federal court's procedural law and rules, although in defamation cases (and others) federal courts do employ the state substantive law, they apply federal procedural law and rules. As a general rule, then, although some federal courts do employ the state's anti-SLAPP law, where a state anti-SLAPP provision conflicts with a federal procedural rule, the federal court may be expected to follow the federal law.

Thus, it is well-accepted that the question of whether a federal court sitting in diversity should apply a state anti-SLAPP statute ultimately turns on the black-letter and landmark case law set forth in *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938), which mandates that in this situation, the Court must apply state substantive law and federal procedural law. *Id*. at 92. There can be no doubt that the questions raised by Florida's Anti-SLAPP statute – pretrial dismissal of cases and an award of fees for meritless actions – are both procedural matters that are specifically addressed in the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 8(a) for

motions to dismiss and Fed. R. Civ. P. 11 for sanctions. Accordingly, pursuant to *Erie*, the inquiry should end here, as Florida's Anti-SLAPP statute is procedural and therefore federal law applies.

This was recognized by the Chief Judge of the Eleventh Circuit, William H. Pryor, who at oral argument in *Corsi* expressed "serious doubt" as to whether Florida's Anti-SLAPP statute could apply in federal court due its requiring a "heightened pleading standard," and opined that Fed. R. Civ. P. 11 answered the "same question" as Florida's Anti-SLAPP statute, rendering it inapplicable in federal court even in Florida, which was where the case before him occurred:

> There's a conflict in what the - the Florida courts even say this - in how the statute works, right?...On the one hand, at least one DCA has said it does create a heightened pleading standard, right?... The other says it doesn't….: If it does, it seems to me, then it conflicts with the federal rules and it doesn't apply…..And if it doesn't create a heightened pleading standard, then it seems to me it's procedural and it also doesn't apply…..**But either way, it seems to me the statute just doesn't apply in federal court**. Exhibit 1 at 14 (emphasis added).

> The thing I'm most interested, at least – **I can only speak for myself - is the attorney's fees issue, and I have serious doubts about whether the anti-SLAPP statute applies in federal court**. And it seems to me that if it doesn't, then a suit filed in violation of it can't give rise to an attorney's fee award. Exhibit 1 at 18.

> Even so, I mean, obviously, it's just, talking off the top of my head, it seems to me like a court that finds that there is a meritless suit that's been filed and it's been filed solely because the person is trying to get back at someone and inflict costs on someone for exercising their First Amendment rights in a way that they didn't like, that that would be an improper purpose. I mean, I can't imagine - it's hard for

me to imagine that a court would find that that was a proper purpose [and thus sanctionable under Rule 11]." <u>Exhibit 1</u> at 29 – 30.

Thus, as concluded by Chief Judge Pryor, Florida's Anti-SLAPP statute is inapplicable on two grounds: (1) it is procedural, and therefore would not apply under *Erie*, and (2) it conflicts with the Federal Rules of Civil Procedure because it imposes a heightened pleading standard. Both are correct.

### a. Florida's Anti-SLAPP Statute Conflicts With The Fed. R. Civ. P Because It Imposes a Heightened Pleading Standard

The fact that Florida's Anti-SLAPP statute imposes a heightened pleading standard on the Plaintiff, and therefore would not apply in federal court as conflicting with the Federal Rules of Civil Procedure, is undisputable. As alluded to in *Corsi*, the Florida Anti-SLAPP statute bars the filing of a suit "if the suit's without merit and if it was filed because someone exercised their free speech rights." <u>Exhibit 1</u> at 15-16. Thus, any Court applying Florida's Anti-SLAPP statute would have to make the express finding that the lawsuit was brought specifically for the purpose of curtailing free speech rights. It is clear that no such standard exists in Federal Rule of Civil Procedure 8, and therefore Florida's Anti-SLAPP statute creates a heightened pleading standard that would not apply to federal courts sitting in diversity.

This was expressly recognized by Florida's Second District Court of Appeals in *Gundel v. AV Homes, Inc.*, 264 So. 3d 304 (Fla. Dist. Ct. App. 2019). *Gundel* involved a motion filed under Florida's Anti-SLAPP statute brought by a group

of Plaintiff residents in a residential community against the Defendant developers for violations of Florida's Homeowners Association Act and Florida's Deceptive and Unfair Trade Practices Act. *Id*. at 306, 308. The anti-SLAPP motion was brought after the Defendants filed a counterclaim against the Plaintiffs, and was styled as a "Motion to Dismiss, For Judgment on the Pleadings or For Summary Judgment on Counterclaim and For Award of Attorneys' Fees and Costs Under Florida's Anti-SLAPP Statute." *Id*. at 308. The trial court only ruled on the Motion to Dismiss portion and denied the motion on the ground that the "residents failed to show that their conduct fell within the protections of the Anti-SLAPP statute and that the Residents failed to establish that their conduct was made 'in connection with' an existing judicial proceeding." *Id.* at 309.

On appeal the Second District Court of Appeals found that the lower court had applied the incorrect standard, and that there was an additional burden placed on the claimant (usually in this case, the Plaintiff, but in this case the defendant, counter-plaintiff HOA):

> The language of the statute does, however, attach the action to the claimant rather than the SLAPP defendant: "[a] person or governmental entity in this state may not file," thus prohibiting the claimant from taking action, rather than "a person or entity may not be sued by a governmental entity or another person." § 768.295(3). **The statutory language supports requiring the claimant to meet a burden."**

> Placing the initial burden on the SLAPP defendant to set forth a prima facie case that the Anti-SLAPP statute applies and then **shifting the burden to the claimant** to demonstrate that the claims

are not 'primarily' based on First Amendment rights in connection with a public issue and not 'without merit' serves the purpose of the statute…." *Id*. at 314 (emphasis added).

Thus, *Gundel* makes the express finding that Florida's anti-SLAPP statute places an additional burden on the claimant, thereby clearly conflicting with the Federal Rules of Civil Procedure and being inapplicable in federal court. Importantly, *Gundel* is not a rogue, one-off decision, as the Second District Court of Appeals has repeatedly confirmed this heightened burden and pleading standard. In *Davis v. Mishiyev*, 339 So. 3d 449 (Fla. Dist. Ct. App. 2022), the Court further held:

> We explained that the statute places the initial burden on a "SLAPP defendant to set forth a prima facie case that the Anti-SLAPP statute applies" and that once that burden is met, the burden is shifted to the SLAPP plaintiff "to demonstrate that the claims are not 'primarily' based on First Amendment rights in connection with a public issue and not 'without merit.'" *Id*. Applying the statute in this manner "serves the purpose of the statute and conforms with the procedures employed in considering other statutorily-based motions to dismiss." *Id*. Otherwise, if the burden was placed exclusively on the SLAPP defendant based solely on the plaintiff's allegations, the plaintiff could avoid dismissal "by being intentionally vague, thus thwarting the purpose of the statute." *Id*. at 453.

Then, as recently as September of this year, the Court in *Godwin v. Michelini*, 48 Fla. L. Weekly 1769 (Dist. Ct. App. 2023) held:

> The trial court must employ a burden-shifting analysis whereby the initial burden is on the SLAPP defendant to establish that the Anti-SLAPP statute applies, and once the defendant has done so, the burden shifts "to the claimant to demonstrate that the claims are not 'primarily' based on First Amendment rights in connection with a public issue and not 'without merit.'" *Id*. And in *Davis*, we recognized the burden-shifting analysis established in *Gundel* and granted [*4] the petition for writ of certiorari, concluding that "the

9

unelaborated order of dismissal suggests that the trial court denied the motion utilizing an incorrect motion-to-dismiss standard." *Id.*

Ironically, the website for counsel for Defendants, Shullman Fugate, admits this point, as it published[2]:

> **...[T]he court recognized it encompasses an evidentiary burden-shifting to the Plaintiff. Specifically, the court found "[p]lacing the initial burden on the SLAPP defendant to set forth a prima facie case that the Anti-SLAPP statute applies and then shifting the burden to the claimant to demonstrate that the claims are not 'primarily' based on First Amendment rights in connection with a public issue and not 'without merit' serves the purpose of the statute and conforms with the procedures employed in considering other statutorily-based motions to dismiss**." (emphasis added).

Thus, there can be no dispute that counsel for Defendants know that their motion is both frivolous and meritless – which should ironically expose them to having to pay an award of attorney's fees and costs to Mr. Reed - as they proudly publish on their website that the Florida anti-SLAPP statute conflicts with the Federal Rules of Civil Procedure by imposing a heightened standard, which they themselves describe as an "evidentiary burden-shifting."

> **b.    Florida's Anti-SLAPP Statute is Not Applicable Because It Answers The Same Question As the Federal Rules of Civil Procedure and Conflicts With the Federal Rules of Civil Procedure**

In addition to imposing a heightened pleading standard, as explained by Judge Pryor in *Corsi*, the Florida Anti-SLAPP statute answers the same question

---

[2] https://www.shullmanfugate.com/other-news/2019/02/01/florida-appellate-court-addresses-standards-for-anti-slapp/

as the Federal Rules of Civil Procedure, and therefore cannot apply to a federal court sitting in diversity on this basis as well.

This is abundantly clear with regard to the requisite pleading standard on a motion to dismiss. *See* Fed. R. Civ. P. 8(a) requiring "a short and plain statement of the claim showing that the pleader is entitled to relief." This is also abundantly clear with regard to the issue of attorney's fees for meritless actions. *See* Fed. R. Civ. P. 11(c) stating "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation."

Defendants rest their frivolous argument  primarily on the rogue opinion of the often reversed Judge Martinez in *Bongino*, which is (1) not precedential over this Court, and (2) simply wrong in every aspect. In *Bongino*, while conceding that this was an issue of first impression, Judge Martinez strains to find that the fee shifting provision of the Florida Anti-SLAPP statute "does not conflict with any Federal Rules of Civil Procedure and thus may apply in a federal court exercising diversity jurisdiction." *Id.* at 1324. In doing so, Judge Martinez negligently  reasoned that "Florida's statute is a garden variety fee shifting provision" and therefore  "does not 'answer the same question' as the Federal Rules." *Id.* at 1323.

This is egregiously wrong in many ways. *First*, this directly conflicts with Florida's Second Circuit Court of Appeals in *Gundel*, *Davis,* and *Godwin* as set forth above, which expressly finds that Florida's Anti-SLAPP statute places an additional burden on the claimant, therefore encroaching on the Federal Rules of Civil Procedure and rendering Florida's Anti-SLAPP statute far more than a "garden variety fee-shifting statute." 264 So. 3d at 314.  Judge Martinez simply sidesteps this fact and focuses only on the small portion of Florida's Anti-SLAPP statute that pertains to the issue of fees. This is contrary to well-settled rules of statutory interpretation which mandate that the statute as a whole must be considered. "…[T]he dissents commit the most common error of statutory interpretation by **reading individual subsections in isolation instead of reading the whole text of the statute**." *In re Wild*, 994 F.3d 1244, 1269 (11th Cir. 2021)(emphasis added).

*Second*, Judge Martinez does not address Florida's Anti-SLAPP statute in relation to Federal Rule of Civil Procedure 11, and instead conveniently focuses his attention on other statutes, such as Ga. Code Ann. § 9-11-68, Fla. R. Civ. P. 1.442, and Fla. Stat. Ann. § 627.428. However, it is clear that the question of whether these statutes - which all deal with different issues - conflict with Fed. R. Civ. P. 11 has absolutely no bearing on whether Florida's Anti-SLAPP statute does. Rule 11, as Chief Judge Prior addressed in *Corsi,* answers the same question as the fee-shifting provision of Florida's Anti-SLAPP statute, the question being

who is responsible for attorney's fees. It is also clear that Rule 11 conflicts with

Florida's Anti-SLAPP statute. Rule 11 applies to pleadings that violate Rule 11(b)

which requires that an attorney or party certify that:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

On the other hand, Florida's Anti-SLAPP statute applies to pleadings that are:

> …without merit and primarily because such person or entity has exercised the constitutional right of free speech in connection with a public issue, or right to peacefully assemble, to instruct representatives of government, or to petition for redress of grievances before the various governmental entities of this state, as protected by the First Amendment to the United States Constitution and s. 5, Art. I of the State Constitution." Fla. Stat.§ 768.295(3).

These are two completely different, conflicting standards and inquiries.

This is why the Court must instead follow the thus far ignored lead of its

colleague in this very same Court (Orlando Division) the Honorable Paul G.

Byron ("Judge Byron") in *Sterling v. Doe*, 2022 U.S. Dist. LEXIS 105673 (M.D. Fla.

