# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

PATRICK NATHANIEL REED,

    Plaintiff,

v.

BRANDEL EUGENE CHAMBLEE, TGC, LLC, DAMON HACK, BENJAMIN SHANE BACON, EAMON LYNCH, GANNETT CO., INC., GANNETT SATELLITE INFORMATION NETWORK, LLC, CONDE NAST INTERNATIONAL, INC., and ZACH HELFAND,

    Defendants.

Case No. 3:22-cv-1059-TJC-PDB

---

PATRICK NATHANIEL REED,

    Plaintiff,

v.

SHANE RYAN, HACHETTE BOOK GROUP, INC., DOUG FERGUSON, THE ASSOCIATED PRESS, FOX SPORTS, INC., NYP HOLDINGS, INC., GAVIN NEWSHAM, BLOOMBERG L.P., and ERIK LARSON,

    Defendants.

Case No. 3:22-cv-1181-TJC-PDB

# O R D E R

These cases are before the Court on several motions. First, in both cases, Plaintiff seeks recusal of the undersigned. (Docs. 93 in 3:22-cv-1059; 88 in 3:22-cv-1181). Second, in both cases, Plaintiff seeks reconsideration of the Court's Order dismissing the Amended Complaints with prejudice ("the dispositive Order"). (Docs. 94 in 3:22-cv-1059; 89 in 3:22-cv-1181). Third, in Reed I,[1] Defendants seek attorneys' fees and costs under Florida's anti-SLAPP Statute. (Doc. 92 in 3:22-cv-1059). Each motion is ripe. (Docs. 95, 96, 99 in 3:22-cv-1059; 90, 91 in 3:22-cv-1181). The Court denies the first two motions and grants the third motion.

## I. REED'S MOTIONS FOR RECUSAL

In Reed I and II, Plaintiff filed identical motions seeking recusal of the undersigned. (Docs. 93 in 3:22-cv-1059; 88 in 3:22-cv-1181). Reed's counsel attaches an affidavit to both motions, which the Court reviewed. He requests recusal on several bases. First, he disagrees with the dispositive Order. He raises several arguments challenging portions of the Court's Order that he also brings in his motions for reconsideration. Relatedly, he contends that at least one of the fifty-five defamatory statements he alleged should have gone through to discovery, so the dismissal of all statements indicates the undersigned's bias.

---

[1] "Reed I" refers to Reed v. Chamblee, et al. (3:22-cv-1059) and "Reed II" refers to Reed v. Ryan, et al. (3:22-cv-1181).

(See e.g., Docs. 93 at 6 in 3:22-cv-1059 ("It is simply an impossibility that all fifty-five (55) defamatory statements would be dismissed with prejudice, particularly before any discovery had taken place."); 88 at 6 in 3:22-cv-1181 (same)). Second, Reed contends the Court should have denied Defendants' request for fees under Florida's anti-SLAPP statute in Reed I without further consideration, and the Court's failure to do so indicates bias. Third, Reed argues the undersigned "us[ed] a harsh, mocking, and condescending tone" in the dispositive Order when admonishing Reed's counsel about repeated attacks on opposing counsel for providing courtesy copies to the Court. Id. at 4. In essence, Reed challenges the dispositive Order and argues the reasoning and result suggests extrajudicial bias. Id.

Judges must recuse themselves when they are personally biased or prejudiced against a party or in favor of an adverse party. 28 U.S.C. § 144. "To warrant recusal under § 144, the moving party must allege facts that would convince a reasonable person that bias actually exists." Williams v. Geo Grp., Inc., No. 22-11266, 2023 WL 1957496 at *1 (11th Cir. Feb. 13, 2023) (citing United States v. Serrano, 607 F.2d 1145, 1150 (5th Cir. 1979)). Section 455 also requires recusal "when there is an appearance of impropriety" and "when any of the specific circumstances set forth in [§ 455(b)] exist, which show the fact of partiality." United States v. Patti, 337 F.3d 1317, 1321 (11th Cir. 2003) (citing 28 U.S.C. § 455(b)). This inquiry applies an objective standard asking whether

3

a "fully informed lay observer would entertain significant doubt about the judge's impartiality." Christo v. Padgett, 223 F.3d 1324, 1333 (11th Cir. 2000) (citing United States v. Kelly, 888 F.2d 732, 744-45 (11th Cir. 1989)).

