UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

PATRICK NATHANIEL REED,

   Plaintiff,

vs.

BRANDEL CHAMBLEE, *et al.*,

   Defendants.

Case No. 3-22-CV-01059-TJC-PDB

## DEFENDANTS' SUPPLEMENTAL MOTION FOR DETERMINATION OF AMOUNT OF ATTORNEYS' FEES

Pursuant to the Court's order dated January 5, 2024 (D.E. 100; the "Order"), Defendants Brandel Chamblee, Damon Hack, Benjamin Bacon, Eamon Lynch, and TGC, LLC, d/b/a as Golf Channel (collectively the "Golf Channel Defendants); Gannett Satellite Information Network, LLC, d/b/a Golfweek, and Gannett Co., Inc. (collectively, the "Gannett Defendants"); and Conde Nast International, Inc., d/b/a *The New Yorker* ("*The New Yorker*") hereby move the Court for an order determining the amount that Defendants are entitled to recover of their respective reasonable attorneys' fees and costs from Plaintiff Patrick Reed. In support thereof, Defendants state as follows:

### FACTS

By now, the Court is well aware of the facts of the case. Reed filed the first iteration of this suit in the Southern District of Texas in August of 2022;

he then voluntarily dismissed his complaint and re-filed in the Middle District of Florida. (D.E. 1). The Court *sua sponte* dismissed Reed's complaint in November 2022 because it violated Rule 8(a). (D.E. 27). Reed filed his final operative pleading—which was larger than the original pleading—in December 2022, alleging that Defendants published eleven defamatory publications—appearing via television broadcast, online article, podcast, and Twitter. (D.E. 28). Reed also brought claims for tortious interference with business relationships. *Id.*

Under Florida's anti-SLAPP law, codified at Section 768.295, Florida Statutes, Defendants filed motions to dismiss Reed's suit. (D.E. 35, 38, 62). The anti-SLAPP motions argued that most of the challenged statements concerned LIV Golf generally, not Reed himself, and that the allegedly defamatory statements constituted protected opinions. *Id.* For instance, the Golf Channel Defendants' anti-SLAPP motion argued that the statements allegedly accusing Reed "of aligning himself with a 'tyrannical, murderous (sportswashing) leader,'" and that LIV players were "over there purely playing for blood money," were nothing more than subjective assessments that were not capable of being true or false. (D.E. 35). As did the Gannett Defendants' anti-SLAPP motion, which argued that calling LIV the "evil empire's . . . Death Star," criticizing large payments that "sportswash Saudi atrocities," and generally describing moving to LIV as "opting to cut and run

2

for Saudi money" with "reputational consequences for the entire sport," constituted rhetorical hyperbole and opinion protected by the First Amendment. (D.E. 38). So too for the single sentence Plaintiff challenged with respect to *The New Yorker*: "One commentator mused, 'LIV needs a public investment fund to sportwash its association with Patrick Reed.'" (D.E. 62).

The motions also argued that Reed had not pled facts demonstrating Defendants' actual malice and that Reed's ancillary claims for tortious interference were barred by Florida's single-action rule. *Id. The New Yorker* also argued that the Court lacked personal jurisdiction due to procedural defects and Reed's failure to serve the proper entity. (D.E. 62).

Following oral argument on July 31, 2023 and additional briefing (D.E. 86–90), the Court granted Defendants' anti-SLAPP motions on September 27, 2023. (D.E. 91). In a detailed opinion, the Court methodically explained that most of the at-issue statements were not of and concerning Reed, and all of the statements constituted protected opinions. (*Id.* at 25–65). The Court further held that Reed had not pled facts demonstrating that Defendants acted with actual malice (*id.* at 65–69), and Reed's ancillary claims for tortious interference were barred by Florida's single-action rule (*id.* at 70–71). The Court then dismissed Reed's suit with prejudice and requested

3

additional briefing on the matter of entitlement to anti-SLAPP fees. (*Id* at 73–77).

Defendants, in a joint filing, provided the additional briefing regarding fees on October 20, 2023, explaining that the fee-shifting mechanism of the anti-SLAPP statute applies in federal court because it does not subsume or conflict with any federal procedural rule. (D.E. 92). Reed, meanwhile, moved for reconsideration of the Court's order on Defendants' anti-SLAPP motion and also moved for judicial recusal. (D.E. 93, 94).

