UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

PATRICK NATHANIEL REED,           Case No. 3-22-CV-01059-TJC-PDB

   Plaintiff,

vs.

BRANDEL CHAMBLEE, *et al.*,

   Defendants.

## DEFENDANTS' JOINT RESPONSE IN OPPOSITION TO MOTION TO STAY

Defendants Brandel Chamblee, Damon Hack, Benjamin Bacon, Eamon Lynch, and TGC, LLC d/b/a Golf Channel (the "Golf Channel Defendants"), Gannet Satellite Information Network, LLC d/b/a Golfweek and Gannett Co., Inc. (the "Gannett Defendants"), and Conde Nast International, Inc. d/b/a *The New Yorker* ("*The New Yorker*"), (collectively, "Defendants") hereby respond in opposition to Plaintiff Patrick Nathaniel Reed's Motion to Stay Consideration of and Any Award of Attorneys Fees to Defendants Pending Appeal (the "Motion"). (D.E. 105). Reed's Motion is yet another attempt to relitigate issues already exhaustively analyzed by the Court, drag out this meritless lawsuit, and increase the fees incurred by Defendants. For the reasons set forth below, the Motion should be denied.

## BACKGROUND

By now, the Court is familiar with the facts of this case. To summarize, Reed initially filed this defamation suit in the Southern District of Texas in August of 2022. He then voluntarily dismissed the Texas complaint and re-filed in this Court, adding additional defendants. The Court *sua sponte* dismissed Reed's complaint in November of 2022. (D.E. 27). Reed then filed his final operative pleading in December of 2022, asserting defamation and tortious interference with business relationships claims. *Id.*

Pursuant to Section 768.295, Florida Statutes (the "anti-SLAPP statute"), the Reed I Defendants collectively filed three motions to dismiss claiming anti-SLAPP fees on behalf of the Golf Channel Defendants (D.E. 35), the Gannett Defendants (D.E. 38), and *The New Yorker* (D.E. 62), respectively.

On September 27, 2023, following a hearing and exhaustive briefing, this Court issued an omnibus order granting, *inter alia*, Defendants' pending motions to dismiss (the "First Order"). (D.E. 91). However, the Court expressly stated that "[t]his Order [wa]s not final" and requested additional briefing regarding the issue of fee entitlement, to be completed by November 17, 2023. *Id.* at 77. The Court "withh[e]ld entry of final judgment until after resolution of any fee claims." *Id.*

The Parties engaged in additional briefing and on January 5, 2024, the Court entered an order granting, *inter alia*, Defendants' entitlement to fees

2

(the "Second Order"). (D.E. 100). The Court requested additional briefing on the amount of fees and again stated its intent to "direct entry of Final Judgment in *Reed I* (3:22-cv-1059) after ruling on the forthcoming fee motion(s)." *Id.* at 19-20. Thus, there has been no entry of Final Judgment in this matter.

On January 8, 2024, Reed filed a Notice of Appeal to the Eleventh Circuit (the "Notice"). (D.E. 103). The Notice purports to appeal both the First and Second Orders and "all other opinions and orders adverse to Mr. Reed . . . ."

Reed then filed the pending Motion on January 18, 2024, seeking "an order staying the issue of Defendants['] . . . Motion for Anti-SLAPP Fees." (Motion at 2).

## ARGUMENT

In considering a motion to stay pending appeal, district courts consider four factors: "(1) whether the stay applicant has made a strong showing that it is likely to succeed on the merits, (2) whether the applicant will be irreparably injured absent a stay, (3) whether the issuance of the stay will substantially injure the other parties interested in the proceeding, and (4) where the public interest lies." *Robinson v. Attorney General*, 957 F.3d 1171, 1176 (11th Cir. 2020). "The first two factors of [this] standard are the most critical," and "[t]he party requesting a stay bears the burden of showing that the circumstances justify an exercise of [judicial discretion]" to issue a stay. *See Nken v. Holder*,

3

556 U.S. 418, 433-34 (2009). In the present case, the first two factors alone are sufficient to deny the motion, although all four factors weigh against granting a stay.

**I. Reed has not shown that he is likely to succeed on the merits.**

Reed has failed to show that he is likely to succeed on the merits because (1) his appeal is premature and (2) even if the Eleventh Circuit had jurisdiction, Reed has failed to identify any viable argument for overturning this Court's decision.