Feb. 2, 2022). *Sterling* involved a defamations suit between two Roblox content

creators and a defendant, Doe, who had chosen to remain anonymous online. *Id*.

at 1. Because of Doe's anonymity, the Plaintiff subpoenaed Roblox and Twitter to obtain Doe's identity to be able to name and serve her. *Id*. at 2. Doe moved to quash the subpoenas, based in part on Florida's Anti-SLAPP statute,  and Magistrate Kidd denied Doe's motion. Judge Byron then held that Magistrate Kidd did not err in doing so. *Id*. at 15. Doe attempted to cite *Bongino* for the proposition that some federal courts have applied state anti-SLAPP provisions when exercising diversity jurisdiction, but Judge Byron found that the Magistrate Kidd did not need to follow *Bongino* because the fee shifting provision of Florida's Anti-SLAPP statute was not at issue and "**the pretrial dismissal anti-SLAPP provisions…conflict with and 'answer the same question' as the Federal Rules.**" *Id*. at 12-13 (emphasis added). Furthermore, as pointed out by Judge Byron, that in prior cases where the Eleventh Circuit had applied anti-SLAPP statutes to federal courts sitting in diversity - *Tobinick v. Novella*, 848 F.3d 935 (11th Cir. 2017) and *Parekh v. CBS Corp.*, 820 F. App'x 827 (11th Cir. 2020) - the plaintiffs in those cases had "had forfeited their right to challenge the anti-SLAPP law's applications under an Erie theory at the district court level." *Id*. at 12. Mr. Reed, on the other hand, more than timely raised this issue.

Thus, in sum, Florida's Anti-SLAPP statute conflicts with and answers the same question as the Federal Rules of Civil Procedure, and therefore cannot be applied in this instance. The Court need not follow the rogue and wrong opinion of Judge Martinez, as "orders from other districts have no precedential value."

14

*Sterling*, 2022 U.S. Dist. LEXIS 105673 at *5. This is particularly true, where Judge Byron of this very same Court has also correctly declined to do so, expressly finding that "**the pretrial dismissal anti-SLAPP provisions...conflict with and 'answer the same question' as the Federal Rules.**" *Id*. at 12-13 (emphasis added).

### c.   Numerous Federal Circuits Have Found Anti-SLAPP Statutes Conflict With the Federal Rules of Civil Procedure

As shown herein, a myriad federal circuit (and lower courts) have already found that many Anti-SLAPP statutes conflict with the Federal Rules of Civil Procedure, including the Eleventh, Fifth, D.C., and Second Circuits.

In *Carbone v. CNN, Inc.*, 910 F.3d 1345 (11th Cir. 2018), the Eleventh Circuit found that Georgia's Anti-SLAPP statute conflicted with the Federal Rules of Civil Procedure because its motion-to-strike procedure conflicted with Federal Rules of Civil Procedure 8, 12, and 56:

> In short, Rules 8, 12, and 56 express "with unmistakable clarity" that proof of probability of success on the merits "is not required in federal courts" to avoid pretrial dismissal, and that the evidentiary sufficiency of a claim should not be tested before discovery. Hanna, 380 U.S. at 470. But the relevant provisions of the Georgia anti-SLAPP statute explicitly require proof of a probability of success on the merits without the benefit of discovery. The result is a "direct collision" between the Federal Rules and the motion-to-strike provision of the Georgia statute. *Id*. at 1351.

In *Klocke v. Watson*, 936 F.3d 240 (5th Cir. 2019), the Fifth Circuit, which used to encompass the Eleventh Circuit, found that Texas' Anti-SLAPP ("TCPA") statute conflicted with the Federal Rules of Civil Procedure. The Fifth Circuit

found that "the TCPA's burden-shifting framework imposes additional requirements beyond those found in Rules 12 and 56 and answers the same question as those rules, the state law cannot apply in federal court. *Id.* at 245

> The TCPA imposes additional requirements that demand judicial weighing of evidence. Thus, confronted with a motion to dismiss under the TCPA, the court must determine "by a preponderance of the evidence" whether the action relates to a party's exercise of First Amendment rights. Tex. Civ. Prac. & Rem. Code § 27.005(b)(1)-(3). The court must also determine whether there is "clear and specific evidence" that a plaintiff can meet each element of his claim. *Id.* at § 27.005(c). "Clear and specific evidence" must be, *inter alia,* "unambiguous, sure, or free from doubt." *In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015). The standard, which lies somewhere between the state's pleading baseline and the standard necessary to prevail at trial, *id.* at 591, in any event exceeds the plaintiff's Rule 56 burden to defeat summary judgment. *Id.* at 246.

In *Abbas v. Foreign Policy Grp., LLC*, 414 U.S. App. D.C. 465 (2015), the D.C. Circuit found that District of Columbia's Anti-SLAPP statute conflicted with the Federal Rules of Civil Procedure. In doing so, the D.C. Circuit found:

> For the category of cases that it covers, the D.C. Anti-SLAPP Act establishes the circumstances under which a court must dismiss a plaintiff's claim before trial — namely, when the court concludes that the plaintiff does not have a likelihood of success on the merits. But Federal Rules of Civil Procedure 12 and 56 "answer the same question" about the circumstances under which a court must dismiss a case before trial. And those Federal Rules answer that question differently: They do not require a plaintiff to show a likelihood of success on the merits. *Id.* at 470-71.

And even more importantly, the Court in *Abbas* held that a party may not be entitled to attorney's fees under the D.C. Anti-SLAPP statute unless it obtains dismissal under that same act. "The Act does not purport to make attorney's fees

available to parties who obtain dismissal by other means, such as under Federal Rule 12(b)(6). Therefore, although we conclude that the case should be dismissed under Rule 12(b)(6), attorney's fees under the Anti-SLAPP Act are not available to the defendants in this case." *Id*. at n.5. The same principle must be applied here. If the Court's dismissal is predicated under the Federal Rules of Civil Procedure, and not Florida's Anti-SLAPP statute, then the fees provision of Florida's Anti-SLAPP statute similarly cannot be applied.

In *La Liberte v. Reid*, 966 F.3d 79 (2d Cir. 2020) the Second Circuit found that the special motion to strike provision found in California's anti-SLAPP statute conflicted with the Federal Rules of Civil Procedure and does not apply:

> It also conflicts with Rule 56, which permits summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Rule thus enables plaintiffs to proceed to trial by identifying any genuine dispute of material fact, whereas California's anti-SLAPP statute "nullif[ies] that entitlement by requiring the plaintiff to prove that it is likely, and not merely possible, that a reasonable jury would find in his favor." Carbone, 910 F.3d at 1353. Together, Rules 12 and 56 "express 'with unmistakable clarity' that proof of probability of success on the merits 'is not required in federal courts' to avoid pretrial dismissal." Id. at 1351 (quoting Hanna v. Plumer, 380 U.S. 460, 470, 85 S. Ct. 1136, 14 L. Ed. 2d 8 (1965)). Therefore, California's special motion requires the plaintiff to make a showing that the Federal Rules do not require. *Id*. at 87.

Thus, given that Florida's Anti-SLAPP statute also conflicts with the Federal Rules of Civil Procedure, as found in *Gundel*, and also as stated by Chief Judge

Pryor in *Corsi*, this Court must also find that it does not apply to a federal court sitting in diversity. All of these federal appellate courts cannot be wrong!

## II.    EVEN ASSUMING *ARGUENDO* THAT FLORIDA'S ANTI-SLAPP STATUTE APPLIED TO FEDERAL COURTS SITTING IN DIVERSITY, IT DOES NOT APPLY HERE TO THIS CASE

As clearly shown, Florida's Anti-SLAPP statute does not apply to federal courts sitting in diversity. However, for the sake of argument, even if it did apply generally, it would still not apply to the facts of this case. This is because, pursuant to Fla. Stat. § 768.295(3), this statute only applies to lawsuits and claims that are "without merit" and:

> primarily because such person or entity has exercised the constitutional right of free speech in connection with a public issue, or right to peacefully assemble, to instruct representatives of government, or to petition for redress of grievances before the various governmental entities of this state, as protected by the First Amendment to the United States Constitution and s. 5, Art. I of the State Constitution.

*First*, it is clear that this case is not "without merit," and in that regard, there is the pending Motion for Reconsideration seeking reconsideration of the clearly erroneous decision to dismiss **all fifty-five (55)** statements as non-actionable. The Court's ruling was an impossibility and simply wrong and must be reconsidered and/or corrected on appeal if this Court refuses to correct its errors.

*Second*, as the statements set forth in the Complaints are false and defamatory, they are not protected under Florida's Anti-SLAPP statute. This is because no Anti-SLAPP statute in the country protects against defamatory

speech. The statutes only apply to a limited number of legal actions that are based on, or relate to, or are in response to a party's exercise of certain rights protected by the U.S. Constitution, including the right of free speech. The right of free speech does not protect defamatory statements. *Beauharnais v. Illinois*, 343 U.S. 250, 266 (1952) (holding that libelous statements are outside the realm of constitutionally protected speech); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340 (1974) (holding that "there is no constitutional value in false statements of fact.")

## III.   CONCLUSION

In short, based conclusively on hard and fast legal precedent, it is clear that Florida's Anti-SLAPP statute does not apply to a federal court sitting in diversity such as this one. Florida's Anti-SLAPP statute is purely procedural, and therefore under established black letter law in *Erie*, the federal rules must take precedence. Furthermore, the Florida Anti-SLAPP Statute (1) imposes a heightened burden and standard that conflicts with the Federal Rules of Civil Procedure as recognized in *Gundel* as well as proudly admitted on the website for counsel for Defendants, and (2) answers the same question as the Federal Rules of Civil Procedure. It therefore does not apply.

Numerous other federal courts and a myriad of well-respected federal circuits - including the DC Circuit, which is viewed as the premier appellate court short of the Supreme Court and the Eleventh Circuit which encompasses this Court - have declined to apply anti-SLAPP statutes to federal courts sitting

in diversity. This Court must apply this correct reasoning and also find that Florida's Anti-SLAPP statute does not apply here.

The bottom line is simple. Mr. Reed has already been harmed enough by the malicious defamation perpetrated by the Defendants, which the Court chose to extra-judicially dismiss as mere benign criticism. The Court cannot and must not, as a matter of law, compound the extreme harm that it has caused by ignoring the law of defamation as set forth in the pending Motion for Reconsideration by now also ordering a purely punitive award of attorney's fees to the Defendants as such an order would be contrary to well-established law, injecting even more extra-judicial bias and prejudice and appealable error into this case.

Mr. Reed and his counsel respectfully request oral argument with regard to this and the other outstanding motions, as a full airing and fair adjudication of these serious issues is required to avoid a manifest injustice.  Finally, Defendants' SLAPP Motion, as is true as well for the other pending motions, should respectfully be assigned to another jurist, pursuant Mr. Reed's Motion for Recusal.

Dated: November 29, 2023                   Respectfully submitted,

                                           By: */s/ Larry Klayman*_____
                                           Larry Klayman, Esq.
                                           Florida Bar No.: 246220
                                           Klayman Law Group P.A.
                                           7050 W. Palmetto Park Rd
                                           Boca Raton, FL, 33433
                                           Tel: 561-558-5536

leklayman@gmail.com

*Counsel for Patrick Nathaniel Reed*

## CERTIFICATE OF SERVICE

I, Larry Klayman, hereby certify that on this day, November 29, 2023, I electronically filed the foregoing with the Clerk of Court using the Court's ECF procedures. I also certify that the foregoing document is being served this day on all counsel of record through the Court's eservice procedures.

*/s/ Larry Klayman*_____

EXHIBIT 1

```
        UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

                       CASE NO.:   21-10480



    JEROME CORSI,

            Appellant,

    v.

    NEWSMAX MEDIA, INC., et al.,

            Appellees.
    _____/




                   TRANSCRIPTION OF AUDIO RECORDING

                      OF ORAL ARGUMENT


                       (Pages 1 to 41)


            DATE:        Thursday, May 19, 2022

            LOCATION:    12th Floor Courtroom
                         James Lawrence King Federal Justice
                         99 Northeast Fourth Street
                         Miami, Florida  33132




    Reported By:  Gail Hmielewski
                  Court Stenographer
```

```
 1    APPEARANCES:

 2

 3    Appeared for the Appellant:

 4    MELISSA L. ISAAK, ESQUIRE
      ISAAK LAW FIRM
 5    P.O. Box 4894
      Montgomery, Alabama  36103
 6    334-262-8200  Phone
      334-819-4072  Fax
 7    isaaklaw@gmail.com

 8

 9    Appeared for Appellees:

10    MARK A. LERNER, ESQUIRE
      DUANE MORRIS, LLP
11    230 Park Avenue, Suite 1130
      New York, New York  10169
12    212-404-8714  Phone
      212-818-9606  Fax
13    malerner@duanemorris.com

14        - and -

15    JULIAN ANTONY JACKSON-FANNIN, ESQUIRE
      DUANE MORRIS, LLP
16    201 South Biscayne Boulevard, Suite 3400
      Miami, Florida  33131
17    305-960-2253  Phone
      305-402-0544  Fax
18    jjfannin@duanemorris.com

19

20

21

22

23

24

25
```

3

1                    INDEX OF PROCEEDINGS

2

3                                                    PAGE

4
   PROCEEDINGS                                         4
5
   CERTIFICATE OF REPORTER                            41
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                         PROCEEDINGS

 2              THE COURT:  Oh, Corsi vs. Newsmax Media.  Oh,

 3         boy.

 4              Good morning, Ms. Isaak.

 5              MS. ISAAK:  Good morning, Judge.

 6              THE COURT:  You can begin.

 7              MS. ISAAK:  May it please the Court.  My name

 8         is Melissa Isaak and I represent Jerome Corsi in

 9         this matter.