Bias generally must arise from extrajudicial sources for judicial disqualification. See In re Walker, 532 F.3d 1304, 1310–11 (11th Cir. 2008) (citing Thomas v. Tenneco Packaging Co., 293 F.3d 1306, 1329 (11th Cir. 2002)). Remarks or opinions made in judicial proceedings and not from extrajudicial sources generally fall short of establishing bias "unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." Liteky v. United States, 510 U.S. 540, 555 (1994). But "[m]ere 'friction between the court and counsel' . . . is not enough to demonstrate 'pervasive bias.'" In re Walker, 532 F.3d at 1311 (internal citations omitted).

Reed identifies one extrajudicial source in his counsel's affidavit; however, he never mentions it in his motions. Mr. Klayman testifies the undersigned "had been and perhaps still is a member of an exclusive club in Ponte Vedra, Florida, where high level officials of the PGA Tour are also members, likely even the commissioner of the PGA Tour, Jay Monahan and his staff." (Docs. 93 at 34 ¶ 1 in 3:22-cv-1059; 88 at 34 ¶ 1 in 3:22-cv-1181). Such purported reason, stated only in the affidavit, is legally insufficient to establish bias. It relies on speculation that membership in a club would mean the undersigned affiliated with other potential members of the Club who may be

4

part of the PGA Tour (a non-party to this suit). As said by the Eleventh Circuit, "it is well established in our case law that recusal based 'on unsupported, irrational, or highly tenuous speculation' is not warranted." Conroy on behalf of Aflac, Inc. v. Amos, 785 F. App'x 751, 755 (11th Cir. 2019) (citing United States v. Greenough, 782 F.2d 1556, 1559 (11th Cir. 1986)). And the case law is clear that a judge's past or present membership with a group alone does not create a basis for recusal.[2] See e.g., In re Moody, 755 F.3d 891, 899 (11th Cir. 2014) (denying petition for writ of habeas corpus because "the mere fact that Judge Coogler [the district judge] teaches at a university that has chosen to memorialize Judge Vance [a judge the petitioner was convicted of murdering] does not mandate recusal."); Conroy, 785 F. App'x at 755 (finding the plaintiff presented "no concrete reason" why the judge's participation in a group "would make a reasonable observer question his impartiality"); Wu v. Thomas, 996 F.2d 271, 275 (11th Cir. 1993) (finding judge needed not recuse himself because his status as an adjunct professor and past contributions to the defendant, a university, were insufficient for recusal); Parrish v. Bd. of Comm'r of Ala. State Bar, 524 F.2d 98, 101, 104 (5th Cir. 1975) (holding judge's "acquaint[ance] with" some of the defendants in the suit and their counsel did "not exceed what might

---

[2] Though unnecessary for this analysis, which is based on an objective standard that assumes the truth of the assertion, the allegation is incorrect: the undersigned is not and has not been a member of the Ponte Vedra Club during anytime pertinent to this suit.

be expected as background or associational activities with respect to the usual district judge").³