On January 5, 2024, the Court entered the Order, denying Reed's reconsideration and recusal motions and granting Defendants' motion regarding an entitlement to anti-SLAPP fees. (D.E. 100). Regarding fees, the Court explained that because the fee-shifting mechanism of Section 768.295 is substantive rather than procedural, the provision applies in federal courts sitting in diversity jurisdiction. (*Id.* at 11–18). Applying the standard set forth in Section 768.295(4), the Court then determined that Defendants were entitled to a mandatory shifting of fees because Reed's complaint was both meritless and filed primarily because Defendants exercised free speech in connection with a public issue. (*Id.* at 18–19).

The Order then asked Defendants to submit supplemental motions regarding the amount of fees sought. (*Id.* at 19). The instant motion, filed pursuant to the Court's request, seeks fees and expenses in the amount of

$85,832.10 as incurred by the Golf Channel Defendants between October 2022 and November 2023; $81,831.72 as incurred by the Gannett Defendants between October 2022 and November 2023; and $68,842.01 as incurred by *The New Yorker* between December 2022 and November 2023, all while defending against Reed's suit.

Pursuant to Middle District of Florida Local Rule 7.01(c)(4), the instant motion incorporates by reference the attached declarations of the Golf Channel Defendants' lead counsel, Rachel E. Fugate (the "Fugate Decl."), the Gannett Defendants' lead counsel, Carol Jean LoCicero (the "LoCicero Decl."), and *The New Yorker*'s lead counsel, Jay Ward Brown (the "Brown Decl."), which feature complete explanations of each timekeeper's identity, experience, and qualification; requested hours; tasks; and requested rates, and verification of time entries. Evidence of reasonableness of the rates charged is discussed both in these declarations and further set forth in Section A, *infra*.

Regarding the parties' meet-and-confer process, Defendants' counsel[1] contacted Reed's counsel via email on January 11, 2024, and requested conferral, pursuant to M.D. Fla. Rule 7.01(c)(1), to discuss the contents of

---

[1] The January 11 email was sent to Mr. Larry Klayman by counsel for *The New Yorker* on behalf of all defendants in the instant case (*Reed I*).

Defendants' fee motions. On January 17, 2024, counsel for all parties conferred via video conference. Counsel for Defendants stated their willingness to share rates and redacted invoices reflecting the fees incurred during the defense of this matter. Counsel for Reed stated, however, that Reed believes that the matter of attorneys' fees and costs should not be considered at this time pending his appeal of this Court's orders to the 11th Circuit. Subsequently, Reed moved for a stay while the matter is on appeal. (D.E. 105). Thus, all issues pertaining to fees remain disputed.

## ARGUMENT

A determination that a suit was filed in violation of Florida's anti-SLAPP statute triggers a mandatory award of all attorneys' fees incurred while defending against the suit. *See Corsi v. Newsmax Media, Inc.*, 20-CV-81396-RAR, 2022 WL 18586842, at *5 (S.D. Fla. Jan. 6, 2022). Because the Court already determined that Defendants are entitled to their attorneys' fees incurred in defending this action (D.E. 100), the only remaining issue is the amount of fees to be awarded.[2]

---

[2] Fees expended while litigating the matter of fees are compensable. *See Thompson v. Pharmacy Corp. of Am., Inc.*, 334 F.3d 1242, 1245 (11th Cir. 2003); *Villano v. City of Boynton Bch.*, 254 F.3d 1302, 1309 (11th Cir. 2001). Defendants therefore reserve the right to amend the instant motion to account for additional fees incurred in this action.

6

### The Golf Channel Defendants

The Golf Channel Defendants seek to recover the fees for 225.1 hours, totaling $81,937.50, expended by the law firm of Shullman Fugate PLLC ("Shullman Fugate") and incurred between October 3, 2022 (the date the Golf Channel Defendants' counsel began work in this matter) through November 30, 2023 (the date of the last time entry entered by Defendants' counsel prior to the Court's determination of entitlement to fees in the Order on January 5, 2024). Fugate Decl. ¶ 17.

The Golf Channel Defendants' lead counsel, Rachel Fugate, expended a total of 87.8 hours at a rate of $425 litigating this matter. *Id.* Dr. Minch Minchin, the associate assigned to this matter, expended a total of 137.3 hours of his time at a rate of $325. *Id.* These totals do not reflect time deducted both at the time of billing and in further exercise of billing judgment at the time of filing the instant motion—totaling 29 hours and $10,097.50. *Id.* ¶¶ 14–15.