Circuit courts "only have jurisdiction over appeals from 'final decisions of the district courts.'" *SmileDirectClub, LLC v. Battle*, 4 F.4th 1274, 1277 (11th Cir. 2021) (quoting *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 102 (2009)). "A final decision is typically one by which a district court disassociates itself from a case." *Mohawk Indus.*, 558 U.S. at 106 (quotations omitted). Here, the Court has expressly reserved jurisdiction and ordered additional briefing. Further, although there are some very narrow exceptions to this general rule, Reed has not asserted any of them. Nor has he even addressed the nonfinal nature of the order(s) he purports to appeal, either in his Motion to Stay or in his Notice of Appeal. On the contrary, his Notice of Appeal merely states that he is appealing the September 27, 2023 and January 5, 2024 orders, both of which expressly state that they are non-final orders, as well as "all other opinions and orders adverse to Mr. Reed in both of the captioned cases above."

4

(D.E. 103). An appellant cannot succeed on the merits where there is no jurisdiction to even hear his appeal.

Further, even if a final judgment existed, Reed has not identified any legitimate basis showing his appeal would be likely to succeed on the merits. In his Motion to Stay, Reed lists six "grounds" upon which he claims he is likely to succeed on appeal. None of these purported grounds has merit.

First, Reed asserts that it was "error for the Court to glossed [sic] over the fifty-five (55) alleged defamatory statements at issue in this case with the generalized finding that they were 'non-defamatory.'" (Motion at 2). The Court has already addressed this argument, explaining that "Reed's claim that the Court did not give individual analysis to each of the fifty-five alleged defamatory statements falls short. The Court identified the basis for dismissal for each statement in the Order and analyzed each basis with the relevant law." (Second Order at 10-11).

The remaining grounds all deal with whether the anti-SLAPP fee provision applies in federal court and have been previously addressed at length. Reed has not raised any new facts, arguments, or case law to suggest that the Court's previous reasoning should be reconsidered.

Reed first asserts that the Chief Judge of the Eleventh Circuit, Judge Pryor, expressed "serious doubt" as to whether Florida's anti-SLAPP statute applied in federal court during oral argument in *Corsi v. Newsmax Media Inc.*,

5

No. 21-20480 (11th Cir. May 19, 2022). However, the court also recognized at those same arguments that it generally applies "state laws that provide for an award of attorney's fees that arise under state law . . . or fail under state law," and questioned why Florida's anti-SLAPP statute should not be treated as a garden-variety "fee-shifting statute." Transcript of Oral Argument at 11, 37, *Corsi*, No 21-10480.

Ultimately, as this Court has previously recognized, the parties in that matter settled, and the Eleventh Circuit never ruled on the appeal. (Second Order at 12 fn. 7). A judge's comments at oral argument, which are intended to help them evaluate the parties' arguments and gain a better understanding of the issues and not to provide a final opinion, are not precedential. *C.f. United States v. Percoco*, 16-CR-776, 2019 WL 493962, at *8 (S.D.N.Y. Feb. 8, 2019) ("Reading the tea leaves of oral argument is an act of pure speculation."). Thus, the Eleventh Circuit did not address the issue in *Corsi*, and the district court opinions in *Corsi* and other matters holding that Florida's anti-SLAPP statute applies in federal court stand.

Next, Reed asserts that Florida's anti-SLAPP argument is procedural under *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938). The Court has already carefully considered this argument and the relevant case law and came to the opposite conclusion. (Second Order at 13) ("Judge Mizelle held that Florida's

6

anti-SLAPP statute creates a substantive right and thus must be applied in federal court.").

Alternatively, Reed asserts that Florida's anti-SLAPP statute conflicts with the Federal Rules of Civil Procedure because it imposes a heightened pleading standard. Again, the opinions addressing this issue and considered by the Court have clearly ruled to the contrary. *See, e.g.*, *Bongino v. Daily Beast Co., LLC*, 477 F. Supp. 3d 1310, 1323 (S.D. Fla. 2020) ("[I]t does not require the plaintiff to establish a *probability* that he will prevail . . . . Nor does Florida's statute contemplate a substantive, evidentiary determination of the plaintiff's probability of prevailing."); *Corsi*, 519 F. Supp. 3d at 1128 ("Florida's anti-SLAPP statute . . . does not require a plaintiff to establish a probability that he or she will prevail . . . Thus, Florida's statute does not conflict with any Federal Rule of Civil Procedure."); *Government Employees Insurance Co. v. Glassco Inc.*, No. 8:19-cv-01950-KKM-JSS, 2021 WL 4391717, at *6 (M.D. Fla. Sept. 24, 2021) ("Florida's anti-SLAPP statute differs significantly from other States' anti-SLAPP statutes, which change the verification requirement for all pleadings and adjusts the burden of persuasion for prevailing on a SLAPP motion. No such change or adjustment to a Federal Rule of Civil Procedure occurs under Florida's anti-SLAPP statute.").