10              And we're arguing two main points here today,

11         Your Honors, is that the case was properly

12         dismissed via a 12(b)(6) motion by the District

13         Court; and also the fee provision, the fee

14         distribution, rather, ruling by the District Court

15         was improper because the Florida's anti-SLAPP

16         statute does not apply in federal court; and also,

17         which we don't - we say it does not, but, if it

18         did, the statute was not complied with by the lower

19         court.

20              THE COURT:  It seems to me the actual malice

21         requirement is a tough one for you here.

22              MS. ISAAK:  He is a public figure and I think

23         the actual malice standard is a hurdle for any

24         public figure in a defamation action, however --

25              THE COURT:  Yeah, and I just - it just doesn't
```

1    seem to me that you've alleged enough to plausibly

2    allege actual malice.

3        I mean, you know, the fact that the Newsmax

4    defendants and Fairbanks knew Corsi doesn't know -

5    doesn't mean they know his character for

6    truthfulness was beyond reproach or anything like

7    that.  The fact that Newsmax has sold Corsi's books

8    doesn't imply that they entertained serious doubts

9    about the allegation that he plagiarized a

10   reporting.

11       You know, just - I look at these allegations,

12   I'm looking for where the actual malice is alleged

13   and I'm not seeing it.

14       MS. ISAAK:  I understand, sir.  The

15   defendants, they called Mr. Corsi's allegations a

16   conspiracy theory, but Mr. Corsi would offer that

17   those who know Roger Stone would know that that is

18   not a conspiracy theory.

19       We allege the complaint was properly pled

20   under Rule 8, and also there was an affidavit

21   submitted by Mr. Corsi where he specifies that

22   these people know him, the defendants know him and

23   they know that the allegations made were untrue;

24   and not only are they untrue, they're provably

25   false.

```
 1           Mr. Corsi is not a liar.  Mr. Corsi --
 2           THE COURT:  Just the fact that they know him
 3      means that they know that what he says was untrue?
 4           MS. ISAAK:  The fact that they intimately know
 5      Mr. Corsi, that they have worked with Mr. Corsi.  I
 6      understand that Newsmax sold his books, however,
 7      Mr. Corsi did allege and he pled that these are,
 8      these things are provably false.
 9           And what they called him - a liar, a
10      plagiarist, having committed fraud - these are all
11      things that can destroy and discredit him in his
12      trade and profession, which would be defamation
13      per se.
14           THE COURT:  Yeah, but I thought --  I mean,
15      maybe I'm wrong about this, I thought that this was
16      on a program where it was a sort of point
17      counterpoint and so there was an opportunity to
18      respond to these allegations real time provided by
19      the station.
20           MS. ISAAK:  Well, Your Honors, Mr. Klayman,
21      Mr. Corsi's attorney, was invited on Newsmax
22      America Talks Live.  Well, he was more lured into
23      the program.  Now, counsel for defendants say that
24      this was a debate.  Mr. Klayman did not know that
25      he was entering into a debate.  In fact, the issues
```

1 that Mr. Klayman thought were to be discussed were

2 the public issues related to the Mueller

3 investigation and the results involving Roger

4 Stone's alleged crimes of perjury, witness

5 tampering, and obstruction of justice.  Mr. Klayman

6 was not even made aware that Ms. Fairbanks was

7 going to be on the show until directly before the

8 show went live.

9  So I understand the way it was presented, that

10 this was a debate where they had an opportunity to

11 respond, but Mr. Klayman was not given notice that

12 this was going to be the issue of the show.

13  THE COURT:  Yeah, I mean, I understand.  I

14 mean, that means sounds like a legitimate gripe

15 against Newsmax if you just want to like write them

16 a letter or something.  I guess my point is it just

17 seems - it seems hard to tag Newsmax with the

18 statements of, I guess it's --

19  MALE VOICE:  Fairbanks.

20  THE COURT:  -- Fairbanks, given that Newsmax's

21 role was to host these people and give them an

22 opportunity to respond.

23  MS. ISAAK:  Yes, sir, and Mr. Corsi, again, we

24 do believe that he's properly pled under Rule 8,

25 and also, if they were allowed to proceed to

1    discovery, Mr. Corsi believes that he would have
2    been able to prove the allegations that he did make
3    in his complaint.

4        Again, this is not --  Mr. Corsi is intimately
5    familiar with Roger Stone, and the fact that
6    Mr. Stone worked in concert with others, as joint
7    tortfeasors to defame Dr. Corsi, was something that
8    he believes that he could prove had the case
9    advanced to the discovery phase.

10       THE COURT:  I'll tell you, the thing that I
11   was more interested in here was attorney's fee
12   issue, because I have doubts about whether the
13   anti-SLAPP statute applies.

14       MS. ISAAK:  Yes, sir.  We contend the
15   anti-SLAPP statute does not apply, well, for two
16   reasons.  First, in this case, as it applied the
17   Florida statute, which of course is just a garden
18   variety fee-shifting statute, however, the Florida
19   statute states with specificity that for fees to be
20   assessed, a hearing must be scheduled.  It says
21   shall - it doesn't say may, it says shall.

22       THE COURT:  Well, there has to be a violation
23   of the statute, the Florida statute, and here's the
24   concern I have.  If the statute doesn't apply in
25   federal court, then --

```
1              MS. ISAAK:  We don't think the statute
2        applies.
3              THE COURT:  -- then there can't be an
4        attorney's fee based on it, can there?
5              MS. ISAAK:  No.  No, sir, you're absolutely
6        correct.
7              THE COURT:  Based on its violation.
8              MS. ISAAK:  Yes, sir, it's a violation.  I
9        think that --
10             THE COURT:  No, I'm saying there can't be an
11       attorney's fee award based on its violation if it
12       doesn't apply in federal court.
13             MS. ISAAK:  That's correct.  That's correct,
14       yes.
15             THE COURT:  And so in order to figure out
16       whether it applies, I mean, we would compare the
17       language of Rule 11, right --
18             MS. ISAAK:  Correct.
19             THE COURT:  -- with the language, the fee
20       language in the anti-SLAPP statute, which basically
21       says that fees would be awarded, reasonable fees
22       would be awarded if, "A", the suit is without merit
23       and, "B", it's primarily filed because someone
24       exercised the First Amendment right, right?
25             MS. ISAAK:  Yes, that's correct.  That's
```

```
 1        correct.
 2            THE COURT:  Well, if we're looking under - so
 3        if we're looking under Rule 11, then, so the
 4        question is whether that captures everything that's
 5        in there, and I guess the question then is, under
 6        Rule 11, it would have to be without merit and/or
 7        filed for an improper reason, right.
 8            MS. ISAAK:  Yes, ma'am.  Yes, ma'am.
 9            THE COURT:  Okay.  So the question then to me,
10        anyway, is, if it's primarily filed because
11        somebody has exercised a First Amendment right,
12        does that mean it's filed for an improper reason?
13            MS. ISAAK:  Yes, ma'am, it would, and that
14        would directly fall under Rule 11.  The anti-SLAPP
15        statutes covers means to dispose of cases, whether
16        it be through a 12(b)(6), through summary judgment.
17        It also covers how to recoup attorney's fees --
18        I'm sorry.  The rules allow, under Rule 11, where
19        you could recoup attorney's fees, so they're
20        saying, they're calling it "meriless" - meritless,
21        rather --
22            THE COURT:  They really aren't the same thing,
23        though, are they?  So Rule 11, in saying that
24        there's an improper purpose, is not the same thing
25        as filing a meritless lawsuit about someone's free
```

11

```
 1        speech exercise.

 2             MS. ISAAK:  But the Florida anti-SLAPP statute

 3        says that the suit was filed for the purpose of

 4        silencing free speech or infringing on a First

 5        Amendment right, so therefore it would be an

 6        improper purpose under Rule 11.

 7             THE COURT:  Well, I don't know, I just --  I

 8        guess the problem with the Rule 11 argument, in my

 9        mind, is that we've said over and over and over

10        again, and it's just common sense with the law,

11        that if states want to have fee-shifting statutes,

12        then they can have fee-shifting statutes for the

13        causes of action that state law creates and those

14        fee-shifting statutes would apply in federal court.

15        So why isn't the way to see this as just a

16        fee-shifting statute that, if you file a meritless

17        defamation lawsuit, then you have to pay the other

18        side's fees?

19             MS. ISAAK:  Because it's more of a procedural

20        rule.  So the Florida fee-shifting statute gives a

21        procedure to recoup on attorney's fees.  The

22        Florida federal - I'm sorry, the federal rules

23        already have that.  Rule 11 already allows for

24        that.

25             THE COURT:  Okay.  So, I mean, we've said in
```

1          like seven different cases that statutes for the

2          recovery of attorney's fees apply in federal court

3          as just a general matter, so, I mean, what would

4          make this conflict with Rule 11 specifically if

5          just a normal state fee-shifting statute doesn't

6          conflict?

7              MS. ISAAK:  Well, I think if we look at most

8          of the states' anti-SLAPP statutes, they deal with

9          shifting burdens, they deal with heightened

10         pleading requirements.  Florida's being just a

11         garden variety anti-SLAPP statute really is just a

12         mirror image of the Rule 11.

13             THE COURT:  Isn't the answer that this

14         attorney's fee provision is tied to a pleading

15         standard as opposed to, well, if you win a claim

16         for - under the deceptive trade practices act,

17         you're entitled to attorney's fees, the prevailing

18         party's entitled to attorney's fees?

19             MS. ISAAK:  Yes, we would offer that Rule 11

20         always applies to pleading standards.  I think if a

21         pleading is considered --

22             THE COURT:  I'm not even sure you understand

23         my --

24             THE COURT:  Let me ask a question to follow

25         up --

```
 1            MS. ISAAK:  Okay.
 2            THE COURT:  -- on Judge Pryor's question.  So
 3       he said, you know, isn't - doesn't this statute
 4       impose a pleading standard, and he's talking about
 5       the part of the statute that says, you know,
 6       merits, right?
 7            The question is, does that part of the statute
 8       impose a pleading standard or is it just if you
 9       lose, then you pay the fees?  Is there a pleading
10       standard associated with that phrase?
11            MS. ISAAK:  The heightened standard I think
12       that's imposed in the Florida Statute goes along
13       with the --  There's an evidentiary burden that has
14       to be set.
15            THE COURT:  Okay.  When you say the heightened
16       standard, where are you getting the idea that the
17       Florida Anti-SLAPP Statute imposes a heightened
18       standard?
19            MS. ISAAK:  Because the Florida Anti-SLAPP
20       Statute says that, prior to any fees being
21       assessed, or prior to a case being dismissed under
22       the Florida Anti-SLAPP Statute, that it must be set
23       for a hearing.  If it has to be set for a hearing,
24       the parties are required to produce - to submit
25       evidence on their respective positions.  Now --
```

```
 1            THE COURT:  There's a conflict in what the -
 2      the Florida courts even say this - in how the
 3      statute works, right?
 4            MS. ISAAK:  Yes.
 5            THE COURT:  On the one hand, at least one DCA
 6      has said it does create a heightened pleading
 7      standard, right?
 8            MS. ISAAK:  Correct.
 9            THE COURT:  The other says it doesn't.
10            MS. ISAAK:  That's correct.
11            THE COURT:  If it does, it seems to me, then
12      it conflicts with the federal rules and it doesn't
13      apply.
14            MS. ISAAK:  Yes, sir.
15            THE COURT:  And if it doesn't create a
16      heightened pleading standard, then it seems to me
17      it's procedural and it also doesn't apply.
18            MS. ISAAK:  Well, yes, sir --
19            THE COURT:  But either way, it seems to me the
20      statute just doesn't apply in federal court.
21            MS. ISAAK:  Yes, sir, that's what we
22      submitted, it does not apply.  Between, we have
23      Rule 8 --
24            THE COURT:  May I ask a follow-up question on
25      that?  I'm not sure I understand that.  So if it
```

15

```
 1        is - if it doesn't impose a heightened pleading
 2        standard, why isn't it just a fee-shifting statute?
 3              MS. ISAAK:  Well, there is case law that says
 4        it's just a fee-shifting standard.  It says that.
 5              THE COURT:  Okay.  Well, if it's just a
 6        fee-shifting statute as part of the tort of
 7        defamation in Florida law, why isn't that something
 8        that applies in federal court?
 9              MS. ISAAK:  Because we're dealing I think
10        specifically with anti-SLAPP as it pertains to this
11        issue, so I --
12              THE COURT:  Okay.
13              THE COURT:  Well, I mean, here's the thing.
14        This is the text of the statute - the court shall
15        award the prevailing party reasonable attorney's
16        fees and costs incurred in connection with a claim
17        that an action was filed in violation of this
18        section --
19              MS. ISAAK:  Yes, sir.
20              THE COURT:  -- right?
21              MS. ISAAK:  Yes, sir.
22              THE COURT:  And the section says - sets out,
23        basically, a procedural requirement, right --
24              MS. ISAAK:  Yes, sir.
25              THE COURT:  -- and says you can't file it if
```

1      the suit's without merit and if it was filed

2      because someone exercised their free speech rights.

3           MS. ISAAK:  That's correct, so the court would

4      have to make a finding that that's specifically why

5      that was --

6           THE COURT:  Filed.

7           MS. ISAAK:  -- filed, right, which conflicts

8      with Rule 8.  The Rule 8 pleading requirements

9      don't have that level of a standard.  And also, for

10     the Rule 11, Rule 11 covers all of these things

11     already.

12          THE COURT:  Okay, I think we understand your

13     argument.

14          THE COURT:  Can you just address the issue of

15     certification?  I know we sent you some questions

16     to address, one is whether we should certify this

17     question to the Florida Supreme Court.  We've

18     already talked about the split in the intermediate

19     appellate courts.  I just want to get your position

20     on that.

21          MS. ISAAK:  It's a quick no.  I don't think

22     that it needs to be certified to the Florida

23     Supreme Court, because the federal rules are clear

24     that there are other avenues for recovery and there

25     are other avenues for dismissal of cases.

1          So I think, based upon the federal case law,

2     and based upon the procedure that's in place for

3     the federal court, I don't think this is

4     necessarily an issue for the state court to decide.

5     This -- Go ahead.

6          THE COURT:  Okay.  Mr. Lerner.

7          MR. LERNER:  Thank you, Your Honors.  May it

8     please the Court, my name is Mark Lerner and I'm

9     here with my colleague, Julian Jackson-Fannin, and

10    we represent the appellees, Newsmax Media, Inc.,

11    Christopher Ruddy, John Bachman, and John Cardillo.

12         This case is a public figure's groundless

13    attempt to punish a media outlet for engaging in

14    classic First Amendment protected activity because

15    he didn't like what a guest, and only the guest,

16    said about him on a live television broadcast.

17         As it did in Michel v. NYP Holdings, and

18    numerous other cases, this Court should recognize

19    the powerful interest in ensuring that speech is

20    not burdened by the defense of groundless

21    litigation and affirm the decision of the District

22    Court in its entirety.

23         The facts here, which I think you're familiar

24    and discussed a little bit before --

25         THE COURT:  We know the facts --

```
 1              MR. LERNER:  Okay.