Otherwise, Reed's arguments for recusal concern the Court's dispositive Order and judicial proceedings in Reed I and II. As stated in Liteky, "judicial rulings alone almost never constitute a valid basis for a bias or partiality recusal motion." 510 U.S. at 541. Having reviewed Reed's arguments and the affidavit, no reasonable observer would question this Court's impartiality in the dispositive Order or based on the judicial proceedings. The Court's 78-page ruling on the pending motions—which the Court issued after a nearly three-hour hearing and supplemental briefing—substantively addressed the arguments raised in each motion and Reed's responses. The Court considered the cases cited within the parties' briefs and addressed the controlling or most persuasive precedent in the dispositive Order. Reed largely relitigates arguments made that the Court considered before and critiques the Court's resolution of those arguments. Nevertheless, neither the Affidavit nor Reed's arguments establish that the dispositive Order displayed a "deep-seated favoritism or antagonism as would make fair judgment impossible." Id.⁴

---

³ In Bonner v. City of Prichard, the Eleventh Circuit adopted as binding precedent all decisions the Fifth Circuit rendered before October 1, 1981. 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

⁴ To the extent Reed's counsel also suggests that the undersigned displayed favoritism to one of the defendants' attorneys, Minch Minchin, because he served as an intern for the undersigned over five years ago, this

6

Moreover, the Court's footnote in the dispositive Order regarding Reed's counsel's repeated attacks on opposing counsel does not indicate bias. (See Docs. 91 at 75 n.27 in 3:22-cv-1059; 86 at 75 n.27 in 3:22-cv-1181). The footnote addressed voluminous filings Reed made a few days before the July 31, 2023, hearing; the Court rejected Reed's contention that the Court indicated it would consider materials outside the Amended Complaints because it had done so for opposing counsel. In the underlying briefing, Reed argued that the Court "set a precedent" for "review[ing] materials outside of the four corners of the Amended Complaints," when the Court said it would consider courtesy copies of pleadings and exhibits submitted on a zip drive by opposing counsel. (Docs. 83 at 2 in 3:22-cv-1059; 76 at 2 in 3:22-cv-1181). As stated in the footnote, which bears repeating, "The Court never indicated it would consider materials outside of the four corners of the Amended Complaints; rather, the Court said it would receive

---

argument carries no force. See Brown v. Brock, 169 F. App'x 579, 581, 583 (11th Cir. 2006) (holding that district judge did not abuse his discretion in declining to recuse himself on the ground that a former law clerk represented the defendant; the court noted that "an ethical danger exists only if the law clerk knows the judge's thoughts about a specific matter and the law clerk subsequently represents one of the parties to the matter before the judge"); see also Scopelliti v. City of Tampa, No: 8:14–cv–949–MSS–TGW, 2015 WL 13427797, at *2 (M.D. Fla. Nov. 20, 2015) (denying motion for recusal on ground that counsel served as an intern for the judge previously, stating "[s]tanding alone, the fact that Defendant was represented by a lawyer who served as an intern to the court while he was attending law school is not evidence of partiality."). Reed alleges no facts demonstrating an "ethical danger" regarding Mr. Minchin's representation in this case. See Brown, 169 F. App'x at 583.

courtesy copies of electronically filed pleadings and exhibits, as is routinely done." Id. The Court's statement was appropriate because Mr. Reed's counsel repeatedly argued or insinuated that opposing counsel engaged in improper ex parte communications when opposing counsel had only submitted courtesy copies of materials already filed. (See Docs. 41, 83 in 3:22-cv-1059). Nevertheless, "judicial remarks . . . that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." Liteky, 510 U.S. at 555.

Reed's challenge is thus insufficient and the motions for recusal in Reed I and II are due to be denied.