Pursuant to Local Rule 7.01(c)(5), the Golf Channel Defendants also seek recovery of expenses in the amount of $3,894.60. *See id.* ¶ 18. Thus, the total amount sought by the Golf Channel Defendants, including fees and expenses, is **$85,832.10.**

**The Gannett Defendants**

Similarly, the Gannett Defendants seek to recover the fees for 235.3 hours, totaling $81,787.00, expended by the law firm of Thomas & LoCicero PL ("TLo") and incurred between October 4, 2022 (the date the Gannett Defendants' counsel began work in this matter) through November 30, 2023. LoCicero Decl. ¶ 23.

The Gannett Defendants' lead counsel, Carol LoCicero, expended a total of 61.5 hours at heavily discounted rates of $440 per hour in 2022 and $480 per hour in 2023 litigating this matter. *Id.* ¶¶ 7, 12. Linda Norbut, the associate assigned to this matter, expended a total of 171.4 hours of her time at her standard rate of $310 per hour. *Id.* ¶¶ 10, 13. At various times, Elizabeth D. Ernest, a law clerk and later junior associate at TLo, also assisted in this matter. *Id.* ¶ 11. Ms. Ernest expended at least 2.4 hours in this matter, and her time was billed at her standard rates of $150 as a clerk and $245 as an associate. *Id.* ¶¶ 11, 14.

Pursuant to Local Rule 7.01(c)(5), the Gannett Defendants also seek recovery of expenses in the amount of $44.72. *See id.* ¶ 24.

Thus, the total amount sought by the Golf Channel Defendants, including fees and expenses, is **$81,831.72.** This total reflects a redaction and elimination of 12.1 hours, totaling $4,602.50 from their fee application, in

exercise of billing judgment at the time of filing of this motion. *Id.* ¶ 18. Additional amounts were deducted at the time of billing. *See id.* ¶ 17.

### *The New Yorker*

*The New Yorker* seeks to recover fees for 110.1 hours, totaling $67,105.50, expended by the law firm Ballard Spahr LLP incurred between December 20, 2022 and November 30, 2023. Brown Decl. ¶ 18. *The New Yorker*'s lead counsel, Jay Ward Brown, expended a total of 39.6 hours at a rate of $695. *Id.* Charles Tobin, a partner at Ballard Spahr who served as local counsel in this matter, expended a total of 5.8 hours at a rate of $700 for work completed in 2022 and a rate of $725 for work completed in 2023. *Id.* Emmy Parsons, the associate assigned to this matter, expended a total of 55.7 hours at a rate of $555. *Id.* Paralegals Scott Bailey and Ryan Relyea, collectively expended 17.1 hours at a rate of $270. *Id.* These totals do not reflect time deducted in exercise of billing judgment at the time of filing the instant motion totaling 11.5 hours and $6,483.50.

Pursuant to Local Rule 7.01(c)(5), *The New Yorker* also seeks recovery of expenses in the amount of $1,449.51. *Id.* ¶ 19. Thus, the total amount sought by *The New Yorker*, including fees and expenses is **$68,842.01.**

As shown below, the requested amounts are highly reasonable, given the facts of the case.

A motion for attorneys' fees "begins with the basic principle that the court is to multiply hours reasonably expended by a reasonable hourly rate." *Norman v. Housing Authority*, 836 F.2d 1292, 1299 (11th Cir. 1988). Arriving at the amount of an attorneys' fees award requires the Court to calculate the "lodestar" by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate for the attorneys' services. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). A reasonable hourly rate is one that is based upon "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation." *Norman*, 836 F. 2d at 1299. In terms of reasonable number of hours billed, a fee applicant must exercise "billing judgment." *ACLU of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999). Here, the hourly rates and hours worked and billed by Defendants' counsel were eminently reasonable.

A.  **The rates charged by counsel were reasonable.**

A proper fee is one that comports with the market rate for similar lawyers with "reasonably comparable skills, experience, and reputation." *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996) (citation omitted). *See also Orange Lake Country Club, Inc. v. Castle Law Group, P.C.*, 617CV1044ORL31DCI, 2019 WL 4228712, at *9 n. 8 (M.D. Fla. Aug. 16, 2019), *report and recommendation adopted,* 617CV1044ORL31DCI, 2019 WL 4222292 (M.D. Fla. Sept. 5, 2019) (explaining that some of the factors a court

may consider in determining the reasonableness of the hourly rate include the difficulty of the questions at issue; the skill required to perform the legal services properly; the preclusion of other employment by the attorney due to acceptance of the case; the customary fee in the community; the results obtained; the experience, reputation, and the ability of the attorney; the nature and length of the professional relationship with the client; and awards in similar cases).