As his fifth ground, Reed merely cites, without explanation, the order in *Sterling v. Doe*, No. 6:21-cv-723-PGB-EJK, 2022 WL 2112091 (M.D. Fla. Feb.

7

2, 2022). Once again, this Court has already carefully considered the *Sterling* order and explained why it does not conflict with the numerous decisions holding Florida's anti-SLAPP fee provision applies in federal court. (Second Order at 16-17). Specifically, *Sterling* concerned a motion to quash rather than a dispositive anti-SLAPP motion, and, in any event, the court expressly held that "the fee-shifting provision of anti-SLAPP laws is obviously different than the pretrial dismissal anti-SLAPP provisions which conflict with and answer the same question as the Federal Rules." *Sterling*, 2022 WL 2112091 at *5 (quotation marks omitted).

Finally, Reed reiterates his argument that other federal courts have found that other anti-SLAPP statutes conflict with the Federal Rules of Civil Procedure. The Court conducted a careful review of these decisions and found that they "are unpersuasive" here because "[t]he specific requirements and language in each state's anti-SLAPP statute must be analyzed individually under *Erie*, which leads to different results depending on the statute." (Second Order at 17) (citations omitted). The courts which have examined the issue of whether Florida's anti-SLAPP fee-shifting provision applies in federal court have, in holding that it does, carefully distinguished Florida's statute from these other anti-SLAPP statutes. *See, e.g.*, *Bongino*, 477 F. Supp. 3d at 1323 ("Those statutes conflict with the Federal Rules of Civil Procedure because they raise the bar for a plaintiff to overcome a pretrial dismissal motion . . . .

8

Not so for Florida's anti-SLAPP statute."). Further, this analysis is in agreement with the decisions of other circuits which have held that other states' anti-SLAPP fee shifting statutes similar to Florida's are substantive under Erie and therefore apply in federal court. *See Adelson v. Harris*, 774 F.3d 803, 809 (2d Cir. 2014) (holding Nevada's anti-SLAPP law applied in federal court in part because fee-shifting statutes are substantive). It is also in agreement with "decades of Eleventh Circuit precedent, which find that state-law statutes and claims for attorneys' fees and costs 'unequivocally' apply in a federal court exercising diversity jurisdiction." *Bongino*, 477 F. Supp. 3d at 1322-24.

Because his appeal is premature, and because he has not advanced any viable reasoning for overturning this Court's thorough and well-reasoned Orders, Reed has not established that he is likely to succeed on the merits on appeal.

**II. Reed has not shown that he will be irreparably injured absent a stay.**

The second factor considers whether the party seeking the stay, in this case Reed, "*will* be irreparably injured absent a stay." *Robinson*, 957 F.3d at 1176 (emphasis added). It is not enough simply to assert the *possibility* of irreparable injury. *Id.* at 1177 (quoting *Nken*, 556 U.S. at 434-35).

The only allegedly "irreparable injury" which Reed puts forth is that his reputation will be damaged by litigating the amount of attorneys' fees and he will be distracted on the golf course by "hecklers." (Motion at 3-4). He does not explain why litigating the amount of attorneys' fees he owes will subject him to any additional "hecklers" or reputational harm beyond that which he experienced by litigating—and appealing—this meritless lawsuit that he elected to file. Litigating dollar amounts is rarely considered irreparable injury. *See*, *e.g.*, *In re Melbourne Beach, LLC*, No. 6:19-cv-1491-Orl-41, 2019 WL 13189459, at *5 (M.D. Fla. Nov. 5, 2019) ("Mere injuries, however substantial, in terms of money, time, and energy necessarily expended in the absence of a stay, are not enough [to establish irreparable damage].") (internal quotations omitted). Therefore, Reed has not established that a stay is necessary to prevent him from being irreparably injured. *See In re Freedom Unlimited*, 489 F. Supp. 3d 1328, 1339 (S.D. Fla. 2020) (noting that a stay is not a matter of right, even if irreparable injury might otherwise result).