 2              THE COURT:  -- and if you want to address

 3       whether the complaint plausibly alleges actual

 4       malice, you certainly can.  I don't think it does.

 5              The thing I'm most interested, at least - I

 6       can only speak for myself - is the attorney's fees

 7       issue, and I have serious doubts about whether the

 8       anti-SLAPP statute applies in federal court.  And

 9       it seems to me that if it doesn't, then a suit

10       filed in violation of it can't give rise to an

11       attorney's fee award.

12              MR. LERNER:  I'm certainly happy to address

13       the actual malice issue, although we agree,

14       obviously, with Your Honor and with some of the

15       skepticism addressed by the panel.  So if there

16       aren't questions on the actual malice, I am happy

17       to move on to the questions that seem to be of more

18       interest in terms of the application of anti-SLAPP

19       in this case.

20              THE COURT:  Let me ask you, before you get

21       into the legal merits of the anti-SLAPP, do you

22       really want attorney's fees in this case?  Do you

23       want this case to continue with additional

24       litigation?  I mean, is that, I mean --

25              MR. LERNER:  Well, certainly, as I said
```

1          before, Newsmax is hoping and the individual

2          defendants who didn't utter any of the allegedly

3          defamatory statements don't want to be burdened by

4          ongoing litigation.  On the other hand, they do

5          believe it makes sense to take advantage and send

6          the message that this kind of lawsuit chills the

7          speech that they should be protected from.

8               THE COURT:  Okay.

9               MR. LERNER:  So, yeah, I mean, it makes sense

10         here that there is this fee-shifting that the

11         Florida legislature has determined is important in

12         this kind of case and that they --

13              THE COURT:  So the question, I guess --  The

14         reason I ask that sort of practical question is

15         that one of our options here would be to certify

16         this question to the Florida Supreme Court, which

17         would, if we were to do that, would continue the

18         litigation, right?  I mean, you would just - it

19         would just be another court, come back to us, we'd

20         rule again, go back to the District Court, all to

21         collect some kind of attorney's fees ward against

22         Mr. Corsi.  Do you want to do that?

23              MR. LERNER:  Well, there is a principal at

24         stake here and we agree, frankly, what little we do

25         agree with with Ms. Isaak in terms of her position

```
 1        that this doesn't need to be --
 2            THE COURT:  That it doesn't need to be
 3        certified.
 4            MR. LERNER:  Right, it doesn't need to be
 5        certified, exactly.  So there should be no
 6        continuation of litigation on that front, because
 7        all that was applied here, frankly, was
 8        Rule 12(b)(6).
 9            THE COURT:  We appreciate your confidence in
10        the 11th Circuit.  Thank you.
11            MR. LERNER:  Well, whether it's my confidence
12        in the 11th Circuit or a query as to whether or not
13        there really is a material issue of law that needs
14        to be addressed in order for the 11th Circuit to
15        rule on this issue, in this particular
16        circumstance, the case doesn't turn on the answer
17        to a material state law question because Florida
18        law doesn't directly impose, nor did the defendants
19        seek, a higher pleading standard here.
20            The court only ever cited application of
21        Rule 12(b)(6) and the federal pleading standards
22        under Iqbal and Twombly.  There was no burden
23        shifting undertaken, there was no heightened
24        standard applied, nor is, actually, one called for
25        in the language of the statute.
```

1        The language of the statute simply prohibits a

2   lawsuit brought without merit and it provides for a

3   person or entity may move the court for an order

4   dismissing the action or granting final judgment in

5   favor of that person.  The person or entity may

6   file a motion for summary judgment together with

7   supplemental affidavit.

8        I mean, this just repeats that, okay, the

9   procedure that's available to you under the federal

10  rules is available to you here.  You can file a

11  motion to dismiss, you can file a motion for

12  summary judgment.  It doesn't stay discovery like

13  some of the other cases do, anti-SLAPP laws do, it

14  doesn't impose --

15       THE COURT:  But then you would agree that

16  there's a split in authority among the DCAs about

17  what it does and what it doesn't do, wouldn't you?

18       MR. LERNER:  It's not a hundred percent clear

19  to me, honestly, Your Honor, in terms of what it

20  does or doesn't do as far as a heightened pleading

21  standard under the federal rules, right?

22       There's a question in terms of burden shifting

23  and how you determine whether or not the case at

24  issue falls under anti-SLAPP because there is a

25  statement of the case being related to an

1        abridgement of First Amendment rights.  And in

2        Gundel, there was a question of going outside the

3        pleadings in order to determine whether or not

4        there was a First Amendment issue.

5              As far as the determination of whether the

6        case has merit, I don't think that there's really

7        any indication that Lam and Gundel are clearly in

8        opposition.  That question ultimately wasn't

9        answered and again here certainly there was no

10       heightened pleading standard applied.  It was a

11       simple 12(b)(6) plausibility standard that was

12       applied.

13             And as Your Honor pointed out, Judge Pryor

14       said, it doesn't rise to that level.  There's just

15       no plausibility on the notion that a claim of

16       actual --

17             THE COURT:  I agree, I agree that if,

18       obviously, if there's no actual malice under the

19       regular pleading standards, that's it, but for

20       purposes of our decision on the attorney's fees

21       issue, I mean, there is a split in authority as to

22       whether there's a heightened pleading standard, is

23       there not?

24             MR. LERNER:  Again, I think the question of

25       the heightened pleading standard goes to the burden

1     as far as establishing that the case falls under

2     anti-SLAPP.  That's the most you could say as far

3     as where Gundel and Lam might be in opposition.

4     So, but, again, it's clear on its face here there

5     wasn't any dispute in this case.  There was no

6     heightened pleading standard, there was no --

7         THE COURT:  But if it doesn't fall under

8     anti-SLAPP you wouldn't be entitled to your fees

9     even in --  I mean, right?

10         MR. LERNER:  Yes, if it didn't fall under

11     anti-SLAPP, but, again, this is clear on its face

12     that the allegations of the complaint stated that

13     the basis for the defamation claim was a broadcast

14     from a media outlet that hosted a live public

15     forum.

16         There was nowhere else you had to look, there

17     was no heightened pleading, there was no

18     burden-shifting to say, well, plaintiffs met this

19     burden initially, now let's go to, sorry,

20     defendants met this burden initially, now let's go

21     to plaintiff to determine if they can establish

22     that in fact it doesn't fall under anti-SLAPP,

23     because I think the dispute in-between Gundel and

24     Lam in terms of is there that shifting, does the

25     plaintiff have to come forward now with evidence to

1          show that it doesn't fall under anti-SLAPP.

2               None of that is an issue here.  It is clear on

3          the face of the pleadings that this falls under

4          anti-SLAPP because it relates to the exercise of

5          First Amendment activity.  And because it falls

6          under anti-SLAPP, it is, as Judge Brasher said, a

7          garden variety, and then, frankly, Ms. Isaak said,

8          a garden variety fee-shifting.

9               And the court's ruling I think in Showen v.

10         Presti (phonetic) really should be controlling.

11         There the 11th Circuit held that Rule 11 addresses

12         punitive sanctions, not fee-shifting, and it

13         answers a different question from what Georgia

14         statute was there.  And the Georgia statute at

15         issue provided for compensatory damages for

16         frivolous suits, including attorney's fees, which

17         is much closer to Rule 11, right.  There's a

18         frivolousness question built into the Georgia law

19         and this court still applied that Georgia law,

20         saying that a state's law attorney's fee provision

21         are unequivocally substantive and then there's no

22         question that they should apply.

23              And this has been supported by the Supreme

24         Court numerous times as well, it says that Rule 11

25         sanctions are not fee-shifting provisions.

1       Sanctions under Rule 11 aren't tied to the outcome

2       of litigation.  The relevant inquiry is whether a

3       particular filing was well-founded, so the rule

4       only calls for an appropriate sanction and

5       attorney's fees aren't even mandated.

6              In Business Guides, the Supreme Court said

7       that the main objective of Rule 11 is not to reward

8       parties who are victimized by litigation, it's to

9       deter baseless filings and curb abuses and it

10      imposes an objective standard on those who sign

11      papers.  Rule 11 authorizes sanctions to prevent

12      repeated abuses, which may or may not be monetary

13      sanctions.

14             Florida, in contrast, enacted a policy to

15      prevent anti-SLAPP suits that would, among other

16      things, chill free speech, whether or not they're

17      frivolous.  Meritless doesn't necessarily equal

18      frivolous.  Under Florida 768.295 --

19             THE COURT:  But there's something, right,

20      there's something --  So I guess what you're

21      saying, because I asked your friend on the other

22      side this question, is you have to have without

23      merit and primarily because the party exercised its

24      First Amendment rights, right?

25             MR. LERNER:  Yes.

```
 1          THE COURT:  And so your friend on the other

 2     side says the part that says primarily - it was

 3     filed primarily because the party exercised its

 4     First Amendment rights is necessarily the

 5     equivalent of saying that it was filed for an

 6     improper purpose.  And so your position I guess has

 7     to be it's not, is that right?

 8          MR. LERNER:  That's right.  I mean, you know,

 9     there may be some incidental overlap, as the courts

10     have talked about, that where a rule is procedural

11     if it affects a substantive right and here, you

12     know, it's that substantive right that the Florida

13     courts have said you can be free from a suit of

14     defamation that impinges free speech rights and

15     that should result in fee-shifting if it's without

16     merit.

17          THE COURT:  I guess, you know, a lot of, I

18     think even your Rule 11 argument goes to the

19     definition of the phrase without merit, right?  I

20     mean, you read without merit to say you lose the

21     lawsuit, that's a lawsuit without merit.  It seems

22     like maybe you could also read it to be something a

23     little bit different to impose some kind of

24     heightened standard.