## II.   REED'S MOTIONS FOR RECONSIDERATION

In Reed I and II, Reed filed motions seeking reconsideration of the dispositive Order under Federal Rules of Civil Procedure 59 and 60. (Docs. 94 in 3:22-cv-1059; 89 in 3:22-cv-1181). Rule 59 permits motions "to alter or amend judgment" within twenty-eight days after the entry of judgment. FED. R. CIV. P. 59(e). Rule 60 allows relief from judgment for listed specific reasons (none of which Reed claims here) or "any other reason that justifies relief." FED. R. CIV. P. 60(b). "[R]econsideration of a previous order [is] an extraordinary remedy." Ludwig v. Liberty Mut. Fire Ins.. Co., 8:03-cv-2378-EAK-MAP, 2005 WL 1053691, at *3 (M.D. Fla. March 30, 2005). "As a result, '[a] Court will not alter a prior decision absent a showing of clear and obvious error where the 'interests

of justice' demand correction.'" Gaffney v. Rives, No: 8:22-cv-1613-CEH-SPF, 2023 WL 7928093, at *2 (M.D. Fla. Nov. 16, 2023) (quoting Prudential Sec., Inc. v. Emerson, 919 F. Supp. 415, 417 (M.D. Fla. 1996)). "[A] motion to reconsider must demonstrate why the court should reconsider its decision and set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." Id. (quoting McGuire v. Ryland Grp., Inc., 497 F. Supp. 2d 1356, 1358 (M.D. Fla. 2007)).

"Courts recognize three grounds to support a motion under Rule 59(e): (1) an intervening change in controlling law; (2) newly discovered evidence, and (3) manifest errors of law or fact." Scoma Chiropractic, P.A. v. Dental Equities, LLC, No. 2:16-cv-41-JLB-MRM, 2022 WL 738559, at *2 (M.D. Fla. Feb. 9, 2022) (citing Banister v. Davis, 140 S. Ct. 1698, 1703 n.2 (2020)). Reed only asserts the third ground. "A manifest error 'amounts to a wholesale disregard, misapplication, or failure to recognize controlling precedent.'" Id. (quoting Shuler v. Garrison, 718 F. App'x 825, 828 (11th Cir. 2017). But the Court should not reconsider a ruling based on arguments "which could, and should, have been made earlier." Prudential, 919 F. Supp. at 417 (cleaned up). "Moreover, this Court will not reconsider a previous ruling when a 'party's motion fails to raise new issues and, instead, only relitigates what has already been found lacking.'" McGuire, 497 F. Supp. 2d at 1358 (quoting Lamar Adver. of Mobile, Inc. v. City of Lakeland, 189 F.R.D. 480, 489 (M.D. Fla. 1999) (citation omitted)).

9

Reed seeks solely to relitigate past arguments, old matters, and case law previously considered by the Court. He argues the Court ignored case law he cited and misstated the law. This is incorrect. The Court carefully reviewed and heard the briefs and arguments presented before issuing the dispositive Order. The Court also has considered the case law cited in Reed's reconsideration motions, none of which changes the Court's reasoning. Notably, Reed seemingly disregards the law cited by the Court in the dispositive Order. For example, Reed quotes the Order stating "[w]hether the defendant's statements constitute defamation . . . is a question of law for the court to determine," and argues this represents the Court "admit[ing] that [it] was taking this matter totally out of the hands of the trier of fact." (Docs. 94 at 3 in 3:22-cv-1059; 89 at 3 in 3:22-cv-1181). However, Reed never identifies that this statement is a quote from an Eleventh Circuit case, Turner v. Wells, 879 F.3d 1254, 1269 (11th Cir. 2018). (See Docs. 91 at 25 in 3:22-cv-1059; 86 at 25 in 3:22-cv-1181). Reed neglects to address Turner, the related case law cited in the Order, or how this law is incorrect. Contrary to Reed's assertions, the Court did not disregard, misapply, or fail to recognize controlling precedent. See generally Scoma, 2022 WL 738559, at *2.

Further, Reed's claim that the Court did not give individual analysis to each of the fifty-five alleged defamatory statements falls short. The Court identified the basis for dismissal of each statement in the Order and analyzed

10

each basis with the relevant law. Reed may disagree with the Order or wish for more. But Reed's position does not establish manifest error. Id. Finally, Reed's argument that the Court should have summarily denied Defendants' request for attorneys' fees carries no weight because the Court held the issue in abeyance pending further briefing, so there is no prior decision to reconsider.[5] Accordingly, Reed has failed to identify any cognizable basis for reconsideration.