The attached evidence establishes that the Defendants' counsels' hourly rates are reasonable. The Defendants' counsel operate skillfully in a niche First Amendment legal market. *See* Fugate Decl. ¶¶1–11; LoCicero Decl. ¶¶ 3-9. Brown Decl. ¶¶ 3-14, 22. The partners who worked on this case have decades of litigation experience, and Defendants' fees are consistent with fees charged and awarded for work performed within the defamation space. *See Bongino v. Daily Beast Co., LLC*, 19-14472-CIV, 2021 WL 4976287, at *6 (S.D. Fla. Feb. 9, 2021), *report and recommendation adopted sub nom.*, 19-14472-CIV, 2021 WL 4316099 (S.D. Fla. Sept. 23, 2021) (finding hourly rates of $350 to $450 to be reasonable for defamation litigation between 2018 and 2020); CBS Broad., Inc. v. Browning, No. 06-22463-CIV, 2007 WL 2850527, at *3, *7 (S.D. Fla. Sept. 21, 2007) (finding proper a rate of $550 per hour for a partner and $375 per hour for an associate in First Amendment litigation); *Family First Life, LLC v. Rutstein*, 22-CV-80243-AMC, 2023 WL 5939620, at

11

*3 (S.D. Fla. Aug. 23, 2023), *report and recommendation adopted,* 22-80243-CIV, 2023 WL 5929434 (S.D. Fla. Sept. 12, 2023) (finding a partner billing rate of $775 per hour reasonable in defamation litigation); *see also Marquez v. Lazarow,* 347 So.3d 472 (Fla. 3d DCA 2022) (affirming request for $135,547.50 in total fees based on attorney hourly rates of $830 and $465).

Defendants' counsel also reduced their rates in this case, pursuant to previous relationships with their clients, and Defendants now seek the rate they actually paid to counsel. *See* Fugate Decl. ¶¶ 11, 20; LoCicero Decl. ¶ 12; Brown Decl. ¶ 15. *See also Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*, 253 F.3d 1332, 1337 (11th Cir. 2001) ("the agreed-upon billing rate is a strong indication of a reasonable rate").

Moreover, Defendants achieved excellent results in a high-stakes action in which the plaintiff, a high-profile professional athlete, sought injunctive relief and more than $820 million in damages. *See* (D.E. 28, 35, 38, 62, 91) (dismissing Reed's Amended Complaint fully and with prejudice on the grounds set forth in Defendants' anti-SLAPP motions to dismiss). *See also Doe v. Jenner*, 218CV683FTM29MRM, 2019 WL 4051964, at *3 (M.D. Fla. Aug. 28, 2019) ("Where a [party] has obtained excellent results, his attorney should recover a fully compensatory fee") (citation omitted).

And pursuant to Local Rule 7.01(c)(4)(F), Defendants' rates are on par with—and in many cases lower than—the prevailing geographic market rate

within this Division of the Middle District of Florida for counsel with similar experience and skill.[3] *See, e.g., Smith v. Costa del Mar, Inc.* Case No. 3:18-cv-01011-TJC-LLL (M.D. Fla. Jan. 27, 2022) (determining that a $500 per hour rate "accurately reflects the rates for lawyers of comparable quality in the relevant legal community of the Middle District of Florida"); *Lanard Toys Ltd. v. Dolgencorp, LLC*, 3:15-CV-849-MMH-PDB, 2022 WL 1597276, at *17 (M.D. Fla. Feb. 2, 2022) (finding a rate of $475 appropriate for senior partners in an intellectual property dispute); *Venture Inv. Properties, LLC v. Scottsdale Ins. Co.*, 3:14-CV-1536-J-34PDB, 2017 WL 3822101, at *10 (M.D. Fla. Aug. 8, 2017), *report and recommendation adopted,* 3:14-CV-1536-J-

---

[3] The relevant community for assessing the reasonableness of rates generally is "the place where the case is filed." *Barnes*, 168 F.3d at 437. Alternatively, therefore, to the extent that the Court determines that Houston, Texas (where Reed first filed this suit) is the relevant legal market, the requested rates are also on par with or less than rates awarded to counsel of comparable experience and skill in Houston. *See Cullens v. Ga. Dep't of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994) (holding the district court did not err in finding that the Middle District of Georgia was the relevant legal market of comparison despite transfer of the suit to the Northern District of Georgia because the case was initially filed in the Middle District). *See also Sheffield v. Stewart Builders, Inc.*, CV 19-1030, 2021 WL 951897, at *5 (S.D. Tex. Mar. 10, 2021) (noting that $450 was the prevailing rate in Houston in 2014 for counsel in straightforward suits under the Fair Labor Standards Act) (citation omitted); *Geophysical Serv., Inc. v. TGS-NOPEC Geophysical Co.*, CV H-14-1368, 2020 WL 821879, at *10 (S.D. Tex. Feb. 19, 2020) (finding rates of $600 reasonable for partners in a Houston intellectual property dispute).