### III. Defendants would be substantially injured by a stay.

Florida's anti-SLAPP statute confers a substantive right to be free from meritless, speech-chilling lawsuits like this one and to recover attorneys' fees and costs incurred in defending such lawsuits. *See* § 768.295, Fla. Stat. (2023). This facially unviable litigation has already dragged on for approximately eighteen months, at great cost to Defendants, largely due to Reed's vexatious

10

litigation strategy. Further unnecessary delay of resolving the fee award, as well as increasing the amount of fees Defendants are required to spend responding to frivolous motions and dealing with litigation inefficiencies, would violate this right and inflict more substantial injury on Defendants. *See In re Freedom Unlimited*, 489 F. Supp. 3d 1328, 1339 (S.D. Fla. 2020) (denying a motion to stay and noting that the delay itself was inherently prejudicial because "justice delayed is justice denied") (citation omitted).

**IV. The public interest weighs against granting a stay.**

The public interest is best served by evenhanded adherence to established principles of judicial procedure. *See id.* ("In analyzing this factor, courts focus on whether the stay would promote the uniformity of the laws."). The purpose of the Federal Rules of Appellate Procedure limiting appeals, other than certain narrow exceptions, to final judgments is to prevent "the piecemeal appeal of nonfinal substantive judgments rendered by the district court." *Osterneck v. E.T. Barwick Industries, Inc.*, 825 F.2d 1521, 1526 (11th Cir. 1987) (denying jurisdiction to hear appeal). The public interest, therefore, clearly lies with preserving judicial efficiency by limiting litigants to a single appeal.

Reed cites no supporting authority for his assertion that a stay of the full resolution of the fee and expense issues by the district court pending his improper appeal is somehow an exception to this rule. Instead, he merely

11

makes broad, conclusory assertions that the public interest weighs in favor of a stay because it would prevent wasteful expenditure of time and resources. (Motion at 4). In fact, the opposite is true: resolving all issues at the district court before Reed can proceed with a singular, streamlined appeal is the most efficient means of preserving time and resources. Therefore, the public interest in judicial efficiency weighs against granting a stay. In addition, as discussed above, an efficient resolution of the anti-SLAPP issues protects free speech and serves important public interests by doing so. *See* § 768.295(1), Fla. Stat. ("[T]he Legislature finds and declares that prohibiting such lawsuits as herein described will preserve this fundamental state policy [and] preserve the constitutional rights of persons in Florida.").

## CONCLUSION

For the foregoing reasons, the *Reed I* Defendants respectfully request this Court deny Reed's Motion to Stay Consideration of and Any Award of Attorneys Fees to Defendants Pending Appeal.

Dated: February 1, 2024

                                               Respectfully Submitted,

                                               SHULLMAN FUGATE PLLC

                                               ***/s/ Minch Minchin***
                                               Rachel E. Fugate (FBN 144029)
                                               rfugate@shullmanfugate.com
                                               Deanna K. Shullman (FBN 514462)
                                               dshullman@shullmanfugate.com
                                               Minch Minchin (FBN 1015950)

mminchin@shullmanfugate.com
50 N. Laura Street, Suite 2500
Jacksonville, FL 32202
Tel: (813) 935-5098

*Attorneys for Golf Channel Defendants*

THOMAS & LoCICERO PL

*/s/ Carol Jean LoCicero*
Carol Jean LoCicero (FBN 603030)
Linda R. Norbut (FBN 1011401)
601 South Boulevard
Tampa, FL  33606
Telephone: (813) 984-3060
Facsimile:  (813) 984-3070
clocicero@tlolawfirm.com
lnorbut@tlolawfirm.com
Secondary email: tgilley@tlolawfirm.com

*Attorneys for the Gannett Defendants*

and

BALLARD SPAHR

*/s/ Charles D. Tobin*
Charles D. Tobin (FBN 816345)
tobinc@ballardspahr.com
Jay Ward Brown (*pro hac vice*
brownjay@ballardspahr.com
Emmy Parsons (*pro hac vice*)
parsonse@ballardspahr.com
1909 K Street NW, 12th Floor
Washington, DC 20006
Telephone: (202) 661-2200

*Attorneys for The New Yorker*

13

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the **1st day of February, 2024**, the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system. I also certify that the foregoing document is being served this date on all counsel of record via transmission of Notices of Electronic Filing generated by the CM/ECF system.

>                            */s/ Carol LoCicero*
>                            Attorney