25          I guess, how do we answer --  It seems like we
```

1    have to answer that question before we get to the

2    Rule 11 issue, right?  We have to decide what the

3    standard is before we can decide whether this

4    conflicts with Rule 11?

5         MR. LERNER:  Well, again, I mean, you know, in

6    order to determine whether the fee-shifting

7    applies, right, as Your Honors have pointed out,

8    you do have to determine whether anti-SLAPP

9    applies, and for it to apply it has to be an action

10   that was primarily filed because a person or entity

11   exercised the constitutional right of free speech,

12   but that doesn't implicate a heightened pleading

13   standard under the federal rules or Iqbal/Twombly.

14        THE COURT:  Your argument is that it also

15   isn't about whether it's an improper purpose, it's

16   just really an inquiry into was this a lawsuit

17   about someone speaking?

18        MR. LERNER:  Correct, right, that the focus of

19   Rule 11 in terms of curbing abuses in the court and

20   protecting the integrity of the court and making

21   sure that pleadings that are filed are signed

22   knowing that there are, you know, a factual and

23   legal basis that aren't frivolous is protecting the

24   integrity of the system, whereas the Florida

25   Statute, as Your Honor pointed out, is simply a

```
 1          question of is this what this case is about.
 2              THE COURT:  But it's got to be more than just
 3          the fact that the case involves First Amendment
 4          issues, right?  Because it says it was filed
 5          primarily because of that.  I mean, so there has to
 6          be - it has to mean something more, otherwise it
 7          would just say and the case involved the exercise
 8          of First Amendment rights, right?
 9              MR. LERNER:  Well, primarily, I mean, there's
10          a standard of, you know, is the primary basis for
11          this the exercise of First Amendment rights.
12              THE COURT:  When I read that, I wondered
13          whether that meant you might have joinder of a lot
14          of claims.
15              MR. LERNER:  Exactly, and it's --
16              THE COURT:  And you might have some weird like
17          consumer fraud or, you know, allegation or
18          something like that, but the thrust of the suit was
19          about someone just as a "but for" kind of matter
20          was about them exercising speech rights.
21              MR. LERNER:  That's exactly right.
22              THE COURT:  I mean, that could certainly be
23          the case.  You know, that's certainly one
24          reasonable way of looking at it, but could it also
25          reasonably be the case that it means something
```

```
1        else; that, you know, that it was filed sort of in
2        retaliation, which is what your friend on the other
3        side says, which is kind of different, right?
4        Because then, then, if that's the meaning of it,
5        then it's assuming an improper purpose, right?
6             MR. LERNER:  I mean, again, it depends on your
7        notion of what an improper purpose is, which gets
8        you to the question of Rule 11.
9             THE COURT:  I mean, you can't --  I think it
10       would be an improper purpose to file a suit without
11       merit because you're trying to get back at someone
12       for saying things you don't like.  Why would that
13       not be an improper purpose?
14            MR. LERNER:  It may be an improper purpose
15       but, again, not necessarily under the rubric of
16       Rule 11, which I think is aimed at a different kind
17       of relief.  And, again, Rule 11 is kind of - the
18       sanctions that it provides for are prospective
19       sanctions.  They're not retrospective
20       compensatory --
21            THE COURT:  Even so, I mean, obviously, it's
22       just, talking off the top of my head, it seems to
23       me like a court that finds that there is a
24       meritless suit that's been filed and it's been
25       filed solely because the person is trying to get
```

```
 1          back at someone and inflict costs on someone for
 2          exercising their First Amendment rights in a way
 3          that they didn't like, that that would be an
 4          improper purpose.  I mean, I can't imagine - it's
 5          hard for me to imagine that a court would find that
 6          that was a proper purpose.  Do you disagree?
 7               MR. LERNER:  Yeah, I understand your position,
 8          Your Honor, that it may be an improper purpose, but
 9          that doesn't necessarily mean that the fee-shifting
10          under anti-SLAPP, and if this is a garden variety
11          fee-shifting, as Judge Brasher is suggesting, that
12          this court regularly recognizes, then it still
13          applies in federal court.  I mean, it is a garden
14          variety fee-shifting, because, unlike Rule 11,
15          again, which is prospective --
16               THE COURT:  I'm sorry, but that's kind of a
17          different issue, right?  I mean, you're, I mean,
18          maybe you're saying it's not a different issue,
19          you're saying it doesn't even matter.  Let's assume
20          it was for an improper purpose, it still doesn't
21          cross over completely with Rule 11, because in
22          Rule 11 we're trying to deter this kind of bad
23          conduct, whereas with this anti-SLAPP statute,
24          although I think that's also trying to deter this
25          kind of bad conduct, we're trying to compensate
```

```
 1        someone for having to have to deal with this,

 2        although I think under Rule 11 you'd find that,

 3        even though it's to deter the conduct, that

 4        oftentimes the punishments that will be imposed

 5        would be imposed in such a way that you're

 6        essentially making whole the party that had the

 7        improper purpose inflicted upon them.

 8            MR. LERNER:  I seem out of time, but I'm happy

 9        to --

10            THE COURT:  You may continue to speak, and

11        I've got a question for you.

12            MR. LERNER:  I hear everything and acknowledge

13        all of that, but I think that there's still

14        daylight there; that, yes, it may be for an

15        improper purpose, and it's possible that Rule 11

16        award in certain circumstances may have the effect

17        incidentally of compensating somebody, but that

18        still doesn't mean that it's, you know, the central

19        question is the same and the compensation for

20        having been burdened with this kind of suit, even,

21        you know, a suit for an improper purpose, is a

22        different question.  The compensation question

23        is --

24            THE COURT:  Let me ask you this.

25            MR. LERNER:  -- different than a deterrence
```

```
 1       question.
 2            THE COURT:  Let me ask you, is there anything
 3       in the text of this statute that requires a court
 4       to determine the purpose or motive behind why a
 5       lawsuit was filed?
 6            MR. LERNER:  Well, only if Your Honors read --
 7            THE COURT:  Well, let's just read the words
 8       and --  I mean, is there anything in the words that
 9       says that a court has to determine the purpose
10       behind a lawsuit to apply the anti-SLAPP?
11            MR. LERNER:  The word purpose is not in there,
12       right.  The question is whether it was filed
13       against another person or entity without merit and
14       primarily because such person has exercised the
15       constitutional right of free speech.
16            THE COURT:  Yeah, and it's really whether that
17       is - that primarily "because of" language is just
18       "but for" kind of stuff, right, or whether it's
19       imposing some kind of retaliatory standard, right?
20       And it's just --  The question I was going to ask
21       you about that is are you aware of any Florida case
22       law that addresses that question?
23            MR. LERNER:  I am not, Your Honor.
24            THE COURT:  Okay.  Is that another reason why
25       we ought to certify it?
```

33

1          MR. LERNER:  I don't think so, Your Honor.

2          I appreciate your time this morning,

3     Your Honors.

4          THE COURT:  How much money are you trying to

5     get in attorney's fees?

6          MR. LERNER:  Well, that's the subject of a

7     separate appeal, actually, already.

8          THE COURT:  Okay.

9          MR. LERNER:  I mean, right now there is a

10    judgment for $50,000.

11         THE COURT:  Fifty thousand dollars?

12         MR. LERNER:  I mean, approximately.  It's a

13    little bit less than that.

14         THE COURT:  Are you sure you want to go to the

15    Florida Supreme Court, come back here, maybe go

16    back to the District Court, do all that just to try

17    to get $50,000?

18         MR. LERNER:  Well, again, no, we don't want to

19    go to the Supreme Court to do all that because

20    we're hoping Your Honors will affirm the decision

21    in its entirety as we've requested today.

22         THE COURT:  All right.

23         MR. LERNER:  We thank you for your time.

24         THE COURT:  Ms. Isaak, you've got five

25    minutes.

```
 1          MS. ISAAK:  Yes, sir.  In the Carbone case, I
 2     think the court properly referenced the Abbas case,
 3     and in the Carbone case the court said that Federal
 4     Rules of Civil Procedure 12 and 56 answer the same
 5     question about the circumstance under which a court
 6     must dismiss a case before trial.
 7          The Abbas case talks about an order granting a
 8     special motion to dismiss under the anti-SLAPP act.
 9     The court may grant attorney's fees and costs to
10     the prevailing party.  The act does not purport to
11     make attorney's fees available to parties who
12     obtained dismissal by other means, such as Federal
13     Rule 12(b)(6), such as what we have in this case.
14     Therefore we conclude that the case should be
15     dismissed under 12(b)(6), attorney's fees under the
16     anti-SLAPP statute are not available to the
17     defendants in this case.  It's our position that
18     anti-SLAPP does not apply, period - does not apply.
19          And as far as the argument, Your Honors, that
20     the statute says that it was filed primarily
21     because of someone exercising the First Amendment
22     rights, this case was filed because Jerome Corsi
23     was in fact injured by statements that he could
24     prove to be false.  This case was not filed, nor
25     was there a finding that this case was filed,
```

```
1        primarily for the purpose of infringing on

2        someone's First Amendment rights.

3             THE COURT:  Now, don't say purpose; it's

4        because of, right?

5             MS. ISAAK:  Because of, yes.

6             THE COURT:  Because of someone's exercise of

7        First Amendment rights --

8             MS. ISAAK:  Yes.

9             THE COURT:  -- right?

10            MS. ISAAK:  Yes.

11            THE COURT:  I mean, you filed it because of

12       the exercise of First Amendment rights, right?

13            MS. ISAAK:  Filed it because he was damaged by

14       a provable - provably false, because the

15       statements --

16            THE COURT:  Well, you filed it because of

17       speech, someone's speech on a news show on TV.

18            THE COURT:  I mean, defamation is speech.

19            MS. ISAAK:  Defamation is speech, but

20       defamatory statements are not protected speech and

21       that is why this was filed.  There was nothing --

22            THE COURT:  If you find that the claim of

23       defamation is without merit, then you're left with

24       it being speech and it is protected, right?

25            MS. ISAAK:  Well, I understand that, sir, but
```

```
1        if this - we believe if this case was allowed to go

2        to the discovery phase, perhaps we would have had a

3        different result.

4             THE COURT:  I understand that.

5             MS. ISAAK:  But I don't think that there can

6        be --

7             THE COURT:  Let's assume for just the sake of

8        the argument you're going to lose on whether there

9        was a plausible allegation of actual malice.

10            MS. ISAAK:  Okay.

11            THE COURT:  Okay?

12            MS. ISAAK:  Okay.

13            THE COURT:  Then where are we?

14            MS. ISAAK:  Well, if we lose that there was a

15       plausible allegation of actual malice, then I guess

16       we're stuck with the 12(b)(6) dismissal.  However,

17       the attorney's fees provision in the District Court

18       was awarded pursuant to the Florida anti-SLAPP

19       statute, does not apply in this case, it does not

20       apply in federal court, and that is our position

21       there.

22            I think the federal courts have been clear,

23       even though there's been a split in the circuit,

24       there's - that it does not, it does not apply in

25       federal court.  And we go to the case, the Georgia
```

1          case, the Carbone case, Georgia's anti-SLAPP

2          statute --

3               THE COURT:  I mean, none of these cases, not

4          Carbone, none of them have to do with an award of

5          attorney's fees.

6               MS. ISAAK:  I understand that, but it has to

7          do with the applicability of the anti-SLAPP --

8               THE COURT:  We apply state laws that provide

9          for an award of attorney's fees for claims that

10         arise under state law --

11              MS. ISAAK:  Yes, sir.

12              THE COURT:  -- or fail under state law all the

13         time, right?

14              MS. ISAAK:  Yes, sir.

15              THE COURT:  So why wasn't the District Court

16         to award --  Why was the District Court wrong to

17         award the fees here?

18              MS. ISAAK:  Because they awarded the fees

19         pursuant to the anti-SLAPP statute, the Florida

20         anti-SLAPP statute, and that's why this is wrong.

21              Not only --  Of course, we contend that the

22         anti-SLAPP statute has no place in federal court,

23         it should not be applied in federal court, but,

24         even if it was, they did not follow their own

25         statute, which says it required a hearing.  So

```
1        there is a higher evidentiary burden for the

2        Florida SLAPP statute that is not - that does not

3        apply in federal court.

4            THE COURT:  And where do you get the idea --

5        I mean, where in the text of the statute does the

6        idea that there's a higher evidentiary burden come

7        from?

8            MS. ISAAK:  Because upon the filing of a

9        dismissal under the Florida anti-SLAPP statute, and

10       before the assessment of attorney's fees, a hearing

11       must be scheduled.  It says "shall".  That is not

12       something that is optional, so --

13           THE COURT:  Yeah, but, I mean, but wouldn't

14       you have to have a hearing to assess the attorney's

15       fees?  I mean, couldn't you apply 12(b)(6) for a

16       motion for summary judgment, Rule 56, whatever, to

17       the issue of merit?

18           Of course you have to have a hearing to assess

19       attorney's fees.  I mean, you can't, you know, just

20       magic come out of the air, you have to determine

21       what the attorney's fees are, that kind of stuff.

22       Why does that impose --  The idea of having a

23       hearing, why does that say that there's a

24       heightened evidentiary standard on the issue of

25       whether there's merit or not?
```

```
 1            MS. ISAAK:  I guess because the statute --
 2       The statute, there has to be a showing that there
 3       is a violation of the anti-SLAPP statute, that this
 4       was filed primarily for - because someone exercised
 5       free speech.
 6            And I understand what you're saying, Judge, I
 7       do.  I think there's a difference here that there
 8       has to be a showing of that, but also --
 9            THE COURT:  It seems to me it's just
10       uncontested that this is a speech case.
11            MS. ISAAK:  Well, I would say it's --
12            THE COURT:  I mean, the suit's about
13       someone --
14            MS. ISAAK:  A defamation?
15            THE COURT:  -- speaking, right?  It's a
16       defamation suit, that's all it's about, and if it's
17       without merit, if the claim of defamation is
18       without merit, it was filed primarily because
19       someone exercised their right to speak.
20            MS. ISAAK:  I understand what you're saying,
21       Judge, and Dr. Corsi was in fact damaged by
22       provably false statements and it's his position
23       that they are defamatory and at the very least he
24       should have been allowed to go to the discovery
25       phase and I don't even think there was an
```

1          opportunity to amend pleadings.

2               THE COURT:  Okay.  I think we understand your

3          case, MS. ISAAK.  And you've gone over, but you've

4          been answering questions from us, so we're going to

5          move to our last case.

6               MS. ISAAK:  Okay.

7               THE COURT:  Thank you.

8               (The audio concluded.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                C E R T I F I C A T E

 2

 3

 4     STATE OF FLORIDA

 5     COUNTY OF MIAMI-DADE

 6

 7          I, Gail Hmielewski, Court Stenographer, do hereby

 8     certify that the foregoing transcript, Pages 1 to and

 9     including 40, is a true and correct transcript of an

10     audio recording that was provided to me of court

11     proceedings.

12

13          The audio recording was provided to me by Larry E.

14     Klayman, Esquire, and transcribed to the best of my

15     ability.

16

17          Dated this 2nd day of June, 2022.

18

19

20

21     _____

22     Gail Hmielewski, Court Stenographer

23

24

25
```