## III. DEFENDANTS' MOTION FOR ANTI-SLAPP FEES

In Reed I, Defendants move for attorneys' fees and costs under Florida's anti-SLAPP statute. § 768.295, Fla. Stat. (2023). Previously, the Court considered this issue and ordered additional briefing on Defendants' entitlement to those fees and costs. (Doc. 91 at 73–77).[6] The briefing is now complete. (Docs. 92; 99).

---

[5] In his reconsideration motions, Reed again claims the Court reviewed documents from Defendants outside the scope of the Amended Complaints but refused to do so for him. This is wrong. As stated before, opposing counsel submitted courtesy copies of pleadings and exhibits that had been filed with the Court. (See Docs. 91 at 75 n.27 in 3:22-cv-1059; 86 at 75 n.27 in 3:22-cv-1181). The Court considered those courtesy copies. The Court also considered the materials submitted with Reed's filings and presented at the hearing, except for the untimely filings made prior to the hearing. Id. Reed identifies no materials submitted by the parties that the Court cited to or analyzed in the dispositive Order that were improper.

[6] All document citations in this section refer to Reed I unless otherwise stated.

Florida's anti-SLAPP statute provides a right to recover attorney fees from a plaintiff who "file[s] . . . any lawsuit . . . against another person or entity without merit and primarily because such person or entity has exercised the constitutional right of free speech in connection with a public issue . . . as protected by the First Amendment to the United States Constitution and s. 5, Art. I of the State Constitution." § 768.295(3) and (4), Fla. Stat. (2023). "'Free speech in connection with public issues' means any written or oral statement that is protected under applicable law and . . . is made in or in connection with a play, movie, television program, radio broadcast, audiovisual work, book, magazine article, musical work, news report, or other similar work." § 768.295(2)(a).

The Eleventh Circuit has not ruled on whether Florida's anti-SLAPP statute applies in federal court cases invoking diversity jurisdiction. See e.g., Condo. Assoc. of Parker Plaza Ests., Inc. v. Moreff, No. 22-61638-CIV, 2023 WL 3600495, at *1 (S.D. Fla. March 2, 2023) ("The Eleventh Circuit has not yet addressed whether Florida's anti-SLAPP statute can be applied to actions in federal court.") (citing Parekh v. CBS Corp., 820 F. App'x 827, 836 (11th Cir. 2020).[7] Absent such precedent, other district courts within the Eleventh Circuit

---

[7] Reed cites an oral argument of the appeal proceedings in the Corsi case wherein the Honorable William Pryor questioned whether Florida's anti-SLAPP statute applied in federal court. (See e.g., Doc. 46 at 18–19 in 3:22-cv-1059). However, the Eleventh Circuit never ruled on the appeal because the

have considered this issue. In Government Employees Insurance Co. v. Glassco Inc., my colleague, Judge Kathryn Kimball Mizelle, analyzed in great depth whether Florida's anti-SLAPP statute applies in federal court. No. 8:19-cv-1950-KKM-JSS, 2021 WL 4391717, at *3–5 (M.D. Fla. Sept. 24, 2021). Applying the Erie doctrine—which requires "[a] federal court sitting in diversity [to] apply state substantive law and federal procedural law"—Judge Mizelle held that Florida's anti-SLAPP statute creates a substantive right and thus must be applied in federal court. Id. at *3–5 (citing Hanna v. Plumer, 380 U.S. 460, 465 (1965) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938)). In so doing, Judge Mizelle stated that a plain reading of the statute suggested that it "is strictly a procedural mechanism for litigants to have anti-SLAPP motions decided more expeditiously," instead of a substantive right. Id. at *5. But she reasoned that a Florida appellate court found a substantive right.