34PDB, 2017 WL 3732006 (M.D. Fla. Aug. 30, 2017) (finding rates of $425 to $500 for partners reasonable in an insurance dispute).

In sum, because Defendants paid below-market rates to experienced constitutional specialists who obtained excellent results in a high-stakes defamation action, the rates sought herein are reasonable.

**B. The number of hours expended was reasonable.**

The amount of time expended in this case is reasonable and consistent with the undersigned's extensive experience in defending defamation lawsuits, particularly, where, as here, the claims are initially considered by defense counsel (and ultimately the Court) to be untenable. *See* (D.E. 91 at 21–78) (dismissing Reed's claims with prejudice because the at-issue statements were not defamatory, not about Reed, and not published with actual malice).

Despite the facial lack of plausibility of Reed's claims, this case featured more than a year of litigation, two pleadings of approximately 100 pages each (D.E. 1, 28), oral argument, and extensive briefing on every contested issue.

Moreover, Reed made this case a lot more expensive than it needed to be. He filed a number of superfluous or baseless documents—most of which required a response from defense counsel and needlessly drove up Defendants' fees. Such filings included a "Response to Unopposed Motion for

Enlargement of Pages for Motion to Dismiss" (D.E. 33) (suggesting that Defendants possessed the right to amend the Local Rules and grant extensions); "Motion to Return to Defendants' Counsel USB Drive and Documents Submitted by Defendants' Counsel to Court Ex Parte Concerning Defendants' Motion to Dismiss and Other Appropriate Relief" (D.E. 41) (arguing that the submission of a courtesy copy of the at-issue publications constituted a sanctionable offense—denied by the Court at (D.E. 54)); "Motion for Leave to File Reply" (D.E. 43) (impugning the character of Defendants' counsel—denied by the Court at (D.E. 54)); "Motion to Strike USB Drives and Other Exhibits and for Sanctions" (D.E. 44) (requesting additional sanctions on Defendants' counsel—denied by the Court at (D.E. 54)); "Motion for Leave to File Reply" (D.E. 48) (again requesting sanctions on Defendants' counsel—denied by the Court at (D.E. 54)); "Interim Response to Defendants' Notice of Filing of Service" (D.E. 50) (again requesting sanctions on Defendants' counsel); "Proposed Uniform Case Management Report" (D.E. 51) (unilaterally filing a proposed case management report that was not agreed upon by Defendants' counsel); "Request for a Status Conference and to Reset Date for Omnibus Hearing of July 6, 2023" (D.E. 57) (arguing again that Defendants should be sanctioned, and also requesting oral argument—denied by the Court at (D.E. 58)); "Sworn Affidavit of Larry Klayman Concerning Case and Other Authority in Above-Styled Lawsuits" (D.E. 82) (filing an

unauthorized paper, the week before oral argument on Defendants' anti-SLAP motion, featuring more than 500 pages of exhibits directed at the motion—stricken by the Court at (D.E. 91)); "Motion for Leave to Supplement his Oppositions to Motions to Dismiss" (D.E. 83) (asking the Court to consider another 220 pages of extraneous documents pursuant to the pending motions to dismiss—stricken by the Court at (D.E. 91));[4] "Motion to Recuse the Honorable Timothy J. Corrigan Pursuant to 28 U.S.C. § 455 AND 28 U.S.C. § 144" (D.E. 93) (requesting recusal of the Court for wholly baseless reasons—denied by the Court at (D.E. 100)); "Motions for Reconsideration, to Alter or Amend a Judgment, and for Relief from Judgment or Order Pursuant to Federal Rules of Civil Procedure 59 and 60" (D.E. 94) (asking the Court to reconsider every basis of dismissal appearing in a 78-page order when the untenability of his claims was facially apparent and thoroughly explained—denied by the Court at (D.E. 100)).[5]

Despite his vexatious style of litigation, Reed failed to state any plausible claim, and his suit was dismissed with prejudice. *See* (D.E. 91, 100). When, as here, a prevailing party achieves "excellent results," his or her

---

[4] At oral argument on July 31, 2023, Reed also asked the Court for leave to file additional briefing—a request the Court granted. *See* (D.E. 89, 90).