| A | | | | |
|---|---|---|---|---|
| **Abbas** 34:2,7 | 5:15,23 6:18 | **APPEARAN...** | 36:7 | **believe** 7:24 19:5 |
| **ability** 41:15 | 8:2 23:12 | 2:1 | **assuming** 29:5 | 36:1 |
| **able** 8:2 | **allege** 5:2,19 6:7 | **Appeared** 2:3,9 | **attempt** 17:13 | **believes** 8:1,8 |
| **abridgement** | **alleged** 5:1,12 | **Appellant** 1:5 | **attorney** 6:21 | **best** 41:14 |
| 22:1 | 7:4 | 2:3 | **attorney's** 8:11 | **beyond** 5:6 |
| **absolutely** 9:5 | **allegedly** 19:2 | **appellate** 16:19 | 9:4,11 10:17 | **Biscayne** 2:16 |
| **abuses** 25:9,12 | **alleges** 18:3 | **appellees** 1:8 2:9 | 10:19 11:21 | **bit** 17:24 26:23 |
| 27:19 | **allow** 10:18 | 17:10 | 12:2,14,17,18 | 33:13 |
| **acknowledge** | **allowed** 7:25 | **applicability** | 15:15 18:6,11 | **books** 5:7 6:6 |
| 31:12 | 36:1 39:24 | 37:7 | 18:22 19:21 | **Boulevard** 2:16 |
| **act** 12:16 34:8 | **allows** 11:23 | **application** | 22:20 24:16,20 | **Box** 2:5 |
| 34:10 | **amend** 40:1 | 18:18 20:20 | 25:5 33:5 34:9 | **boy** 4:3 |
| **action** 4:24 | **Amendment** | **applied** 8:16 | 34:11,15 36:17 | **Brasher** 24:6 |
| 11:13 15:17 | 9:24 10:11 | 20:7,24 22:10 | 37:5,9 38:10 | 30:11 |
| 21:4 27:9 | 11:5 17:14 | 22:12 24:19 | 38:14,19,21 | **broadcast** 17:16 |
| **activity** 17:14 | 22:1,4 24:5 | 37:23 | **audio** 1:12 40:8 | 23:13 |
| 24:5 | 25:24 26:4 | **applies** 8:13 9:2 | 41:10,13 | **brought** 21:2 |
| **actual** 4:20,23 | 28:3,8,11 30:2 | 9:16 12:20 | **authority** 21:16 | **built** 24:18 |
| 5:2,12 18:3,13 | 34:21 35:2,7 | 15:8 18:8 27:7 | 22:21 | **burden** 13:13 |
| 18:16 22:16,18 | 35:12 | 27:9 30:13 | **authorizes** 25:11 | 20:22 21:22 |
| 36:9,15 | **America** 6:22 | **apply** 4:16 8:15 | **available** 21:9 | 22:25 23:19,20 |
| **additional** 18:23 | **and/or** 10:6 | 8:24 9:12 | 21:10 34:11,16 | 38:1,6 |
| **address** 16:14 | **answer** 12:13 | 11:14 12:2 | **Avenue** 2:11 | **burden-shifting** |
| 16:16 18:2,12 | 20:16 26:25 | 14:13,17,20,22 | **avenues** 16:24 | 23:18 |
| **addressed** 18:15 | 27:1 34:4 | 24:22 27:9 | 16:25 | **burdened** 17:20 |
| 20:14 | **answered** 22:9 | 32:10 34:18,18 | **award** 9:11 | 19:3 31:20 |
| **addresses** 24:11 | **answering** 40:4 | 36:19,20,24 | 15:15 18:11 | **burdens** 12:9 |
| 32:22 | **answers** 24:13 | 37:8 38:3,15 | 31:16 37:4,9 | **Business** 25:6 |
| **advanced** 8:9 | **anti-SLAPP** | **appreciate** 20:9 | 37:16,17 | |
| **advantage** 19:5 | 4:15 8:13,15 | 33:2 | **awarded** 9:21,22 | C |
| **affidavit** 5:20 | 9:20 10:14 | **appropriate** | 36:18 37:18 | **C** 41:1,1 |
| 21:7 | 11:2 12:8,11 | 25:4 | **aware** 7:6 32:21 | **called** 5:15 6:9 |
| **affirm** 17:21 | 13:17,19,22 | **approximately** | | 20:24 |
| 33:20 | 15:10 18:8,18 | 33:12 | B | **calling** 10:20 |
| **agree** 18:13 | 18:21 21:13,24 | **arguing** 4:10 | **B** 9:23 | **calls** 25:4 |
| 19:24,25 21:15 | 23:2,8,11,22 | **argument** 1:13 | **Bachman** 17:11 | **captures** 10:4 |
| 22:17,17 | 24:1,4,6 25:15 | 11:8 16:13 | **back** 19:19,20 | **Carbone** 34:1,3 |
| **ahead** 17:5 | 27:8 30:10,23 | 26:18 27:14 | 29:11 30:1 | 37:1,4 |
| **aimed** 29:16 | 32:10 34:8,16 | 34:19 36:8 | 33:15,16 | **Cardillo** 17:11 |
| **air** 38:20 | 34:18 36:18 | **asked** 25:21 | **bad** 30:22,25 | **case** 1:2 4:11 8:8 |
| **al** 1:7 | 37:1,7,19,20 | **assess** 38:14,18 | **based** 9:4,7,11 | 8:16 13:21 |
| **Alabama** 2:5 | 37:22 38:9 | **assessed** 8:20 | 17:1,2 | 15:3 17:1,21 |
| **allegation** 5:9 | 39:3 | 13:21 | **baseless** 25:9 | 18:19,22,23 |
| 28:17 36:9,15 | **ANTONY** 2:15 | **assessment** | **basically** 9:20 | 19:12 20:16 |
| **allegations** 5:11 | **anyway** 10:10 | 38:10 | 15:23 | 21:23,25 22:6 |
| | **appeal** 33:7 | **associated** 13:10 | **basis** 23:13 | 23:1,5 28:1,3,7 |
| | **APPEALS** 1:1 | **assume** 30:19 | 27:23 28:10 | 28:23,25 32:21 |

34:1,2,3,6,7,13
34:14,17,22,24
34:25 36:1,19
36:25 37:1,1
39:10 40:3,5
**cases** 10:15 12:1
16:25 17:18
21:13 37:3
**causes** 11:13
**central** 31:18
**certain** 31:16
**certainly** 18:4
18:12,25 22:9
28:22,23
**CERTIFICATE**
3:5
**certification**
16:15
**certified** 16:22
20:3,5
**certify** 16:16
19:15 32:25
41:8
**character** 5:5
**chill** 25:16
**chills** 19:6
**Christopher**
17:11
**circuit** 1:1 20:10
20:12,14 24:11
36:23
**circumstance**
20:16 34:5
**circumstances**
31:16
**cited** 20:20
**Civil** 34:4
**claim** 12:15
15:16 22:15
23:13 35:22
39:17
**claims** 28:14
37:9
**classic** 17:14
**clear** 16:23
21:18 23:4,11
24:2 36:22

**clearly** 22:7
**closer** 24:17
**colleague** 17:9
**collect** 19:21
**come** 19:19
23:25 33:15
38:6,20
**committed** 6:10
**common** 11:10
**compare** 9:16
**compensate**
30:25
**compensating**
31:17
**compensation**
31:19,22
**compensatory**
24:15 29:20
**complaint** 5:19
8:3 18:3 23:12
**completely**
30:21
**complied** 4:18
**concern** 8:24
**concert** 8:6
**conclude** 34:14
**concluded** 40:8
**conduct** 30:23
30:25 31:3
**confidence** 20:9
20:11
**conflict** 12:4,6
14:1
**conflicts** 14:12
16:7 27:4
**connection**
15:16
**considered**
12:21
**conspiracy** 5:16
5:18
**constitutional**
27:11 32:15
**consumer** 28:17
**contend** 8:14
37:21
**continuation**

20:6
**continue** 18:23
19:17 31:10
**contrast** 25:14
**controlling**
24:10
**correct** 9:6,13
9:13,18,25
10:1 14:8,10
16:3 27:18
41:9
**Corsi** 1:4 4:2,8
5:4,16,21 6:1,1
6:5,5,7 7:23
8:1,4,7 19:22
34:22 39:21
**Corsi's** 5:7,15
6:21
**costs** 15:16 30:1
34:9
**counsel** 6:23
**counterpoint**
6:17
**COUNTY** 41:5
**course** 8:17
37:21 38:18
**court** 1:1,24 4:2
4:6,7,13,14,16
4:19,20,25 6:2
6:14 7:13,20
8:10,22,25 9:3
9:7,10,12,15
9:19 10:2,9,22
11:7,14,25
12:2,13,22,24
13:2,15 14:1,5
14:9,11,15,19
14:20,24 15:5
15:8,12,13,14
15:20,22,25
16:3,6,12,14
16:17,23 17:3
17:4,6,8,18,22
17:25 18:2,8
18:20 19:8,13
19:16,19,20
20:2,9,20 21:3

21:15 22:17
23:7 24:19,24
25:6,19 26:1
26:17 27:14,19
27:20 28:2,12
28:16,22 29:9
29:21,23 30:5
30:12,13,16
31:10,24 32:2
32:3,7,9,16,24
33:4,8,11,14
33:15,16,19,22
33:24 34:2,3,5
34:9 35:3,6,9
35:11,16,18,22
36:4,7,11,13
36:17,20,25
37:3,8,12,15
37:15,16,22,23
38:3,4,13 39:9
39:12,15 40:2
40:7 41:7,10
41:22
**court's** 24:9
**Courtroom** 1:17
**courts** 14:2
16:19 26:9,13
36:22
**covers** 10:15,17
16:10
**create** 14:6,15
**creates** 11:13
**crimes** 7:4
**cross** 30:21
**curb** 25:9
**curbing** 27:19

**D**

**damaged** 35:13
39:21
**damages** 24:15
**DATE** 1:16
**Dated** 41:17
**day** 41:17
**daylight** 31:14
**DCA** 14:5
**DCAs** 21:16

**deal** 12:8,9 31:1
**dealing** 15:9
**debate** 6:24,25
7:10
**deceptive** 12:16
**decide** 17:4 27:2
27:3
**decision** 17:21
22:20 33:20
**defamation** 4:24
6:12 11:17
15:7 23:13
26:14 35:18,19
35:23 39:14,16
39:17
**defamatory** 19:3
35:20 39:23
**defame** 8:7
**defendants** 5:4
5:15,22 6:23
19:2 20:18
23:20 34:17
**defense** 17:20
**definition** 26:19
**depends** 29:6
**destroy** 6:11
**deter** 25:9 30:22
30:24 31:3
**determination**
22:5
**determine** 21:23
22:3 23:21
27:6,8 32:4,9
38:20
**determined**
19:11
**deterrence**
31:25
**difference** 39:7
**different** 12:1
24:13 26:23
29:3,16 30:17
30:18 31:22,25
36:3
**directly** 7:7
10:14 20:18
**disagree** 30:6

**discovery** 8:1,9 21:12 36:2 39:24
**discredit** 6:11
**discussed** 7:1 17:24
**dismiss** 21:11 34:6,8
**dismissal** 16:25 34:12 36:16 38:9
**dismissed** 4:12 13:21 34:15
**dismissing** 21:4
**dispose** 10:15
**dispute** 23:5,23
**distribution** 4:14
**District** 4:12,14 17:21 19:20 33:16 36:17 37:15,16
**dollars** 33:11
**doubts** 5:8 8:12 18:7
**Dr** 8:7 39:21
**DUANE** 2:10,15

**E**

**E** 41:1,1,13
**effect** 31:16
**either** 14:19
**ELEVENTH** 1:1
**enacted** 25:14
**engaging** 17:13
**ensuring** 17:19
**entering** 6:25
**entertained** 5:8
**entirety** 17:22 33:21
**entitled** 12:17 12:18 23:8
**entity** 21:3,5 27:10 32:13
**equal** 25:17
**equivalent** 26:5

**Esquire** 2:4,10 2:15 41:14
**essentially** 31:6
**establish** 23:21
**establishing** 23:1
**et** 1:7
**evidence** 13:25 23:25
**evidentiary** 13:13 38:1,6 38:24
**exactly** 20:5 28:15,21
**exercise** 11:1 24:4 28:7,11 35:6,12
**exercised** 9:24 10:11 16:2 25:23 26:3 27:11 32:14 39:4,19
**exercising** 28:20 30:2 34:21

**F**

**F** 41:1
**face** 23:4,11 24:3
**fact** 5:3,7 6:2,4 6:25 8:5 23:22 28:3 34:23 39:21
**facts** 17:23,25
**factual** 27:22
**fail** 37:12
**Fairbanks** 5:4 7:6,19,20
**fall** 10:14 23:7 23:10,22 24:1
**falls** 21:24 23:1 24:3,5
**false** 5:25 6:8 34:24 35:14 39:22
**familiar** 8:5 17:23