> In Gundel v. AV Homes, Inc., Florida's Second District Court of Appeal concluded that Florida's anti-SLAPP statute "creates a right not to be subject to meritless suits filed 'primarily because [the defendant] has exercised the constitutional right of free speech in connection with a public issue, or right to peacefully assemble, to instruct representatives of government, or to petition for redress of grievances before the various governmental entities of the states.'" 264 So. 3d 304, 310–11 (Fla. 2d DCA 2019) (alteration in original) (quotation omitted) (referring to the right created by the anti-SLAPP statute as a "substantive right"). Although it recognized that the statute puts forth "procedural mechanisms," that court also read into the statute a burden-

---

parties settled the case. See Corsi v. Newsmax Media Inc., No. 21-10480 and 22-10758, 2022 WL 3353776, at *1 (11th Cir. July 1, 2022).

13

> shifting test. Id. at 312–14. Under this test, the SLAPP defendant bears the initial burden of establishing a prima facie case that the anti-SLAPP statute applies. Id. at 314. Then the party that filed the lawsuit must show that its claims are not without merit and not primarily based on retaliating against the exercise of First Amendment rights in connection with a public issue. Id. The court found that this unwritten burden-shifting approach "serves the purpose of the statute." Id. But see Ingraham v. Wright, 430 U.S. 651, 670 n.39 (1977) ("There is no support whatever for this [purposive analysis] in the decisions of this Court.").
>
> The Court is left with a state statute, the text of which is procedural and creates no substantive right but which has been interpreted by a state appellate court as creating a substantive right that includes a burden-shifting approach to deciding a motion. Whatever misgivings the Court might have, its obligation is clear: "**State law is what the state appellate courts say it is, and we are bound to apply a decision of a state appellate court about state law even if we think that decision is wrong**." Winn-Dixie Stores, Inc. v. Dolgencorp, LLC, 881 F.3d 835, 848 (11th Cir. 2018) (Ed Carnes, C.J.). So here we are: **the Court must read Florida's anti-SLAPP statute as creating a substantive right and apply its burden-shifting procedure per Gundel if no conflicts exist with the Federal Rules of Civil Procedure**. See [Makaeff v. Trump University, LLC, 715 F.3d 254, 273 (9th Cir. 2013)] (Kozinski, J., concurring). **None do.**

Id. at *5 (emphasis added) (internal footnote omitted).[8] As described by Judge Mizelle, the Gundel court held that Florida's anti-SLAPP statute created a "substantive right," and noted that it "bears some similarity to statutes providing for immunity from suit where the statutory protection cannot be

---

[8] While agreeing with the result reached by Judge Mizelle that the anti-SLAPP statute applies in federal court, the undersigned takes no position on Judge Mizelle's "plain reading" stance.

14

adequately restored once it is lost through litigation and trial." Gundel, 264 So. 3d at 311 (citations omitted).[9]

Other federal courts within the Eleventh Circuit have awarded fees and costs under Florida's anti-SLAPP statute. See e.g., Corsi v. Newsmax Media, Inc., 519 F. Supp. 3d 1110, 1128 (S.D. Fla. 2021) (awarding media defendants attorney's fees and costs under Florida's anti-SLAPP statute); Mac Isaac v. Twitter, Inc., 557 F. Supp. 3d 1251, 1261 (S.D. Fla. 2021) (after dismissing the amended complaint with prejudice for failing to state a claim, the court awarded fees and costs under Florida's anti-SLAPP statute because the defamation claim was meritless); Bongino v. Daily Beast Co., 477 F. Supp. 3d 1310, 1322–24 (S.D. Fla. 2020) (same and noting Florida's statute does not conflict with Federal Rules of Civil Procedure: "This conclusion is in line with decades of Eleventh Circuit precedent, which find that state-law statutes and claims for attorneys' fees and costs 'unequivocally' apply in a federal court exercising diversity jurisdiction." (citations omitted)); Vibe Ener v. Duckenfield, No. 20-cv-22886,