[5] Indeed, just last week, Reed filed a motion seeking to stay consideration of Defendants' attorneys' fees and costs (D.E. 105), which will necessitate further time and expense to respond to.

16

attorney is entitled to a "fully compensatory fee" that "[n]ormally . . . will encompass all hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435. *See also Norman*, 836 F.2d at 1302 ("if the result was excellent, then the court should compensate for all hours reasonably expended"). Indeed, in some instances, "an enhanced award may be justified." *Id.* Here, Defendants—who seek no such enhancement—obtained a degree of success that can be characterized as excellent. Defendants prevailed on all claims brought by Reed based on the grounds set forth in their anti-SLAPP motions, and Defendants obtained dismissal with prejudice as to Reed's entire suit.

Moreover, Defendants' counsel coordinated, where possible, with counsel for co-defendants in this suit to increase efficiency and limit costs. This effort resulted in fewer total hours expended by all defense counsel in this case. *See* (D.E. 52) (joint response regarding an improperly filed case management report); (D.E. 92) (joint response regarding the matter of entitlement to fees); (D.E. 96) (joint response regarding the matter of reconsideration); (D.E. 95) (joint response regarding the matter of recusal). *See also In re Checking Account Overdraft Litig.*, 1:09-MD-02036-JLK, 2014 WL 12557837, at *13 (S.D. Fla. June 10, 2014) (noting that "engag[ing] in coordinated, productive work to maximize efficiency" contributes to a finding of reasonableness).

Ultimately, Defendants' counsel charged a reasonable rate—both for the Jacksonville Division of the District and for the defamation litigation market—and billed a reasonable number of hours to dispose of this case. Defendants therefore ask the Court to find that Defendants' attorneys' fees are reasonable and award the full amount sought.

## CONCLUSION

The Court found Reed's suit meritless, and Defendants have fully prevailed in this action. Accordingly, Defendants are entitled to their lodestar amount of fees and expenses incurred in connection with this matter. These fees and expenses are reasonable and were necessary to adequately defend against Reed's suit. For this reason, the Golf Channel Defendants request they be awarded attorneys' fees and expenses in the amount of **$85,832.10**; the Gannett Defendants request they be awarded attorneys' fees and expenses in the amount of **$81,831.72**; and *The New Yorker* requests it be awarded attorneys' fees and expenses in the amount of **$68,842.01**.

Dated: January 24, 2024

                                      Respectfully Submitted,

                                      SHULLMAN FUGATE PLLC

                                      ***/s/ Minch Minchin***
                                      Rachel E. Fugate (FBN 144029)
                                      rfugate@shullmanfugate.com
                                      Deanna K. Shullman (FBN 514462)
                                      dshullman@shullmanfugate.com
                                      Minch Minchin (FBN 1015950)

mminchin@shullmanfugate.com
50 N. Laura Street, Suite 2500
Jacksonville, FL 32202
Tel: (813) 935-5098

*Attorneys for Golf Channel Defendants*

THOMAS & LoCICERO PL


***/s/ Carol LoCicero***
Carol Jean LoCicero (FBN 603030)
Linda R. Norbut (FBN 1011401)
601 South Boulevard
Tampa, FL 33606
Telephone: (813) 984-3060
Facsimile: (813) 984-3070
clocicero@tlolawfirm.com
lnorbut@tlolawfirm.com
Secondary email: tgilley@tlolawfirm.com

*Attorneys for the Gannett Defendants*

and

BALLARD SPAHR

***/s/ Charles D. Tobin***
Charles D. Tobin (FBN 816345)
tobinc@ballardspahr.com
Jay Ward Brown (*pro hac vice*)
brownjay@ballardspahr.com
Emmy Parsons (*pro hac vice*)
parsonse@ballardspahr.com
1909 K Street NW, 12th Floor
Washington, DC 20006
Telephone: (202) 661-2200

*Attorneys for The New Yorker*

**LOCAL RULES 3.01(g) AND 7.01(c) CERTIFICATION**

I HEREBY CERTIFY that on January 17, 2024, counsel for the Defendants conferred via video conference with Reed's counsel regarding this motion, including the information specified in Local Rule 7.01(c)(4). Reed wholly opposes the relief sought herein.

/s/ *Minch Minchin*
Minch Minchin