**far** 21:20 22:5 23:1,2 34:19
**favor** 21:5
**Fax** 2:6,12,17
**federal** 1:18 4:16 8:25 9:12 11:14,22,22 12:2 14:12,20 15:8 16:23 17:1,3 18:8 20:21 21:9,21 27:13 30:13 34:3,12 36:20 36:22,25 37:22 37:23 38:3
**fee** 4:13,13 8:11 9:4,11,19 12:14 18:11 24:20
**fee-shifting** 8:18 11:11,12,14,16 11:20 12:5 15:2,4,6 19:10 24:8,12,25 26:15 27:6 30:9,11,14
**fees** 8:19 9:21,21 10:17,19 11:18 11:21 12:2,17 12:18 13:9,20 15:16 18:6,22 19:21 22:20 23:8 24:16 25:5 33:5 34:9 34:11,15 36:17 37:5,9,17,18 38:10,15,19,21
**Fifty** 33:11
**figure** 4:22,24 9:15
**figure's** 17:12
**file** 11:16 15:25 21:6,10,11 29:10
**filed** 9:23 10:7 10:10,12 11:3 15:17 16:1,6,7

18:10 26:3,5 27:10,21 28:4 29:1,24,25 32:5,12 34:20 34:22,24,25 35:11,13,16,21 39:4,18
**filing** 10:25 25:3 38:8
**filings** 25:9
**final** 21:4
**find** 30:5 31:2 35:22
**finding** 16:4 34:25
**finds** 29:23
**FIRM** 2:4
**First** 8:16 9:24 10:11 11:4 17:14 22:1,4 24:5 25:24 26:4 28:3,8,11 30:2 34:21 35:2,7,12
**five** 33:24
**Floor** 1:17
**Florida** 1:19 2:16 8:17,18 8:23 11:2,20 11:22 13:12,17 13:19,22 14:2 15:7 16:17,22 19:11,16 20:17 25:14,18 26:12 27:24 32:21 33:15 36:18 37:19 38:2,9 41:4
**Florida's** 4:15 12:10
**focus** 27:18
**follow** 12:24 37:24
**follow-up** 14:24
**foregoing** 41:8
**forum** 23:15
**forward** 23:25

**Fourth** 1:18
**frankly** 19:24 20:7 24:7
**fraud** 6:10 28:17
**free** 10:25 11:4 16:2 25:16 26:13,14 27:11 32:15 39:5
**friend** 25:21 26:1 29:2
**frivolous** 24:16 25:17,18 27:23
**frivolousness** 24:18
**front** 20:6

**G**

**Gail** 1:24 41:7 41:22
**garden** 8:17 12:11 24:7,8 30:10,13
**general** 12:3
**Georgia** 24:13 24:14,18,19 36:25
**Georgia's** 37:1
**getting** 13:16
**give** 7:21 18:10
**given** 7:11,20
**gives** 11:20
**go** 17:5 19:20 23:19,20 33:14 33:15,19 36:1 36:25 39:24
**goes** 13:12 22:25 26:18
**going** 7:7,12 22:2 32:20 36:8 40:4
**Good** 4:4,5
**grant** 34:9
**granting** 21:4 34:7
**gripe** 7:14
**groundless** 17:12,20

**guess** 7:16,18
  10:5 11:8
  19:13 25:20
  26:6,17,25
  36:15 39:1
**guest** 17:15,15
**Guides** 25:6
**Gundel** 22:2,7
  23:3,23

**H**
**hand** 14:5 19:4
**happy** 18:12,16
  31:8
**hard** 7:17 30:5
**head** 29:22
**hear** 31:12
**hearing** 8:20
  13:23,23 37:25
  38:10,14,18,23
**heightened** 12:9
  13:11,15,17
  14:6,16 15:1
  20:23 21:20
  22:10,22,25
  23:6,17 26:24
  27:12 38:24
**held** 24:11
**higher** 20:19
  38:1,6
**Hmielewski** 1:24
  41:7,22
**Holdings** 17:17
**honestly** 21:19
**Honor** 18:14
  21:19 22:13
  27:25 30:8
  32:23 33:1
**Honors** 4:11
  6:20 17:7 27:7
  32:6 33:3,20
  34:19
**hoping** 19:1
  33:20
**host** 7:21
**hosted** 23:14
**hundred** 21:18

**hurdle** 4:23

**I**
**idea** 13:16 38:4
  38:6,22
**image** 12:12
**imagine** 30:4,5
**impinges** 26:14
**implicate** 27:12
**imply** 5:8
**important** 19:11
**impose** 13:4,8
  15:1 20:18
  21:14 26:23
  38:22
**imposed** 13:12
  31:4,5
**imposes** 13:17
  25:10
**imposing** 32:19
**improper** 4:15
  10:7,12,24
  11:6 26:6
  27:15 29:5,7
  29:10,13,14
  30:4,8,20 31:7
  31:15,21
**in-between**
  23:23
**incidental** 26:9
**incidentally**
  31:17
**including** 24:16
  41:9
**incurred** 15:16
**INDEX** 3:1
**indication** 22:7
**individual** 19:1
**inflict** 30:1
**inflicted** 31:7
**infringing** 11:4
  35:1
**initially** 23:19
  23:20
**injured** 34:23
**inquiry** 25:2
  27:16

**integrity** 27:20
  27:24
**interest** 17:19
  18:18
**interested** 8:11
  18:5
**intermediate**
  16:18
**intimately** 6:4
  8:4
**investigation** 7:3
**invited** 6:21
**involved** 28:7
**involves** 28:3
**involving** 7:3
**Iqbal** 20:22
**Iqbal/Twombly**
  27:13
**Isaak** 2:4,4 4:4,5
  4:7,8,22 5:14
  6:4,20 7:23
  8:14 9:1,5,8,13
  9:18,25 10:8
  10:13 11:2,19
  12:7,19 13:1
  13:11,19 14:4
  14:8,10,14,18
  14:21 15:3,9
  15:19,21,24
  16:3,7,21
  19:25 24:7
  33:24 34:1
  35:5,8,10,13
  35:19,25 36:5
  36:10,12,14
  37:6,11,14,18
  38:8 39:1,11
  39:14,20 40:3
  40:6
**isaaklaw@gm...**
  2:7
**issue** 7:12 8:12
  15:11 16:14
  17:4 18:7,13
  20:13,15 21:24
  22:4,21 24:2
  24:15 27:2

  30:17,18 38:17
  38:24
**issues** 6:25 7:2
  28:4

**J**
**Jackson-Fannin**
  2:15 17:9
**James** 1:18
**Jerome** 1:4 4:8
  34:22
**jjfannin@dua...**
  2:18
**John** 17:11,11
**joinder** 28:13
**joint** 8:6
**Judge** 4:5 13:2
  22:13 24:6
  30:11 39:6,21
**judgment** 10:16
  21:4,6,12
  33:10 38:16
**Julian** 2:15 17:9
**June** 41:17
**justice** 1:18 7:5

**K**
**kind** 19:6,12,21
  26:23 28:19
  29:3,16,17
  30:16,22,25
  31:20 32:18,19
  38:21
**King** 1:18
**Klayman** 6:20
  6:24 7:1,5,11
  41:14
**knew** 5:4
**know** 5:3,4,5,11
  5:17,17,22,22
  5:23 6:2,3,4,24
  11:7 13:3,5
  16:15 17:25
  26:8,12,17
  27:5,22 28:10
  28:17,23 29:1
  31:18,21 38:19

**knowing** 27:22

**L**
**L** 2:4
**Lam** 22:7 23:3
  23:24
**language** 9:17
  9:19,20 20:25
  21:1 32:17
**Larry** 41:13
**law** 2:4 11:10,13
  15:3,7 17:1
  20:13,17,18
  24:18,19,20
  32:22 37:10,12
**Lawrence** 1:18
**laws** 21:13 37:8
**lawsuit** 10:25
  11:17 19:6
  21:2 26:21,21
  27:16 32:5,10
**left** 35:23
**legal** 18:21
  27:23
**legislature** 19:11
**legitimate** 7:14
**Lerner** 2:10
  17:6,7,8 18:1
  18:12,25 19:9
  19:23 20:4,11
  21:18 22:24
  23:10 25:25
  26:8 27:5,18
  28:9,15,21
  29:6,14 30:7
  31:8,12,25
  32:6,11,23
  33:1,6,9,12,18
  33:23
**let's** 23:19,20
  30:19 32:7
  36:7
**letter** 7:16
**level** 16:9 22:14
**liar** 6:1,9
**litigation** 17:21
  18:24 19:4,18

20:6 25:2,8
**little** 17:24 19:24
26:23 33:13
**live** 6:22 7:8
17:16 23:14
**LLP** 2:10,15
**LOCATION**
1:17
**look** 5:11 12:7
23:16
**looking** 5:12
10:2,3 28:24
**lose** 13:9 26:20
36:8,14
**lot** 26:17 28:13
**lower** 4:18
**lured** 6:22

**M**
**ma'am** 10:8,8,13
**magic** 38:20
**main** 4:10 25:7
**making** 27:20
31:6
**MALE** 7:19
**malerner@du...**
2:13
**malice** 4:20,23
5:2,12 18:4,13
18:16 22:18
36:9,15
**mandated** 25:5
**Mark** 2:10 17:8
**material** 20:13
20:17
**matter** 4:9 12:3
28:19 30:19
**mean** 5:3,5 6:14
7:13,14 9:16
10:12 11:25
12:3 15:13
18:24,24 19:9
19:18 21:8
22:21 23:9
26:8,20 27:5
28:5,6,9,22
29:6,9,21 30:4

30:9,13,17,17
31:18 32:8
33:9,12 35:11
35:18 37:3
38:5,13,15,19
39:12
**meaning** 29:4
**means** 6:3 7:14
10:15 28:25
34:12
**meant** 28:13
**media** 1:7 4:2
17:10,13 23:14
**Melissa** 2:4 4:8
**meriless** 10:20
**merit** 9:22 10:6
16:1 21:2 22:6
25:23 26:16,19
26:20,21 29:11
32:13 35:23
38:17,25 39:17
39:18
**meritless** 10:20
10:25 11:16
25:17 29:24
**merits** 13:6
18:21
**message** 19:6
**met** 23:18,20
**Miami** 1:19 2:16
**MIAMI-DADE**
41:5
**Michel** 17:17
**mind** 11:9
**minutes** 33:25
**mirror** 12:12
**monetary** 25:12
**money** 33:4
**Montgomery**
2:5
**morning** 4:4,5
33:2
**MORRIS** 2:10
2:15
**motion** 4:12
21:6,11,11
34:8 38:16

**motive** 32:4
**move** 18:17 21:3
40:5
**Mueller** 7:2

**N**
**name** 4:7 17:8
**necessarily** 17:4
25:17 26:4
29:15 30:9
**need** 20:1,2,4
**needs** 16:22
20:13
**New** 2:11,11
**news** 35:17
**Newsmax** 1:7
4:2 5:3,7 6:6
6:21 7:15,17
17:10 19:1
**Newsmax's** 7:20
**normal** 12:5
**Northeast** 1:18
**notice** 7:11
**notion** 22:15
29:7
**numerous** 17:18
24:24
**NYP** 17:17

**O**
**objective** 25:7
25:10
**obstruction** 7:5
**obtained** 34:12
**obviously** 18:14
22:18 29:21
**offer** 5:16 12:19
**oftentimes** 31:4
**Oh** 4:2,2
**okay** 10:9 11:25
13:1,15 15:5
15:12 16:12
17:6 18:1 19:8
21:8 32:24
33:8 36:10,11
36:12 40:2,6
**ongoing** 19:4

**opportunity**
6:17 7:10,22
40:1
**opposed** 12:15
**opposition** 22:8
23:3
**optional** 38:12
**options** 19:15
**ORAL** 1:13
**order** 9:15 20:14
21:3 22:3 27:6
34:7
**ought** 32:25
**outcome** 25:1
**outlet** 17:13
23:14
**outside** 22:2
**overlap** 26:9

**P**
**P.O** 2:5
**PAGE** 3:3
**Pages** 1:15 41:8
**panel** 18:15
**papers** 25:11
**Park** 2:11
**part** 13:5,7 15:6
26:2
**particular** 20:15
25:3
**parties** 13:24
25:8 34:11
**party** 15:15
25:23 26:3
31:6 34:10
**party's** 12:18
**pay** 11:17 13:9
**people** 5:22 7:21
**percent** 21:18
**period** 34:18
**perjury** 7:4
**person** 21:3,5,5
27:10 29:25
32:13,14
**pertains** 15:10
**phase** 8:9 36:2
39:25

**Phone** 2:6,12,17
**phonetic** 24:10
**phrase** 13:10
26:19
**place** 17:2 37:22
**plagiarist** 6:10
**plagiarized** 5:9
**plaintiff** 23:21
23:25
**plaintiffs** 23:18
**plausibility**
22:11,15
**plausible** 36:9
36:15
**plausibly** 5:1
18:3
**pleading** 12:10
12:14,20,21
13:4,8,9 14:6
14:16 15:1
16:8 20:19,21
21:20 22:10,19
22:22,25 23:6
23:17 27:12
**pleadings** 22:3
24:3 27:21
40:1
**please** 4:7 17:8
**pled** 5:19 6:7
7:24
**point** 6:16 7:16
**pointed** 22:13
27:7,25
**points** 4:10
**policy** 25:14
**position** 16:19
19:25 26:6
30:7 34:17
36:20 39:22
**positions** 13:25
**possible** 31:15
**powerful** 17:19
**practical** 19:14
**practices** 12:16
**presented** 7:9
**Presti** 24:10
**prevailing** 12:17