---

[9] Several Florida District Courts of Appeal have certified conflict with Gundel regarding whether the substantive right created by Florida's anti-SLAPP statute provides certiorari jurisdiction to the Florida appellate courts. See Vericker v. Powell, 343 So. 3d 1278, 1281 (Fla. 3d DCA 2022); WPB Residents for Integrity in Gov., Inc. v. Materio, 284 So. 3d 555, 561 (Fla. 4th DCA 2019); Johnston v. Fischer, 369 So. 3d 354, 356 (Fla. 5th DCA 2023). Though this conflict concerns the anti-SLAPP statute, it does not impact the issue here—whether the fee provision in Florida's anti-SLAPP statute is procedural or substantive.

15

2020 WL 6373419, *5 (S.D. Fla. Sept. 28, 2020) (applying the fee provision of Florida's anti-SLAPP statute); Anderson v. Best Buy Stores L.P., No. 5:20-cv-41-JSM-PRL, 2020 WL 5122781, at *4 (M.D. Fla. July 28, 2020) (same), adopted in full by sub nom. Anderson v. Coupons in the News, No. 5:20-cv-41-JSM-PRL, 2020 WL 5106676 (M.D. Fla. Aug. 31, 2020).

But Reed rejects this line of cases. Instead, he asks the Court to follow Judge Paul G. Byron's lead in Sterling v. Doe, No: 6:21-cv-723-PGB-EJK, 2022 WL 2112091, at *4–5 (M.D. Fla. Feb. 2, 2022). Sterling involved a defamation suit. Id. There, the Magistrate Judge denied the defendant's motion to quash third-party subpoenas issued by the plaintiff for the purpose of naming and serving the defendant. Id. at *2. The defendant argued Florida and California's anti-SLAPP statutes provided him standing to challenge the subpoenas. Id. at *4. Magistrate Judge Kidd rejected that argument and found both anti-SLAPP statutes inapplicable because the plaintiff alleged a prima facie defamation case. See id. In denying the objection to this order, Judge Byron reasoned Judge Kidd need not have followed the line of federal court cases applying the fee provision in Florida's anti-SLAPP statute because "the fee-shifting provision of anti-SLAPP laws is obviously different than the pretrial dismissal anti-SLAPP provisions which conflict with and 'answer the same question' as the Federal Rules." Id. at *5 (quoting Bongino, 477 F. Supp. 3d at 1323 (internal quotation

16

marks and citation omitted)). Sterling does not conflict with other federal courts that have held and applied Florida's anti-SLAPP fee provision under Erie.

Although Reed cites cases based on anti-SLAPP statutes from other states, those decisions are unpersuasive. The specific requirements and language in each state's anti-SLAPP statute must be analyzed individually under Erie, which leads to different results depending on the statute. See Carbone v. CNN, Inc., 910 F.3d 1345, 1347-57 (11th Cir. 2018) (finding Georgia's anti-SLAPP statute's "motion-to-strike" provision inapplicable in federal court because it conflicted with Federal Rules of Civil Procedure 8, 12, and 56); Klocke v. Watson, 936 F.3d 240, 245–49 (5th Cir. 2019) (holding Texas's anti-SLAPP statute imposed additional requirements beyond those in Federal Rules of Civil Procedure 12 and 56, and thus the statute did not apply in federal court); La Liberte v. Reid, 966 F.3d 79, 87–88 (2d Cir. 2020) (holding California's motion to strike procedure in anti-SLAPP statute conflicted with Federal Rules of Civil Procedure and was therefore inapplicable in federal court); Abbas v. Foreign Pol'y Grp., LLC, 783 F.3d 1328, 1333–36 (D.C. Cir. 2015) (holding that special motion to dismiss provision in D.C.'s anti-SLAPP statute conflicted with Federal Rule of Civil Procedure 12 and was thus inapplicable in federal court); but see Godin v. Schencks, 629 F.3d 79, 85–86 (1st Cir. 2010) (holding Maine's anti-SLAPP statute applied in federal court, because "neither Fed.R.Civ.P. 12(b)(6) nor Fed.R.Civ.P. 56 . . . was meant to control the particular issues

17

under" the statute); Adelson v. Harris, 774 F.3d 803, 809 (2d Cir. 2014) (holding Nevada's anti-SLAPP law applied in federal court in part because fee-shifting statutes are substantive under Erie).