15:15 34:10
**prevent** 25:11
  25:15
**primarily** 9:23
  10:10 25:23
  26:2,3 27:10
  28:5,9 32:14
  32:17 34:20
  35:1 39:4,18
**primary** 28:10
**principal** 19:23
**prior** 13:20,21
**problem** 11:8
**procedural**
  11:19 14:17
  15:23 26:10
**procedure** 11:21
  17:2 21:9 34:4
**proceed** 7:25
**proceedings** 3:1
  3:4 4:1 41:11
**produce** 13:24
**profession** 6:12
**program** 6:16
  6:23
**prohibits** 21:1
**proper** 30:6
**properly** 4:11
  5:19 7:24 34:2
**prospective**
  29:18 30:15
**protected** 17:14
  19:7 35:20,24
**protecting** 27:20
  27:23
**provable** 35:14
**provably** 5:24
  6:8 35:14
  39:22
**prove** 8:2,8
  34:24
**provide** 37:8
**provided** 6:18
  24:15 41:10,13
**provides** 21:2
  29:18
**provision** 4:13

12:14 24:20
  36:17
**provisions** 24:25
**Pryor** 22:13
**Pryor's** 13:2
**public** 4:22,24
  7:2 17:12
  23:14
**punish** 17:13
**punishments**
  31:4
**punitive** 24:12
**purport** 34:10
**purpose** 10:24
  11:3,6 26:6
  27:15 29:5,7
  29:10,13,14
  30:4,6,8,20
  31:7,15,21
  32:4,9,11 35:1
  35:3
**purposes** 22:20
**pursuant** 36:18
  37:19

_____

**Q**

**query** 20:12
**question** 10:4,5
  10:9 12:24
  13:2,7 14:24
  16:17 19:13,14
  19:16 20:17
  21:22 22:2,8
  22:24 24:13,18
  24:22 25:22
  27:1 28:1 29:8
  31:11,19,22,22
  32:1,12,20,22
  34:5
**questions** 16:15
  18:16,17 40:4
**quick** 16:21

_____

**R**

**R** 41:1
**read** 26:20,22
  28:12 32:6,7

**real** 6:18
**really** 10:22
  12:11 18:22
  20:13 22:6
  24:10 27:16
  32:16
**reason** 10:7,12
  19:14 32:24
**reasonable** 9:21
  15:15 28:24
**reasonably**
  28:25
**reasons** 8:16
**recognize** 17:18
**recognizes** 30:12
**recording** 1:12
  41:10,13
**recoup** 10:17,19
  11:21
**recovery** 12:2
  16:24
**referenced** 34:2
**regular** 22:19
**regularly** 30:12
**related** 7:2
  21:25
**relates** 24:4
**relevant** 25:2
**relief** 29:17
**repeated** 25:12
**repeats** 21:8
**Reported** 1:24
**REPORTER**
  3:5
**reporting** 5:10
**represent** 4:8
  17:10
**reproach** 5:6
**requested** 33:21
**required** 13:24
  37:25
**requirement**
  4:21 15:23
**requirements**
  12:10 16:8
**requires** 32:3
**respective** 13:25

**respond** 6:18
  7:11,22
**result** 26:15 36:3
**results** 7:3
**retaliation** 29:2
**retaliatory**
  32:19
**retrospective**
  29:19
**reward** 25:7
**right** 9:17,24,24
  10:7,11 11:5
  13:6 14:3,7
  15:20,23 16:7
  19:18 20:4
  21:21 23:9
  24:17 25:19,24
  26:7,8,11,12
  26:19 27:2,7
  27:11,18 28:4
  28:8,21 29:3,5
  30:17 32:12,15
  32:18,19 33:9
  33:22 35:4,9
  35:12,24 37:13
  39:15,19
**rights** 16:2 22:1
  25:24 26:4,14
  28:8,11,20
  30:2 34:22
  35:2,7,12
**rise** 18:10 22:14
**Roger** 5:17 7:3
  8:5
**role** 7:21
**rubric** 29:15
**Ruddy** 17:11
**rule** 5:20 7:24
  9:17 10:3,6,14
  10:18,23 11:6
  11:8,20,23
  12:4,12,19
  14:23 16:8,8
  16:10,10 19:20
  20:8,15,21
  24:11,17,24
  25:1,3,7,11

26:10,18 27:2
  27:4,19 29:8
  29:16,17 30:14
  30:21,22 31:2
  31:15 34:13
  38:16
**rules** 10:18
  11:22 14:12
  16:23 21:10,21
  27:13 34:4
**ruling** 4:14 24:9

_____

**S**

**sake** 36:7
**sanction** 25:4
**sanctions** 24:12
  24:25 25:1,11
  25:13 29:18,19
**saying** 9:10
  10:20,23 24:20
  25:21 26:5
  29:12 30:18,19
  39:6,20
**says** 6:3 8:20,21
  9:21 11:3 13:5
  13:20 14:9
  15:3,4,22,25
  24:24 26:2,2
  28:4 29:3 32:9
  34:20 37:25
  38:11
**scheduled** 8:20
  38:11
**se** 6:13
**section** 15:18,22
**see** 11:15
**seeing** 5:13
**seek** 20:19
**send** 19:5
**sense** 11:10 19:5
  19:9
**sent** 16:15
**separate** 33:7
**serious** 5:8 18:7
**set** 13:14,22,23
**sets** 15:22
**seven** 12:1

**shifting** 12:9
    20:23 21:22
    23:24
**show** 7:7,8,12
    24:1 35:17
**Showen** 24:9
**showing** 39:2,8
**side** 25:22 26:2
    29:3
**side's** 11:18
**sign** 25:10
**signed** 27:21
**silencing** 11:4
**simple** 22:11
**simply** 21:1
    27:25
**sir** 5:14 7:23
    8:14 9:5,8
    14:14,18,21
    15:19,21,24
    34:1 35:25
    37:11,14
**skepticism** 18:15
**SLAPP** 38:2
**sold** 5:7 6:6
**solely** 29:25
**somebody** 10:11
    31:17
**someone's** 10:25
    35:2,6,17
**sorry** 10:18
    11:22 23:19
    30:16
**sort** 6:16 19:14
    29:1
**sounds** 7:14
**South** 2:16
**speak** 18:6 31:10
    39:19
**speaking** 27:17
    39:15
**special** 34:8
**specifically** 12:4
    15:10 16:4
**specificity** 8:19
**specifies** 5:21
**speech** 11:1,4

16:2 17:19
    19:7 25:16
    26:14 27:11
    28:20 32:15
    35:17,17,18,19
    35:20,24 39:5
    39:10
**split** 16:18 21:16
    22:21 36:23
**stake** 19:24
**standard** 4:23
    12:15 13:4,8
    13:10,11,16,18
    14:7,16 15:2,4
    16:9 20:19,24
    21:21 22:10,11
    22:22,25 23:6
    25:10 26:24
    27:3,13 28:10
    32:19 38:24
**standards** 12:20
    20:21 22:19
**state** 11:13 12:5
    17:4 20:17
    37:8,10,12
    41:4
**state's** 24:20
**stated** 23:12
**statement** 21:25
**statements** 7:18
    19:3 34:23
    35:15,20 39:22
**states** 1:1 8:19
    11:11
**states'** 12:8
**station** 6:19
**statute** 4:16,18
    8:13,15,17,18
    8:19,23,23,24
    9:1,20 11:2,16
    11:20 12:5,11
    13:3,5,7,12,17
    13:20,22 14:3
    14:20 15:2,6
    15:14 18:8
    20:25 21:1
    24:14,14 27:25

30:23 32:3
    34:16,20 36:19
    37:2,19,20,22
    37:25 38:2,5,9
    39:1,2,3
**statutes** 10:15
    11:11,12,14
    12:1,8
**stay** 21:12
**Stenographer**
    1:24 41:7,22
**Stone** 5:17 8:5,6
**Stone's** 7:4
**Street** 1:18
**stuck** 36:16
**stuff** 32:18 38:21
**subject** 33:6
**submit** 13:24
**submitted** 5:21
    14:22
**substantive**
    24:21 26:11,12
**suggesting** 30:11
**suit** 9:22 11:3
    18:9 26:13
    28:18 29:10,24
    31:20,21 39:16
**suit's** 16:1 39:12
**Suite** 2:11,16
**suits** 24:16
    25:15
**summary** 10:16
    21:6,12 38:16
**supplemental**
    21:7
**supported** 24:23
**Supreme** 16:17
    16:23 19:16
    24:23 25:6
    33:15,19
**sure** 12:22 14:25
    27:21 33:14
**system** 27:24

———— **T** ————
**T** 41:1,1
**tag** 7:17

**take** 19:5
**talked** 16:18
    26:10
**talking** 13:4
    29:22
**talks** 6:22 34:7
**tampering** 7:5
**television** 17:16
**tell** 8:10
**terms** 18:18
    19:25 21:19,22
    23:24 27:19
**text** 15:14 32:3
    38:5
**thank** 17:7
    20:10 33:23
    40:7
**theory** 5:16,18
**thing** 8:10 10:22
    10:24 15:13
    18:5
**things** 6:8,11
    16:10 25:16
    29:12
**think** 4:22 9:1,9
    12:7,20 13:11
    15:9 16:12,21
    17:1,3,23 18:4
    22:6,24 23:23
    24:9 26:18
    29:9,16 30:24
    31:2,13 33:1
    34:2 36:5,22
    39:7,25 40:2
**thought** 6:14,15
    7:1
**thousand** 33:11
**thrust** 28:18
**Thursday** 1:16
**tied** 12:14 25:1
**time** 6:18 31:8
    33:2,23 37:13
**times** 24:24
**today** 4:10 33:21
**top** 29:22
**tort** 15:6
**tortfeasors** 8:7

**tough** 4:21
**trade** 6:12 12:16
**transcribed**
    41:14
**transcript** 41:8
    41:9
**TRANSCRIP...**
    1:12
**trial** 34:6
**true** 41:9
**truthfulness** 5:6
**try** 33:16
**trying** 29:11,25
    30:22,24,25
    33:4
**turn** 20:16
**TV** 35:17
**two** 4:10 8:15
**Twombly** 20:22

———— **U** ————
**ultimately** 22:8
**uncontested**
    39:10
**understand** 5:14
    6:6 7:9,13
    12:22 14:25
    16:12 30:7
    35:25 36:4
    37:6 39:6,20
    40:2
**undertaken**
    20:23
**unequivocally**
    24:21
**UNITED** 1:1
**untrue** 5:23,24
    6:3
**utter** 19:2

———— **V** ————
**v** 1:6 17:17 24:9
**variety** 8:18
    12:11 24:7,8
    30:10,14
**victimized** 25:8
**violation** 8:22

9:7,8,11 15:17
18:10 39:3
**VOICE** 7:19
**vs** 4:2

### W
**want** 7:15 11:11
16:19 18:2,22
18:23 19:3,22
33:14,18
**ward** 19:21
**wasn't** 22:8 23:5
37:15
**way** 7:9 11:15
14:19 28:24
30:2 31:5
**we're** 4:10 10:2
10:3 15:9
30:22,25 33:20
36:16 40:4
**we've** 11:9,25
16:17 33:21
**weird** 28:16
**well-founded**
25:3
**went** 7:8
**win** 12:15
**witness** 7:4
**wondered** 28:12
**word** 32:11
**words** 32:7,8
**worked** 6:5 8:6
**works** 14:3
**wouldn't** 21:17
23:8 38:13
**write** 7:15
**wrong** 6:15
37:16,20

### X

### Y
**yeah** 4:25 6:14
7:13 19:9 30:7
32:16 38:13
**York** 2:11,11

### Z

### 0

### 1
**1** 1:15 41:8
**10169** 2:11
**11** 9:17 10:3,6
10:14,18,23
11:6,8,23 12:4
12:12,19 16:10
16:10 24:11,17
24:24 25:1,7
25:11 26:18
27:2,4,19 29:8
29:16,17 30:14
30:21,22 31:2
31:15
**1130** 2:11
**11th** 20:10,12,14
24:11
**12** 34:4
**12(b)(6)** 4:12
10:16 20:8,21
22:11 34:13,15
36:16 38:15
**12th** 1:17
**19** 1:16

### 2
**201** 2:16
**2022** 1:16 41:17
**21-10480** 1:2
**212-404-8714**
2:12
**212-818-9606**
2:12
**230** 2:11
**2nd** 41:17

### 3
**305-402-0544**
2:17
**305-960-2253**
2:17
**33131** 2:16
**33132** 1:19

**334-262-8200**
2:6
**334-819-4072**
2:6
**3400** 2:16
**36103** 2:5

### 4
**4** 3:4
**40** 41:9
**41** 1:15 3:5
**4894** 2:5

### 5
**50,000** 33:10,17
**56** 34:4 38:16

### 6

### 7
**768.295** 25:18

### 8
**8** 5:20 7:24
14:23 16:8,8

### 9
**99** 1:18