None of these cases, nor any others cited by the parties or located by the Court, controls whether the fee provision in Florida's anti-SLAPP statute applies in federal court cases. And thus far, the tide of courts within this Circuit have applied the Florida fee provision. See, e.g., Corsi, 519 F. Supp. 3d at 1128; Mac Isaac, 557 F. Supp. 3d at 1261; Bongino, 477 F. Supp. 3d at 1322–24; Vibe Ener, 2020 WL 6373419, at *5; Anderson, 2020 WL 5122781, at *4. The Court follows those cases and finds the fee provision in Florida's anti-SLAPP statute applies.

The statute states "[t]he court shall award the prevailing party reasonable attorney fees and costs incurred in connection with a claim that an action was filed in violation of this section." § 768.295(4), Fla. Stat. (2023). Defendants satisfy both requirements for attorneys' fees and costs under the statute. See Vibe Ener, 2020 WL 6373419, at *4–5 (describing the Court must find the claims to be "without merit" under § 768.295(3) and primarily because the defendant exercised "free speech in connection with a public issue"). First, given that Reed brought no viable defamation claims in his original and Amended Complaint, his claims are "without merit." § 768.295(3), Fla. Stat. (2023). Second, the lawsuits were brought "primarily" because Defendants

18

"exercised the constitutional right of free speech" in their publications about Reed as a public figure. See Parekh, 820 F. App'x at 836 (affirming award of fees under Florida anti-SLAPP statute where lower court determined that the suit lacked merit and arose out of protected First Amendment activity). Accordingly, Defendants are entitled to an award of attorney's fees and costs under Florida's anti-SLAPP Statute, § 768.295(4), Fla. Stat. (2023).

Accordingly, it is hereby

**ORDERED:**

1. In Reed I (3:22-cv-1059), Defendants' Motion for Anti-SLAPP Fees (Doc. 92) is **GRANTED**.

2. No later than **January 24, 2024**, Defendants shall file a motion (jointly or separately) regarding the fee amounts and costs under Local Rule 7.01(c). Reed shall respond no later than **February 23, 2024**.

3. In Reed I (3:22-cv-1059), Plaintiff's Motion for Recusal (Doc. 93) is **DENIED**.

4. In Reed I (3:22-cv-1059), Plaintiff's Motion for Reconsideration, to Alter or Amend Judgment, and for Relief from Judgment or Order Pursuant to Federal Rules of Civil Procedure 59 and 60 (Doc. 94) is **DENIED**.

5. In Reed II (3:22-cv-1181), Plaintiff's Motion for Recusal (Doc. 88) is **DENIED**.

19

6. In Reed II (3:22-cv-1181), Plaintiff's Motion for Reconsideration, to Alter or Amend Judgment, and for Relief from Judgment or Order Pursuant to Federal Rules of Civil Procedure 59 and 60 (Doc. 89) is **DENIED**.

7. The Court will direct entry of Final Judgment in Reed I (3:22-cv-1059) after ruling on the forthcoming fee motion(s).

8. The Court will delay entry of Final Judgment in Reed II (3:22-cv-1181) until it enters judgment in Reed I.

**DONE AND ORDERED** in Jacksonville, Florida the 5th day of January, 2024.

*Timothy J. Corrigan*
TIMOTHY J. CORRIGAN
United States District Judge

ksm
Copies:

Counsel of Record